Ethan M. Posner (*Pro Hac Vice*)
eposner@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20004-2401
Telephone:  202.662.5674
Facsimile:  202.662.6291

Sara J. O'Connell (Bar No. 238328)
soconnell@cov.com
COVINGTON & BURLING LLP
9191 Towne Centre Drive, 6th Floor
San Diego, CA 92122-1225
Telephone: 858.678.1811
Facsimile: 858. 678.1600

W. Douglas Sprague (Bar No. 202121)
dsprague@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone: 415.591.7097
Facsimile: 415.591.6091

Attorneys for Defendant
LEONARD GLENN FRANCIS

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:13-cr-03782-JLS |
| Plaintiff, | Related cases: |
| v. | No. 3:13-cr-03781-JLS |
| | No. 3:13-cr-04287-JLS |
| LEONARD GLENN FRANCIS (1), | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING** |
| Defendant. | |

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ........................................................................... 1

II.    STATEMENT OF THE ISSUE........................................................ 2

    A.    The Original Arrest and Bail Proceedings ......................... 2

    B.    The Plea and Changed Circumstances ............................... 4

III.    ARGUMENT ................................................................................. 5

    A.    Clear And Convincing Evidence Establishes That Mr. Francis Is Not Likely To Flee ................................................................................ 6

        i.    The Nature And Circumstances of Mr. Francis's Offenses - (18 U.S.C. § 3142(g)(1)) ................................................................................ 6

        ii.    Mr. Francis's History And Characteristics - (18 U.S.C. § 3142(g)(3)) ................. 7

            (a)    MR. FRANCIS'S DIMINISHED FINANCIAL RESOURCES FAVOR RELEASE ....................... 7

            (b)    MR. FRANCIS'S PHYSICAL AND MENTAL CONDITION WEIGH IN FAVOR OF RELEASE......................... 8

            (c)    MR. FRANCIS HAS STRONG FAMILY TIES THAT FAVOR RELEASE ............................. 9

            (d)    MR. FRANCIS'S PAST CONDUCT FAVORS RELEASE................... 10

            (e)    MR. FRANCIS'S TIES TO THE UNITED STATES FAVOR HIS RELEASE ....................... 11

        iii.    Danger To The Community - (18 U.S.C. § 3142(g)(4)) .................................... 12

        iv.    The Weight Of The Evidence - (18 U.S.C. § 3142(g)(2)).................................. 12

    B.    Mr. Francis Will Agree to Extraordinary Conditions That Will Further Assure His Appearance at Sentencing and Other Proceedings - (18 U.S.C. § 3142(c)) ................... 13

        (1)    A corporate surety bond ................................................... 14

        (2)    A personal appearance bond .............................................. 14

        (3)    Restricted to an upper floor residence ............................... 14

        (4)    Home confinement and GPS............................................... 15

        (5)    Electronic monitoring of residence ................................... 15

        (6)    Private security measures, including  guard service ........................................ 15

i

|  |  |  |  |
|---|---|---|---|
| | (7) | Limited visitors; visitors subject to search | 16 |
| | (8) | Monitored communications | 16 |
| | (9) | Frequent communication and random checks | 16 |
| | (10) | Surrender of travel documents | 16 |
| | (11) | Waiver of extradition | 16 |
| | (12) | No possession of narcotics or controlled substances | 16 |
| | (13) | No possession of firearm, dangerous weapon, or destructive device | 17 |

C.    The Security Measures Proposed Are Similar to What Other Courts Have Ordered in Cases Where the Defendants Faced Significantly More Jail Time Than Mr. Francis ............................................................................................... 17

D.    Releasing Mr. Francis Would Be Consistent With the Treatment of Other Defendants in this Case ................................................................................... 19

IV.    CONCLUSION ................................................................................................ 20

ii

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*New York v. Strauss-Kahn*,
    No. 0256/2011..........................................................................................................18

5

6

*United States v. Abuhamra*,
    389 F.3d 309 (2d Cir. 2004)......................................................................................5

7

8

*United States v. Awadallah*,
    173 F. Supp. 2d 186 (S.D.N.Y. 2001).....................................................................12

9

10

*United States v. Batista*,
    163 F. Supp. 2d 222 (S.D.N.Y. 2001).....................................................................14

11

12

*United States v. Gebro*,
    948 F.2d 1118 (9th Cir. 1991) .................................................................................13

13

14

*United States v. Karni*,
    298 F. Supp. 2d 129 (D.D.C. 2004).........................................................................12

15

16

*United States v. Khashoggi*,
    717 F. Supp. 1048 (S.D.N.Y. 1989).........................................................................12

17

18

*United States v. Majors*,
    932 F. Supp. 853 (E.D. Tex. 1996)........................................................................5, 6

19

*United States v. Motamedi*,
    767 F.2d 1403 (9th Cir. 1985) .................................................................................11

20

21

*United States v. Robledo*,
    2014 WL 4755527 (S.D. Cal. Sept. 24, 2014).........................................................6

22

23

*United States v. Sanchez*,
    2011 WL 744666 (C.D. Cal. Feb. 23, 2011)..........................................................11

24

25

*United States v. Townsend*,
    897 F.2d 989 (9th Cir. 1990) ...................................................................................11

26

STATUTES

27

18 U.S.C. § 3142(c)...........................................................................................................13

28

18 U.S.C. § 3142(g) ................................................................................5, 6, 11

18 U.S.C. § 3142(g)(1) ....................................................................................6

18 U.S.C. § 3142(g)(2) ..................................................................................12

18 U.S.C. § 3142(g)(3) ....................................................................................7

18 U.S.C. § 3142(g)(4) ..................................................................................12

18 U.S.C. § 3143(a)(1) ........................................................................... passim

S. Rep. No. 225, 98th Cong., 1st Sess. at 26, reprinted in 1984 U.S. Code Cong. &
     Ad. News 3182 ........................................................................................6

**OTHER AUTHORITIES**

Fed. R. Crim. P. 46(c) ................................................................................2, 5

# I.    INTRODUCTION

In light of materially changed circumstances, defendant Leonard Glenn Francis, incarcerated since September 2013, respectfully requests release pending sentencing. There is clear and convincing evidence that Mr. Francis—an easy-to-recognize, 6'3", fifty-year-old man weighing approximately 350 pounds, whose face has been published repeatedly by the media around this country and globally, and who is suffering from multiple health issues—will appear at all future court appearances.  And there is no doubt that this Court can fashion conditions, as detailed below, that reasonably will assure such appearance.

Since the last time the issue of detention was before this Court more than 18 months ago, the facts and posture of this matter have changed fundamentally.  First, on January 15, 2015, Mr. Francis accepted responsibility for his actions by pleading guilty to conspiracy to commit bribery, bribery, and conspiracy to defraud the United States, and his plea agreement includes a substantially reduced advisory Sentencing Guidelines range.  *See* Dkt. No. 157, 161.[1]  He no longer faces the possibility of "life in prison," and he is even more motivated not to risk that exposure by, for example, failing to make court appearances.

Second, also pursuant to his plea agreement, Mr. Francis has made an unusual, non-court ordered, pre-sentence payment of $5,000,000 to the government.  Mr. Francis therefore not only has substantially fewer assets he could use to fund an imagined flight, but such imagined flight would result in the loss of the already-paid $5,000,000 *and* the possibility of going to prison for most of the rest of his life in a foreign country far away from his five children, including three under the age of nine.  In fact, counsel is not aware of a single case in which a defendant made a substantial repatriation of assets to the United States while remaining incarcerated pending sentencing.

Third, there are several confidential and personal reasons, including Mr. Francis's deteriorating health, that demonstrate he can be trusted to make all required appearances;

---

[1] All docket citations are to case 3:13-cr-03782-JLS, unless otherwise indicated.

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

these reasons are set forth below and in the Addendum filed under seal.

Fourth, although such conditions are unnecessary because he can be trusted to make all court appearances, Mr. Francis is willing to be subjected to an extraordinary set of measures designed to remove any reasonable doubt that he poses a risk of flight. As detailed below, these measures include a written waiver of any rights against extradition, home confinement, a guard service, GPS monitoring, surveillance, relinquishment of travel documents, a corporate surety bond, and a personal surety bond co-signed by his aunt who lives in the United States.[2]

Numerous other courts have released defendants, including those facing life sentences, after imposing similar or even less stringent security conditions. Recently, for example, in the Northern District of California, Judge Breyer imposed similar conditions on an Israeli national facing far more time in prison than Mr. Francis faces here.[3] *See United States v. Cohen*, 3:10-cr-00547-CRB, Dkt. No. 196 (N.D. Cal. 2012).

Accordingly, pursuant to Fed. R. Crim. P. 46(c) and 18 U.S.C. § 3143(a)(1), Mr. Francis respectfully requests that he be released pending sentencing.

## II.   STATEMENT OF THE ISSUE

### A.   The Original Arrest and Bail Proceedings

Mr. Francis was arrested on September 16, 2013. At his initial appearance the following day, the government made an oral motion to detain Mr. Francis based on flight and risk to obstruct justice. *See* Dkt. No. 7. The Court set a hearing for September 20, 2013, and detained Mr. Francis pending that hearing. *Id.* At the hearing, Mr. Francis waived his right to a detention hearing without prejudice to later applying for bail and

---

[2] Such measures were not fully presented to this Court when prior counsel argued for Mr. Francis's release more than 18 months ago.

[3] The conditions imposed in *Cohen* and in other cases in which the defendant was a foreign national, had vast resources, and/or were released on less stringent conditions are cited below.

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

conditions of release.  Dkt. No. 16 at 2.

Mr. Francis requested a bond hearing on November 12, 2013.  Dkt. No. 47.  On November 21, 2013, Magistrate Judge Adler held a bond hearing.  Dkt. No. 58.  Judge Adler granted Mr. Francis's request for bond, finding that conditions could be fashioned to reasonably assure Mr. Francis's appearance at court dates.  *Id.*

In setting release conditions, Judge Adler imposed a $1,000,000 cash/corporate security bond and a $100,000 personal surety bond co-signed by Mr. Francis and his aunt, Francisca White.  *Id.*  Judge Adler also imposed additional security measures— many proposed by Mr. Francis himself, *see* Dkt. No. 59—including restricting Mr. Francis's travel to San Diego County and forbidding travel to Mexico; reporting to Pretrial Services; restricting Mr. Francis's possession of narcotics, firearms, dangerous weapons, or destructive devices; requiring Mr. Francis to comply with conditions to legally remain in the United States; ordering that Mr. Francis relinquish travel documents and restricting application for a new passport during pendency of the case; mandating Mr. Francis's participation in the Location Monitoring Program by being fitted with GPS monitoring and placed in home detention (at Mr. Francis's own expense); restricting Mr. Francis to a rented apartment or condominium in San Diego County in an upper floor of a multistory building; imposing an "extra layer of security" by requiring Mr. Francis to pay to have his residence monitored by an independent security company and equipped with surveillance and alarms; and requiring that Mr. Francis pay for a 24-hour guard service to be present at his apartment and that would alert Pretrial Services if Mr. Francis left his apartment without permission.  *Id.*  Judge Adler stayed his order to allow the government to file an appeal with the District Court. *Id.*

On November 22, 2013, the government filed its Motion to Revoke Conditions of Release as to Mr. Francis.  Dkt. No. 62-1.  In its motion, the government acknowledged that it had "not moved to detain [Mr. Francis] as a danger to the community."  *Id.* at 12. The government argued that Mr. Francis was a flight risk because he had "tremendous

**MEMORANDUM OF POINTS AND AUTHORITIES**                    3:13-cr-03782-JLS

financial resources," "a fleet of vessels," "offices in a dozen countries," and "family and friends across the globe." *Id.* at 2. The government also argued that Mr. Francis faced a life sentence and, therefore, "has nothing to lose by fleeing." *Id.* at 9-10. The government contended that Mr. Francis, if housed in downtown San Diego, could drive about 15 minutes and enter Mexico through Tijuana, where he could then "purchase whatever travel document he needs to go to a country of his choice, including a country that does not have an extradition treaty with the United States or a country whose officials can be bribed not to enforce its treaty." *Id.* at 12.

On November 25, 2013, the Court held a hearing on the government's motion. *See* Dkt. No. 67. After the hearing, the Court issued an order granting the government's motion to revoke Judge Adler's order, concluding that the government had shown by a preponderance of the evidence that Mr. Francis was a flight risk and that "no condition or combination of conditions . . . would reasonably assure the appearance of [Mr. Francis] at trial." *Id.* at ¶¶ 15-17. At that time, the Court reasoned that Mr. Francis "has no ties to the Southern District of California" and that he "has the ability to travel internationally; has the ability to move assets and personnel quickly; has the resources to readily adapt to life in other countries; and has the means to find a safe haven outside the United States." *Id.* at ¶¶ 12, 14.

Mr. Francis appealed the Court's order on December 9, 2013. Dkt. No. 77. The Ninth Circuit denied Mr. Francis's appeal on January 16, 2014. Dkt. No. 86.

## B.     The Plea and Changed Circumstances

One year later, on January 15, 2015, Mr. Francis entered into a plea agreement with the government and pleaded guilty before Magistrate Judge Adler to three counts: conspiracy to commit bribery, bribery, and conspiracy to defraud the United States. *See* Dkt. Nos. 157 and 161. Mr. Francis also entered a plea of guilty on behalf of his company, GDMA. Dkt. No. 157. The Court accepted the guilty plea of Mr. Francis and his company on February 10, 2010. Dkt. Nos. 166 and 167. Sentencing for Mr. Francis is currently scheduled for October 9, 2015. *See* Dkt. No. 170.

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

1

In connection with the Plea Agreement, Mr. Francis signed a Forfeiture

2 Addendum in which he "consent[ed] and agree[d] to the immediate entry of an order of

3 forfeiture in the amount of $35,000,000.00." *See* Dkt. 161-1 at 2. Mr. Francis also

4 agreed to make a substantial payment under the forfeiture agreement prior to sentencing.

5 And in mid-April 2015, Mr. Francis also made an unusual pre-sentence payment of

6 $5,000,000 to the government.[4] *See* Dkt. No. 140 (3:13-cr-03781-JLS).

7

In addition to his plea agreement and restitution payments, other changed

8 circumstances, as set forth in the Sealed Addendum, bear on Mr. Francis's Motion for

9 Release Pending Sentencing.

10 ## III.   ARGUMENT

11

Upon a finding of clear and convincing evidence that a person awaiting sentencing

12 is "not likely to flee or pose a danger to the safety of any other person or the community

13 if released under section 3142(b) or (c)," the Court "shall order the release of the person

14 in accordance with section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). "Clear and

15 convincing evidence" means more than a preponderance of the evidence but less than

16 beyond a reasonable doubt. *See, e.g.*, *United States v. Majors*, 932 F. Supp. 853, 855

17 (E.D. Tex. 1996). While the defendant bears the burden under section 3143(a), *see* Fed.

18 R. Crim. P. 46(c), "if a defendant can make the required evidentiary showing, the statute

19 establishes a right to liberty that is not simply discretionary but mandatory: the judge

20 '*shall* order the release of the person in accordance with section 3142(b) or (c).'" *United*

21 *States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (emphasis in original).

22

As with pretrial detention, for release under section 3143(a)(1), "[a]mong factors

23 the district court should consider in determining whether to grant a convicted

24 defendant's motion for release pending sentencing are those factors enumerated in 18

25

26

[4] Any payments made under the Forfeiture Agreement offset any restitution

27 obligation that might be imposed on Mr. Francis. *See* Dkt. No. 161-1 at 3. Hence, Mr.

28 Francis's payment of $5,000,000 is referred to as "restitution" throughout this document.

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

U.S.C. § 3142(g) governing pretrial release." *Majors*, 932 F. Supp. at 855; *see also United States v. Robledo*, 2014 WL 4755527, at *4 (S.D. Cal. Sept. 24, 2014); S. Rep. No. 225, 98th Cong., 1st Sess. at 26, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3206 ("[C]onsideration of [the section 3142(g)] factors is required not only in proceedings concerning the pretrial release or detention of the defendant . . . but also where release is sought after conviction under section 3143.").

The United States has not asserted that Mr. Francis poses a danger to the community if released. *See, e.g.*, Dkt. No. 62-1 at 12 ("The United States has not moved to detain Defendant as a danger to the community."). Thus, the sole issue is whether clear and convincing evidence demonstrates that Mr. Francis is not likely to flee. Due to facts and circumstances that have changed since Mr. Francis's last motion for release in 2013, Mr. Francis meets this burden and he should be released pending sentencing.

A. **Clear And Convincing Evidence Establishes That Mr. Francis Is Not Likely To Flee**

Section 3142(g) requires consideration of the following factors: (i) the nature and circumstance of the offense charged; (ii) the history and characteristics of the defendant; (iii) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release; and (iv) the weight of the evidence. 18 U.S.C. § 3142(g).

i. **The Nature And Circumstances of Mr. Francis's Offenses - (18 U.S.C. § 3142(g)(1))**

Mr. Francis pleaded guilty to three counts: conspiracy to commit bribery, bribery, and conspiracy to defraud the United States. *See* Dkt. No. 157. The nature and circumstances of these offenses do not weigh in favor of continued detention. Congress expressly listed certain types of crimes that weigh heavily in favor of detention—crimes of violence, sex trafficking, terrorism, crimes involving minor victims, and crimes involving drugs, firearms, explosives, or destructive devices. *See* 18 U.S.C. § 3142(g)(1). Mr. Francis has not been charged with or convicted of any of these crimes.

In addition, according to Mr. Francis's plea agreement, the combined statutory

6

**MEMORANDUM OF POINTS AND AUTHORITIES**                   3:13-cr-03782-JLS

maximum custodial sentence for his offenses is 25 years, and the applicable advisory Sentencing Guideline range of imprisonment is substantially less.  Mr. Francis already has served approximately 20 months in custody.  Under his plea agreement, there is a ceiling on his potential punishment; he no longer faces the possibility of life in prison, as the government argued previously.  *See* Dkt. No. 62-1 at 9-10.  Mr. Francis knows that if he attempted to flee, he would lose the benefits of his plea agreement and face new charges.  If the government's previous argument that Mr. Francis had "nothing to lose" ever had any merit, it certainly does not now.

### ii.  Mr. Francis's History And Characteristics - (18 U.S.C. § 3142(g)(3))

Mr. Francis's history and characteristics, when considered in accordance with the factors set forth in the statute, demonstrate he can be trusted to appear.

#### (a)   Mr. Francis's diminished financial resources favor release

Mr. Francis's diminished financial resources weigh in favor of release.  Neither Mr. Francis nor GDMA have the financial resources that they did at the time of his arrest.  Notably, true to his word, Mr. Francis paid a significant amount of his remaining assets as pre-sentence restitution.  Mr. Francis and GDMA no longer own a "fleet of vessels," nor does he have offices in a dozen countries.  Reportedly, many former GDMA employees immediately abandoned the company after Mr. Francis's arrest and detention, taking company assets with them.  In short, Mr. Francis, neither individually nor through his company, "has the resources to readily adapt to life in other countries" or "the means to find a safe haven outside the United States."  Dkt. No. 67 at ¶ 14.

Even if it were the case that Mr. Francis had resources, courts regularly release defendants with access to resources sufficient to post large bail amounts.  *See, e.g.*, *United States v. Simels*, No. 1:08-cr-00640-DLI, Dkt. Nos. 8, 176, 177, 203 (E.D.N.Y. 2009) (defendant convicted at trial of conspiracy to obstruct justice via witness tampering and other crimes, facing maximum sentence of life in prison, released post-

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

verdict on $3.5 million bond, three co-signors, home detention with electronic monitoring); *United States v. Dreier*, No. 1:09-cr-00085-JSR-1, Dkt. Nos. 22, 64, 68, 76 (S.D.N.Y. 2009) (defendant convicted of multi-hundred million dollar international fraud, released after guilty plea on $10 million bond, and home detention with guards, no computer access, surrender of travel documents, and strict reporting requirements and electronic monitoring); *United States v. Lay*, No. 4:04-cr-00025-3, Dkt. Nos. 1024, 1025, 1027 (S.D. Tex. 2006) and *United States v. Skilling*, No. 4:04-cr-00025-2, Dkt. Nos. 24, 1024, 1048 (S.D. Tex. 2006) (defendants released after convictions for fraud on $5 million bonds); *United States v. Forbes*, No. 3:02-cr-0264-AWT-1, Dkt. Nos. 2572, 2723 (D. Conn. 2006) (defendant released on $1.2 million bond after conviction on $3 billion fraud); *United States v. Kumar*, No. 1:04-cr-00846-ILG, Dkt. Nos. 3, 213, 216, 223 (E.D.N.Y. 2006) (after $5 million bond and guilty plea to billion-dollar fraud, defendant released pending sentencing ); *United States v. Waksal*, 1:02-cr-01041, Dkt. Unnumbered 6/12/2002, 10/15/2002, and 3/3/2003 Entries, Nos. 54, 61 (S.D.N.Y. 2003) (defendant pleaded guilty to multiple counts of fraud granted bail pending sentence on $10 million bond, permitted to self-surrender).

> (b)   <u>Mr. Francis's physical and mental condition weigh in favor of release</u>

Mr. Francis's physical condition weighs in favor of release.  Mr. Francis is fifty years old, stands 6' 3", and weighs approximately 350 pounds.  As this Court is aware and is more fully set forth in the Sealed Addendum to this motion, Mr. Francis has faced significant health challenges since his arrest.  *See, e.g.*, Dkt. Nos. 176 and 195. Indeed, Mr. Francis's medical condition has only deteriorated since he has been incarcerated.  Not only would the proposed terms of release allow for better medical care, but Mr. Francis's physical condition, including his health problems, further underscore the implausibility of any notion he could live life as a fugitive.  And Mr. Francis is not someone who would go unnoticed if he fled; in addition to his size, the continued international media coverage of this case results in his picture and name being

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

broadcast on the Internet with each development related to this case.[5]  Mr. Francis knows that if he attempted to flee, he would be caught immediately and lose the benefits of his plea agreement just as fast.

(c)    Mr. Francis has strong family ties that favor release

Mr. Francis's strong family ties weigh in favor of release.  Mr. Francis is the father

---

[5] *See, e.g.*, Free Malaysia Today, *US Navy Officer Pleads Guilty to Bribery in Corruption Probe*, Apr. 16, 2015, http://www.freemalaysiatoday.com/category/world/2015/04/16/us-navy-officer-pleads-guilty-to-bribery-in-corruption-probe/; The Straits Times, *"Fat Leonard" Pleads Guilty in US Navy Bribery Case*, Jan. 17, 2015, http://www.straitstimes.com/the-big-story/asia-report/malaysia/story/fat-leonard-pleads-guilty-us-navy-bribery-case-20150117; The Sun Daily, *"Fat Leonard" Pleads Guilty in US Navy Bribery Scandal*, Jan. 16, 2015, http://www.thesundaily.my/news/1298464; Raf Sanchez, *Malaysian Businessman Bribed 'Dozens' of US Navy Officers with Prostitutes and Suckling Pigs*, The Telegraph, Jan. 16, 2015, http://www.telegraph.co.uk/news/worldnews/northamerica/usa/11351232/Malaysian-businessman-bribed-dozens-of-US-Navy-officers-with-prostitutes-and-suckling-pigs.html; The Star Online, *Fourth US Officer Charged Over "Fat Leonard" Bribery Scandal*, Apr. 18, 2014, http://www.thestar.com.my/News/Nation/2014/04/18/court-Fat-Leonard-US-navy-scandal/; Erik Slavin, *Yokosuka Sailor Charged in Navy Bribery Scandal*, Stripes Okinawa, Apr. 17, 2014, http://okinawa.stripes.com/news/yokosuka-sailor-charged-navy-bribery-scandal; Malay Mail Online, *Bribery Scandal: A US Naval Officer's Fall from Grace*, Nov. 28, 2013, http://www.themalaymailonline.com/world/article/bribery-scandal-a-us-naval-officers-fall-from-grace/; Jeanette Steele, *Who's Who in Navy Bribery Case*, U-T San Diego, Nov. 25, 2013, http://www.utsandiego.com/news/2013/nov/25/navy-bribery-investigation-glenn-defense-hp/.

9

of three young children, ages six, seven, and eight.  He also has two college-age sons, including one enrolled in college in Boston.  And Mr. Francis wants to be able to take care of his seventy-year-old mother and seventy-nine-year-old father as they age.  Mr. Francis understands that if he fled, he would be caught, returned to the United States, and face the real possibility of never seeing his family again.

Mr. Francis also has family ties to the United States.  His aunt (his mother's sister) lives in Baltimore, Maryland.  Mr. Francis's aunt is a United States citizen and works as a coordinator at a hospital in Baltimore.  Mr. Francis's godson is also a United States citizen who lives with his mother, Mr. Francis's aunt.  Mr. Francis is a part of their lives and has a strong relationship with them; indeed, Mr. Francis's aunt and godson *twice* flew across the country to support Mr. Francis during hearings in this case.  In addition, Mr. Francis's aunt has agreed to co-sign a substantial personal surety bond.  Mr. Francis's aunt is likewise willing and ready to pledge her house as security for a bond for Mr. Francis, if the Court deems it necessary.  Mr. Francis understands that if he fled, it would leave his aunt to face creditors—a situation that could be financially disastrous for her.  Furthermore, Mr. Francis has a son who has studied in the United States and plans to complete his degree in this country.  In sum, Mr. Francis has ties to this country and his flight would jeopardize the finances and futures of those he would leave behind.  Thus, Mr. Francis's family ties weigh heavily in favor of release.

(d)     Mr. Francis's past conduct favors release

Mr. Francis's past conduct weighs in favor of release.  He has no prior history relating to drug or alcohol abuse.  Mr. Francis has no scorable criminal history for Sentencing Guideline purposes.  His only criminal history consists of a nearly thirty-year old weapons possession charge in Malaysia when Mr. Francis was approximately twenty-one years old.  Consistent with his conduct in this case, he faced those charges and did not flee from them.  He will continue to do the same here.

Mr. Francis has never failed to attend a court proceeding.  He has demonstrated

10

**MEMORANDUM OF POINTS AND AUTHORITIES**                3:13-cr-03782-JLS

that he will answer for his actions; he came to San Diego to meet with Navy officials despite his knowledge that he was or had been under investigation by law enforcement agents here.  This visit ultimately led to Mr. Francis's arrest and incarceration in connection with the present case.  *See United States v. Sanchez*, 2011 WL 744666, at *2 (C.D. Cal. Feb. 23, 2011) (holding that a defendant with ties and the ability to relocate to Mexico was not a flight risk for purposes of pretrial detention under section 3142 where the defendant was "aware of the threat of prosecution" yet never fled).

Additionally, Mr. Francis has been charitable throughout his life.  A small sampling of these charitable works is attached as Exhibit 1.  Further, for more than twenty-five years, Mr. Francis, through his company, provided stellar services to the United States Navy.  Under his watch, the safety and security of sailors and ships were never compromised.

Accordingly, Mr. Francis's past conduct weighs in favor of release.

(e)    Mr. Francis's ties to the United States favor his release

As previously noted, Mr. Francis has strong familial ties to the United States, weighing in favor of his release.  *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (holding, under section 3142(g), that "community" "embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties," and explaining that "[w]hen assessing an alien defendant's ties to the United States, factors to be considered include . . . whether defendant has any relatives who are United States residents or citizens").

Moreover, Mr. Francis's Malaysian citizenship cannot be the deciding factor as to whether Mr. Francis should be released.  Indeed, the Ninth Circuit has made clear that alienage cannot be used to short-cut the release analysis such that *any* non-United States citizen is necessarily a flight risk.  *See, e.g.*, *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (explaining under an analysis of section 3142(g)'s factors that alienage alone "does not point conclusively to a determination" that an individual poses a flight risk).  And in practice, courts have released defendants who are foreign nationals

11

**MEMORANDUM OF POINTS AND AUTHORITIES**              3:13-cr-03782-JLS

or have foreign ties.  *See, e.g.*, *United States v. Cohen*, No. 3:10-cr-00547-CRB, Dkt. No. 196 (N.D. Cal. 2012) (releasing defendant, an Israeli passport holder, pending trial, and imposing a private security guard, home detention, and a $10 million bond, among other measures); *United States v. Bennett*, No. 1:05-cr-01192-NRB-1, Dkt. Unnumbered 10/12/2005 and 2/15/2008 Entries, No. 159 (S.D.N.Y. 2008) (non-U.S. citizen defendant pleaded guilty to multi-million dollar fraud scheme, granted bail pending sentencing with house arrest and electronic monitoring); *United States v. Karni*, 298 F. Supp. 2d 129, 133 (D.D.C. 2004) (concluding, despite being accused of acquiring products capable of triggering nuclear weapons and exporting them to Pakistan, that an Israeli national living in South Africa with "no ties to the United States or to the Washington, D.C. area" would be released prior to trial upon imposition of certain release conditions, including waiver of rights against extradition); *United States v. Awadallah*, 173 F. Supp. 2d 186, 192 (S.D.N.Y. 2001) (concluding that sufficient release conditions were available to ensure appearance at trial, despite the defendant's flight risk due to "significant ties to Jordan"); *United States v. Khashoggi*, 717 F. Supp. 1048, 1048, 1051-2 (S.D.N.Y. 1989) (ordering the pretrial release of an "enormously wealthy and well-known Saudi Arabian businessman," arrested abroad, where financial and diplomatic guarantees were provided).  Thus, Mr. Francis's ties to Malaysia are not reason to deny him release.

In sum, especially in light of the change in circumstances, Mr. Francis's history and characteristics weigh in favor of pre-sentence release under conditions fashioned by the Court.

### iii.  Danger To The Community - (18 U.S.C. § 3142(g)(4))

The government agrees that Mr. Francis is not a danger to the community.  *See, e.g.*, Dkt. No. 62-1 at 12 ("The United States has not moved to detain Defendant as a danger to the community.").  As a result, this factor weighs heavily in favor of release.

### iv.  The Weight Of The Evidence - (18 U.S.C. § 3142(g)(2))

The weight of the evidence is the least important factor to consider.  *See, e.g.*,

**MEMORANDUM OF POINTS AND AUTHORITIES**                    3:13-cr-03782-JLS

*United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Here, Mr. Francis has accepted responsibility for his actions by entering into a plea agreement. The effect of that development is to make it even more implausible that Mr. Francis might attempt to flee. If he were to do so, he would be caught within minutes. Once caught, his guilt on these crimes is already established, he would lose all benefits of his plea agreement, and guilt on the new crimes (including but not limited to contempt of court) essentially would be established.

As a result, in light of his acceptance of responsibility, Mr. Francis has every incentive to continue to adhere to the terms of his plea agreement and future orders of the court. *See generally United States v. Dreier*, No. 1:09-cr-00085-JSR-1, Dkt. Nos. 22, 64, 68, 76 (S.D.N.Y. 2009) (defendant convicted of multi-hundred million dollar international fraud, released after guilty plea on $10 million bond, home detention with guards, no computer access, surrender of travel documents, and strict reporting requirements and electronic monitoring); *United States v. Bennett*, No. 1:05-cr-01192-NRB-1, Dkt. Unnumbered 2/15/2008 Entry, No. 159 (S.D.N.Y. 2008) (non-U.S. citizen defendant pleaded guilty to multi-million dollar fraud scheme, granted bail pending sentencing with house arrest and electronic monitoring); *United States v. Kumar*, 1:04-cr-00846-ILG, Dkt. Nos. 213, 216, 223 (E.D.N.Y. 2006) (after guilty plea to billion-dollar fraud, defendant released pending sentencing and even permitted to make international trip).

Accordingly, there is clear and convincing evidence that Mr. Francis is not a risk of flight. Nonetheless, to further demonstrate his commitment to attend all future court appearances as required, Mr. Francis is willing to be subjected to, and to pay for, conditions imposed by this Court that go far beyond reasonably assuring his appearance as ordered by the Court.

**B.     Mr. Francis Will Agree to Extraordinary Conditions That Will Further Assure His Appearance at Sentencing and Other Proceedings - (18 U.S.C. § 3142(c))**

A combination of release conditions exist that would far more than reasonably

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

assure that Mr. Francis will appear at sentencing and all other court dates.  *See* U.S.C. § 3143(a)(1).  These security conditions, coupled with the factors described above, make overwhelmingly plain that Mr. Francis is not likely to flee.  Although these conditions are unnecessary, Mr. Francis is prepared to abide by any or all of them should the Court so order.

In addition to any other conditions the Court may impose, these conditions would include the following:

(1)   <u>A corporate surety bond</u>

Mr. Francis agrees to provide the Court with a bail bond executed by an approved solvent corporate surety in the amount of $1,000,000 that covers all conditions of release.  Mr. Francis will arrange for a bail bond with a reputable bond company with significant experience tracking individuals internationally.  Mr. Francis thus understands that even if he were to flee, he would have not only the United States and foreign governments tracking him, but also a financially motivated professional bond company paying bounty hunters to find him.

(2)   <u>A personal appearance bond</u>

Mr. Francis also will sign a personal appearance bond in the amount of $100,000 to be cosigned by his aunt.  Mr. Francis would not leave his mother's sister and his godson to face creditors.[6]  This moral suasion weighs significantly in Mr. Francis's favor.  *See generally United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) (explaining that the moral suasion of suretors weighs on a determination of release under a section 3142 analysis).

(3)   <u>Restricted to an upper floor residence</u>

Mr. Francis will live on an upper level floor of a rented apartment or condominium approved by Pretrial Services.  If the government remains concerned

---

[6] As noted above, Mr. Francis's aunt is also willing to pledge her home as security for a bond if the Court deems it necessary.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**            3:13-cr-03782-JLS

about the proximity of Mexico and the coast, there are many locations still within the Southern District of California that are located farther north and farther inland than the city of San Diego.

### (4)   Home confinement and GPS

Mr. Francis will participate in home confinement with GPS monitoring (including an ankle transmitter) supervised by Pretrial Services, and Mr. Francis will pay for the cost of this program.  Mr. Francis will be confined to his residence except for visits to his attorneys' offices, court hearings, religious services, medical and dental appointments, and as otherwise authorized by the Court.

### (5)   Electronic monitoring of residence

Mr. Francis will pay for his residence to be monitored by an independent security company that will install surveillance cameras on the external doors and alarms on all windows and external doors.  This company will be ordered to alert the U.S. Marshal's Office, the U.S. Attorney's Office, and Pretrial Services in the event of any unauthorized attempt to leave the residence.

### (6)   Private security measures, including guard service

Mr. Francis will subject himself to a 24-hour guard service[7] that will be present at his residence at all times, and that will immediately alert any requested authorities if Mr. Francis attempts to leave his residence without permission.  Highly trained, off-duty and/or retired law enforcement officers will monitor Mr. Francis.  Specifically, the guard service will monitor all of Mr. Francis's activity; communicate with the appropriate authorities for purposes of verification of Mr. Francis's schedule; limit and control access to areas that could create a flight risk; as mandated by the court, monitor GPS tracking devices; escort Mr. Francis whenever he leaves his residence; provide

---

[7] Mr. Francis, through representatives, has already contacted multiple security firms and received several security proposals.  Mr. Francis stands ready to provide a proposal to the Court to cover the security measures the Court deems necessary.

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

management oversight and response to any critical issues 24 hours a day; deploy assets for rapid interdiction of threat and or medical emergencies; and provide the government with a list of names of employees (with dates of birth and social security numbers) who will be responsible for guarding Mr. Francis, along with the schedule for when specific employees will be assigned to guard Mr. Francis.  Additionally, Mr. Francis will give his express consent in writing to "temporary preventative detention and the use of reasonable force" by the guards, armed if necessary, to thwart any attempt to flee.

(7)   <u>Limited visitors; visitors subject to search</u>

Any visitors to Mr. Francis's residence, with the exception of specified counsel of record, will be screened, searched, and logged, and must be pre-approved, expressly and in writing, by Pretrial Services.  The guard service will monitor and record all incoming and outgoing deliveries.

(8)   <u>Monitored communications</u>

Mr. Francis agrees that his non-attorney phone calls will be subject to monitoring. Mr. Francis's apartment will be equipped only with a land-line.  Mr. Francis will not have a cell phone and will not be allowed to use one at any time.  Mr. Francis's residence will be equipped with one computer with a single Internet connection.

(9)   <u>Frequent communication and random checks</u>

Mr. Francis will telephone a Pretrial Services officer every day at a specified time or times as directed.  He will be subject to random visits by a Pretrial Services officer.

(10)   <u>Surrender of travel documents</u>

Mr. Francis will surrender any travel document, including his valid Malaysian passport.  Mr. Francis will not apply for a new passport during the pendency of his case.

(11)   <u>Waiver of extradition</u>

Mr. Francis will sign a document waiving any and all rights against extradition. The United States already has an extradition treaty with Malaysia.  *See* Treaty on Extradition, U.S.-Malaysia, TIAS 97-602.

(12)   <u>No possession of narcotics or controlled substances</u>

16

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Francis will not possess or use any narcotic drug or controlled substance without a lawful medical prescription.

(13)   No possession of firearm, dangerous weapon, or destructive device

Mr. Francis will not possess any firearm, dangerous weapon, or destructive device during the pendency of the case.

Mr. Francis is also amenable to additional reasonable security measures that the government or the Court might wish to impose to supplement this list.  Mr. Francis simply is not going anywhere, and these measures go above and beyond "reasonably assuring" his continued appearances in these proceedings.

 Especially in light of the materially changed circumstances in the 18 months since the Court last considered this issue, Mr. Francis can be trusted to make all required court appearances.  Further, as demonstrated by the cases cited herein in which courts have released defendants posing a substantial risk of flight (and released them under similar or lesser conditions), imposing some or all of the extraordinary conditions listed above will far more than "reasonably assure" his future appearance.  Indeed, they make it all but certain, as it would take unprecedented action movie stunts to find a way through them.

**C.  The Security Measures Proposed Are Similar to What Other Courts Have Ordered in Cases Where the Defendants Faced Significantly More Jail Time Than Mr. Francis**

Although these measures are not necessary in this case, security measures such as these are similar to those that have been implemented in cases in which heightened security measures were deemed necessary—including where the defendant faced significantly more jail time than Mr. Francis.  *See, e.g.*, Ex. 2 at ¶¶ 9-11 (*United States v. Francis*, Nos. 13-50589, 13-50591 (9th Cir.), Declaration of Adam Torres, Dkt. No. 10-2 (citing examples); *United States v. Simels*, No. 1:08-cr-00640-DLI, Dkt. Nos. 8, 176, 177, 203 (E.D.N.Y. 2009) (defendant convicted at trial of conspiracy to obstruct justice via witness tampering and other crimes, facing maximum sentence of life in prison,

17

released post-verdict on $3.5 million bond, three co-signors, home detention with electronic monitoring); *United States v. Dreier*, No. 1:09-cr-00085-JSR-1, Dkt. Nos. 22, 64, 68, 76 (S.D.N.Y. 2009) (defendant convicted of multi-hundred million dollar international fraud, released after guilty plea on $10 million bond, home detention with guards, no computer access, surrender of travel documents, and strict reporting requirements and electronic monitoring); *United States v. Madoff*, 1:08-mj-02735, Dkt. No. 15, 22 (S.D.N.Y. 2008)  (facing massive fraud charges, defendant released pretrial on $10 million bond, surrender of travel documents, home detention and electronic monitoring, 24-hour guard service, surveillance, among other measures); *see also New York v. Strauss-Kahn*, No. 0256/2011 (facing sexual assault charges, released on $6-million bail package, electronic monitoring and guard service, *see* Geraldine Baum, *Former IMF Chief Is Released From Jail*, L.A. Times, May 21, 2011, http://articles.latimes.com/2011/may/21/nation/la-na-imf-sexual-assault-20110521).

Notably, security measures similar to these persuaded Judge Breyer in the Northern District to release a foreign national defendant facing a much more significant sentence than Mr. Francis.  In *United States v. Cohen*, No. 3:10-cr-00547-CRB (N.D. Cal. 2012), the court released the defendant, an Israeli citizen with foreign ties, pending trial, while imposing security measures, including electronic monitoring, home detention, supervision by armed-guards (paid for by the defendant's friends or relatives), consent to preventative detention and the use of reasonable force, restriction on and monitoring of defendant's means of communication, limitations on visitors, surrender of travel documents, and waiver of extradition rights, among other measures.  *Id.* at Dkt. No. 196.  Due to the defendant's foreign ties and the amount of money involved, the government argued against release.  Nonetheless, Judge Breyer found conditions that could—and did—reasonably assure the appearance of the defendant at trial.[8]  *See id.* at

---

[8] One of the security proposals we have received is from the company Judge Breyer relied on in the *Cohen* case.

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

Dkt. Nos. 196, 294.

### D. Releasing Mr. Francis Would Be Consistent With the Treatment of Other Defendants in this Case

Finally, it is worth noting that Mr. Francis should not be treated worse, or even differently, than the other persons who possess similar characteristics and have been charged with the same offenses in related cases and granted bail, even post-conviction. Almost every other defendant has been released, including:

- Defendants facing long custodial sentences (John Bertrand Beliveau II's maximum possible custodial sentence is twenty years, *see* 3:13-cr-03781-JLS; Jose Luis Sanchez's maximum possible custodial sentence is twenty years, *see* 3:13-cr-04287-JLS);

- Defendants who were not arrested in California (John Bertrand Beliveau II was arrested in Virginia, *see* 3:13-cr-03781-JLS, Dkt. Unnumbered Entry 9/16/2013; Jose Luis Sanchez was arrested in Florida, *see* 3:13-cr-4287-JLS, Dkt. Unnumbered Entry 11/06/2013, Dkt. No. 7; Michael Misiewicz was arrested in Colorado, *see* 13-cr-03782-JLS, Unnumbered Dkt. Entry 9/17/2013);

- Defendants who have not pleaded guilty (Michael Misiewicz, arrested in 2013; *see* 3:13-cr-03782-JLS, Dkt.); and

- Defendants who did not plead guilty on dates that preceded the issuance of their orders of release (Dan Layug, *see* 3:14-cr-01354-JLS, Dkt. No. 6; Edmond Aruffo, *see* 3:14-cr-01924-JLS, Dkt. No. 3; Daniel Dusek, *see* 3:15-cr-00131-JLS, Dkt. Unnumbered Entry 1/15/15, No. 4; and Todd Dale Malaki, *see* 3:15-cr-00967-JLS, Dkt. Nos. 1, 3 and 8).

Moreover, just about every defendant who has been released has also been permitted to travel.  Consider:

- Beliveau's permission to travel to Maryland, Virginia, Washington D.C. and Pennsylvania (3:13-cr-03781-JLS, Dkt. Nos. 66, 69 and 81);

19

**MEMORANDUM OF POINTS AND AUTHORITIES**          3:13-cr-03782-JLS

- Dan Layug's permission to travel to Las Vegas, Nevada (3:14-cr-01354-JLS, Dkt. No. 53);

- Edmond Aruffo's permission to travel to Las Vegas, Nevada (3:14-cr-01924-JLS, Dkt. No. 6);

- Jose Luis Sanchez's permission to travel to Florida and New Mexico (3:13-cr-04287-JLS, Dkt. Nos. 15, 71, and 72); and

- Michael Misiewicz's permission to travel to Illinois, Texas, and Florida, and Mexico for the holidays (3:13-cr-03782-JLS, Dkt. Nos. 75, 110, 144, 184).

Even persons who pleaded guilty to using their positions in the U.S. Navy to provide classified ship schedule information in return for prostitutes, luxury hotels, cash and other items have been granted release conditions that allow them to travel for the Navy. *See* 3:15-cr-00967-JLS, Dkt. No. 11 (Order of Release re Todd Dale Malaki) (permitting defendant to retain his passport if the U.S. Navy required him to do so for his position and to retain a firearm if required by his employment); *see also* 3:15-cr-00131-JLS, Dkt. No. 7 (Order of Release re Daniel Dusek) (permitting "travel on orders and for personal reasons with permission of PTS"). These defendants were granted both release and rights to travel despite the fact that they share many of the same characteristics of Mr. Francis. Mr. Francis should not be treated differently.

## IV.    CONCLUSION

For the reasons stated above and in the Sealed Addendum, the evidence is clear and convincing that Mr. Francis is not likely to flee. The Court can fashion conditions that not only reasonably assure Mr. Francis's continued appearance, but that effectively guarantee it. Mr. Francis has thus carried his burden under 18 U.S.C. § 3143(a)(1), and the Court should release Mr. Francis pending sentencing.

Dated:  May 15, 2015

*/s/ Sara J. O'Connell*
Sara J. O'Connell
COVINGTON & BURLING LLP
Attorneys for Defendant
LEONARD GLENN FRANCIS

**MEMORANDUM OF POINTS AND AUTHORITIES**                3:13-cr-03782-JLS