# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 13-CR-3781-JLS |
| PLAINTIFF, | ) | 13-CR-3782-JLS |
| | ) | 13-CR-4287-JLS |
| VS. | ) | |
| | ) | SAN DIEGO, CA |
| LEONARD GLENN FRANCIS, *ET AL.*, | ) | FEBRUARY 26, 2018 |
| DEFENDANTS. | ) | 11:00 A.M. |

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:    WARREN & BURSTEIN
                      BY:  DEVIN J. BURSTEIN, ESQ.
                           JEREMY D. WARREN, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA  92101

PRETRIAL SERVICES:    KIM HAZARD

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA  92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                    PAGE

NEXT HEARING DATE               19

1    THE DEPUTY CLERK:  NUMBER ONE ON CALENDAR,

2    13-CR-3781, 13-CR-3782, AND 13-CR-4287, UNITED STATES VS.

3    LEONARD GLENN FRANCIS, FOR STATUS.

4         THE COURT:  OKAY.  APPEARANCES, PLEASE.

5         MR. PLETCHER:  GOOD MORNING, YOUR HONOR.  MARK

6    PLETCHER FOR THE UNITED STATES.

7         THE COURT:  THANK YOU.

8         MR. BURSTEIN:  AND GOOD MORNING, YOUR HONOR.  DEVIN

9    BURSTEIN AND JEREMY WARREN FOR MR. FRANCIS.

10        THE COURT:  OKAY.  THANK YOU.

11        I WANTED SOME FURTHER INFORMATION AS TO WHAT THE

12   SITUATION WAS, COUNSEL, SO PLEASE GO AHEAD.

13        MR. BURSTEIN:  YES, YOUR HONOR.  SO WE HAVE BEEN IN

14   CONTACT WITH THE DOCTORS AT THE HOSPITAL.  I SAW MR. FRANCIS

15   YESTERDAY.  THEY'RE UPPING HIS            .  BASICALLY, WE

16   THANK YOU FOR BRINGING US IN, BECAUSE WHAT WE'RE GOING TO

17   JOINTLY SUGGEST IS, THE FURLOUGH DATE WOULD RUN OUT IN TWO

18   DAYS.

19        THE COURT:  RIGHT.  I'VE GOT JUDGE ADLER'S ORDER, AND

20   IT'S MARCH 1ST, WHICH SHOULD BE THURSDAY.  THURSDAY.

21        MR. BURSTEIN:  SO WE'RE GOING TO JOINTLY REQUEST OR

22   NOT OPPOSE KICKING THAT OUT 90 DAYS AT THIS POINT.

23        THE COURT:  OKAY.

24        MR. BURSTEIN:  AND WHAT THE DOCTORS ARE GOING TO DO,

25   IF IT'S OKAY WITH THE COURT -- IT IS OKAY WITH THE

1     GOVERNMENT -- IS, THEY'RE GOING TO SET UP -- HIS DOCTOR IS

2     ESSENTIALLY WILLING TO TAKE -- HE'S GOING TO GET OUT OF THE

3     HOSPITAL AT SOME POINT, SO THEY'RE ESSENTIALLY WILLING TO TAKE

4     CUSTODY OF HIM AND SET UP A SATELLITE CLINIC. BASICALLY,

5     THEY'LL ████████████████████████████████████████████

6     ████████████████████████████████████████████████████████

7     ████████████████████████████████████████████████

8     ████████████████████████. SO WHAT WE --

9           THE COURT: SO HE'S NOT ABLE TO GO INTO A REHAB

10    FACILITY WHERE CARE COULD BE PROVIDED; IT NEEDS TO BE

11    SOMETHING OTHER THAN THAT?

12          MR. BURSTEIN: WE BOTH, MR. PLETCHER AND MYSELF,

13    SPOKE WITH HIS DOCTOR, ████████████, WHO'S THE ████████████

14    ████████████, AS WELL AS WE'VE BEEN IN CONTACT WITH THE

15    ████████, AND BASICALLY ████████ WANTED TO DO IT THIS WAY

16    BECAUSE IT TAKES A LEVEL -- HE'S NOT WORKING WITH ANY OF THE

17    FACILITIES, THE OTHER FACILITIES, DIRECTLY. HE SAYS IT ADDS A

18    LAYER OF BUREAUCRACY AND RED TAPE. SO HE WOULD HAVE TO THEN

19    CONTRACT OUT TO SOMEBODY, AND HE HAD SOME CONCERNS ABOUT THE

20    CLEANLINESS GIVEN SOME OF THE FACILITIES IN THE AREA. SO, YOU

21    KNOW, IT'S BEYOND ME, BUT THAT'S WHAT THEY SUGGESTED. THEY'RE

22    ABSOLUTELY WILLING TO DO IT. MR. FRANCIS IS HAPPY TO DO THAT.

23    IT SEEMS THE PROPER COURSE. THE GOVERNMENT HAS NO OPPOSITION

24    TO IT.

25          SO WHAT WE WOULD ASK IS, I CAN EITHER SUBMIT A NEW

1  ORDER JUST TO MODIFY THE CONDITIONS OF HIS FURLOUGH, BUT

2  BASICALLY HE WOULD THEN GO -- HE WOULD BE, ESSENTIALLY, ON

3  HOME DETENTION AT THIS SATELLITE CLINIC WITH, YOU KNOW, THE

4  VISITATION LIMITED KIND OF AS IT IS NOW, AND I CAN SUBMIT A

5  REVISED ORDER TO THE COURT AFTER CLEARING IT WITH MR.

6  PLETCHER.

7          THE COURT:  OKAY.  I GUESS WHAT I'M HAVING A HARD

8  TIME UNDERSTANDING AT THIS POINT IS HIS ACTUAL MEDICAL

9  CONDITION.  I MEAN, A LOT OF PEOPLE MONITOR AND THEY MAINTAIN

10         TREATMENT FOR YEARS --

11         MR. BURSTEIN:  RIGHT.

12         THE COURT:  -- AND I'M NOT CLEAR WHAT WE'RE DEALING

13  WITH HERE.  I UNDERSTAND HIS DESIRE TO DO THIS, AND I

14  UNDERSTAND THAT THERE'S NO OPPOSITION, BUT I'M JUST TRYING TO

15  GET A BETTER UNDERSTANDING.

16         MR. BURSTEIN:  OKAY.  SO, AT THIS POINT, HE'S STILL

17  IN THE KIND OF, MAYBE I WOULD SAY COLLOQUIALLY, THE DANGER

18  ZONE.  SO HE HAD

19

20

21         BUT LIKE YOUR HONOR SAID --

22         THE COURT:  WELL,          , BUT THAT MEANS YOU COULD

23

24         MR. BURSTEIN:  CORRECT.  AND WHAT          IS

25  ESSENTIALLY SAYING IS THAT AT THIS POINT, GIVEN HIS, THE

1  SEVERITY OF HIS SITUATION AT THIS POINT AND █████████

2  ███████████████████████████████████████████

3  ███████████████████████████████████████████

4  ███████████████████████████████████████████████

5  ███████████████████████████████████████████

6  ██████████████████         (PAUSE) --

7           THE COURT:  A MEDICAL (PAUSE) --

8           MR. BURSTEIN:  DO YOU REMEMBER WHAT IT'S CALLED?

9           SOME KIND OF THING THAT ALLOWS HIM TO PUT A ██████

10  ██████████████████████████████

11          THE COURT:  THEY'RE GOING TO PUT IN ██████.

12          MR. BURSTEIN:  THEY'RE GOING TO PUT ██████ IN THAT

13  ALLOWS THEM TO, AND SO THAT'S ALL GOING TO BE HAPPENING IN THE

14  NEXT FEW MONTHS.  AND SO WHILE THAT'S ALL HAPPENING, THE

15  DOCTORS FEEL THAT HE NEEDS TO BE MONITORED.

16          THE COURT:  OKAY.

17          MR. BURSTEIN:  I MEAN, WHAT ██████████ SAID TO ME,

18  AND I THINK TO MR. PLETCHER AS WELL, IS, ████████████

19  ████████████████

20          THE COURT:  OKAY.  I'M NOT DOUBTING THAT.  I'M JUST

21  TRYING TO UNDERSTAND --

22          MR. BURSTEIN:  I UNDERSTAND, YEAH.

23          THE COURT:  -- THE SITUATION WITHOUT ASKING YOU TO

24  DISCLOSE MORE THAN YOU WANT TO HERE.

25          OKAY.  SO, WHAT ELSE?  ANYTHING ELSE YOU WANT TO TELL

1    ME?

2            MR. BURSTEIN:  NO, YOUR HONOR.  I JUST DIDN'T KNOW IF

3    THE COURT WANTED ME TO SUBMIT A REVISED ORDER.  I CAN DO THAT

4    UNDER SEAL.  I CAN (PAUSE) --

5            THE COURT:  WELL, THERE'S A COUPLE OF THINGS BEFORE

6    US TODAY.  ONE THING IS TO EXTEND THE MEDICAL FURLOUGH --

7            MR. BURSTEIN:  RIGHT.

8            THE COURT:  -- AND THE OTHER THING IS TO MODIFY A

9    CONDITION SO THAT THERE WOULDN'T BE ANY SECURITY THERE.

10           MR. BURSTEIN:  RIGHT.  THOSE TWO THINGS.

11           THE COURT:  AND I HAVE TO TELL YOU FROM THE GET-GO

12   I'M INCLINED TO EXTEND THE MEDICAL FURLOUGH.  I THINK THAT'S

13   ABSOLUTELY APPROPRIATE.  I'M NOT INCLINED TO REMOVE SOMEBODY

14   OVERSEEING THIS.  I UNDERSTAND THE GOVERNMENT IS WILLING TO GO

15   ALONG WITH IT, BUT GIVEN THE TOTALITY OF WHAT'S BEING DONE

16   HERE, I THINK THE COST OF SECURITY IS THE LEAST OF THE

17   EXPENSES AND IS APPROPRIATELY COVERED.  AND I UNDERSTAND IT'S

18   PRIVATE SECURITY, WHICH PROBABLY WOULDN'T HAVE BEEN THE

19   COURT'S PREFERENCE, BUT I DON'T THINK THE U. S. MARSHALS ARE

20   GOING TO PUT SOMEBODY OUT THERE 24/7.

21           MR. BURSTEIN:  RIGHT.

22           THE COURT:  SO I'VE GOT GPS, I'VE GOT THE OTHERS, AND

23   I HAVE THE SECURITY PERSON.  SO THAT'S WHY I WANTED TO SEE

24   EVERYBODY, BECAUSE I WANTED A BETTER UNDERSTANDING OF HIS

25   CONDITION AND WHERE WE'RE GOING WITH THIS.

1   MR. PLETCHER: YOUR HONOR, IF I CAN INTERJECT.

2   THE COURT: CERTAINLY.

3   MR. PLETCHER: FROM THE GOVERNMENT'S PERSPECTIVE, IT

4   FEELS, AFTER TALKING WITH THE DOCTORS, THAT THERE'S MEDICAL

5   UNCERTAINTY RIGHT NOW. WHAT WE DO KNOW IS, HE'S IMMEDIATELY

6   RIGHT? HE'S FOUR WEEKS OUT FROM

7

8   NOW THERE'S UNCERTAINTY, BASED ON

9

10  . IF IT DIDN'T -- YOU KNOW, AND WHAT THOSE THINGS

11  MEAN. SO I THINK THAT THE 90 DAYS EXTENDING THE FURLOUGH IS

12  MEANT TO GIVE US, AND ALSO THE COURT, THE ABILITY TO GET

13  BETTER INFORMATION TO MAKE BETTER DECISIONS. THAT'S KIND OF

14  WHERE I SEE IT.

15  THE COURT: LET ME ASK YOU THIS, THOUGH.

16  MR. PLETCHER: AND I DEFER TO THE COURT ON THE

17  SECURITY ISSUE. IT'S SOMETHING WE GRAPPLED WITH THROUGHOUT,

18  AND, FRANKLY, I THINK I AGREE WITH THE COURT'S ASSESSMENT THAT

19  IT SEEMS LIKE THE LEAST OF OUR CONCERNS.

20  THE COURT: WELL, THIS IS THE COURT'S CONCERN. HOW

21  OFTEN SHOULD WE BE TOUCHING BASES?

22  AND I SHOULD HAVE INDICATED AT THE GET-GO THAT THE

23  TRANSCRIPT ON THIS PROCEEDING IS UNDER SEAL UNTIL FURTHER

24  ORDER OF THE COURT. I DID NOT SEE A CALENDAR, BUT IF THERE'S

25  A CALENDAR, IT WILL BE UNDER SEAL ALSO.

1    SO I GUESS WHAT I'M WONDERING, HOW LONG WOULD IT

2    TAKE? IF I WERE A PATIENT, OR YOU WERE A FAMILY MEMBER OF A

3    PATIENT, AND YOU PROBABLY FEEL LIKE A FAMILY MEMBER OF THE

4    PATIENT TAKING CARE OF YOUR CLIENT AS YOU ARE, WOULD IT BE

5    SOMETHING WITH JUST A MONITOR, TOUCH BASE EVERY 30 DAYS? I'LL

6    EXTEND IT, BUT I THINK WE SHOULD HAVE SOME INTERMEDIATE

7    STATUSES, IF YOU WILL, TO KNOW EXACTLY HOW THINGS ARE GOING.

8    AND I GUESS I ALSO QUESTION, LAST TIME, YOU TOLD ME

9    THAT BECAUSE OF MR. LEONARD'S, OR MR. FRANCIS' SIZE, AND I

10   HAVEN'T SEEN HIM IN A VERY, VERY LONG TIME -- I UNDERSTAND

11   THAT --

12   AND I'VE NEVER HEARD THAT BEFORE. SO I

13   DON'T KNOW HOW YOU DIAGNOSE SOMEBODY WITH THESE KINDS OF

14   ISSUES.

15   MR. BURSTEIN: SO, RIGHT, WE WERE BOTH TOLD THAT BY

16   THE DOCTORS, AND WHAT THEY'RE GOING TO DO IS (PAUSE) --

17

18   --

19   THE COURT: OKAY.

20   MR. BURSTEIN: -- , AND

21   THAT WILL CONFIRM, LIKELY CONFIRM FOR THEM.

22   THE COURT: WHETHER IT'S

23

24   MR. BURSTEIN: EXACTLY, YOUR HONOR.

25   THE COURT: OKAY.

1    MR. BURSTEIN: AND THAT'S THEIR WORK-AROUND FOR THE

2

3                                                   .

4    THIS IS, AGAIN, GETTING OUTSIDE OF MY --

5            THE COURT: NO; UNDERSTOOD.

6            MR. BURSTEIN: -- BAILIWICK, BUT THAT'S WHAT'S WE'VE

7    BEEN TOLD.

8            THE COURT: OKAY.

9            MR. BURSTEIN: SO, REALLY, I THINK THE MOST PRESSING

10   THINGS ARE, YES, I AGREE WITH THE COURT COMING IN EVERY 30

11   DAYS MAKES SENSE.

12           THE COURT: I'LL EXTEND IT 90 DAYS. I DON'T WANT TO

13   PUT ANY PRESSURE ON ANYBODY. I KNOW THESE AREN'T FAST THINGS.

14   I'LL EXTEND IT 90 DAYS, BUT I WOULD WANT TO DO WHAT WE'RE

15   DOING TODAY MAYBE EVERY 30 DAYS. IF HE'S HAVING DAILY -- THE

16   WAY THIS IS BEING SET UP, HE'S GOING TO HAVE, PROBABLY, THE

17   BEST MEDICAL CARE ANYBODY COULD EVER HAVE.

18           MR. BURSTEIN: HOPEFULLY.

19           THE COURT: SO, WITH THAT, I THINK THERE'S GOING TO

20   BE INFORMATION AVAILABLE MORE FREQUENTLY THAN EVERY 90 DAYS.

21   SO I'D LIKE TO DO THAT, AND I DO THINK SECURITY CONTINUES TO

22   BE IMPORTANT. I UNDERSTAND THE LIKELIHOOD OF HIM WALKING AWAY

23   FROM THIS IS NOT GREAT, BUT I THINK IT'S IMPORTANT, COUNSEL.

24   I'M NOT INCLINED TO REMOVE THAT CONDITION.

25           MR. BURSTEIN: I UNDERSTAND, YOUR HONOR, AND I'M JUST

1  TRYING -- I'M THINKING, HE NEEDS ███████████████,

2  HE NEEDS TO GET TO THIS --

3          THE COURT: RIGHT.

4          MR. BURSTEIN: -- BUT I DON'T THINK IT'S GOING TO

5  BE -- I'M NOT SURE IT'S GOING TO BE DOABLE TO PUT A SECURITY

6  GUARD. WHAT THEY WANT TO DO IS RENT A SPACE WITHIN ABOUT

7  ONE-AND-A-HALF MILES OF THE HOSPITAL, AND ████████████

8  ████████████████████████████████████████████████████

9  ███████ --

10         THE COURT: OKAY.

11         MR. BURSTEIN: -- AND THE PROBLEM IS HAVING SECURITY.

12  I'M NOT SURE THAT THE RENTAL AGENCY -- I MEAN --

13         THE COURT: YOU KNOW, COUNSEL, ANYTHING IS DOABLE.

14  ANYTHING IS DOABLE, AND I THINK IT IS SOMETHING THAT CAN BE

15  ACCOMPLISHED. I MEAN, EXTRAORDINARY EFFORTS HAVE BEEN GONE

16  THROUGH TO MAKE SURE THAT YOUR CLIENT GETS THIS TREATMENT AND

17  CARE, AND I DON'T HAVE ANY QUESTION ABOUT THAT, BUT I ALSO

18  THINK THERE'S A COMPETING INTEREST, AND SO I THINK THERE'S A

19  WAY TO WORK THAT OUT, COUNSEL. YOU'RE GOING TO HAVE THREE

20  SHIFTS, AND IT IS WHAT IT IS, AND HE'S UP AT ██████████

21  ██████████       THERE ARE A LOT OF PLACES WITHIN A MILE OR SO OF

22  THAT RADIUS. I DON'T KNOW WHAT TO TELL YOU. I THINK IF HE

23  JUST NEEDS A PLACE TO CONVALESCE. IF HE NEEDS A LOT OF

24  MEDICAL EQUIPMENT HERE, THAT'S ANOTHER STORY. I DON'T KNOW.

25         MR. BURSTEIN: WELL, HOW WOULD THE COURT -- I MEAN,

1  SO, UNDER THE CURRENT ORDER, WE'RE IN THIS LITTLE BIT -- I

2  CAN'T TELL THE DOCTOR, I CAN'T TELL THE DOCTOR GO AHEAD AND

3  GET, YOU KNOW, GO RENT A SPACE AND PUT HIM, MOVE HIM OUT OF

4  THE HOSPITAL UNTIL, OBVIOUSLY, I HAVE APPROVAL FROM THE COURT.

5  SO I --

6          THE COURT:  WHATEVER SECURITY MEASURES YOU HAVE MADE

7  NOW, THEY'RE GOING TO STAY IN PLACE, AND HE'S GOING TO GO

8                          WHEREVER --

9          MR. BURSTEIN:  OKAY.

10         THE COURT:  -- AND SECURITY IS GOING TO GO WITH HIM.

11         MR. BURSTEIN:  ALL RIGHT, UNDERSTOOD.

12         THE COURT:  I MEAN, I DON'T WANT TO MAKE THIS MORE

13 COMPLICATED THAN IT IS, BUT IN THE EVENT THAT SOMETHING WERE

14 TO HAPPEN AND THE FACILITY WERE TO BE EMPTY ONE MORNING AND

15 HE'S NOT THERE AND HE'S BACK IN MALAYSIA FOR WHATEVER REASON.

16         MR. BURSTEIN:  UNDERSTOOD.

17         THE COURT:  MR. PLETCHER'S NAME ISN'T ON IT.  YOUR

18 NAME ISN'T ON IT.  MY NAME'S ON IT, WHO LET SOMEBODY DO THIS

19 WITHOUT ANY SECURITY.  I HOPE THAT'S NOT THE CASE.  I WOULD

20 FEEL BETTER HAVING A U. S. MARSHAL, BUT I DON'T THINK THEY'LL

21 DO IT.  I DON'T KNOW IF ANYBODY EVER CHECKED INTO THAT.

22 YOU'RE NOT TELLING ME HE CAN'T AFFORD THIS ANYMORE, BECAUSE

23 HE'S AFFORDING EVERYTHING ELSE, WHICH IS INFINITELY MORE

24 EXPENSIVE THAN THE SECURITY INDIVIDUAL.

25         BUT MAYBE MR. PLETCHER KNOWS IF THE U. S. MARSHAL

1  WASN'T WILLING TO DO THIS.

2        MR. BURSTEIN:  YEAH, WE TRIED.

3        MR. PLETCHER:  BECAUSE HE'S ON A MEDICAL FURLOUGH, AS

4  A TECHNICAL MATTER, THEY DON'T HAVE THAT RESPONSIBILITY.  SO,

5  YEAH, THEY WON'T.  IN A RESPONSE EARLIER ON, THEY ARE

6  UNWILLING OR UNABLE.

7        THE COURT:  SO THAT'S ALL WE CAN DO.

8        MR. BURSTEIN:  YEAH.  GOING BACK THROUGH THE HISTORY,

9  A LARGE PART OF THE REASON WHY HE'S ON MEDICAL FURLOUGH WAS SO

10  SO THAT THE MARSHALS DIDN'T HAVE TO DEAL WITH ANY OF THIS --

11        THE COURT:  OKAY.

12        MR. BURSTEIN:  -- SO.

13        THE COURT:  OKAY.  AND MR. PLETCHER IS NOT OBJECTING

14  ONE WAY OR THE OTHER TO WHAT THE COURT MIGHT ORDER TODAY.

15        MR. BURSTEIN:  RIGHT.

16        THE COURT:  AND YOU WOULD JUST LIKE TO MAKE IT A

17  LITTLE SIMPLER, MAYBE A LITTLE CHEAPER, ALTHOUGH (PAUSE).

18        MR. BURSTEIN:  LOOK, I UNDERSTAND THE COURT'S

19  POSITION, AND I'M SURE THIS -- YOU KNOW, IF -- WHAT WE'VE BEEN

20  DOING, YOU KNOW, TOGETHER ON THIS IS GOING ONE STEP AT A TIME,

21  AND SO MAYBE IN 30 DAYS, IF HE'S AT HIS NEW FACILITY AND

22  EVERYTHING IS FINE, MAYBE WE CAN READDRESS IT WITH THE COURT

23  THEN.

24        THE COURT:  I'M JUST MAKING THIS ORDER AS OF TODAY.

25  LET'S SEE WHERE WE ARE.  NOW, I'M WILLING TO EXTEND THE

1   FURLOUGH FOR 90 DAYS, BUT I DO WANT A STATUS IN 30 DAYS.  I

2   WANT SECURITY LEFT IN PLACE.  HE'LL CONTINUE ON GPS

3   MONITORING, AND HE WILL CONTINUE TO HAVE A PRIVATE SECURITY

4   GUARD 24/7.  I'M TRYING TO THINK IF THERE'S ANYTHING ELSE.

5           I WAS ALSO CURIOUS.  THIS CONTINUES TO BE UNDER SEAL

6   AND EXTREMELY CONFIDENTIAL, I TAKE IT?

7           MR. BURSTEIN:  YES, YOUR HONOR.

8           THE COURT:  OKAY.  IS THERE ANY MORE THOUGHT TO WHERE

9   WE'RE GOING DOWN THE ROAD WITH THIS?

10          GO AHEAD.

11          MR. BURSTEIN:  JUST BEFORE WE GET THERE AND JUST SO I

12  UNDERSTAND, AND IT IS OKAY, I CAN NOW TELL THE DOCTOR HE CAN

13  MOVE HIM OUT OF THE HOSPITAL AS LONG AS PRIVATE SECURITY

14  REMAINS?

15          THE COURT:  CORRECT.

16          MR. BURSTEIN:  OKAY.

17          THE COURT:  I MEAN (PAUSE) -- OKAY.

18          MR. PLETCHER:  ON YOUR HONOR'S NEXT QUESTION, I

19  THINK, YOU KNOW, AT OUR STATUS CONFERENCE IN 30 DAYS, WE'LL BE

20  IN A BETTER POSITION TO EXACTLY DESCRIBE WHAT WE SEE UPCOMING

21  WITH RESPECT TO THE DEPOSITION, A NOTICE OF THAT DEPOSITION,

22  HAVING ALL THE REST OF DEFENSE COUNSEL PARTICIPATE THEN IN

23  THAT CONVERSATION, AS WELL AS THE POSSIBILITY THAT MR. FRANCIS

24  IS SENTENCED IN THE INTERIM, WHICH IS SOMETHING WE BROUGHT UP

25  BEFORE.  BUT I THINK WE'RE STILL WORKING OUT ASPECTS OF THOSE

1    DETAILS, AND SO INSTEAD OF GETTING TOO FAR OUT IN FRONT OF

2    OURSELVES, YOU KNOW, WE ENVISION SOME COMBINATION OF THOSE

3    THINGS TO HAPPEN.  WE EXPECT THAT WE ARE ALL WORKING ON A MORE

4    EXPEDITIOUS TIMETABLE THAN PERHAPS WE THOUGHT WE ONCE WERE.

5              THE COURT:  WHEN YOU SAY A MORE EXPEDITIOUS (PAUSE).

6              MR. PLETCHER:  EXPEDITIOUS TIMETABLE THAN WE THOUGHT

7    WE ONCE WERE --

8              THE COURT:  OKAY.

9              MR. PLETCHER:  -- YOU KNOW, PARTICULARLY WITH RESPECT

10   TO MR. FRANCIS' TRIAL TESTIMONY.

11             THE COURT:  WHAT IS YOUR THOUGHT ON THAT?

12             MR. PLETCHER:  WELL, THE THOUGHT IS THAT WE WOULD

13   SCHEDULE AND NOTICE FOR HIS DEPOSITION UNDER RULE 15.  YOU

14   KNOW, TRIAL TESTIMONY, WE TALKED LAST TIME A LITTLE BIT ABOUT

15   PERHAPS YOUR HONOR PRESIDING OVER THAT, CALLING BALLS AND

16   STRIKES IN REAL TIME.  I EXPECT THE DEFENSE ATTORNEYS WILL

17   WANT TO REVIEW, MAKE SURE THAT THEY HAVE FULL REVIEW OF THE

18   DISCOVERY MATERIALS AND VARIOUS THINGS AND THEY'RE PREPARED TO

19   CROSS-EXAMINE MR. FRANCIS.  AND THIS IS ALL IN THE EVENT, YOU

20   KNOW, THAT HE'S UNAVAILABLE TO TESTIFY IN THE FUTURE, WHICH,

21   AS YOUR HONOR POINTED OUT, IS UNCERTAIN.  MANY PEOPLE LIVE

22   █████████████████████████████.

23             THE COURT:  I HAVE KNOWN MANY ████████████████████

24   ███████████████████████████████████████████████

25   ███████████████████████████████████████████,

1   AND THAT'S WHAT WE WISH FOR MR. FRANCIS --

2          MR. BURSTEIN:  ABSOLUTELY.

3          THE COURT:  -- THAT HE HAVE -- HE MAY ALWAYS HAVE TO

4   MAINTAIN, AND THE NEW NORMAL FOR HIM MAY BE CONSTANT

5   MAINTENANCE ON THIS, AND MONITORING, I SHOULD SAY, NOT

6   MAINTENANCE, MONITORING, BUT THAT'S WHAT WE WOULD HOPE.  SO,

7   NO, I'M CERTAINLY WILLING TO DO WHATEVER PEOPLE NEED BY WAY OF

8   DEPOSITION.

9          SO, ANYTHING ELSE ANYBODY WANTS TO TELL ME THIS

10  MORNING?

11         I'M GOING TO ASK YOU TO SUBMIT A NEW ORDER, COUNSEL,

12  OF TRANSFER TO THE FACILITY COVERING EVERYTHING WE'VE

13  DISCUSSED.  HE'S GOING TO -- BUT YOU DON'T KNOW WHERE HE'S

14  GOING TO GO YET.

15         MR. BURSTEIN:  BUT I'LL MAKE IT CLEAR ON THE ORDER

16  WHERE THAT IS GOING TO BE, THE SATELLITE CLINIC AS SET UP BY

17  HIS SUPERVISING PHYSICIAN.

18         THE COURT:  OKAY.  AND I GUESS I HAVE ONE MORE

19  QUESTION.  HE HAS A MEDICAL PERSON WITH HIM AT ALL TIMES?

20         MR. BURSTEIN:  CURRENTLY OR AT THE CLINIC?

21         THE COURT:  WELL, NO.  AS IS PLANNED.

22         MR. BURSTEIN:  I'M NOT SURE IF IT'S -- I MEAN, HE'LL

23  HAVE THE SECURITY THERE AT ALL TIMES --

24         THE COURT:  YES.

25         MR. BURSTEIN:  -- AND I'M NOT SURE IF THE NURSING

1    SERVICE IS 24 HOURS OR IF IT'S JUST A DAILY THING.  I'LL

2    FOLLOW UP WITH THE DOCTOR.

3            THE COURT:  OKAY.

4            MR. BURSTEIN:  THERE WILL BE A NURSE THERE EVERY DAY

5    AND A DOCTOR CHECKING IN ON HIM EVERY DAY.  I JUST DON'T KNOW

6    HOW MANY HOURS.

7            THE COURT:  OKAY.  BUT I'M REQUIRING 24/7 SECURITY.

8    I'M REQUIRING GPS.

9            WE HAVE SOMEBODY HERE.  IS THERE ANYTHING YOU WANT TO

10   ASK OR ADD TO THIS?

11           MS. HAZARD:  YOUR HONOR --

12           THE COURT:  PLEASE STATE YOUR NAME FOR THE RECORD.

13           MS. HAZARD:  KIM HAZARD WITH PRETRIAL SERVICES.

14           SO THE ONLY THING WE DO ASK, YOUR HONOR, IS THE

15   DEFENSE TO NOTIFY OUR OFFICE PRIOR TO HIS RELOCATION --

16           MR. BURSTEIN:  OF COURSE.

17           MS. HAZARD:  -- AND PROVIDE US WITH THE NEW ADDRESS.

18           MR. BURSTEIN:  OF COURSE.  I KNOW YOU NEED TO SET UP

19   THE GPS.

20           MS. HAZARD:  CORRECT.

21           MR. BURSTEIN:  YEAH, I'VE BEEN IN CONTACT, AND I WILL

22   DO THAT.

23           THE COURT:  OKAY.

24           MR. BURSTEIN:  AND, YOUR HONOR, SHOULD WE SUBMIT THAT

25   ORDER DIRECTLY --

1          THE COURT:  DIRECTLY TO ME.

2              MR. BURSTEIN:  -- THROUGH ALEX?

3          THE COURT:  CERTAINLY.

4          MR. BURSTEIN:  OKAY.

5          THE COURT:  BECAUSE THIS IS ALL UNDER SEAL.

6          MR. BURSTEIN:  I WILL DO THAT.

7          THE COURT:  OKAY.  IT WILL REMAIN UNDER SEAL UNTIL

8   PEOPLE TELL ME SOMETHING OTHER THAN THAT.

9          MR. BURSTEIN:  THANK YOU, YOUR HONOR.

10         THE COURT:  ANYTHING ELSE, COUNSEL?

11         MR. BURSTEIN:  NO.  I'LL TELL THE DOCTOR TO GET GOING

12  ON THIS.

13         THE COURT:  OKAY.  SO HE'S GOING TO -- OKAY.  AND I'M

14  GOING TO SIGN AN ORDER FOR 90 DAYS, BUT WITH A STATUS IN 30.

15         SO 90 DAYS FROM MARCH 1ST WOULD PUT THE FURLOUGH TO

16  WHAT DATE, ALEX?

17         THE DEPUTY CLERK:  IT WOULD BE MAY 30TH.

18         THE COURT:  OKAY.  MAY 30TH, THE FURLOUGH WOULD END.

19  OKAY.  AND THEN LET'S SET A STATUS 30 DAYS FROM TODAY JUST TO

20  SEE WHAT ISSUES, LET'S SEE HOW EVERYTHING'S GONE.

21         MR. PLETCHER:  I'M GOING TO BE OUT OF TOWN UNTIL

22  APRIL 6TH.  MAYBE WE CAN SET THE STATUS THE NEXT WEEK.

23         THE COURT:  SURE.  SO YOU'RE BACK (PAUSE).

24         MR. PLETCHER:  I'M BACK ON APRIL 6TH.

25         THE COURT:  OKAY.

19

1          THE DEPUTY CLERK:  SO IT WOULD BE APRIL 9TH, AT NINE

2    O'CLOCK.

3          MR. BURSTEIN:  I'M IN THE NINTH CIRCUIT THAT MORNING.

4          THE COURT:  OKAY.  THE 6TH IS A FRIDAY, RIGHT?

5          THE DEPUTY CLERK:  THAT'S CURRENTLY NOT AVAILABLE.

6          THE COURT:  OH, THAT'S RIGHT.  I'M NOT HERE.

7          THE DEPUTY CLERK:  SO TUESDAY.

8          THE COURT:  SURE.

9          ARE YOU BACK ON THE 10TH, MR. BURSTEIN?

10         MR. BURSTEIN:  YES, YOUR HONOR.

11         THE COURT:  OKAY.

12         THE DEPUTY CLERK:  SO APRIL 10TH, AT NINE O'CLOCK

13   A.M.

14         THE COURT:  DOES THAT WORK?

15         MR. PLETCHER:  YES.

16         THE COURT:  OKAY.  AND THAT'S JUST FOR STATUS.

17   THAT'S JUST IF ANYBODY HAS ANY ISSUES, TELL ME HOW IT'S GOING,

18   TELL ME ANYTHING YOU WANT TO TELL ME, SO WE CAN STAY IN TOUCH

19   AND YOU CAN KEEP ME APPRISED.

20         MR. BURSTEIN:  I THINK IT'S A GOOD IDEA.  THANK YOU,

21   YOUR HONOR.

22         THE COURT:  OKAY.  SO YOU'RE GOING TO DO A NEW ORDER

23   THAT COVERS EVERYTHING, PUTS THE NEW DATE IN, PUTS THE STATUS

24   IN, AND AUTHORIZES THE FURLOUGH TO MAY 30TH.

25         MR. BURSTEIN:  RIGHT.  AND THEN THE ONLY THING WE

1    NEED SEPARATE FROM THAT IS, THE WAY FOR PRETRIAL AND THE

2    MARSHALS, THEY NEED THE GREEN SHEET.  BEYOND AN ORDER, EVEN

3    WHEN WE HAVE AN ORDER, AND ALEX HAS A COPY, THEY JUST NEED

4    THAT SHEET FOR WHATEVER REASON.

5              THE COURT:  OKAY.  ANYTHING ELSE?

6              MR. PLETCHER:  NO, YOUR HONOR.

7              MR. BURSTEIN:  NO, THANK YOU, YOUR HONOR.

8              THE COURT:  OKAY.  THANK YOU.

9              MR. PLETCHER:  THANK YOU FOR SEEING US.

10              MR. BURSTEIN:  THANK YOU FOR TAKING THE TIME, YOUR

11    HONOR.

12              THE COURT:  OH, YOU'RE WELCOME.

13              (PROCEEDINGS ADJOURNED AT 11:20 A.M.)

14    ------------------------------------------------------------

15                        (END OF TRANSCRIPT)

16

17              I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

18    HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

19    ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

20

21              S/FRANK J. RANGUS

22              FRANK J. RANGUS, OCR

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | 13-CR-3781-JLS |
| PLAINTIFF, | ) | 13-CR-3782-JLS |
| | ) | 13-CR-4287-JLS |
| VS. | ) | |
| | ) | SAN DIEGO, CA |
| LEONARD GLENN FRANCIS, *ET AL.*, | ) | APRIL 10, 2018 |
| DEFENDANTS. | ) | 9:00 A.M. |

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:    WARREN & BURSTEIN
                      BY:  DEVIN J. BURSTEIN, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA  92101

PRETRIAL SERVICES:    ERIC KOSMO

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA  92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

## I N D E X

PROCEEDINGS:                          PAGE

NEXT HEARING DATE                      31

1          THE DEPUTY CLERK: NUMBER ONE ON THE CALENDAR,

2     13-CR-3781, 13-CR-3782, AND 13-CR-4287, UNITED STATES VS.

3     LEONARD GLENN FRANCIS, FOR STATUS.

4          THE COURT: OKAY. LET ME BEGIN BY INDICATING THAT

5     THESE PROCEEDINGS ARE SEALED PROCEEDINGS. THERE'S NOBODY IN

6     THE COURTROOM EXCEPT THOSE ASSOCIATED WITH THIS CASE, AND THE

7     TRANSCRIPT OF THESE PROCEEDINGS WILL REMAIN SEALED UNTIL

8     FURTHER ORDER OF THE COURT.

9          SO, WITH THAT, PLEASE ENTER YOUR APPEARANCES.

10          MR. PLETCHER: THANK YOU, YOUR HONOR. GOOD MORNING.

11     MARK PLETCHER FOR THE UNITED STATES.

12          THE COURT: THANK YOU. GOOD MORNING.

13          MR. BURSTEIN: AND GOOD MORNING, YOUR HONOR. DEVIN

14     BURSTEIN FOR MR. FRANCIS.

15          THE COURT: OKAY. THANK YOU.

16          THIS IS A STATUS CONFERENCE, AND WHOEVER WOULD LIKE

17     TO GO FIRST AND TELL ME -- OKAY. MR. BURSTEIN, GO AHEAD.

18          MR. BURSTEIN: THANK YOU, YOUR HONOR.

19          WITH ME IS MR. FRANCIS' TREATING PHYSICIAN,

20     ████. HE'LL BE PROVIDING THE COURT WITH THE MEDICAL

21     UPDATE, AND THEN THERE ARE JUST A FEW HOUSEKEEPING MATTERS

22     AFTER THAT. IF WE COULD PROCEED THAT WAY, YOUR HONOR.

23          THE COURT: OKAY. NO, THAT'S FINE, AND I HAVE A

24     COUPLE OF QUESTIONS AFTER THAT, TOO. SO LET'S GO AHEAD AND

25     WE'LL HEAR FROM THE DOCTOR.

 1        AND I'M GOING TO ASK YOU, DOCTOR, TO STATE YOUR NAME

 2   SLOWLY, AND IF YOU HAVEN'T GIVEN US A CARD, I'D LIKE YOU TO

 3   SPELL YOUR COMPLETE NAME SLOWLY FOR THE RECORD.

 4        MR. BURSTEIN:  MAY I APPROACH, YOUR HONOR?

 5        THE COURT:  OKAY.  CERTAINLY.

 6        NOW, PRONOUNCE YOUR LAST -- STATE YOUR NAME FOR THE

 7   RECORD.

 8

 9

10        THE COURT:  OKAY.                OKAY.

11        BRING THE MIKES CLOSER, SIR, AND PULL THEM UP A

12   LITTLE BIT SO I CAN HEAR YOU.

13        OKAY.  GO AHEAD, SIR.

14

15        THE COURT:  THANK YOU.  GO AHEAD AND TELL ME WHAT YOU

16   WANTED TO TELL ME THIS MORNING.

17             :  OKAY.  SO, SURE.  I GUESS --

18        THE COURT:  I MEAN, YOU'RE SUPPOSED TO UPDATE ME ON

19   THE STATUS OF YOUR PATIENT --

20             :  ABSOLUTELY.

21        THE COURT:  -- LEONARD FRANCIS.

22             :  ABSOLUTELY.

23        SO, FOR BACKGROUND, MY NAME IS

24

25                  .

1        A REPRESENTATIVE OF MY HOSPITAL APPROACHED ME

2   SOMETIME LAST YEAR ABOUT MR. FRANCIS AND ASKED ME IF I WOULD

3   SEE AND EVALUATE HIM TO BE TREATED. I WAS GIVEN RECORDS FROM

4   AN APPEARANCE THAT HE HAD MADE AT                    . I THINK

5                   HAD THE PRISON CONTRACT FOR HIM, AND AT THAT

6   TIME, ON REVIEWING THE RECORDS, HE HAD HAD                    .

7   HE'D HAD          , AND HE HAD A HISTORY OF HAVING HAD A

8                                                     IN THE PAST,

9   AND HE WAS HAVING PROBLEMS. I REVIEWED THE RECORDS IN

10  ADDITION TO THAT. HE HAD SOME CHRONIC HEALTH ISSUES, BUT THE

11  MAIN ISSUE WAS THE FACT THAT HE HAD A                  , AND

12  I OFFERED TO TREAT HIM.

13        THE PHYSICIAN AT          I DON'T THINK WAS

14  COMFORTABLE DOING A                ON SOMEONE OF HIS SIZE. SO

15  WHEN I SAW HIM, I TOOK A STEP BACK, OBVIOUSLY, AND DECIDED

16  TO -- IT WAS GOING TO BE HARD TO EVALUATE HIM AS AN OUTPATIENT

17  FOR ALL THE LOGISTICAL REASONS THAT HE HAD. SO WE DECIDED TO

18  EVALUATE HIM AS AN INPATIENT, AND I ADMITTED HIM TO

19                   WITH THE INTENTION, ESSENTIALLY, OF DOING

20

21

22        THE COURT: TIME-FRAME-WISE, WE'RE GOING BACK TO LAST

23  YEAR, AREN'T WE, ON THIS?

24               : YES. CORRECT.

25        THE COURT: DECEMBER OF LAST YEAR, OR BEFORE THIS?

1             ▓▓▓▓▓▓▓: END OF DECEMBER LAST YEAR --

2        THE COURT: END OF DECEMBER OF LAST YEAR. OKAY.

3             ▓▓▓▓▓▓▓: -- BY THE TIME HE WAS ▓▓▓▓▓.

4        BUT ANYWAY, AS IS USUALLY THE CASE, WHEN WE SEE

5 SOMEONE WITH ▓▓▓▓▓▓▓, WE TRY NOT TO HANG OUR HAT ON THE

6 FACT THAT THIS MIGHT JUST BE A ▓▓▓▓▓▓▓, AND ESPECIALLY

7 HIS SYMPTOMS DIDN'T ENTIRELY ADD UP WITH THE ▓▓▓▓▓▓

8 ▓▓▓▓▓▓. SO WE EVALUATED HIM, AND UNFORTUNATELY DURING

9 THAT EVALUATION I FOUND THAT HE HAD A ▓▓▓▓▓▓▓

10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11 ▓▓▓▓▓ AND SO, OBVIOUSLY, THAT WAS PROBLEMATIC.

12        WE GOT A ▓▓▓▓▓▓ TO SEE WHETHER OR NOT THE

13 ▓▓▓▓▓▓▓▓▓▓▓▓▓, AND IT LOOKED LIKE HE HAD

14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

15 ▓▓▓▓▓ SO, YOU KNOW, ▓▓▓▓▓▓▓▓▓▓

16 TO HAVE SOMETHING IN IT. WE DIDN'T KNOW WHAT IT WAS AT THE

17 TIME, AND WE KNEW HE HAD A ▓▓▓▓▓▓▓.

18        SO, KNOWING THAT, I TOOK HIM TO ▓▓▓▓ I WENT IN

19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, AND DID A COUPLE OF

20 THINGS. I ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, BECAUSE

21 WE KNEW HE HAD SOME OF THOSE OTHER ISSUES GOING ON, AND THEN I

22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23 ▓▓▓▓▓▓▓▓▓▓▓.

24        THE ▓▓▓▓ WERE CONSULTED. THE ▓▓▓▓▓

25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, WHICH MEANT

1   THAT HE WAS ███████████████. NEVERTHELESS, THE, YOU

2   KNOW, THE NEXT COURSE OF TREATMENT WAS TO █████████,

3   BECAUSE CERTAINLY HE WAS GOING TO RESPOND BETTER TO ANY

4   TREATMENT WITH THE ████████████████████. SO WE

5   TOOK HIM BACK TO ███████, I THINK A COUPLE OF DAYS LATER, AND

6   █████████████████. WE DID THAT ████████████ -- I

7   HAVE A PICTURE FOR YOU IF YOU WANT TO SEE IT -- AND THEN KEPT

8   HIM IN HOSPITAL A FEW DAYS FOR HIM TO RECOVER FROM HIS ███████

9   ██████████████████████████████

10      WE ALSO, I THINK, ████████████████████

11  ████████████████████ AND, YOU KNOW, COMPLETED SOME

12  OF HIS OVERALL, YOU KNOW, HEALTH WORKUP. THE ████████ FELT

13  THAT THERE WERE THREE LINES OF TREATMENT. THE FIRST LINE OF

14  TREATMENT WOULD BE TO ████████████████. THERE'S

15  A TYPE OF TREATMENT CALLED █████████████████. THESE

16  MEDICATIONS ████████████████████████

17  ████████████████████████████████████

18  ████████████. SO WE STARTED HIM ON THAT COURSE OF

19  TREATMENT.

20      AT THE SAME TIME, WE CONTINUED RECOVERING HIM FROM

21  HIS ████████████████████████

22  █████████████████, GETTING HIS OTHER HEALTH ISSUES UNDER

23  CONTROL, AND THEN I BELIEVE IT WAS THREE MONTHS -- I COULD BE

24  WRONG -- BUT ALMOST THREE MONTHS AFTER THE FIRST ███████████

25  ████████████████████████████████

1

2

3

4        , AND THERE WAS POSSIBLE

5

6        SO OUR CURRENT STATUS IS THAT,

7

8                        IT'S LIKELY THAT HE'LL NEED TO PROCEED

9    SOONER, RATHER THAN LATER, TO THE                        ,

10   WHICH IS KNOWN AS

11                                                    , YOU

12   KNOW, SOME OF THAT.

13           I'VE ALSO CONSULTED INFORMALLY WITH THE

14                        .  YOU KNOW, AT SOME STAGE, IF THESE

15   THINGS -- THE PROBLEM WITH THESE THINGS IS THAT THEY'RE ONLY

16                        AND HE'S A BIG GUY, AND SO

17                HE ALSO PROBABLY WOULDN'T TOLERATE A

18            WELL, WHICH IS A VERY, YOU KNOW, A SIGNIFICANT

19   COMPLICATION                        .  SO WE'RE TREATING THESE

20   THINGS EMPIRICALLY AS IF THEY WERE, AND THEY'RE CERTAINLY

21   BEHAVING LIKE THEY WERE, YOU KNOW,                        .  BUT I

22   THINK THAT IF THE

23

24        , BECAUSE THERE'S SOME EVIDENCE THAT                , WHICH

25   IS A TYPE OF TREATMENT THAT YOU WOULD OFFER PEOPLE WHO HAVE

1

2

3

4            SO WE'RE BASICALLY -- IN SUMMARY, WE HAVE A GENTLEMAN

5    WHO CAME IN WITH ONE SET OF PROBLEMS, TURNED OUT TO HAVE

6    ANOTHER SET OF FAR MORE SERIOUS PROBLEMS, HAS HAD THE FIRST

7

8

9                              HE WOULD PROCEED NEXT, AFTER THE

10   NEXT ROUND

11

12

13                         THE SORT OF PRINCIPLES OF

14        IS THAT, YOU KNOW, THESE

15

16   SO THERE'S AN ART TO GIVING THE              NOT GIVING

17   EVERYTHING AT ONCE AND NOT BURNING ALL YOUR BRIDGES AND NOT

18   LOSING ALL YOUR OPTIONS ON DAY ONE, WHICH IS ONE OF THE

19   REASONS THAT WE HAVEN'T                            BEEN

20   DONE WITH IT.

21            SO, IN A NUTSHELL, THOSE ARE MY THOUGHTS.

22            THE COURT:  OKAY.

23            LET ME ASK THE GOVERNMENT.  ARE YOU HEARING THIS FOR

24   THE FIRST TIME?  DO YOU HAVE ANY QUESTIONS OF THE DOCTOR?

25            AND, MR. BURSTEIN, IS THERE ANYTHING YOU WANT HIM TO

1    ELABORATE ON?

2             MR. PLETCHER:  THANK YOU, YOUR HONOR.

3         I'M NOT HEARING IT FOR THE FIRST TIME.  I'VE BEEN

4    APPRISED BY MR. BURSTEIN THROUGHOUT ABOUT HOW THE COURSE OF

5    TREATMENT IS PROCEEDING, AND SO THIS IS -- THIS HAS BEEN WELL

6    DISCUSSED, AND I DON'T HAVE MUCH TO SAY ABOUT THE COURSE OF

7    TREATMENT.  IT'S WELL OUTSIDE MY EXPERTISE.  I THINK MR.

8    FRANCIS IS GETTING OUTSTANDING CARE FOR THIS, AND HE -- AND

9    ███████████████████████████████.  ONE OF THESE IS

10   ███████████THAT THEY'RE TALKING ABOUT.  I KNOW THE DOCTORS

11   ARE WORKING VERY HARD TO HAVE HIM ███████████████████████

12   ███████████████████████  SO THEY HAVE A FEW MORE OPTIONS IN

13   TREATING HIM.  SO I DON'T HAVE ANYTHING TO ADD.  I DON'T HAVE

14   ANY COMPLAINTS ABOUT -- YOU KNOW, LAST TIME, WE DEALT WITH HIS

15   LIVING SITUATION AND HOW THAT WAS GOING TO UNFOLD AND --

16             THE COURT:  HE'S STILL IN THE SAME LOCATION?

17             MR. PLETCHER:  HE IS.  HE'S IN SORT OF A ONE-ROOM

18   APARTMENT, IF YOU WILL, THAT DOUBLES AS HIS CLINIC.  THE

19   SECURITY SITUATION, FROM OUR PERSPECTIVE, IS GOING VERY WELL,

20   AND WOULD ENCOURAGE THE COURT TO MAINTAIN THAT.  I THINK HE'S

21   GETTING, YOU KNOW, ALL THE REST OF THESE THINGS THAT HE NEEDS.

22             MR. BURSTEIN BROUGHT UP TO ME THAT HE'D LIKE TO START

23   ATTENDING MASS ONCE A WEEK, AND WE DON'T HAVE ANY OBJECTION TO

24   HIM DOING THAT ONCE A WEEK, IN ADDITION TO THE OTHER

25   CONDITIONS THE COURT HAS ALREADY IMPOSED.

1          SO THAT'S WHERE WE ARE.

2          THE COURT:  HE'S ON GPS.  CORRECT?

3          MR. PLETCHER:  HE IS.

4          THE COURT:  AND HE HAS 24-HOUR SECURITY.

5          MR. PLETCHER:  YES, MA'AM.

6          THE COURT:  SO SECURITY WOULD TAKE HIM TO HIS

7     RELIGIOUS SERVICES IF THAT'S AGREEABLE WITH EVERYBODY.

8          MR. PLETCHER:  CERTAINLY.  IT'S FINE WITH US.

9          THE COURT:  SO TELL ME ABOUT THIS.  TIMELINE, WHAT

10    ARE WE LOOKING AT BEFORE HE WOULD PROGRESS, DOCTOR, TO THE

11    NEXT STAGE OF TREATMENT AND THE TOTAL -- LOOKING AT THIS, CAN

12    YOU PROJECT TREATMENT-WISE WHAT WE'RE LOOKING AT?

13                          I'D SAY MONTHS.  HAVING SAID THAT, THE

14    OTHER ISSUES THAT MARK BROUGHT UP IS, YOU KNOW, HE HAS SOME

15    SIGNIFICANT CHRONIC HEALTH ISSUES, AND JUST IN THE FEW MONTHS

16    I'VE BEEN TAKING CARE OF HIM, WE'VE STARTED HIM ON A NEW

17

18                                                            .

19    SO, YOU KNOW, NONE OF THOSE THINGS ARE NECESSARILY HELPFUL.

20    IN ORDER TO -- AS A GENERAL RULE, IN ORDER

21

22          .  SO WE'VE BEEN -- I CALL THOSE HOUSEKEEPING ISSUES.

23    WE'VE BEEN TAKING CARE OF THOSE HOUSEKEEPING ISSUES WITH HIS

24    CHRONIC HEALTH.  CERTAINLY, RIGHT NOW, IF WE WERE TO DECIDE TO

25    PROCEED WITH          THAT WOULD NOT BE AN OPTION.  I MEAN,

1   WITH HIS          --

2           THE COURT:  IT WOULD NOT BE?

3                    :  TODAY, IT WOULD NOT BE, BECAUSE HIS

4          IS NOT WELL CONTROLLED.  I'VE HAD TO ESCALATE HIS

5                     JUST WITHIN THE LAST WEEK.  HIS

6                              I'VE HAD TO INCREASE IN THE LAST

7   FEW WEEKS.  SO IT'S GOING TO TAKE US TIME TO GET UP-TO-STATE.

8   IT DOESN'T REALLY MATTER, BECAUSE WE'RE NOT THINKING OF

9        ANYTIME SOON.  I THINK THAT THE NEXT         IS

10  PLANNED FOR THREE MONTHS FROM THE PRIOR        , WHICH I

11  THINK WAS IN FEBRUARY.  I CAN CHECK IF YOU WOULD LIKE THE

12  EXACT DATE.  FEBRUARY 28TH WAS HIS LAST        .  SO, I MEAN,

13  WE'RE NOT GOING TO SEE SIGNIFICANT MOVEMENT IN THE

14  UNTIL WE REACH THE, I GUESS, THE MAY 28TH, THE END-OF-MAY

15  POINT, AND AT THAT TIME WE WOULD DECIDE TO EITHER CONTINUE

16  WITH THE

17  AND REASSESS IN ANOTHER THREE MONTHS, MOST LIKELY.

18          THE COURT:  NO, I JUST WANTED TO MAKE SURE I

19  UNDERSTOOD.

20          THE                                        --

21                 :  YES.

22          THE COURT:  -- LOOKS GOOD NOW.

23                 :  YES.

24          THE COURT:  BUT YOU'RE SEEING WHAT -- WE DON'T KNOW

25  FOR SURE, BUT IT APPEARS TO BE SOME

1  ████, AND YOU'RE THINKING THAT THOSE WERE AREAS WHERE MAYBE

2  HIS ████████████.

3  ████████: RIGHT. SO THE OPINION OF OUR

4  ████████████████████████████████████

5  ████████ ACTUALLY, AND I HAVE A REPORT FROM HIM HERE

6  SAYING THAT HE'S ESSENTIALLY ████ BECAUSE HE HAS THOSE

7  ████████████. WE COULD HAVE ARGUED WHEN WE FIRST MET

8  HIM WHETHER OR NOT THOSE████████, AND WE CAN ALWAYS

9  ARGUE ABOUT THAT. HAVING SAID THAT, THE PROGRESSION IN THOSE

10  ████ IS DEFINITELY CONCERNING.

11  THE COURT: OKAY. I'M TRYING TO THINK IF I HAVE ANY

12  OTHER QUESTIONS OF YOU. I GUESS THIS MAY BE MORE FOR COUNSEL

13  THAN YOU. I'M JUST WONDERING HOW THE PATIENT IS FEELING. IS

14  HE SORT OF COMFORTABLE AND ABLE TO --

15  ████████: YEAH.

16  THE COURT: -- MAINTAIN AND, I'M GOING TO SAY, KIND

17  OF MANAGE THIS? YOU SAID HE'LL ████████ OF THIS, AND I

18  UNDERSTAND THAT. THAT'S THE CASE WITH MANY PEOPLE.

19  ████████: RIGHT.

20  THE COURT: BUT SOMETIMES WE CAN GET TO A POINT

21  WHERE -- MY TERM, AND IT'S NOT A MEDICAL TERM -- YOU CAN

22  MANAGE THIS AND HAVE SOME EXPECTATION OF SOME YEARS TO COME.

23  I DON'T KNOW IF THAT'S THE CASE OR NOT --

24  ████████: YEAH.

25  THE COURT: -- WITH SUCCESSFUL TREATMENT, DOCTOR. I

1    DON'T KNOW.

2                    ▓▓▓▓▓▓▓ :  YEAH.

3         THE COURT:  IF YOU COULD COMMENT.

4                    ▓▓▓▓▓▓▓ :  OUR GOAL, AND I SINCERELY BELIEVE A

5    REALISTIC GOAL, IS TO HAVE HIM AROUND FOR QUITE A FEW YEARS.

6    I THINK THE PROBLEM WITH ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9    ▓▓▓▓▓▓▓ IS THAT PEOPLE TEND TO BE VERY STABLE, AND I CALL

10   THEM COMPENSATED, AND THEN IN THE ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ , YOU KNOW, TO

12   SAY, HEY, EVERYTHING'S GOING REAL WELL, AND THEN THERE'S A

13   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ .  YOU KNOW, I'VE

14   SEEN THIS WITH MY OWN PATIENTS.  I'VE SEEN THIS WITH MY FAMILY

15   MEMBERS, OBVIOUSLY, AND IT'S JUST THE BODY'S WAY.  YOU KNOW,

16   THERE'S NO DOUBT THAT THE LONGER WE CAN KEEP HIM IN A

17   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ , BUT

18   HIS OVERRULE HEALTH, HIS NUTRITIONAL STATUS, HIS ▓▓▓▓▓▓

19   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ YOU KNOW, SO

20   GETTING HIS ▓▓▓▓▓▓▓ UNDER GOOD CONTROL, GETTING HIS ▓▓▓▓▓

21   ▓▓▓▓▓▓▓▓ HE'S REMARKABLY CHIPPER, I HAVE TO TELL YOU,

22   FOR A GUY WHO -- YOU KNOW, I ACTUALLY SOMETIMES WONDER IF

23   HE --

24         THE COURT:  SOMETIMES, A GOOD ATTITUDE HELPS --

25                    ▓▓▓▓▓▓▓ :  YEAH, ABSOLUTELY.

1      THE COURT:  -- WITH TREATMENT.

2                        :  YEAH.  NO, NO DOUBT.  I MEAN, I'VE

3   OFTEN SAID TO MY PATIENTS THAT THE ONES WHO CHOOSE TO LIVE

4   LIVE, AND THE ONES WHO CHOOSE TO -- THERE'S NOTHING THAT

5   WORRIES ME MORE THAN A LADY WHO MAY HAVE LOST A HUSBAND, WHO

6   COMES IN WITH SOMETHING CURABLE, AND THEN SAYS, DOCTOR, I JUST

7   DON'T WANT TO LIVE, AND INEVITABLY, BY THE END OF THE YEAR,

8   SHE'S NOT WITH US ANYMORE.  THERE'S SOMETHING, THERE'S

9   SOMETHING MUCH BIGGER THAN ALL OF US IN THIS, ESSENTIALLY.

10      THE COURT:  SO WHAT ARE YOU SUGGESTING THE COURSE OF

11   TREATMENT WOULD BE?  CONTINUE WITH THE CURRENT --

12                        ABSOLUTELY, ABSOLUTELY.

13      THE COURT:  --                        RIGHT NOW?

14                        :  YEAH.  I MEAN, I THINK THAT THE -- I

15   THINK WE ABSOLUTELY NEED TO CONTINUE                    .

16   THERE'S NO DOUBT ABOUT THAT.  AND THE REAL ISSUE, I THINK,

17   SOMETIME TOWARD THE END OF MAY, THE BEGINNING OF JUNE, WE'LL

18   HAVE AN IDEA OF WHETHER WE RENEW OR ESCALATE THE CURRENT

19                        I THINK THAT'S GOING TO BE OUR NEXT

20   INFLECTION POINT FOR ANOTHER THREE MONTHS.

21      THE COURT:  AND THAT WILL BE BASED ON THE        --

22                        :  EXACTLY.

23      THE COURT:  -- AT THAT POINT.

24                        :  EXACTLY.

25      THE COURT:  OKAY.  THANK YOU.

1    I DON'T HAVE ANY OTHER QUESTIONS OF THE DOCTOR.

2          LET ME ASK IF YOU HAVE ANYTHING ELSE YOU WANTED TO

3    ELABORATE ON.   THIS IS VERY HELPFUL, SIR.

4                        :   NO.   THANK YOU.

5          THE COURT:   I KNOW HOW BUSY YOU ARE.   I APPRECIATE

6    YOUR COMING TO COURT.

7          ANYTHING ELSE YOU WANTED TO TALK ABOUT?

8          MR. BURSTEIN:   JUST PERHAPS, YOUR HONOR, BRIEFLY,

9              OFFICE WAS ABLE TO ARRANGE THE ONE-ROOM APARTMENT

10   SLASH CLINIC WHERE HE IS NOW, AND JUST WHETHER THAT'S (A) ABLE

11   TO BE CONTINUED AT THE CURRENT LOCATION, AND THEN WE DID SAY

12   IN 30 DAYS WE WOULD RE-ADDRESS THE NEED FOR THE SECURITY GUARD

13   BECAUSE OF THE GPS MONITORING, AND SO I DIDN'T KNOW IF

14            COULD ADDRESS WHETHER HE CAN MAINTAIN AT THE CURRENT

15   LOCATION INTO THE FUTURE AND IF THERE ARE ANY CONCERNS WITH

16   THE SECURITY.

17         THE COURT:   I'M ASSUMING THIS LOCATION HAS BEEN KEPT

18   AS CONFIDENTIAL AS POSSIBLE.

19                        :   OF COURSE.

20         MR. BURSTEIN:   YES, YOUR HONOR.   PRETRIAL HAS BEEN

21   THERE TO VISIT MULTIPLE TIMES, AS WELL AS THE CASE AGENTS HAVE

22   COME TO DO SECURITY CHECKS.   EVERYBODY IS ENTIRELY -- I CAN

23   REPRESENT --

24         THE COURT:   BUT, OTHER THAN THAT, IT'S BEEN KIND OF

25   LOW-KEY.

1        MR. BURSTEIN:  IT'S IN THE BACK.  IT REALLY IS A
2    PERFECT LOCATION.

3        THE COURT:  SO YOUR QUESTION IS, CAN IT BE
4    MAINTAINED?

5        MR. BURSTEIN:  ███████  COULD ADDRESS WHETHER
6    IT COULD BE MAINTAINED INDEFINITELY, AND THEN I GUESS THE
7    QUESTION'S FOR THE COURT.  WE HAD INITIALLY ASKED TO REMOVE
8    THE SECURITY GUARD WITHOUT OPPOSITION FROM THE GOVERNMENT.
9    THE COURT INDICATED THAT AT THE TIME IT WASN'T --

10        THE COURT:  I WASN'T INCLINED TO.

11        MR. BURSTEIN:  AND THEN IT'S BEEN 30 DAYS.  HE'S BEEN
12    IN FULL COMPLIANCE.  WE WOULD LIKE TO REMOVE THAT NOW AND
13    MAINTAIN GPS, AND SO (PAUSE).

14        THE COURT:  OKAY.

15        MR. PLETCHER:  AT LEAST, YOU KNOW, BEFORE ███████
16    COMMENTS ON THE SUITABILITY OF THE LOCATION AND ITS
17    CONTINUANCE, THE GOVERNMENT HAS CHANGED ITS POSITION.  WE
18    PREFER THE SECURITY.  WE THINK, IN CONSIDERING THE COURT'S
19    WORDS LAST TIME, THAT THE SECURITY GUARD, FOR A NUMBER OF
20    REASONS, INCLUDING NOT JUST MR. FRANCIS' CONTINUED APPEARANCE
21    AT A REQUIRED PROCEEDING AND HIS EFFECTIVE MAINTENANCE IN
22    CUSTODY, BUT ALSO FOR THE REMAINDER OF THE PROCEEDINGS.  SO WE
23    PREFER THAT.  I THINK THE COURT'S COUNSEL IN THAT REGARD WAS
24    WISE, AND WE WOULD URGE THE COURT TO CONTINUE THE SECURITY.

25        THE COURT:  OKAY.

1    WELL, LET'S START WITH THIS, DOCTOR.  IS THE LOCATION
2  WHERE YOUR PATIENT IS, IS HE ABLE TO STAY IN THAT LOCATION AND
3  MAINTAIN THAT LOCATION?
4            :  YEAH.  I MEAN, I, FROM A SELFISH
5  STANDPOINT, CHOSE A LOCATION THAT WAS CLOSE TO THE HOSPITAL SO
6  THAT WE CAN, YOU KNOW, WE CAN SEE HIM.
7         THE COURT:  AND WE'RE TALKING              .  SO
8  HE'S UP IN THAT GENERAL AREA.
9            :  YEAH.
10        THE COURT:  OKAY.
11           :  SO HE'S CLOSE TO
12  HOSPITAL, AND THAT'S, QUITE FRANKLY, CONVENIENT FOR ME.  I
13  HAVE A NURSE OR MYSELF CHECK ON HIM AT HOME, IN ADDITION TO
14  SEEING HIM IN THE OFFICE.  SO THAT' VERY CONVENIENT.  I THINK
15  THE LOCATION IS ALSO GREAT BECAUSE IT'S WITHIN A
16
17       SO, YOU KNOW, I THINK THAT THOSE THINGS ARE VERY
18  USEFUL TO HIM.
19        THE COURT:  OKAY.  COULD HE HAVE COME -- I'M NOT
20  SUGGESTING THIS.  I'M JUST TRYING TO GET A GAUGE AS TO HOW
21  HE'S DOING.  COULD HE HAVE COME TO COURT IF HE WANTED TO, IF
22  WE HAD ASKED HIM TO COME TO COURT?  HE COULDN'T HAVE COME IN
23  HERE?
24        MR. BURSTEIN:  I COULD HAVE, I COULD HAVE BROUGHT HIM
25  HERE.

1    THE COURT: I'M NOT ASKING THAT. I'M JUST TRYING TO
2    GET A SENSE OF HOW WELL HE'S DOING.
3    ▮▮▮▮▮▮▮: YEAH. THERE'S NO MEDICAL REASON WHY HE
4    COULD NOT.
5    THE COURT: THERE'S NO MEDICAL REASON WHY HE COULDN'T
6    HAVE COME HERE.
7    ▮▮▮▮▮▮▮: ABSOLUTELY, YEAH.
8    THE COURT: OKAY. VERY WELL.
9    SO IF THAT CAN BE MAINTAINED, THAT SOUNDS AS THOUGH
10   IT'S AS GOOD AS IT'S GOING TO GET AS FAR AS A LOCATION FOR
11   HIM. YOU'RE NOT SUGGESTING ANYTHING TO THE ALTERNATIVE.
12   MR. BURSTEIN: NO, YOUR HONOR. I WOULD LIKE HIM TO
13   REMAIN. PERSONALLY, I THINK IT'S A GREAT AND VERY SECURE
14   PLACE, THOUGH. MY QUESTION WAS REALLY GEARED TOWARD WHETHER
15   ▮▮▮▮▮▮ KNEW IF THAT WAS, IF THERE WERE ANY PROBLEMS WITH
16   KEEPING HIM THERE OR IF THE SECURITY WAS POSING ANY ISSUES.
17   ▮▮▮▮▮▮▮: NO. I MEAN, I'M NOT GOING TO COMMENT
18   ON SECURITY. I'M A SIMPLE SURGEON. BUT I THINK IN TERMS OF
19   LOCATION, I THINK, YOU KNOW, THE LOCATION IS EXCELLENT. THE
20   ONLY THING I WOULD SAY IS THAT WE DID TALK TO THE LANDLORD AND
21   WE GOT HIM THERE FOR INITIALLY THREE MONTHS, SO I DO NEED TO
22   HAVE MY OFFICE SPEAK WITH THE LANDLORD. THE LANDLORD'S ALSO A
23   PHYSICIAN HIMSELF, SO.
24   THE COURT: OKAY. SO THERE'S SOME LEVEL OF
25   UNDERSTANDING AND COOPERATION.

1          ███████: RIGHT. YEAH. SO WE JUST NEED TO MAKE

2 SURE IT'S RENEWABLE, WHICH I'M SURE IT IS.

3          THE COURT: HOPEFULLY, THAT CAN BE MAINTAINED.

4          ███████: RIGHT. AND IF IT WAS NOT, IF IT'S NOT

5 RENEWABLE, FOR THE RECORD, I THINK THERE ARE OTHER PLACES

6 WITHIN THE SAME COMPLEX THAT ARE PRETTY SIMILAR, SO.

7          THE COURT: OKAY. VERY WELL.

8          ANYTHING ELSE FROM THE DOCTOR BEFORE WE (PAUSE).

9          MR. BURSTEIN: NO, I DON'T BELIEVE SO, BUT,

10 HOPEFULLY, IF YOU HAVE THE TIME TO STICK AROUND JUST IN CASE

11 SOMETHING COMES UP.

12          ███████: SURE.

13          THE COURT: FOR A FEW MOMENTS AT LEAST, DOCTOR.

14          ███████: ABSOLUTELY.

15          THE COURT: THANK YOU SO MUCH. I APPRECIATE YOUR

16 COMMENTS.

17          ███████: GREAT. THANK YOU VERY MUCH.

18          THE COURT: I AM NOT INCLINED TO CHANGE THE SECURITY

19 SITUATION. I THINK IT'S APPROPRIATE, AND HE NEEDS TO BE ON

20 GPS. HE NEEDS TO HAVE 24-HOUR SECURITY. IF HE GOES TO

21 RELIGIOUS SERVICES, SECURITY NEEDS TO GO WITH HIM. HE'S ABLE

22 TO GET AROUND AND DO THINGS. I APPRECIATE THE NEED TO HAVE

23 THIS SPECIAL ACCOMMODATION FOR HIM, AND PEOPLE ARE WILLING TO

24 DO THAT.

25          I'M ASSUMING -- AND I DIDN'T ASK THE DOCTOR THIS.

1   I'M ASSUMING THAT A REMAND INTO CUSTODY AT THIS TIME WOULD NOT

2   BE BENEFICIAL FOR THE PATIENT OR HIS TREATMENT OR COULDN'T BE

3   MAINTAINED. WE HAVE MANY PATIENTS IN THE BUREAU OF PRISONS

4   WHO ARE IN LOCAL CUSTODY HERE, DOCTOR, WHO HAVE CANCER AND

5   TREAT ON SOME BASIS. SO MAYBE YOU SHOULD COMMENT ON THAT.

6           : YEAH. AND WITH ALL DUE RESPECT TO, YOU

7   KNOW, TO THE DOCTORS TAKING CARE OF HIM IN THE PRISON SERVICE,

8   I RESPECTFULLY BELIEVE THAT WE'RE OFFERING HIM A HIGH LEVEL OF

9   CARE. I THINK THAT THE, YOU KNOW, THE CONSTANT WORK THAT

10  WE'RE DOING ON AN ALMOST-DAILY BASIS WITH HIM, WE'RE TRYING TO

11  OPTIMIZE HIS CHRONIC HEALTH. YOU KNOW, WE'VE BEEN WORKING --

12  WE'VE BEEN MAKING AT LEAST WEEKLY, IF NOT DAILY, DECISIONS ON

13                          , AND I THINK

14  MONITORING HIM FOR THE SYMPTOMS OF VERY POTENTIAL SIDE EFFECTS

15  FROM           , AND ESPECIALLY THE POTENTIAL TO

16                , AND I THINK -- AND AGAIN WITH GREAT

17  RESPECT, YOU KNOW, TO THE FEDERAL SERVICE -- I THINK WE CAN

18  OFFER HIM A LEVEL OF CARE THAT, QUITE FRANKLY, WILL LEAD TO

19           . AND AGAIN, YOU KNOW, OUT OF GREAT RESPECT TO

20  THE FOLKS AT      , THEY SORT OF MISSED THIS ONE, I THINK.

21        THE COURT: OKAY. UNDERSTOOD. I APPRECIATE THAT.

22  THANK YOU.

23        MR. PLETCHER: OF COURSE, THE LEVEL OF CARE, YOU

24  KNOW, BETTER OR LESSER, ISN'T REALLY OUR LINCHPIN HERE. IT'S

25  THE CONSTANT, DAY-TO-DAY OPTIMIZATION THAT DEALS WITH

1

2    ████████████████████████████████████████, AND I THINK, AS THE

3    COURT IS LOOKING FORWARD, WHAT I WOULD SUGGEST IS THAT WE SET

4    A HEARING SIMILAR TO THIS ONE IN THE FIRST WEEK OF JUNE AFTER

5    THE NEXT ██████ AND THEN TAKE A LOOK AT WHETHER THESE

6    STABILITY ISSUES HAVE BEEN RESOLVED, YOU KNOW, WHAT'S THE

7    SITUATION WITH THE ████████████████████████████

8    ██████████████████████, AND THEN CONTINUE, AS WE HAD

9    TALKED ABOUT LAST TIME, WE TALKED ABOUT THIS TIME, TO

10   RE-EVALUATE NOT JUST -- CERTAINLY, HE'S ALWAYS GOING TO GET

11   BETTER CARE BEING UNDER THE PERSONAL ATTENTION OF THE

12   ██████████████████████████████████, AND SO THAT CAN'T

13   BE OUR TEST, BUT WHETHER HE NEEDS TO HAVE THIS EXTRAORDINARY

14   ACCOMMODATION MADE FOR HIM TO MAKE SURE THAT HE'S GETTING A

15   REQUISITE LEVEL OF CARE THAT ALLOWS HIM A FIGHTING CHANCE AT

16   SURVIVAL, AND I THINK THAT'S WHERE WE ARE AT RIGHT NOW, AND

17   WE'LL RE-EVALUATE THAT IN JULY AND CONTINUE TO RE-EVALUATE

18   THAT.

19            THE COURT:  OKAY.

20            MR. PLETCHER:  ONE OF THE THINGS THE DOCTOR HAS

21   RECOMMENDED IS ██████████ FIVE DAYS A WEEK, WHICH WILL HELP

22   ██████ --

23            THE COURT:  YOU'LL HAVE TO TELL ME WHAT THAT IS.  I'M

24   NOT FAMILIAR WITH IT.

25            MR. PLETCHER:  YEAH.  I MEAN, I DON'T WANT TO PUT

```
 1   WORDS IN ANYBODY'S MOUTH, BUT I'LL DO MY BEST AS THE BABBLE
 2   FISH IN THE ROOM.  BASICALLY, ████████████████████████
 3   ████████████████████████████████████████████████
 4   ████████   IT ALLOWS HIM TO BE MORE ██████, AND I THINK HELPS
 5   HIM RECOVER ███████████████████████████████████
 6   ██████████████, AND SO THEY'VE RECOMMENDED THIS AS PART OF
 7   THIS WHOLE-BODY TREATMENT.  BUT AGAIN, THAT'S FIVE DAYS A
 8   WEEK.  THAT'S SOMETHING THAT IS PART OF THE ENTIRE PANOPLY OF
 9   TREATMENT OPTIONS.  HE REALLY NEEDS TO BE IN THIS CIRCUMSTANCE
10   AS I UNDERSTAND WHAT'S BEEN TOLD TO ME.
11            THE COURT:  DO YOU WANT TO COMMENT ON WHAT THAT
12   TREATMENT IS, SIR, AND WHAT IT'S FOR?
13            ██████████:  SURE.  ████████████████████████.
14   ███████████████████████████ SOMEONE, AND SO, YOU KNOW, THERE
15   ARE THESE ████████████████████████████████████████
16   ████████████████████████████████████AND, YOU KNOW,
17   COMMERCIALLY AVAILABLE NOWADAYS AS WELL TO MEMBERS OF THE
18   PUBLIC, WHERE AFTER A PERIOD OF TYPICALLY FOR ████████████
19   ████████████████████████████████████████████████
20   ████████████████████████████████████, ████████████
21   ████████████████████████████████████████████
22   ████████████████████████████████████████
23   ████████████████████████████████████████████
24   ████████████████████████████████████████████
25   ██████████████████████████████, AND THERE'S EXCELLENT
```

1  EVIDENCE -- YOU KNOW, IT'S FDA-APPROVED, OBVIOUSLY --

2  EXCELLENT EVIDENCE THAT THIS KIND OF TREATMENT,

3

4                        , YOU KNOW, THIS KIND OF TREATMENT SEEMS

5  TO BE TREMENDOUSLY BENEFICIAL WITH

6

7        AND IN SOME PEOPLE ALSO HELPING WITH

8  ALTHOUGH IT'S UNCLEAR.  I THINK, AS WITH ANY NEW THERAPY, WHAT

9  YOU, WHAT WE NEED TO DO AS PHYSICIANS IS ASSESS RESPONSE.  SO

10 YOU GENERATE A HYPOTHESIS THAT THIS MIGHT BE BENEFICIAL AND WE

11 TRY IT OUT, AND IF IT IS, WE CONTINUE, AND IF NOT, WE

12 DISCONTINUE.

13         THE COURT:  SO YOU'RE RECOMMENDING THIS.

14                  :  ABSOLUTELY.  I THINK IT'S HARMLESS, AND

15 I THINK IT'S POTENTIALLY VERY BENEFICIAL.

16         THE COURT:  AND WHERE WOULD HE GO FOR THIS?

17                  :  WELL, THESE THINGS ARE WIDELY

18 AVAILABLE, AND SO IT TURNS OUT THAT

19                                     .  SO IT'S LITERALLY

20 20 YARDS AWAY FROM HIS APARTMENT.

21         THE COURT:  IT'S VERY ACCESSIBLE.  OKAY.  VERY WELL.

22 SO THAT'S HELPFUL TO KNOW.

23                  :  YEAH.

24         THE COURT:  OKAY.  THANK YOU.

25         MR. KOSMO:  YOUR HONOR, ERIC KOSMO FOR PRETRIAL

1  SERVICES ON THIS MATTER.

2        THERE'S A DIFFICULTY WITH ████████████████████

3  ████████████████████████████████████████████

4  ██████, AND THEY'RE CONCERNED.  THEY WANT IT, THEY WANT THE

5  ████████████████████████████████████████████████

6  ████████████████████████████.

7        THE COURT:  OKAY.  CAN IT BE REMOVED AND REATTACHED?

8        MR. BURSTEIN:  YOUR HONOR, THAT WOULD BE A

9  SIGNIFICANT -- SORRY TO CUT YOU OFF, MR. KOSMO.  THAT WOULD BE

10 A SIGNIFICANT BURDEN, I THINK, ON MR. KOSMO.  SO WHAT WE'RE

11 GOING TO DO, ASSUMING -- WHAT WE'VE ALL TALKED ABOUT DOING AND

12 ALL COME TO AGREEMENT ON TRYING IS, MR. KOSMO WILL GO FOR THE

13 FIRST ONE. ████████████████████████████████████

14 ████████████████████ IS CONFIDENT, AS AM I, THAT THAT

15 WILL BE SUFFICIENT.  IF THE DEVICE BREAKS, MR. KOSMO WILL BE

16 THERE.  MR. FRANCIS WILL BE RESPONSIBLE FOR PURCHASING A NEW

17 ONE, AND WE WILL DISCONTINUE THE████████████ BECAUSE IT'S

18 FIVE DAYS A WEEK, I DON'T -- YOU KNOW, EVEN THOUGH I REPRESENT

19 MR. FRANCIS, I DON'T THINK IT'S FEASIBLE TO ASK MR. KOSMO TO

20 GO UP --

21        THE COURT:  OH, NO.

22        MR. BURSTEIN:  -- FOR FIVE DAYS A WEEK TO DETACH IT

23 FOR A FIVE-MINUTE PROCEDURE.

24        THE COURT:  OKAY.

25        MR. BURSTEIN:  SO I THINK WE CAN TRY THIS

1  WORK-AROUND.  I THINK IT'S GOING TO WORK JUST FINE.

2          THE COURT:  SO JUST KIND OF ▓▓▓▓▓▓▓▓  A

3  LITTLE BIT --

4          ▓▓▓▓▓▓  RIGHT.

5          THE COURT:  -- ▓▓▓▓▓▓

6          MR. KOSMO:  YES, YOUR HONOR.  I'M NOT SAYING --

7          THE COURT:  I APPRECIATE YOU -- GO AHEAD.

8          MR. KOSMO:  YEAH.  I'M NOT SAYING COUNSEL'S REQUEST

9  ISN'T REASONABLE.  HOWEVER, OUR POSITION IS, YOU KNOW, THE

10  VENDORS ARE EXPERT ON THAT.  SO OUR POSITION IS THAT IT BE

11  REMOVED FOR ▓▓▓▓▓  I KNOW WE WOULDN'T NECESSARILY OPPOSE

12  HIM BEING REMOVED FOR THESE SEVERAL DAYS WHILE HE DOES IT.  I

13  KNOW THAT MR. PLETCHER, THE AUSA ATTORNEY, DOESN'T WANT HIM

14  REMOVED FOR THAT LENGTH OF TIME.  SO THAT WOULD BE, YOU KNOW,

15  AN ISSUE WITH THAT.

16          THE COURT:  OKAY.  DOESN'T IT SEEM AS THOUGH, IF WE

17  TRY WHAT MR. BURSTEIN IS SUGGESTING, THAT WOULD BE THE LEAST

18  DIFFICULT FOR ALL OF US?  IT'S JUST ▓▓▓▓▓▓▓▓  A

19  LITTLE BIT FROM THE ▓▓  PREVENTS ANY DIFFICULTIES; THEN WE

20  DON'T HAVE TO WORRY ABOUT IT.  I'M NOT INCLINED TO REMOVE GPS,

21  AND I'VE ALREADY SAID AND I'M NOT GOING TO REMOVE 24-HOUR

22  SECURITY FROM MR. FRANCIS.  SO I THINK WE JUST NEED TO SEE.

23          I DON'T KNOW WHEN THIS IS GOING TO START.  WHEN IS

24  THIS ▓▓▓ GOING TO START?

25          ▓▓▓▓▓▓▓ IT'S UP TO YOU.

1    THE COURT:  WELL, I'M NOT A PHYSICIAN, SIR --

2    ▮▮▮▮▮▮    OH, NO.

3    THE COURT:  -- SO I'LL DEFER TO YOU.

4    ▮▮▮▮▮▮    SO I WANTED TO START IT A FEW WEEKS

5    AGO, AND I WAS ASKED TO HOLD OFF UNTIL THIS HEARING.

6    THE COURT:  OH, OKAY.  SO, I MEAN, IF SOMETHING

7    HAPPENS TO THE DEVICE, I THINK IT GOES WITHOUT SAYING, AND I'M

8    SURE COUNSEL FOR MR. FRANCIS WOULD AGREE, HE WILL MAKE GOOD

9    FOR THAT.

10   MR. BURSTEIN:  YES, YOUR HONOR.

11   THE COURT:  HE'S ABLE TO DO THAT.

12   MR. BURSTEIN:  AND JUST TO FOLLOW UP ON YOUR HONOR'S

13   LAST QUESTION, WE'RE PREPARED TO START AT THE CONVENIENCE OF

14   MR. KOSMO.  SO WE'LL MAKE THE APPOINTMENT, MAKE SURE THAT IT

15   WORKS WITH HIS SCHEDULE TO BE THERE FOR THE FIRST APPOINTMENT,

16   BECAUSE, REALLY, THE ONLY OTHER OPTION IS TO REMOVE IT FOR A

17   MONTH, AND I KNOW THAT THE GOVERNMENT AND THE COURT ARE NOT

18   COMFORTABLE WITH THAT.

19   THE COURT:  WELL, LET ME ASK MR. PLETCHER.  HE HASN'T

20   HAD A CHANCE TO SAY ANYTHING ON THIS.

21   YOU AGREE THAT THE GPS SHOULD NOT BE REMOVED?

22   MR. PLETCHER:  I AGREE WITH THAT.  I THINK ▮▮▮▮▮

23   IT SEEMS LIKE A GOOD FIRST OPTION, AND IF IT CONTINUES TO

24   FUNCTION, THEN, GREAT, AND IF IT AT SOME POINT BREAKS, THEN

25   MR. FRANCIS CAN BUY A NEW ONE, AND WE CAN REASSESS AT THAT

1    POINT.  BUT, YOU KNOW, THERE'S NO REASON -- THERE'S NO DOWN
2    SIDE TO TRYING IT OUT.
3            THE COURT:  I DON'T KNOW HOW MUCH THE DEVICES COST,
4    BUT GIVEN EVERYTHING THAT'S BEING DONE HERE, IT DOESN'T SEEM
5    AS THOUGH IT WOULD BE THE LARGEST EXPENSE THAT'S BEING
6    INCURRED HERE.  I DON'T REALLY KNOW, BUT.
7            MR. KOSMO:  THE DEVICE IS $1500, YOUR HONOR.
8            THE COURT:  OKAY.  WELL, I GUESS WHAT I WOULD BE
9    INTERESTED IN, IF YOU'RE GOING TO BE THERE FOR THE FIRST TIME,
10   IS KNOWING THAT AFTER THAT EXPOSURE THAT THE DEVICE IS STILL
11   OPERATIONAL, AND IF IT'S NOT, TO NOTIFY COUNSEL, BOTH COUNSEL,
12   IMMEDIATELY SO THAT THEY COULD BE INFORMED IF SOMETHING
13   HAPPENS TO THE DEVICE.
14           MR. KOSMO:  YES, WE CAN DO THAT, YOUR HONOR.
15           MR. PLETCHER:  THE IDEA BEING THAT IF IT'S NOT
16   OPERATIONAL AFTER THE              , THAT MR. KOSMO HAVE A
17   SECOND DEVICE READY TO REATTACH RIGHT THEN, I MEAN, RIGHT
18   THERE.
19           MR. KOSMO:  THAT'S WHAT I WOULD DO, YOUR HONOR.
20           THE COURT:  OKAY.  THANK YOU.
21           IS THERE ANYTHING ELSE?
22           YOU'VE BEEN OUT TO THE LOCATION WHERE MR. FRANCIS IS
23   STAYING.
24           MR. KOSMO:  MY COWORKERS WENT WHEN HE MOVED 30 DAYS
25   AGO.  I PLAN TO GO MAYBE EVEN TODAY OR IN THE NEXT FEW DAYS.

1    THE COURT:  OKAY.  IS THERE ANYTHING YOU WANT TO ADD
2  TO THE STATUS REPORT THAT WE'RE DOING TODAY?
3    MR. KOSMO:  YOUR HONOR ASKED ABOUT HE SEEMS -- I
4  SPEAK TO HIM ONCE A WEEK.  YOUR HONOR ASKED HIM ABOUT HIS
5  ATTITUDE.  HE SEEMS POSITIVE, SO THAT'S A GOOD THING.
6    THE COURT:  OKAY.  IT IS A VERY GOOD THING.
7    MR. KOSMO:  AND ALSO HE'S ASKED ME PERSONALLY ABOUT
8  THE CHURCH, AND WE DON'T OPPOSE HIM GOING TO CHURCH ONCE A
9  WEEK.  THERE IS AN ██████████, WHICH WE WOULD NEED COURT
10  APPROVAL TO REMOVE THE DEVICE FOR THE ████████████████
11  ████████████████
12    THE COURT:  OKAY.
13    MR. BURSTEIN:  WE'LL COORDINATE WITH PRETRIAL FOR
14  WHEN THAT HAPPENS.  SO, JUST TO PUT A FINE POINT ON IT, WE'D
15  NEED THE COURT'S APPROVAL FOR AND EVERYBODY'S IN AGREEMENT FOR
16  CHURCH ONCE A WEEK.  IT IS APPROXIMATELY A SIX-MINUTE DRIVE.
17  SECURITY CAN TAKE HIM, OR ONE OF HIS LAWYERS WILL TAKE HIM.  I
18  MEAN, SECURITY WOULD BE THERE, SO.
19    THE COURT:  I THINK SECURITY NEEDS TO GO WITH HIM.
20    MR. BURSTEIN:  SECURITY WILL BE THERE.  WE NEED THE
21  ████████████.  I THINK WE'VE ALL AGREED HOW WE'RE GOING TO
22  PROCEED WITH THAT, AND THEN I THINK JUST -- WE DON'T NEED A
23  WRITTEN ORDER, JUST THE COURT'S, YOU KNOW, APPROVAL THAT THE
24  ████████████ -- THE GPS CAN COME OFF BRIEFLY DURING ████████
25  MR. KOSMO WILL THEN REATTACH IT IMMEDIATELY AFTER ████████

```
 1            THE COURT:  OKAY.

 2            MR. BURSTEIN:  AND WE'LL SCHEDULE ALL OF THOSE THINGS

 3    IN ADVANCE WITH PRETRIAL SO THAT THERE'S NO MISCOMMUNICATION.

 4            THE COURT:  OKAY.  FAIR ENOUGH.

 5            YOU'RE IN AGREEMENT WITH ALL OF THAT?

 6            MR. PLETCHER:  YES, ABSOLUTELY, YOUR HONOR.

 7            THE COURT:  YES.  I WAS GOING TO ASK YOU TO PREPARE

 8    AN ORDER TO THIS EFFECT.

 9            WE'RE GOING TO HAVE ANOTHER STATUS.  I THINK THERE'S

10    NO REASON TO HAVE IT UNTIL AFTER WE HAVE THE NEXT      , AND

11    YOU SUGGESTED THE NEXT      IS GOING TO BE THE END OF MAY?

12                        :  CORRECT.

13            THE COURT:  SO MAYBE WE GO TO THE BEGINNING OF JUNE

14    FOR THAT.

15            YOU KIND OF FURROWED YOUR BROW.  DO YOU THINK WE

16    SHOULD KEEP IT EVERY 30 DAYS EVEN THOUGH --

17            MR. PLETCHER:  NO, NO.  I WAS JUST RUNNING MY OWN

18    SCHEDULE THROUGH MY MIND VERY QUICKLY AND JUST NOTING THAT I'M

19    OUT APPROXIMATELY THE FIRST SEVEN DAYS OF JUNE.  SO MAYBE WE

20    CAN SET IT JUST AFTER THAT TO ACCOMMODATE MY SCHEDULE.

21            THE COURT:  OKAY.

22                        :  THAT WOULD WORK WELL, BECAUSE I THINK

23    IT WOULD BE NICE TO HAVE OUR                    WEIGH IN ON

24    HIS PROGNOSIS AFTER                SO THE            MEETS

25    EVERY THURSDAY.
```

31

```
1            THE COURT:  OKAY.
2                      :  SO THE THURSDAY AFTER THE     , I COULD
3    DO MY BEST TO HAVE THE          MEET.
4            THE COURT:  OKAY.  THAT WOULD BE EXCELLENT.
5            SO WHAT WOULD THAT BE, ALEX?
6            SO YOU'RE GONE THE FIRST WEEK OF JUNE, MR. PLETCHER?
7            MR. PLETCHER:  YEAH, FROM THE LAST WEEK IN MAY AND
8    THE FIRST WEEK IN JUNE.  SO IF WE COULD SCHEDULE IT, YOU KNOW,
9    JUNE --
10                     :  I COULD USE THAT TIME FOR
11
12           MR. PLETCHER:  EXACTLY.
13           THE COURT:  THAT'S GREAT.
14           MR. PLETCHER:  YOU KNOW, SOMETIME JUNE 10 TO 15.
15           THE DEPUTY CLERK:  THURSDAY, JUNE 14TH, AT TEN
16   O'CLOCK.
17           THE COURT:  OKAY.  SO THAT'S WHEN OUR NEXT STATUS
18   WOULD BE.
19           NOW, I HAVE A COUPLE OF QUESTIONS THAT PROBABLY DON'T
20   RELATE TO THE DOCTOR.
21           BUT WHY DON'T YOU HAVE A SEAT, SIR --
22                     :  SURE.
23           THE COURT:  -- JUST IN CASE SOMETHING COMES UP.
24           AND MY QUESTION IS THIS.  THIS FRIDAY, I HAVE NINE
25   DEFENDANTS COMING IN ON THIS CASE, AND A COUPLE OF QUESTIONS.
```

1    I'M CURIOUS WHEN THIS INFORMATION IS GOING TO BE PUBLIC.  I'M

2    CURIOUS IF WE'RE STILL THINKING THAT THERE MIGHT BE

3    DEPOSITIONS TAKEN, OR WHAT THE STATUS IS GOING FORWARD, AND

4    WHEN ARE PEOPLE GOING TO KNOW THE SITUATION, IF ANY.

5              MR. PLETCHER: YEAH.

6              THE COURT: I THINK SOME DAY THIS IS GOING TO COME TO

7    LIGHT.

8              MR. PLETCHER: SO IT IS NOT A PUBLICLY KNOWN --

9              THE COURT: NO, I KNOW.

10              MR. PLETCHER:  -- SITUATION NOW.

11              THE COURT: I KNOW.

12              MR. PLETCHER: I DON'T EXPECT THAT IT WILL BE

13    PUBLICLY KNOWN BEFORE FRIDAY.

14              THE COURT: OKAY.

15              MR. PLETCHER: WE'VE BEEN WAITING TO GET AS GOOD

16    MEDICAL INFORMATION AS WE CAN TO MAKE THE BEST DECISIONS AND

17    EFFICIENT USES OF THE COURT'S TIME AND THE DEFENDANTS' TIME.

18    I THINK --

19              THE COURT: LET ME ASK YOU THIS.  WHEN YOU SAY THAT,

20    MR. PLETCHER, DO YOU MEAN YOU NEED MORE TIME, YOU NEED TO GO

21    TILL JUNE, OR ARE WE AT A POINT WHERE THE GOVERNMENT IS

22    ASSESSING WHERE WE GO FROM HERE?

23              MR. PLETCHER: YEAH.  SO ONE OF THE THINGS THAT WE

24    WERE WAITING FOR WAS THE MOST RECENT          TO GIVE US AN

25    INDICATION OF WHETHER THE

 1    ███████████████████████████████████████, BECAUSE IF THEY

 2    WERE JUST ████████████████████ THAT HAPPENS FROM TIME TO

 3    TIME AND THE ████████████ YOU KNOW, AT BAY AFTER THE ████

 4    ██████████, THAT WAS GOING TO SUGGEST ONE POTENTIAL.  OF

 5    COURSE, NOW THAT THE ██████████████████████████████████████

 6    ██████████████████████ AND THAT THAT TREATMENT CONTINUES,

 7    I THINK THAT PUTS US ON A DIFFERENT COURSE.  SO I DO

 8    ANTICIPATE AT LEAST MAKING A MOTION TO THE COURT TO TAKE A

 9    DEPOSITION.  OF COURSE, IT MAY NEVER BE NECESSARY.  RIGHT?  IF

10    THIS TREATMENT UNFOLDS SUCCESSFULLY AND MR. FRANCIS IS

11    AVAILABLE, THEN HIS DEPOSITION TESTIMONY IS JUST SHELVED AND

12    WE PROCEED WITH THE TRIAL JUST IN THE NORMAL COURSE, BECAUSE

13    HE'D BECOME AVAILABLE.  BUT IF HE IS UNAVAILABLE, THEN WE

14    WOULD HAVE IT FOR OUR USE AT WHATEVER EVENTUAL TRIAL.  SO I DO

15    THINK THAT THAT'S LIKELY.  I THINK THAT SOMETIME, YOU KNOW, IN

16    MAY, JUNE, SOMETHING LIKE THAT, WE WILL INFORM ALL OF DEFENSE

17    COUNSEL ABOUT WHAT IS GOING ON.  WE WILL MAKE A MOTION.

18             THE COURT:  I MEAN, THE SOONER YOU TELL THEM, THE

19    BETTER.  THEY'RE PREPARED FOR THIS, BECAUSE I CAN HEAR THE

20    OBJECTIONS NOW.

21             MR. PLETCHER:  OH, YES, AND WE CAN HEAR THEM ALSO.

22             THE COURT:  OKAY.  SO YOU HAVEN'T MADE A FINAL

23    DECISION, BUT WITH EVERY DAY, WITH EVERY MONTH, YOU GET MORE

24    DATA.

25             MR. PLETCHER:  THAT WAS THE VIEW FROM THE PREVIOUS

1  STATUS HEARING TO THIS ONE. NOW, I THINK THE DATE IS PRETTY
2  GOOD ABOUT WHAT THE COURSE OF TREATMENT IS GOING TO BE AT
3  LEAST FOR THE FORESEEABLE FUTURE, AND I THINK THAT CHARTS A
4  COURSE FOR US IN ONE PARTICULAR DIRECTION, IF WE SHOULD, YOU
5  KNOW, GET READY, YOU KNOW, NOTICE THIS, MAKE SURE THAT THE --
6  OF COURSE, THE CASE HAS BEEN INDICTED OVER A YEAR. THE LION'S
7  SHARE OF DISCOVERY HAS BEEN PRODUCED, ALTHOUGH WE'RE
8  PERFECTING THAT IN ANTICIPATION OF THIS, THAT PEOPLE ARE READY
9  AS NECESSARY TO CROSS-EXAMINE MR. FRANCIS IN ANY DEPOSITION
10  SETTING.
11        THE COURT: OKAY. ANYTHING YOU WANT TO ADD?
12        MR. PLETCHER: I SHOULD SAY, YOUR HONOR, I DON'T
13  ANTICIPATE TALKING ABOUT ANY OF THIS IN OUR HEARING ON FRIDAY,
14  AND IN FACT, YOU KNOW, WE ARE WORKING WITH DEFENSE COUNSEL.
15  THEY'VE SENT VERY RECENTLY DISCOVERY LETTERS, AND WE'RE
16  WORKING WITH THEM ON THAT. SO I DON'T EXPECT THERE TO BE
17  REALLY ANYTHING FOR THE COURT EXCEPT TO SET OUR MOTION.
18        THE COURT: OKAY. NO, I DIDN'T THINK ANY OF THIS WAS
19  GOING TO COME UP. I JUST WANTED AND I KNEW THE GOVERNMENT WAS
20  GOING TO BE THINKING IN TERMS OF WHAT ARE WE GOING TO DO WITH
21  THESE CASES THAT ARE PENDING, AND THERE ARE NINE OF THEM.
22        MR. PLETCHER: YEAH, I'M TRYING TO SEE DOWN THE ROAD.
23        THE COURT: OKAY.
24        MR. PLETCHER: YES. THANK YOU, YOUR HONOR.
25        THE COURT: VERY WELL.

1          GO AHEAD, COUNSEL.

2          MR. BURSTEIN:  THANK YOU, YOUR HONOR.

3          SO JUST WE'LL, OF COURSE -- YOU KNOW, AS WE TALKED

4  ABOUT AT THE LAST HEARING, ONE OF MR. FRANCIS' OBLIGATIONS IS

5  THIS COOPERATION WITH THE GOVERNMENT.  WE TAKE IT VERY

6  SERIOUSLY.  WE'VE BEEN WORKING, I THINK YOU CAN SEE,

7  HAND-IN-GLOVE.  SO WHATEVER THE GOVERNMENT NEEDS, WE'RE

8  PREPARED TO MAKE THAT HAPPEN IN TERMS OF DEPOSITIONS IN

9  PREPARATION.

10         BUT TURNING BACK TO THE CURRENT MATTER, AS I DID LAST

11  TIME, I PREPARED AN ORDER BASED ON JUST THE                    ,

12  AND CHURCH ONCE A WEEK, WHICH I'LL JUST EMAIL DIRECTLY TO MR.

13  RAMOS, AND --

14         THE COURT:  AND SHOW IT TO COUNSEL.

15         MR. BURSTEIN:  OH, OF COURSE.

16         THE COURT:  AND WE'LL BE SETTING THE NEXT STATUS FOR

17  JUNE 14TH, AT TEN A.M.  WE CAN GO AHEAD AND PUT THAT IN THE

18  ORDER.

19         MR. BURSTEIN:  OKAY.

20         THE COURT:  AND WE'RE GOING TO REITERATE THAT GPS IS

21  TO BE MAINTAINED AND 24-HOUR SECURITY.

22         MR. BURSTEIN:  RIGHT.  I'LL JUST PUT THAT THE OTHER

23  CONDITIONS REMAIN UNCHANGED.

24         MR. RAMOS DOES REMIND ME THAT THE GREEN SHEET -- THIS

25  DOESN'T NEED TO BE IN THE ORDER -- THE GREEN SHEET NEEDS TO BE

1    AMENDED BECAUSE IT'S CURRENTLY ONLY THROUGH MAY 31ST.  SO I

2    SUGGEST WE PUT IT AT, JUST IN CASE SOMETHING GETS MOVED,

3    SOMETHING, THAT WE JUST PUT IT TOWARDS THE END OF JUNE OR

4    AFTER, AT LEAST A DAY OR TWO AFTER THE HEARING.

5              THE COURT:  GET IT PAST THE HEARING.

6              MR. BURSTEIN:  EXACTLY.

7              THE COURT:  SO THAT'S THE 14TH.

8              MR. BURSTEIN:  MAYBE THE 18TH OR SO, JUST SO THAT

9    THERE'S ENOUGH TIME TO GET A NEW GREEN SHEET, IF IT CONTINUES,

10   OR TO WORK OUT WHATEVER ELSE NEEDS TO HAPPEN.

11             THE COURT:  OKAY.  LET'S GO TO THE 18TH, THEN.

12             IS THAT AGREEABLE?

13             MR. PLETCHER:  YES, YOUR HONOR.  THANK YOU.

14             THE COURT:  OKAY.

15             MR. BURSTEIN:  THAT WON'T BE IN THE ORDER.

16             THE COURT:  NO, IT WON'T, BUT WE NEED TO KNOW THAT.

17             OKAY.  ANYTHING ELSE THAT WE SHOULD GO OVER THIS

18   MORNING?

19             MR. PLETCHER:  NOT FROM THE GOVERNMENT.  THANK YOU,

20   YOUR HONOR.

21             THE COURT:  OKAY.

22             MR. BURSTEIN:  NOT FROM ME.

23             THE COURT:  YES.  THE DOCTOR HAS SOMETHING.

24                        :  I GUESS THE ONLY THING WOULD BE, IF THE

25   LANDLORD WANTS HIS PLACE BACK, THEN MAYBE IT COULD BE

```
 1   AGREEABLE TO HAVE HIM HOUSED IN AN IDENTICAL UNIT IN THE SAME
 2   COMPLEX WITHOUT (PAUSE) --
 3            THE COURT:  OKAY.  WITHOUT COMING BACK TO COURT?
 4                      :  RIGHT, RIGHT, RIGHT.
 5            THE COURT:  MR. PLETCHER.
 6            MR. PLETCHER:  JUST, YOU KNOW, IT SEEMS LIKE A
 7   SPECULATIVE POSSIBILITY, AND I GUESS --
 8            THE COURT:  I'M SORRY?
 9            MR. PLETCHER:  IT SEEMS LIKE A SPECULATIVE
10   POSSIBILITY.  I MEAN, WE CAN MAKE CONTINGENCIES FOR
11   EVERYTHING, BUT HOWEVER THE COURT WANTS IT.
12            THE COURT:  WELL, I'M HOPEFUL THAT HE WON'T HAVE TO
13   MOVE.  BUT IF HE HAS TO MOVE, YOU'RE GOING TO BE ABLE, IT
14   SOUNDS LIKE, TO MAKE ACCOMMODATION ELSEWHERE.  IF THAT OCCURS,
15   TALK TO COUNSEL, AND HE'LL TALK TO MR. PLETCHER.  I DON'T
16   THINK THERE WILL BE ANY PROBLEM, BUT WE DO NEED TO KNOW THAT.
17                        SURE.
18            THE COURT:  I'M NOT REALLY GOING TO AUTHORIZE
19   SOMETHING IN ADVANCE.  SO LET'S FIND OUT.  I'M NOT WILLING TO
20   DO THAT, BUT THANK YOU.
21            ANYTHING ELSE?
22            MR. KOSMO:  YOUR HONOR --
23            THE COURT:  YES.
24            MR. KOSMO:  -- THAT    WILL BE ONE, I GUESS IS THE
25   QUESTION.
```

```
 1              THE COURT:  OKAY.

 2              MR. KOSMO:  IS IT ONE THROUGH THE COURSE OF TREATMENT

 3      THAT WE WOULD REMOVE AND REINSTALL, OR SHOULD WE HAVE

 4      AUTHORIZATION TO REMOVE AND REINSTALL FOR MAYBE A

 5      █████

 6              THE COURT:  OKAY.  THAT'S A GOOD QUESTION.

 7              GO AHEAD, DOCTOR.

 8              ███████████ :  JUST ONE.  THE ███████████████    WHO

 9      DRAINED HIS ████████████████████████████████ , AND SO HE

10      JUST NEEDS THE ███████████

11              THE COURT:  OKAY.  AND DO YOU KNOW THE DATE FOR THAT?

12      YOU NEED THE DATE AND EVERYTHING FOR THAT, DON'T YOU?

13              MR. KOSMO:  YES.  COUNSEL OFFERED TO PROVIDE ME THE

14      DATE FOR THAT, AND THEN WE CAN --

15              THE COURT:  OKAY.

16              MR. KOSMO:  -- ORGANIZE THAT.

17              THE COURT:  SO THAT'S JUST A ███████████

18      ███████    THE FIRST DATE, YOU'RE GOING TO COORDINATE, AND

19      CHURCH CAN BE WEEKLY.  IT'S WEEKLY, HIS REQUEST?

20              MR. BURSTEIN:  YES, YOUR HONOR.

21              THE COURT:  OKAY.  THE NEXT STATUS IS JUNE 14TH, AT

22      TEN.

23              ANYTHING ELSE?

24              MR. PLETCHER:  NO, YOUR HONOR.

25              MR. BURSTEIN:  NO, YOUR HONOR.
```

1    MR. PLETCHER:  THANK YOU, YOUR HONOR.

2         THE COURT:  ALL THE OTHER CONDITIONS REMAIN

3    UNCHANGED.

4         MR. BURSTEIN:  THANK YOU, YOUR HONOR.

5         THE COURT:  OKAY.  THANK YOU.

6         THANK YOU FOR COMING, SIR.

7              ███████ :  THANK YOU VERY MUCH.

8         THE COURT:  IT WAS VERY HELPFUL.  THANK YOU.

9         (PROCEEDINGS ADJOURNED AT 9:44 A.M.)

10   ----------------------------------------------------------------

11                    (END OF TRANSCRIPT)

12

13        I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

14   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

15   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

16

17        S/FRANK J. RANGUS _ _ _ _ _ _ _ _ _

18        FRANK J. RANGUS, OCR

19

20

21

22

23

24

25

---------------------------------------------------------------

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 13-CR-3781-JLS |
| | ) | 13-CR-3782-JLS |
| PLAINTIFF, | ) | 13-CR-4287-JLS |
| | ) | |
| | ) | JUNE 14, 2018 |
| VS. | ) | |
| | ) | STATUS HEARING |
| LEONARD GLENN FRANCIS, | ) | |
| | ) | |
| DEFENDANT. | ) | (FILED UNDER SEAL) |

---------------------------------------------------------------

APPEARANCES:

FOR THE PLAINTIFF:      MARK W. PLETCHER
                        U.S. ATTORNEY'S OFFICE
                        SOUTHERN DIST. OF CALIFORNIA
                        CRIMINAL DIVISION
                        880 FRONT STREET, SUITE 6293
                        SAN DIEGO, CA  92101

FOR THE DEFENDANT:      DEVIN J. BURSTEIN
                        WARREN & BURSTEIN
                        501 W. BROADWAY, SUITE 240
                        SAN DIEGO, CA  92101

THE COURT REPORTER:     GAYLE WAKEFIELD, RPR, CRR

JUNE 14, 2018

                    MORNING SESSION

          THE CLERK:  NUMBER ONE ON THE CALENDAR, 13-CR-3781,

13-CR-3782 AND 13-CR-4287, UNITED STATES VS. LEONARD GLENN

FRANCIS, FOR A SEALED STATUS HEARING.

          THE COURT:  THANK YOU.

          APPEARANCES, PLEASE.

          MR. BURSTEIN:  GOOD MORNING, YOUR HONOR, DEVIN BURSTEIN

ON BEHALF OF MR. FRANCIS.

          THE COURT:  THANK YOU.

          MR. PLETCHER:  GOOD MORNING, YOUR HONOR, MARK PLETCHER

ON BEHALF OF THE UNITED STATES.

          THE COURT:  THIS IS A CLOSED PROCEEDING.  LET'S LOOK

AROUND AND MAKE SURE EVERYBODY KNOWS WHO IS HERE.  THERE ARE

TWO EXTERNS IN THE BACK OF THE COURTROOM.  THEY'RE WITH

CHAMBERS.  THEY UNDERSTAND THIS IS A CONFIDENTIAL, CLOSED

HEARING, THAT THE TRANSCRIPT OF THIS WILL BE SEALED UNTIL

FURTHER ORDER OF THE COURT.

          MR. PLETCHER:  THANK YOU, YOUR HONOR.  DIRECTLY BEHIND

ME IS SPECIAL AGENT BONNIE NASH WITH THE DEFENSE CRIMINAL

INVESTIGATE SERVICE, AND BEHIND HER JOSH GREEN, AN ASSISTANT

U.S. ATTORNEY FROM MY OFFICE.

          THE COURT:  VERY GOOD.  YOU'VE GOT OTHER COUNSEL BEHIND

YOU.

          MR. BURSTEIN:  YES, MS. JENKINS FROM OUR OFFICE IS

```
 1    BEHIND ME, YOUR HONOR, AS WELL AS             TO MY RIGHT.

 2         THE PRETRIAL SERVICES OFFICER:  YOUR HONOR, ERIC KOSMO

 3    APPEARING FOR PRETRIAL SERVICES.

 4         THE COURT:  THANK YOU.

 5         WELL, I HAVE READ THE REPORT THAT'S BEEN SUBMITTED

 6    DATED JUNE THE 5TH, 2018.  SO WITH THAT, WHOEVER WOULD LIKE TO

 7    BEGIN MAY GO AHEAD.  MR. BURSTEIN, DO YOU WANT TO GO AHEAD,

 8    SIR?  I DON'T KNOW WHAT THE REQUEST IS OF THE COURT TODAY.

 9         MR. BURSTEIN:  THANK YOU, YOUR HONOR.  WE'VE STAYED

10    OBVIOUSLY IN TOUCH WITH            , AS WELL AS THE GOVERNMENT,

11    AS WELL AS MS. SCHIMMEL FROM THE MARSHALS.  ALL THE PARTIES I

12    THINK ARE IN AGREEMENT, AND WE'RE ASKING THE COURT AT THIS

13    POINT TO EXTEND THE MEDICAL FURLOUGH.  THE CURRENT DUE DATE IS

14    JUNE 18TH, SO WE WANTED TO MAKE            AVAILABLE TO THE

15    COURT -- AS LAST TIME -- IN CASE THERE WERE SPECIFIC QUESTIONS

16    OR EXPLANATIONS NEEDED, TO TALK ABOUT FURTHER DATES.

17         AND ALSO, JUST AS A MATTER OF CONVENIENCE, WHILE WE'RE

18    HERE, THE SENTENCING DATE NEEDS TO MOVE AGAIN, BUT I CAN JUST

19    DO THAT BY ORDER.  I WANTED TO AT LEAST INFORM THE COURT.

20    THAT'S REALLY ALL OF IT.

21         THE COURT:  OKAY.

22         MR. BURSTEIN:  AND I BELIEVE MR. PLETCHER WILL SPEAK TO

23    IT, BUT I THINK WE HAVE BEEN SUCCESSFUL IN AVOIDING ANY NEED TO

24    MOVE MR. FRANCIS, SO WE WANTED TO THANK THE COURT FOR THAT.

25         THE COURT:  WITH A LITTLE HELP FROM THE COURT, HE
```

1    DIDN'T NEED TO GO TO NORFOLK.

2              MR. BURSTEIN:  YES, YOUR HONOR, AND WE APPRECIATE THAT.

3              THE COURT:  YOU'RE WELCOME.

4              FILL ME IN ON WHATEVER YOU WANT TO TELL ME, MR.

5    PLETCHER.

6              MR. PLETCHER:  AS THE UNITED STATES POSITION IN THIS

7    HAS ALWAYS BEEN IS TO ENSURE THAT ON THE ONE HAND MR. FRANCIS

8    IS RECEIVING REQUIRED MEDICAL CARE, BUT AT THE SAME TIME THAT

9    WE'RE NOT CREATING A SYSTEM OF FAVORITISM, ONE THAT

10   PREFERENTIALLY ADVANTAGES CERTAIN DEFENDANTS OVER OTHERS.

11   WE'VE BEEN IN CONSULTATION WITH THE MARSHAL SERVICE,

12   PARTICULARLY WITH THIS NEW MEDICAL INFORMATION.

13             THE COURT:  THE REPORT THAT I HAVE?

14             MR. PLETCHER:  YES, MA'AM.  I KNOW MS. SCHIMMEL HAS

15   BEEN IN TOUCH WITH THE DOCTORS FROM THE UNITED STATES MARSHAL

16   SERVICE IN WASHINGTON, D.C. ABOUT THIS DIAGNOSIS AND PROGNOSIS

17   AND PROPOSED TREATMENT, AND IT'S MY UNDERSTANDING, FROM THE

18   MARSHAL SERVICE, THAT THEY ARE UNABLE TO TREAT MR. FRANCIS IN

19   CALIFORNIA, THAT THEY COULD POTENTIALLY TREAT HIM IN SOUTH

20   CAROLINA, BUT EVEN THAT WOULD PRESENT AN ENORMOUS AMOUNT OF

21   LOGISTICAL AND RESOURCE DIFFICULTIES FOR THEM AND EVEN STILL

22   THEY PROBABLY COULDN'T PROVIDE THE CARE THAT IS PROPOSED BY

23   THEIR                          .

24             SO WITH THAT INFORMATION IN FRONT OF US, WHILE WE STILL

25   SHARE THE COURT'S CONCERN ABOUT MR. FRANCIS' ABILITY TO BE

PRESENT, THE POSSIBILITY THAT HE WOULD BE A FLIGHT RISK, THE
NEED TO CONSTRUCT CONDITIONS TO ENSURE HIS AVAILABILITY AT
FUTURE TRIAL PROCEEDINGS, IT SEEMS THAT BASED ON ALL OF THE
AVAILABLE EVIDENCE -- MEDICAL EVIDENCE, AND WHAT THE MARSHALS
IS TELLING US, THAT THE ONLY WAY THAT THIS CAN BE ACCOMPLISHED
TOGETHER IS THROUGH HIS CONTINUED FURLOUGH, BUT I'LL LET MS.
SCHIMMEL TALK MORE BECAUSE REALLY THIS IS AN ISSUE THAT COMES
DOWN TO THE MARSHAL SERVICE, ITS RESOURCES AND CAPABILITIES,
AND BALANCING THAT AGAINST THE INHERENT FLIGHT RISK OF MR.
FRANCIS.

           MS. SCHIMMEL:  GOOD MORNING, YOUR HONOR.

           THE COURT:  GOOD MORNING.

           MS. SCHIMMEL:  I HAVE SPOKEN WITH OUR DOCTOR,
IN D.C. ABOUT THIS CASE EXTENSIVELY OVER THE LAST COUPLE OF
MONTHS AND WE JUST FEEL IT'S IN MR. FRANCIS' BEST INTERESTS TO
KEEP HIM IN THE FACILITY HE'S AT NOW, TO KEEP HIS CONTINUITY OF
CARE WITH THE PHYSICIANS THAT HE HAS.  IF HE CAME INTO OUR
CUSTODY, HE POTENTIALLY MIGHT HAVE TO HAVE NEW DOCTORS BECAUSE
IT DEPENDS ON WHAT INSURANCE THEY TAKE, WHETHER THEY ACCEPT
OURS.

           IT'S A VERY COMPLEX CASE THAT INVOLVES A LOT OF
SPECIALTIES, SO IF HE WERE IN OUR CARE WE WOULD HAVE TO MOVE
HIM TWO TO THREE TIMES A WEEK.  BECAUSE OF HIS SECURITY RISK WE
WOULD HAVE TO USE DEPUTIES TO MOVE HIM.  WE COULDN'T USE OUR
CONTRACT GUARDS LIKE WE NORMALLY DO TO MOVE PRISONERS TO THESE

1   APPOINTMENTS.

2          SO RIGHT NOW OUR RESOURCES, OUR STAFFING LEVELS ARE

3   REALLY LOW, SO IT WOULD BE A BIG BURDEN FOR US TO BRING HIM

4   BACK INTO OUR CUSTODY.  AGAIN, WE DON'T THINK OUR FACILITIES

5   WOULD BE ABLE TO CARE FOR HIM AT ANY OF THE FACILITIES WE HAVE

6   HERE IN SAN DIEGO.

7          THE COURT:  I DON'T KNOW IF THIS IS A QUESTION FOR YOU

8   OR FOR MR. PLETCHER.  HE'S ON MEDICAL FURLOUGH.  WHAT

9   CONDITIONS HAVE BEEN PLACED ON THAT FROM A SECURITY STANDPOINT?

10          MR. PLETCHER:  YES, YOUR HONOR.  I DON'T KNOW THAT I

11   CAN NAME THEM ALL VERBATIM, BUT IT'S A LIST AS LONG AS MY ARM.

12   HE'S ON EFFECTIVELY HOUSE ARREST WITH GPS MONITORING.

13          THE COURT:  CORRECT.

14          MR. PLETCHER:  HE'S ALLOWED TO LEAVE ONCE WEEKLY FOR

15   RELIGIOUS SERVICE AND FOR DOCTORS APPOINTMENTS.  HE'S NOT

16   ALLOWED ELECTRONIC DEVICES.  I DON'T BELIEVE HE'S ALLOWED

17   VISITORS.  AND HE HAS TWO GUARDS WHO ARE POSITIONED 24 HOURS A

18   DAY OUTSIDE OF HIS DOOR, THAT IF MR. FRANCIS WERE TO TRY OR

19   ATTEMPT TO LEAVE WOULD IMMEDIATELY CONTACT THE MARSHAL SERVICE,

20   AND THEN I SUPPOSE MR. KOSMO WOULD ALSO NOTE THAT BREACH

21   THROUGH THE GPS MONITORING.  I THINK THOSE ARE THE CONDITIONS

22   CURRENTLY IN PLACE.

23          THE COURT:  WAS THERE A BOND PUT IN PLACE OR NO, TO THE

24   BEST OF ANYBODY'S KNOWLEDGE?  THIS WAS ALL SET UP WITH JUDGE

25   ADLER AND THAT'S WHY I'M A LITTLE BIT --

6

1      MR. BURSTEIN:  NO, THERE'S NO BOND.  I MEAN, THIS HAS

2   BEEN GOING ON FOR SIX MONTHS.

3      THE COURT:  I KNOW.

4      MR. BURSTEIN:  HE'S BEEN IN PERFECT COMPLIANCE.  I

5   MEAN, I THINK WE ALL UNDERSTAND HE DOESN'T WANT TO GO ANYWHERE

6   BUT              OFFICE.

7      THE COURT:  I WANT TO HEAR FROM THE DOCTOR.  LET ME

8   HEAR FROM PROBATION.

9      ANYTHING ELSE YOU WANT TO ADD TO THAT?  REALLY EVERY --

10     MR. PLETCHER:  I WAS JUST TRYING TO RECOLLECT THAT

11  THOSE ARE ALL OF THE CONDITIONS THAT HAVE BEEN IMPOSED.  YOU'RE

12  ABSOLUTELY RIGHT, THE INITIAL CONDITIONS WERE IMPOSED BY JUDGE

13  ADLER WHEN HE WAS HOSPITALIZED, AND THEN AS HE TRANSFERRED OVER

14  THOSE CONDITIONS WERE MAINTAINED IN PLACE BY YOUR HONOR WITH

15  THE SPECIFIC RETENTION OF THE SECURITY GUARD TO ENSURE THAT --

16  THE 24-HOUR SECURITY GUARD TO ENSURE HIS COMPLIANCE WITH ALL

17  THE REST OF THE CONDITIONS.

18     AND I THINK MR. BURSTEIN IS CORRECT, I'M NOT AWARE THAT

19  SINCE THIS HAS BEEN PUT IN PLACE THAT THERE'S BEEN ANY LAPSE IN

20  OR VIOLATION OF ANY OF THE CONDITIONS.

21     THE COURT:  SO THE GOVERNMENT IS SATISFIED WITH THE

22  CURRENT SITUATION ON MEDICAL FURLOUGH AND THE CONDITIONS THAT

23  HAVE BEEN IMPOSED, MR. PLETCHER?

24     MR. PLETCHER:  THE GOVERNMENT ACKNOWLEDGES, AS THE

25  COURT HAS, THAT THERE IS INHERENT RISK OF FLIGHT.  WE ARE

7

```
 1    BALANCING THAT IN EACH TURN WITH THE NEXT BEST AVAILABLE
 2    MEDICAL EVIDENCE.  RIGHT NOW, BASED ON WHAT            AND THE
 3              HAS SAID, MR. FRANCIS HAS BEEN DIAGNOSED WITH
 4                       WHO NEEDS VERY, VERY FREQUENT TREATMENT,
 5    INCLUDING AN ARRAY OF SPECIALISTS.
 6              IN CONSULTATION WITH THE MARSHAL SERVICE, WHO IS SAYING
 7    THEY CAN'T PROVIDE THAT TREATMENT, EXCEPT POSSIBLY HALFWAY
 8    ACROSS THE COUNTRY, AND EVEN THEN AT A SIGNIFICANT RESOURCE
 9    DEFICIT, I THINK THAT THE BALANCE FOR US COMES OUT IN TERMS OF
10    SOME CONTINUITY HERE, BUT WE HAVE HEARD AND CONTINUE TO SHARE
11    THE COURT'S CONCERN THAT THIS IS AN UNUSUAL CIRCUMSTANCE.
12              THE COURT:  THANK YOU.  LET ME HEAR FROM PROBATION.
13              THE COURTROOM DEPUTY:  PRETRIAL.
14              THE COURT:  PRETRIAL.  I'M SORRY.
15              THE PRETRIAL SERVICES OFFICER:  YES, YOUR HONOR.  I
16    HAVE SOME OF THE RECORDS HERE THAT MR. FRANCIS HAS BEEN
17    COMPLIANT WITH HIS CONDITIONS OF THE MEDICAL FURLOUGH.  SOME
18    ADDITIONAL RESTRICTIONS ON HIM ARE HE CANNOT POSSESS CASH OR
19    CREDIT CARDS.  HE CAN ONLY LEAVE HIS HOME FOR SPECIFIC
20    PURPOSES, THAT'S MEDICAL APPOINTMENTS, PHYSICAL THERAPY, THE
21              , REHABILITATION, WHICH IS WALKING WITH A SECURITY
22    IN AND AROUND HIS COMPLEX.  HE CAN LEAVE FOR COURT HEARINGS AND
23    MEETINGS WITH COUNSEL.  AND I WILL BE NOTIFIED IF HE WERE TO
24    LEAVE THE HOME WITHOUT PERMISSION, AND I WOULD CONTACT YOUR
25    HONOR FORTHWITH.
```

```
 1              THE COURT:  SO PRETRIAL IS SATISFIED, GIVEN THE

 2    TOTALITY OF EVERYTHING HERE, AND I THINK EVERYBODY IN THIS

 3    COURTROOM HAS TO ACKNOWLEDGE, THIS IS AN EXTRAORDINARILY UNIQUE

 4    SITUATION, ONE THAT THE COURT HASN'T SEEN BEFORE.

 5              THE PRETRIAL SERVICES OFFICER:  THAT'S CORRECT.  AND

 6    ALSO I'M UNSURE IF THERE'S A CONDITION PREVENTING HIM FROM

 7    HAVING ELECTRONIC DEVICES.  I KNOW HE HAS A CELL PHONE.  I'M

 8    NOT SURE ABOUT THAT CONDITION.

 9              MR. BURSTEIN:  THAT'S HOW HE CONTACTS PRETRIAL

10    SERVICES.

11              THE PRETRIAL SERVICES OFFICER:  RIGHT.  I DON'T THINK

12    THAT IS A CONDITION THAT HE NOT POSSESS ELECTRONIC DEVICES.

13    THAT'S NOT SOMETHING I'M LOOKING INTO.

14              THE COURT:  OKAY.

15              MR. BURSTEIN:  IT'S NEVER BEEN AN ISSUE, YOUR HONOR, IN

16    TERMS OF PRETRIAL.

17              THE COURT:  LET ME ADDRESS THE DOCTOR.  YOU WROTE THIS

18    REPORT TO THE COURT, SIR.  PLEASE COME OVER, IT'S EASIER FOR ME

19    TO HEAR YOU WITH BOTH MICROPHONES THERE SIR.  THANK YOU FOR

20    COMING TODAY.

21                            :  GOOD MORNING.  THANK YOU FOR HAVING ME.

22              THE COURT:  I READ YOUR TWO-PAGE REPORT MORE THAN ONCE,

23    SIR, AND THE BOTTOM LINE AS YOU PUT IT IF HE WERE TO RETURN --

24    IF MR. FRANCIS WERE TO RETURN TO A CUSTODIAL SENTENCE, TO A

25    HIGH DEGREE OF MEDICAL PROBABILITY THAT WOULD SHORTEN THE
```

```
1    QUANTITY OF HIS LIFE AND EXPOSE HIM TO A MUCH HIGHER RISK OF

2    MEDICAL COMPLICATIONS AS OPPOSED TO HIS CURRENT SITUATION,

3    CORRECT?

4                     ▮▮▮▮▮▮▮▮:  CORRECT.

5              THE COURT:  I UNDERSTOOD THIS.  I READ IT VERY

6    CAREFULLY.  THERE ARE SOME TECHNICAL THINGS HERE IN THE

7    FOOTNOTES THAT ARE BEYOND MY LEVEL OF EXPERTISE.  IF THERE'S

8    ANYTHING THAT YOU WOULD LIKE TO ADD, SIR, PLEASE GO AHEAD, BUT

9    THIS WAS VERY, VERY HELPFUL TO HAVE THIS IN ADVANCE AND I

10   APPRECIATE IT.

11                     ▮▮▮▮▮▮▮▮:  GREAT.  THANK YOU VERY MUCH.  JUST A

12   COUPLE OF THINGS.

13              THE COURT:  CERTAINLY.

14                     ▮▮▮▮▮▮▮▮:  TO NOTE EVERYTHING THAT IS SAID IN THIS

15   REPORT IS VERY OBJECTIVE AND FACT BASED, AND THE CALCULATION OF

16   HIS SURVIVAL IS BASED ON THE ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  WHICH IS PUBLISHED IN THE NEW ENGLAND

18   JOURNAL OF MEDICINE.  HIS MEDIAN SURVIVAL WOULD BE ABOUT

19   ▮▮▮▮▮▮  FROM THE DAY OF DIAGNOSIS.

20              THE COURT:  AND THAT'S BECAUSE YOU SEE THERE NOT BEING

21   A CURE, BEING THAT HE WOULDN'T BE RESPONSIVE IN SOME FASHION TO

22   THE VARIOUS LEVELS OF TREATMENT YOU'D BE PROVIDING, INCLUDING

23   ▮▮▮▮▮▮▮▮, WHICH IF WE WERE FORTUNATE -- IF MR. FRANCIS

24   WERE FORTUNATE, THAT COULD BE A POSSIBLE GOOD RESOLUTION.

25                     ▮▮▮▮▮▮▮▮:  ABSOLUTELY.  AND SO DESPITE -- A COUPLE
```

10

OF THINGS ABOUT THOSE ████████, DESPITE THE ODDS BEING HEAVILY
AGAINST HIM, IT'S OUR HIPPOCRATIC OBLIGATION, SORT OF AS
DOCTORS, TO REALLY GIVE HIM THE BEST SHOT, ALBEIT A VERY SLIM
SHOT, OF BEATING THIS.

IF YOU GO BACK TO THE ████████████████████,
THEY LOOKED AT FACTORS THAT INFLUENCE THAT NUMBER ████████,
AND SEVERAL OF THOSE FACTORS ARE REALLY OUTSIDE OUR CONTROL,
LIKE SOME OF THESE BLOOD TESTS.  ONE OF THE FACTORS THAT IS
VERY MUCH WITHIN OUR CONTROL IS WHAT THEY CALL HIS PERFORMANCE
STATUS, AND HIS PERFORMANCE STATUS, FROM A LAYMAN'S STANDPOINT,
IS HOW GOOD YOU LOOK.  DOES A 50-YEAR OLD PERSON LOOK LIKE
THEY'RE 50 OR DO THEY LOOK LIKE THEY'RE 80?  IF THEY LOOK LIKE
THEY'RE 80, THEY'RE NOT PERFORMING VERY WELL.

AND SO IF YOU BREAK THAT DOWN MORE OBJECTIVELY, IT'S TO
DO WITH THEIR MOBILITY, THEIR WEIGHT, THEIR OTHER ILLNESSES,
AND THEIR OVERALL IMMUNOSUPPRESSION, OR HOPEFULLY LACK THEREOF.
THAT'S THE FIRST THING THAT WE CAN CONTROL AS HIS TREATING
PHYSICIANS, AND HENCE THE INTENSITY OF THE THERAPY IS REALLY TO
CHANGE THAT ONE VARIABLE THAT WE CAN CHANGE RIGHT NOW, WHICH IS
OPTIMIZING HIS PERFORMANCE STATUS.  I'M SURE MANY OF US IN THIS
ROOM HAVE HAD FAMILY MEMBERS THAT HAVE ████████, AND ONCE
THEY START LOOKING ILL THAT YOU KNOW IT'S OVER, AND THAT'S
ESSENTIALLY WHAT WE'RE TRYING TO DO IS OPTIMIZE HIS HEALTH, HIS
NUTRITION, HIS WEIGHT, AND EVERYTHING ELSE, SO THAT'S THE
BACKGROUND OF THE NEED FOR THE INTENSE TREATMENT.

```
 1           THEN, OF COURSE, THERE'S THE ███████████████, THE
 2    ESCALATION OF ██████████████████████, AND THEN THE NEED
 3    FOR OTHER POSSIBILITY OF ████████████████████████████
 4    ███████████████████████.
 5           ██████████████ IS THE ██████████████ THAT I SPOKE
 6    WITH JUST SHORTLY AFTER THE █████ REPORT, IN CONSULTATION FOR
 7    MR. FRANCIS, AND ████████████████ RECOMMENDATION AND ███
 8    ██████████ FEELING AS WELL, IS WE SHOULD NOT DO ANYTHING
 9    ABOUT ██████████████ UNTIL HE'S SURVIVED 12 MONTHS. IF HE
10    ALREADY HAS ███████████████████████████, THEN PUTTING HIM
11    THROUGH EITHER ██████████████████████████████████████████
12    ██████ BECAUSE THE HORSE HAS ALREADY BOLTED, IF YOU WILL.
13           THE COURT: THERE'S NO WAY TO DETERMINE THAT. █████████
14    DOESN'T DO THAT.
15           ████████████: UNFORTUNATELY, THE ANSWER IS NO. WE HAVE
16    -- TO THE BEST OF OUR KNOWLEDGE, ██████████████████████, BUT
17    UNFORTUNATELY WE RECOGNIZE THROUGH TREMENDOUS EVIDENCE THAT
18    OFTEN TIMES THERE IS ████████████████████████████████████
19    █████████████████████████████████████████████████████████
20    ████████████████████████████████████ ELSEWHERE.
21           OUR GOAL IS TO OPTIMIZE HIM, TO GIVE HIM ███████████
22    ███████████████████████████████ TO OPTIMIZE HIS PHYSICAL
23    WELLNESS. AS AN ASIDE, ████████████████████████████████████
24    █████████████████████████████ BUT IT'S RELATED TO A REDUCTION OF
25    HIS FAT, AN INCREASE IN HIS MUSCLE MASS, AND AN INCREASE IN HIS
```

```
 1    METABOLIC RATE JUST BY ████████████████████████████████

 2    ███████████████████████████████████     SO THINGS LIKE THAT HAVE

 3    BEEN VERY, VERY INFLUENTIAL.  THERE'S ALSO THE PROBABILITY OF

 4    ENROLLING HIM IN CLINICAL TRIALS.  SO IN A NUTSHELL, I FEEL

 5    THAT HIS BEST AND, FRANKLY, HIS ONLY CHANCE OF MEETING OR

 6    EXCEEDING HIS ████████  -- I HATE TO USE THAT METAPHOR --

 7    SENTENCE PLACED BY THE DOCTORS.

 8            AND THEN, FINALLY, I UNDERSTAND EVERYTHING THAT'S GOING

 9    ON HERE, AND I CERTAINLY WANT TO STAY IN MY LANE AND REPRESENT

10    HIM AS HIS DOCTOR, BUT MR. FRANCIS, LIKE MANY OF MY PATIENTS,

11    THEY REALLY ARE IMPRISONED BY THEIR DIAGNOSIS.  THIS MAN IS NOT

12    GOING TO RUN ANYWAY BECAUSE HE'S DEAD IF HE LEAVES.

13            THE COURT:  GETTING THE ████████████ , THAT'S GOING TO

14    BE PART OF THE BIGGER PLAN TO GET HIS MOBILITY GOING?

15            ████████ :  RIGHT.  AND BEFORE I DO ████████████  -- I

16    WAS TALKING TO ████████  YESTERDAY -- WE'LL PROBABLY TRY AND

17    INJECT -- THE PROBLEM WITH THE ████████████████████████

18    ████████ , BUT WE HAVE TO ████████████████████████████████

19    ██████████████████████████████ , AND I'M WORRIED ABOUT

20    THE ██████████████████████████████  WHILE WE DO THAT, SO IT'S

21    WINNING THE BATTLE AND LOSING THE WAR IF YOU LIKE.

22            THERE'S A POSSIBILITY OF ████████████████████████

23    ████████████████████████████████████████████████████████

24    ██████████████████████████████████████████     WE'RE TRYING

25    TO LOOK INTO WHETHER THAT MIGHT BE AN ALTERNATIVE ████████
```

1          ▮▮▮▮.  THAT'S VERY, VERY EXPERIMENTAL.

2          THE COURT:  WHEN WE WERE LAST IN SESSION, DOCTOR, YOU

3     INDICATED THAT TODAY WAS A GOOD DATE FOR A SUBSEQUENT HEARING

4     BECAUSE YOU WOULD HAVE HAD THE INFORMATION THAT YOU WROTE ABOUT

5     IN YOUR TWO-PAGE REPORT, AND THAT YOU'RE TELLING ME ABOUT NOW,

6     AND IT'S BEEN VERY HELPFUL.

7          ▮▮▮▮▮▮▮:  THANK YOU.

8          THE COURT:  WHEN WOULD THE NEXT POINT IN TIME BE THAT

9     WE SHOULD RECONVENE AND ASSESS THIS?

10         ▮▮▮▮▮▮▮:  I'M CERTAINLY HAPPY TO COME BACK WHENEVER

11    YOU WANT TO, BUT THE NEXT --

12         THE COURT:  FROM A MEDICAL STANDPOINT.

13         ▮▮▮▮▮▮▮:  THE NEXT INFLECTION POINT IS PROBABLY

14    GOING TO BE IN ABOUT 12 MONTHS BECAUSE THAT'S WHEN WE'RE GOING

15    TO ASSESS WHETHER OR NOT HE'S RESPONDED TO ▮▮▮▮▮▮ AND

16    WHETHER OR NOT HE'S GOING TO GO AND HAVE ▮▮▮▮▮▮.

17         THE COURT:  OKAY.  FROM A MEDICAL STANDPOINT.

18         ▮▮▮▮▮▮▮:  THAT'S THE NEXT MEDICAL INFLECTION POINT.

19         THE COURT:  THANK YOU, SIR.  I DON'T HAVE ANY OTHER

20    QUESTIONS AT THIS TIME.  MR. PLETCHER MAY HAVE A QUESTION FOR

21    YOU.

22         MR. PLETCHER:  IT'S NOT MY PLACE NECESSARILY TO

23    QUESTION THE DOCTOR, BUT ONE THING THAT WAS A LITTLE UNCLEAR TO

24    ME IN READING THE REPORT IS EXACTLY WHAT IS THE ▮▮▮▮▮

25         ▮▮▮▮▮▮▮▮▮ THAT IS GOING TO TAKE PLACE IN THE NEXT

14

```
1    FOUR WEEKS, EIGHT WEEKS, 12 WEEKS.  HE'S ON ████ -- WHATEVER,

2    COMMON SPELLING.

3           THE COURT:  SPELL IT, MR. PLETCHER.  I'VE GOT IT,

4    GAYLE.

5           MR. PLETCHER: █████████████████ SO HE'S ON THAT, AND

6    THERE'S SOME SUGGESTION THAT HE MAY BE MOVING ON TO A MORE

7    ████████████████████████████████████████, BUT THAT DOESN'T

8    SEEM LIKE THAT IS CAST IN STONE, THAT ANYONE HAS MADE THAT

9    DECISION YET.

10          SO CAN YOU DESCRIBE -- REALLY THAT'S MY CONCERN, RIGHT,

11   ALL THE REST OF THESE THINGS THAT ARE ████████████████████

12   OR WHATEVER ARE IMPORTANT I UNDERSTAND TO HIS OVERALL SORT OF

13   BODY OF HEALTH, BUT REALLY ███████████████ IS WHAT I THINK

14   I, AND MAYBE THE COURT, ARE MOST CONCERNED ABOUT, SO HE'S GOT

15   ████████████ RIGHT NOW WHICH I THINK IS ███████████████.

16           ████████████:  CORRECT.

17          MR. PLETCHER:  IF HE MOVES ON TO ████████████ THAT'S

18   SOMETHING OTHER THAN THAT, AND SO HOW -- WHAT'S THE TIMING?

19   WHAT DOES THAT LOOK LIKE?  AND THEN WHAT'S THE EXACT PROCESS OF

20   ████████████?  BECAUSE I THINK THAT'S HELPFUL IN MAKING OUR

21   DETERMINATION ABOUT WHERE HE PHYSICALLY NEEDS TO RESIDE.

22           ████████████:  SO WE ASSESSED HIS RESPONSE TO THE ████

23   ████████████ ████████████████ HE'S ON -- FORGIVE THE SCIENCE

24   LESSON -- IS SOMETHING KNOWN AS A -- IT BASICALLY ████████████

25   ████████████████████████████████ ████████████████████████ M
```

15

```
 1    ████████████████████████████████████████████████
 2    ████████████████    ████████████████
 3    ████████████    HE'S ON.
 4            THE COURT:  AND HE TAKES THAT  ████    HE DOESN'T HAVE
 5    TO GO TO THE HOSPITAL.
 6            ████████████ :  NO, HE TAKES THAT  ████  .  IN HIS FIRST
 7    ████████  THAT WAS DONE AFTER THE ████  , THAT I REPORTED ON AT
 8    THE LAST COURT APPEARANCE,  ██████████████████████████████  ,
 9    AND SO WE WERE GOING TO KEEP HIM  ████████████████      AND
10    THEN BASED ON HIS NEXT  ██████  , WHICH WE JUST DID, WE WERE
11    ACTUALLY GOING TO SWITCH HIM OVER  ██████████████  , BUT THEY
12    ████████████████████████████  .
13            SO THE GOAL OF  ██████████████  MUCH LIKE WEEDS AND
14    FERTILIZERS, IS YOU KEEP GOING UNTIL YOU DON'T GET A RESPONSE.
15    SO I THINK OUR NEXT DECISIONAL POINT WILL BE ABOUT TWO OR
16    THREE MONTHS FROM NOW.  THE LAST  ██████  WAS DONE JUST BEFORE
17    JUNE THE 5TH, SO THE NEXT  ██████  WILL BE AUGUST, AND AT THAT
18    TIME, BASED ON HIS AUGUST -- ONCE HIS  ████████  LEARNS TO
19    OVERCOME THIS DRUG, THAT WOULD BE WHEN WE WOULD MOVE ON TO THE
20    NEXT ONE.
21            THE COURT:  AND THAT'S  ██████████████
22    ████████████    ██████████████████      THEN, OF
23    COURSE, THERE'S THE CONCURRENT DISCUSSION ABOUT CLINICAL TRIALS
24    AS WELL.
25            THE COURT:  SO YOU'RE LOOKING POSSIBLY FOR A CLINICAL
```

```
 1    TRIAL THAT HE WOULD QUALIFY FOR.

 2                        :  RIGHT.

 3              THE COURT:  MR. PLETCHER, DID THAT ANSWER YOUR

 4    QUESTION?

 5              MR. PLETCHER:  IT DOES.  I GUESS THE IDEA THAT THE

 6              WOULD TAKE PLACE DURING THIS PERIOD SO THEY WOULD TAKE

 7    HIM OFF THE                       FOR SOME PERIOD OF TIME, DECIDE

 8    HOW TO TREAT THESE OTHER AILMENTS, AND PUT HIM BACK ON

 9                        SO IT CONTINUES TO WORK, AND THEN YOU HAVE THIS

10    ADDITIONAL         IN AUGUST.

11                             CORRECT.

12              THE COURT:  MR. BURSTEIN, ANYTHING YOU WANTED TO HAVE

13    THE DOCTOR ELABORATE ON?

14              MR. BURSTEIN:  NO, YOUR HONOR, HE'S REALLY HERE FOR THE

15    COURT'S QUESTIONS, AND THE GOVERNMENT AS WELL.

16              THE COURT:  THANK YOU.

17                        THANK YOU VERY MUCH.

18              THE COURT:  I APPRECIATE YOUR COMING THIS MORNING.

19              MR. BURSTEIN:  YOUR HONOR, I'M JUST STANDING LISTENING

20    TO WRITE DOWN THE NEXT DATES.

21              THE COURT:  SO THE REQUEST IS -- I GUESS THE CURRENT

22    MEDICAL FURLOUGH ENDS JUNE THE 18TH.

23              MR. BURSTEIN:  THAT'S CORRECT, YOUR HONOR.

24              THE COURT:  SO THE REQUEST IS I EXTEND IT FOR SOME

25    PERIOD OF TIME.
```

1          MR. BURSTEIN:  THAT'S CORRECT, YOUR HONOR.

2          THE COURT:  THAT TIME PERIOD OF TIME BEING WHATEVER I'M

3     WILLING TO DO.

4          MR. BURSTEIN:  THAT'S CORRECT, YOUR HONOR.

5          THE COURT:  I GUESS WHAT I'M WONDERING IS THIS, I THINK

6     THERE'S A SUFFICIENT BASIS FOR DOING THAT.  I THINK, DOCTOR,

7     YOU'VE BEEN VERY, VERY HELPFUL.  I THINK HAVING THIS

8     INFORMATION, AFTER THE MOST RECENT SCAN, AND THE COURSE OF

9     POTENTIAL TREATMENT THAT YOU'VE OUTLINED HERE, HAS BEEN

10    HELPFUL.

11         SO I'M JUST THINKING, DID YOU WANT TO BE HEARD ON THIS,

12    MR. PLETCHER AS TO A TIME FRAME?

13         MR. PLETCHER:  NO, I DON'T THINK I HAVE ANY SORT OF

14    MAGIC SUGGESTION ONE WAY OR ANOTHER.  THE COURT'S INCLINATION

15    PREVIOUSLY IS TO KEEP CLOSE TABS ON THE SITUATION, AND THAT

16    WOULD BE MY INCLINATION AS WELL.  IT CONTINUES TO BE AN ONGOING

17    BALANCING TEST.

18         I THINK THERE'S SOME VERY OPTIMISTIC INFORMATION IN THE

19    CONTEXT OF THIS DISCUSSION, RIGHT -- OR "OPTIMISM" IS RELATIVE,

20    BUT IN THE CONTEXT OF THIS DISCUSSION SOME OF

21    FINDINGS ARE MORE POSITIVE THAN THEY HAVE BEEN AT PREVIOUS

22    HEARINGS, SO THAT'S GOOD NEWS, BUT AT THE SAME TIME I THINK

23    THAT ADDITIONAL DATES ARE FOR THE COURT TO KEEP APPROPRIATE

24    TABS ON THE ISSUE AT APPROPRIATE INFLECTION POINTS, AND I'M A

25    LITTLE LEERY EVEN GOING OUT PAST THE AUGUST 15TH NEXT

1    THOUGH I DON'T KNOW WHAT WE ACCOMPLISH BEFORE THAT.

2         THE COURT:  FROM WHAT THE DOCTOR SAID, IT SEEMED TO ME

3    THAT THE FARTHEST OUT WE COULD GO IS AUGUST.  MAYBE WE DO

4    SOMETHING BEFORE THEN, BUT NOT ASK THE DOCTOR TO COME, AND

5    LEAVE IT TO YOU, MR. BURSTEIN, IF THERE'S INFORMATION THAT

6    SHOULD BE BROUGHT TO THE COURT.  WHAT I HEARD LOUD AND CLEAR

7    WAS FROM A MEDICAL STANDPOINT THE REAL MILESTONE MARK IS AT A

8    YEAR, AND IN A YEAR MR. FRANCIS IS GOING TO KNOW AN AWFUL LOT

9    MORE ABOUT HIS HEALTH AND HOW IT'S GOING.

10        IT'S EASY IN THE LEGAL CONTEXT TO BE DISCUSSING THIS

11   ISSUE.  WE ALL WANT TO BE CAUTIOUSLY HOPEFUL THAT EVERYTHING

12   YOU SET FORTH, DOCTOR, WILL LEAD TO A VERY POSITIVE OUTCOME,

13   BUT IT'S A CAUTIOUS ONE AND A CONCERNING ONE.

14        MR. PLETCHER:  I DON'T WANT TO READ TEA LEAVES OR LOOK

15   INTO A CRYSTAL BALL, BUT IF MR. FRANCIS CONTINUES TO RESPOND

16   WELL ON                    , IF THE REST OF HIS HEALTH PROFILE

17   CONTINUES TO IMPROVE, THE

18                 CONTINUES TO IMPROVE, AND THE RECOMMENDATION IS

19   TO KEEP HIM ON                  , THAT MAY CHANGE BOTH THE

20   COURT'S AND THE GOVERNMENT'S VIEW OF THIS GOING FORWARD, RIGHT?

21   IF THEY'RE NOT -- IF IT'S NOT GOING TO MOVE TO

22                                                        UP AT

23   SPECIALTY CLINICS MULTIPLE DAYS A WEEK, THAT CHANGES -- THAT

24   MAY CHANGE OUR VIEW OF THIS.

25        SO I THINK MAYBE THE COURT SHOULD SET THIS FOR

```
1    SOMEWHERE SIX TO EIGHT WEEKS OUT WITH AN EYE TOWARD TAKING THE

2    TEMPERATURE AND GETTING STATUS ON THE REST OF THE PHYSICAL

3    PROFILE, THE                                            , AND

4    THE REST OF HIS THING.  OBVIOUSLY THE DOCTORS HAVE BEEN VERY

5    CONCERNED ABOUT                        , AND THAT OVERALL HEALTH

6    PROFILE, SO MAYBE THAT'S AN APPROPRIATE PLACE WHERE WE CAN JUST

7    CHECK IN.

8            MR. BURSTEIN:  I THINK            HAS SOME INFORMATION

9    ON THAT.  PERSONALLY, I DON'T THINK IT WOULD MAKE SENSE TO DO

10   THIS BEFORE THE NEXT

11           THE COURT:  THAT WOULD BE IN AUGUST.

12                   :  CORRECT.           HIM EVERY THREE MONTHS,

13   AND HIS LAST      WAS JUST BEFORE THE            MEETING ON

14   JUNE 5TH.

15           THE COURT:  I THINK THAT MAKES SENSE, DOCTOR, SO LET'S

16   -- WE DON'T HAVE THAT DATE SET YET, DO WE?  SO MAYBE IF WE GO

17   THE LATTER PART OF AUGUST -- OR DO YOU KNOW THE DATE THAT WOULD

18   BE?

19                   :  IT'S UP TO ME TO SET IT.

20           MR. BURSTEIN:  I THINK IF WE SET IT THE THIRD OR FOURTH

21   WEEK OF AUGUST, WE'LL BE SAFE, YOUR HONOR.

22           MR. PLETCHER:            , DOES THE            MEET

23   AGAIN AFTER THAT          ?

24           THE COURT:          .

25                   :  THE            WILL MEET ESSENTIALLY
```

1    WHENEVER I WANT THEM TO.  BECAUSE THE NEXT MEDICAL INFLECTION

2    POINT'S NOT LIKELY TO BE FOR A YEAR, THERE'S NOT GOING TO BE

3    ANY ADDITIONAL INFORMATION.  THE ███████ MEETS TO SET THE

4    COURSE OF TREATMENT, AND THE COURSE OF TREATMENT IS PRETTY MUCH

5    SET BETWEEN NOW AND THE NEXT MEDICAL INFLECTION POINT, WHICH IS

6    WHETHER OR NOT HE QUALIFIES FOR ███████████████

7    ████████████████

8    AND CERTAINLY IN TERMS OF ███████, JUST GOING BACK

9    TO EVERYTHING ELSE, I MEAN, IT'S REALLY NOT HOLISTIC MEDICINE.

10    ██████████████████████████ WHICH HAS VERY

11    MUCH TO DO WITH HIS WEIGHT, HIS █████, AND BLOOD PRESSURE,

12    AND MOBILITY, VERY MUCH DIRECTLY IMPACTS HIS SURVIVAL.

13    MR. BURSTEIN:  SO, YOUR HONOR, ASSUMING THE COURT WOULD

14    LIKE TO DO AN OFF DAY AND NOT A --

15    THE COURT:  NOT A FRIDAY.

16    MR. BURSTEIN:  WE COULD DO THURSDAY THE 30TH, YOUR

17    HONOR, IF THAT'S AVAILABLE TO THE COURT, AND THAT WOULD MAKE

18    SURE THAT I COULD GET NOT ONLY THE █████ DONE BUT ANOTHER

19    REPORT SO IF THE DOCTOR'S NOT GOING TO COME INTO COURT WE'LL

20    HAVE THE REPORT.

21    THE COURT:  THAT'S AGREEABLE WITH THE COURT.  LET ME

22    CHECK WITH THE GOVERNMENT.

23    MR. PLETCHER, MR. BURSTEIN JUST SUGGESTED AUGUST THE

24    30TH AT 10:00 A.M.

25    MR. PLETCHER:  IF THE █████ IS GOING TO GO IN THE

```
1    MIDDLE OF AUGUST, THAT'S --

2              THE COURT:  THAT GIVES THE           AN OPPORTUNITY

3    TO REVIEW IT, GIVE THE DOCTOR AN OPPORTUNITY TO KIND OF --

4                       :  I WASN'T PLANNING ON PUTTING IT BACK TO

5    THE           AFTER THIS   , BUT IF YOU WANT ME TO, I WILL.

6              THE COURT:  SIR, I'D LEAVE IT TO YOUR SOUND MEDICAL

7    JUDGMENT.

8                       :  THANK YOU, I APPRECIATE THAT.  THE

9    FUNCTION OF THE           IS TO GUIDE TREATMENT, SO THE

10   TREATMENT IS PRETTY MUCH SET BETWEEN NOW AND THE REASSESSMENT

11   OF HIS           BASED ON HIS ONE YEAR'S WORTH OF TREATMENT.

12             I DO ANTICIPATE -- IT'S NOT A QUESTION OF IF HE NEEDS

13   AN                       , IT'S JUST A QUESTION OF WHEN,

14   AND FROM OUR STANDPOINT WE WANT TO DELAY IT AS MUCH AS POSSIBLE

15   IN ORDER TO GET THE MOST THAT WE CAN OUT OF THESE CURRENT

16   MEDICATIONS, AND ALSO TO IMPROVE HIS PERFORMANCE STATUS AS MUCH

17   AS POSSIBLE, BEFORE WE GO INTO THE NEXT LINE OF TREATMENT.

18             THE COURT:  SO YOU KNOW THAT THE CURRENT

19   HE'S ON CANNOT TOTALLY DO THE JOB.

20                       :  NO, IT CAN'T.

21             THE COURT:  OKAY.

22                       :  FOR THE RECORD, IN THE OPINION OF

23          NOTHING CAN.  IN THE OPINION OF           , WHAT WE'RE

24   DOING IS WE'RE TRYING TO PROLONG HIS LIFE.  WE'RE BEYOND THE

25   PROBABILITY OF CURE.
```

```
1          THE COURT:  AS I UNDERSTAND IT, THE BETTER THE RESULT
2    WITH THE CURRENT          , THE BETTER THE LIKELIHOOD THAT
3            MAY BE ABLE TO DO THE REST OF IT.
4               :  THAT'S CORRECT.  YOU ALMOST THINK OF IT
5    IN THE SAME WAY AS YOU THINK OF ANTIBIOTICS, THE FIRST ROUND OF
6    ANTIBIOTICS KILLS AS MANY BACTERIA AS POSSIBLE, AND THE SECOND
7    ROUND OF ANTIBIOTICS GETS WHAT'S LEFT BEHIND, AND THEN THE
8    THIRD TIME, AND THE FOURTH TIME, AND SO FORTH.
9          THE COURT:  IT'S CERTAINLY NOT THE COURT'S PLACE OR
10   COUNSEL'S PLACE, IN MY OPINION, TO SECOND-GUESS THE MEDICAL
11   TREATMENT.  I JUST WANTED TO UNDERSTAND THAT, SIR, SO THANK
12   YOU.
13               :  OF COURSE.
14         THE COURT:  THE          WILL MEET WHEN YOU THINK
15   IT'S MEDICALLY CALLED FOR.
16               WHICH IS REALISTICALLY TOWARDS THE END OF
17   THIS YEAR OR THE BEGINNING OF NEXT YEAR.
18         MR. PLETCHER:  JUST A REQUEST IN ADVANCE OF THE NEXT
19   HEARING, PERHAPS          AND HIS COLLEAGUES, THROUGH MR.
20   BURSTEIN, COULD PUT TOGETHER A SIMILAR TYPE REPORT FOR THE
21   COURT, FOR US ALSO, BUT REALLY FOR THE MARSHAL SERVICE SO THAT
22   THEY CAN REASSESS.  IT'S REALLY ON TO THEM.  I APPRECIATE ALL
23   THE THINGS THAT          IS SAYING ABOUT THE PROGNOSIS AND
24   THE MEDICAL, FROM HIS MEDICAL PERSPECTIVE, ABOUT HOW TO KEEP
25   MR. FRANCIS ALIVE FOR THE LONGEST POSSIBLE TIME.
```

1    THAT ONLY IS IN PART THE ANALYSIS THAT THE REST OF US

2    ARE MAKING, RIGHT, WE HAVE TO BALANCE THAT AGAINST THE

3    INTERESTS OF THE JUSTICE SYSTEM, THE ABILITY TO TREAT ALL

4    PRISONERS THE SAME.  OBVIOUSLY THE MARSHAL SERVICE HAS

5    SOMETHING IN PLACE TO DEAL WITH THIS, AND SO WE REALLY NEED TO

6    -- MEDICALLY THE INFLECTION POINT IS 12 MONTHS, THAT'S NOT THE

7    INFLECTION POINT FOR THE REST OF US, RIGHT, WE NEED TO KEEP A

8    CLOSER TAB ON THAT TO MAKE SURE THAT WE'RE CARRYING OUT OUR

9    DUTIES FAITHFULLY AS WELL.

10       THE COURT:  WE'RE GOING OUT APPROXIMATELY 10 WEEKS,

11   WHICH I THINK IS A REASONABLE POINT TO HAVE A FURTHER STATUS IN

12   THIS MATTER.

13       I DO HAVE A QUESTION FOR BOTH SIDES, AND MAYBE IT'S

14   MORE FOR THE GOVERNMENT, SINCE WE WERE LAST IN SESSION THE

15   COURT HAS SIGNED THE JOINT REQUEST FOR NUMEROUS THINGS TO BE

16   UNSEALED, AND SOME WERE REDACTED.  THE NATURE OF THIS HEARING

17   TODAY HAS BEEN PREDOMINANTLY MEDICAL AND NEEDS TO BE SEALED.

18   IS EVERYBODY IN AGREEMENT WITH THAT?

19       MR. BURSTEIN:  THAT'S OUR JOINT REQUEST.  AT LEAST MY

20   UNOPPOSED REQUEST BECAUSE THE LAW IS CLEAR THAT MEDICAL

21   INFORMATION IS THE PROTOTYPICAL INFORMATION THAT SHOULD BE

22   UNDER SEAL, IT'S PRIVATE.

23       MR. PLETCHER:  I THINK THE COROLLARY TO THAT, TO THE

24   EXTENT THE COURT IS GOING TO ORDER THE MEDICAL FURLOUGH

25   EXTENDED, I THINK THAT CAN BE DONE WITHOUT REFERENCE TO THE

SPECIFIC MEDICAL INFORMATION, AND THAT CAN BE DONE PUBLICLY.

THE COURT: I AGREE. AND YOU COULD PREPARE AN ORDER THAT THE COURT -- YOU'LL PREPARE THE ORDER, MR. BURSTEIN, SAME TERMS AND CONDITIONS. AND DID I SAY HOW FAR I WOULD GO ON THAT, YET?

MR. BURSTEIN: YES, YOU DID, YOUR HONOR, YOU SAID -- WE SET AUGUST THE 30TH.

THE COURT: FOR FURTHER STATUS, AND I'LL TAKE THAT THROUGH -- LET'S TAKE IT THROUGH THE 31ST.

MR. BURSTEIN: FOR THE MEDICAL FURLOUGH.

THE COURT: RIGHT.

MR. BURSTEIN: AS LONG AS THAT GIVES THE COURT AND PRETRIAL AND ALEX ENOUGH TIME TO -- ASSUMING IT'S GOING TO CONTINUE -- AND THE MARSHALS, IF A DAY IS ENOUGH TIME TO REDO IT.

THE COURT: I THINK IT IS. IS IT?

MS. SCHIMMEL: YES, THAT'S FINE.

THE COURT: THE ONLY OTHER QUESTION I HAVE, AND THIS MAY GO OUT -- WELL, WHERE ARE WE GOING FROM HERE? SHOULD THERE BE AN EXPECTATION WHAT'S OUT THERE IS PUBLIC, AND I'M AWARE OF THAT, AND CERTAIN TRANSCRIPTS HAVE BEEN MADE PUBLIC AS REDACTED. IS THERE STILL A THOUGHT OF DEPOSITION, AND WHAT ARE WE DOING WITH REGARD TO THAT IF BLOCKS OF TIME NEED TO BE CLEARED OFF MY CALENDAR?

MR. PLETCHER: YES, I THINK IN AN EXERCISE OF CAUTION

1   THE UNITED STATES IS GOING TO NOTICE THIS FOR DEPOSITION ON THE

2   POSSIBILITY THAT IF TRIAL CONTINUES TO BE CONTINUED, FOR

3   WHATEVER REASON, AND MR. FRANCIS IN FACT BECOMES UNAVAILABLE,

4   FOR WHATEVER REASON, THAT DEPOSITION TESTIMONY WOULD SERVE AS A

5   SURROGATE.

6           WE WERE KIND OF WAITING FOR THIS MEDICAL REPORT, SEEING

7   WHAT THE PROGNOSIS WAS, TO DETERMINE EXACTLY WHEN AND BY WHAT

8   PROCEDURE TO NOTICE THAT, BUT I THINK OUR PREVAILING VIEW --

9   WITHOUT MAKING ANY KIND OF GUARANTEE, OUR PREVAILING VIEW IS,

10  YES, THAT WE WOULD NOTICE IT FOR DEPOSITION. THIS DEALS WITH

11  NINE OTHER DEFENDANTS AND THEIR COUNSEL.

12          THE COURT: BUT THEY NOW KNOW THERE'S AN ISSUE.

13          MR. PLETCHER: THEY DO. THE COURT HAS SET MOTION

14  HEARING I BELIEVE ON DECEMBER 3RD, WITH MOTIONS TO BE FILED

15  SEVERAL WEEKS OR MONTHS BEFORE THAT, AND SO POSSIBLY, I GUESS,

16  IF I'M LOOKING OUT, PROBABLY NEED RULINGS ON THOSE MOTIONS TO

17  CRYSTALLIZE THE ISSUES AND THEN LOOKING FOR A DEPOSITION MAYBE

18  INTO EARLY 2019.

19          THE COURT: MAYBE THE FIRST QUARTER OF 2019.

20          MR. PLETCHER: I WILL SAY IF MR. FRANCIS' HEALTH FLAGS,

21  WE WOULD LOOK TO EXPEDITE THAT TIME TABLE.

22          THE COURT: OKAY.

23          MR. BURSTEIN: YOUR HONOR, WE'LL DO WHATEVER WE NEED.

24  AS I ALWAYS TELL THE COURT, MY TWO MAIN THINGS; NUMBER ONE, IS

25  MR. FRANCIS' HEALTH. NUMBER TWO, FACILITATE THE COOPERATION.

THAT FALLS IN THE SECOND ONE, AND WE'LL BE READY FOR IT.

TO THE NUTS AND BOLTS OF THINGS, YOUR HONOR, YOU'LL BE GETTING -- LATER THIS AFTERNOON YOUR STAFF WILL BE GETTING A PROPOSED ORDER FROM ME WITH THREE THINGS, FOUR THINGS.  IT WILL MOVE THE NEXT STATUS DATE TO AUGUST 30TH AT 10:00 A.M.

THAT PART -- DO WE WANT THAT PART, YOUR HONOR, FILED ON THE DOCKET PUBLICLY?  WE'VE BEEN DOING THE MEDICAL STATUSES UNDER SEAL.

THE COURT:  WE HAVE BEEN, AND THAT'S PREDOMINANTLY A MEDICAL STATUS, ISN'T IT?

MR. BURSTEIN:  I'LL DO A SEPARATE ORDER FOR THAT.

THE COURT:  I THINK SO.

MR. BURSTEIN:  SO THEN I'LL MOVE THE STATUS REPORT BY SEPARATE UNDER-SEAL ORDER, AND I'LL SUBMIT A REGULAR ORDER TO THE COURT FOR MOVING THE SENTENCING DATE.  ALEX HAS GIVEN ME A DATE OF MARCH 1ST, 2019.

THE COURT:  IF THAT'S GOOD WITH ALEX, THAT'S GOOD WITH ME.

MR. BURSTEIN:  I'LL PUT THAT IN A REGULAR NONSEALED ORDER, AND I'LL PUT THE OTHER FURLOUGH RELATED IN A SEALED ORDER, AND I'LL EMAIL THEM BOTH TO YOUR CHAMBERS.

THE COURT:  VERY WELL.  AND WE'LL TAKE A LOOK AT THEM FIRST, AND I'LL EXECUTE THEM AS SOON AS I GET THEM, COUNSEL.

MR. BURSTEIN:  THANK YOU SO MUCH, YOUR HONOR, FOR YOUR TIME.

1     THE COURT: YOU'RE WELCOME.

2     MR. PLETCHER: LET ME JUST TAKE UP ONE ADDITIONAL

3 ISSUE.

4     THE COURT: OF COURSE.

5     MR. PLETCHER: MR. BURSTEIN MENTIONED AT THE OUTSET OF

6 THIS THAT THE PARALLEL NAVY PROCEEDING IS STILL ONGOING. THE

7 UNSEALED PAPERS HAVE BEEN SUBMITTED IN THAT PROCEEDING TO THAT

8 JUDGE. I DON'T KNOW WHAT RULING THEY WOULD ULTIMATELY MAKE, SO

9 WE'RE STILL WORKING BETWEEN TWO PARALLEL TRIALS ON MR.

10 FRANCIS'S AVAILABILITY IN THAT CASE AS ENVISIONED UNDER RULE

11 15. THAT IS, IS MR. FRANCIS AVAILABLE IN THAT CASE SUFFICIENT

12 FOR THAT JUDGE TO ORDER A DEPOSITION OR TO MOVE VENUE OF THAT

13 CASE HERE.

14     DEPENDING ON WHAT THAT FINDING IS GOING TO BE, AGAIN,

15 JUST PREFACING FOR YOUR HONOR, WE MAY BE BACK BEFORE YOU AS WE

16 SORT OF PING PONG BACK AND FORTH, BUT WE'RE TRYING TO MAKE SURE

17 THAT BOTH -- THE INTERESTS OF BOTH SYSTEMS ARE SERVED, THAT WE

18 ARE FULLY COMMITTED TO ASSISTING OUR NAVY BRETHREN IN THE

19 PROSECUTION OF THEIR CASE, WHILE AT THE SAME TIME KEEPING THE

20 COURTS AND THESE PARTIES' INTERESTS AT THE FOREFRONT AS WELL,

21 SO THAT'S WHERE WE STAND RIGHT NOW.

22     THE COURT: THAT IS AN INDIVIDUAL WHO IS UNCHARGED ON

23 THE CIVIL SIDE TO ANY U.S. ATTORNEY'S OFFICE, EITHER HERE OR

24 THERE, IT'S JUST BEING HANDLED IN THE MILITARY SYSTEM.

25     MR. PLETCHER: THAT'S RIGHT, SO HE'S BEEN CHARGED WITH

A GENERAL COURT MARTIAL. AS WE TALKED ABOUT THE LAST TIME,
IT'S A PARALLEL FEDERAL CRIMINAL PROCEEDING, JUST BEING HANDLED
BY THE MILITARY JUSTICE EDIFICE.

THE COURT: AND THAT TRIAL GOT POSTPONED.

MR. PLETCHER: IT HAS BEEN TEMPORARILY, BUT THERE ARE
NO SPECIFIC DATES SET, IN LARGE PART WHILE WE WORK OUT THIS
ISSUE OF MR. FRANCIS'S AVAILABILITY. SO AGAIN WE AS THE
PARTIES AND MR. FRANCIS ARE EITHER TRYING TO WORK TO ENSURE
THAT THEY HAVE ALL THE INFORMATION THEY NEED TO MAKE GOOD
DECISIONS, AND THAT WE BRING THE INFORMATION TO THIS COURT TO
MAKE GOOD DECISIONS ALSO ABOUT THIS ISSUE.

MR. BURSTEIN: JUST TO FOLLOW UP MR. PLETCHER, JUST FOR
THE COURT'S INFORMATION, THE LAST I HEARD FROM THE NAVY WAS
THAT THEY'RE THINKING OF DEPOSITIONS HERE IN JULY, THAT'S -- I
DON'T THINK WE WOULD NEED TO COME BACK TO THE COURT FOR THAT,
BUT IF SOMETHING CHANGES, AND MR. PLETCHER HAS ADDITIONAL
INFORMATION, WHATEVER, AT THE GOVERNMENT'S PLEASURE WE'LL BE
HERE.

THE COURT: I THINK THE CURRENT ORDERS FOR THE MEDICAL
FURLOUGH WOULD ALLOW HIM TO DO THAT WITHOUT COMING BACK IF
THAT'S WHAT HAPPENS.

MR. BURSTEIN: THAT'S MY UNDERSTANDING AS WELL.

THE COURT: YOU AGREE WITH THAT?

MR. PLETCHER: I DO.

THE PRETRIAL SERVICES OFFICER: YOUR HONOR, SINCE HE IS

```
1    GOING TO HAVE [REDACTED]        BETWEEN NOW AND AUGUST, WE WOULD

2    REQUEST REMOVAL OF THE GPS UNIT FOR THAT [REDACTED]    I BELIEVE

3    THAT'S NECESSARY IN THIS CASE.

4            MR. BURSTEIN:  I'LL PUT THAT IN THIS UNDER-SEAL ORDER.

5            THE COURT:  VERY WELL.  WHENEVER THERE'S A MEDICAL

6    PROCEDURE -- I GUESS THE PROCEDURE WHEN HE HAD THE TREATMENTS

7    THAT HE'S HAVING, THE GPS DEVICE DIDN'T BREAK.  I REMEMBER THAT

8    FROM THE LAST ORDER.

9            MR. BURSTEIN:  [REDACTED]        HAS BEEN NO ISSUE.

10           THE COURT:  EXCELLENT.  BUT FOR [REDACTED]      IT WOULD

11   BE.

12           [REDACTED]       [REDACTED]                        .  I GUESS

13   WORST CASE SCENARIO WE COULD MOVE IT TO THE OTHER LEG.  IT

14   NEEDS TO COME OFF.  WE TYPICALLY [REDACTED]              , SO

15   WORST CASE SCENARIO IT WOULD NEED TO BE MOVED.

16           THE PRETRIAL SERVICES OFFICER:  YOU'RE GOING TO DO

17   [REDACTED]   ON THE LEG THAT --

18           [REDACTED]        :  YEAH.

19           THE PRETRIAL SERVICES OFFICER:  WE CAN MOVE IT.

20           THE COURT:  YOUR POINT IS WELL TAKEN.  IF IT'S ON THE

21   [REDACTED]       , IT NEEDS TO BE MOVED TO THE OTHER LEG, HOWEVER

22   THAT IS DONE.  I TRUST IT YOU'LL TAKE CARE OF IT.  MR. BURSTEIN

23   WILL TAKE CARE OF IT.

24           [REDACTED]        :  THE ONLY THING I WOULD HAVE TO MAKE SURE

25   IS THAT IT [REDACTED]                                  .
```

```
 1              MR. BURSTEIN:  IN THE EXERCISE OF CAUTION, I'LL PUT IT

 2    IN THE ORDER AND IT CAN COME OFF FOR THAT BRIEF PERIOD OF

 3          ████         AND HAVE TO BE REPLACED IMMEDIATELY BY MR. KOSMO.

 4              THE COURT:  THE ONLY THING THAT WOULD CONCERN ME IF

 5    THERE'S ANYTHING ABOUT THE DEVICE THAT WOULD CAUSE ISSUES IN

 6    THE   ████████████     I DON'T KNOW ENOUGH ABOUT THE TECHNOLOGY.

 7              ████████████ :  CERTAINLY THE   ████     MAY INTERFERE WITH

 8    IT.  IT WOULD PROBABLY INTERFERE WITH THE DEVICE BY SENDING

 9    ███████████████████████████████████ .

10              MR. KOSMO:  YOUR HONOR, FAIRLY ROUTINELY I'VE DONE

11    THIS.  WE'VE GONE TO HOSPITALS.  WE'VE REMOVED IT, WE'VE SAT

12    OUT THERE, AND WE'VE PUT IT BACK ON.

13              THE COURT:  SO THEY'LL PROVIDE THEM NOTICE AND YOU'LL

14    TAKE CARE OF THAT.

15              MR. BURSTEIN:  I'LL PUT IT IN THE ORDER IN THE EXERCISE

16    OF CAUTION.  IT WILL BE IN THE ORDER, YOUR HONOR.

17              THE COURT:  THANK YOU.  ANYTHING ELSE THAT WE HAVEN'T

18    THOUGHT OF?

19              THE PRETRIAL SERVICES OFFICER:  NO, YOUR HONOR, THANK

20    YOU.

21              THE COURT:  ANYTHING ELSE FROM ANYBODY?

22              MR. PLETCHER:  NO, YOUR HONOR.  THANK YOU FOR YOUR TIME

23    TODAY.

24              MR. BURSTEIN:  THANK YOU.

25              THE COURT:  THANK YOU, DOCTOR, I APPRECIATE YOUR BEING
```

1    HERE TODAY.

2                        ▮▮▮▮▮▮▮ :    THANK YOU VERY MUCH.

3    (THE HEARING CONCLUDED.)

4

5

6

7

8

9

10

11

12

13                    C E R T I F I C A T E

14

15              I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
16   STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
     ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
17   ABOVE-ENTITLED MATTER ON JUNE 14, 2018; AND THAT THE FORMAT
     USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
18   STATES JUDICIAL CONFERENCE.

19

20   DATED:  JUNE 29, 2018          /S/ GAYLE WAKEFIELD
                                    GAYLE WAKEFIELD, RPR, CRR
21                                  OFFICIAL COURT REPORTER

22

23

24

25

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

HONORABLE JANIS L. SAMMARTINO
UNITED STATES DISTRICT JUDGE PRESIDING

------------------------------------------------------

UNITED STATES OF AMERICA,   )  NO. 13-CR-3781-JLS
                      )     13-CR-3782-JLS

            PLAINTIFF,  )     13-CR-4287-JLS
                      )

                      )  OCTOBER 4, 2018
VS.                  )

                      )  STATUS HEARING
LEONARD GLENN FRANCIS,  )

                      )
           DEFENDANT.  )  (FILED UNDER SEAL)

------------------------------------------------------

APPEARANCES:

FOR THE PLAINTIFF:    MARK W. PLETCHER
                     U.S. ATTORNEY'S OFFICE

FOR THE DEFENDANT:    DEVIN J. BURSTEIN
                     KATIE JENKINS

                     WARREN & BURSTEIN

THE COURT REPORTER:   GAYLE WAKEFIELD, RPR, CRR

```
1    OCTOBER 4, 2018

2                         MORNING SESSION

3          THE CLERK:  NUMBER THREE ON THE CALENDAR, 13-CR-3781,

4    13-CR-3782, 13-CR-4287, UNITED STATES VS. LEONARD GLENN FRANCIS

5    FOR STATUS.

6          THE COURT:  LET ME INDICATE THAT THE COURTROOM HAS BEEN

7    CLOSED FOR THIS HEARING.  THE TRANSCRIPT OF THIS PROCEEDING

8    WILL BE SEALED UNTIL FURTHER ORDER OF THE COURT, AND EVERYBODY

9    HERE IS EITHER COURT STAFF OR ON THE DEFENSE/GOVERNMENT SIDE,

10   SO GO AHEAD.

11         THE PRETRIAL SERVICES OFFICER:  ERIC KOSMO FROM

12   PRETRIAL SERVICES.

13         THE COURT:  THANK YOU VERY MUCH FOR BEING HERE.

14         MR. BURSTEIN:  GOOD MORNING, YOUR HONOR, DEVIN BURSTEIN

15   AND KATIE JENKINS FOR MR. FRANCIS.

16         MR. PLETCHER:  MARK PLETCHER FOR THE UNITED STATES.

17         MR. BESTE:  ERIC BESTE ON BEHALF OF THE UNITED STATES

18   AS WELL.

19         THE COURT:  THANK YOU, MR. BESTE.

20         WE HAD THIS SET AWHILE AGO.  IN PREPARATION FOR THAT, I

21   HAVE RECEIVED TWO DOCUMENTS.  I RECEIVED -- OF COURSE, THESE

22   DOCUMENTS ARE UNDER SEAL.  I HAVE RECEIVED A SEPTEMBER 14TH

23   LETTER FROM                    , AND THEN RIGHT BEFORE WE WERE

24   SCHEDULED TO HAVE A HEARING, WHICH GOT CONTINUED, I RECEIVED A

25   SEPTEMBER                              , AND SO I HAVE READ
```

THOSE AGAIN. I'M PREPARED TO BE UPDATED BY YOU, COUNSEL.
PLEASE GO AHEAD, MR. BURSTEIN.

MR. BURSTEIN: THANK YOU, YOUR HONOR. YES, WE'VE BEEN
IN CONTACT WITH ███████████, AND I ACTUALLY SAW MR. FRANCIS
YESTERDAY. I THINK THE FIRST LETTER ON SEPTEMBER 14TH KIND OF
LAYS OUT WHERE WE ARE. WE'RE ANTICIPATING THE ████████████
███████████ TOGETHER IN EARLY JANUARY TO REEVALUATE THE
STATUS, MOSTLY NOW OF THE ████████████████████████. I'M
LEARNING ALL THE PROPER TERMINOLOGY. ████████████████████
████████████████, IT'S HOPEFUL THAT THEY CAN DO ONE
████████, PERHAPS TWO, IN JANUARY, IF EVERYTHING IS STABLE.

THERE'S KIND OF THREE MAIN PRESSING THINGS RIGHT NOW,
THE BIGGEST ONE THAT WE ARE CERTAIN ABOUT IS ████████████
████████████████████████████, WHICH THEY CAN'T TREAT RIGHT
NOW, AND HOPEFULLY THEY CAN DO THOSE ████████ AROUND THE SAME
TIME. AND THEN THE MORE ACUTE PROBLEM IS WHAT'S GOING ON IN
WHAT WE BELIEVE IS THE ████████. WE KNOW IT'S IN THE ████████.
WE'RE NOT SURE WHAT IT IS, AND THAT'S IN THE 9/17 LETTER, YOUR
HONOR, SO THEY HAVEN'T BEEN ABLE ████████ YET BECAUSE THE
████████████ HAS BEEN SO EXTREME. SO THEY'RE NOT SURE IF IT'S
████████████████████████████████████████████████████████
████████████████████ ALL THE DOCTORS TREAT --
(SOUND OF DOOR LOCKING.)

THE COURT: IT WAS JUST ONE OF THE U.S. MARSHALS GOING
OUT. I THINK HE'S LOCKING THE DOOR FROM THE OTHER SIDE.

3

```
 1          MR. BURSTEIN:  THEIR OPERATING ASSUMPTION IS GOING TO

 2    BE THAT          , UNTIL THEY CAN PROVE IT'S          , AND

 3    WHETHER IT'S            .  WE KNOW THAT

 4

 5                                                        , SO

 6    WE JUST DON'T KNOW.

 7          THE COURT:  BASED ON THE

 8

 9        .

10          MR. BURSTEIN:  RIGHT.  THE            HAS MET AND

11    CONCLUDED IT'S

12        .  WE DON'T KNOW IF IT'S                    .

13    HOPEFULLY, WE'LL FIND THAT OUT BEFORE JANUARY, IF THEY CAN GET

14    THE                                        .  I'LL UPDATE

15    THE COURT ON THE STATUS OF THE          .

16          AT THIS POINT, I WOULDN'T BELABOR THIS TOO MUCH -- I'VE

17    SPOKEN TO THE GOVERNMENT AND MR. KOSMO.  I THINK IT'S BEST TO

18    SET A STATUS FOLLOWING THE                    IN JANUARY, IF

19    THAT'S ACCEPTABLE TO THE COURT.  I'LL TRY TO BRING

20            FOR THAT ONE BECAUSE ONCE                MEETS

21    AGAIN, I THINK WE SHOULD HAVE A REAL ANSWER TO WHAT'S GOING TO

22    HAPPEN, WHEN IS IT GOING TO HAPPEN, AND WHAT'S THE TRUE TIME

23    FRAME ON THIS.

24          I MEAN, IS MR. FRANCIS GOING TO BE AROUND IN 2020 OR

25    NOT?  I THINK WE'LL HAVE A BETTER ANSWER TO THOSE QUESTIONS, AT
```

1    LEAST THEIR VIEWPOINT OF IT, THAN -- IF THAT MAKES SENSE TO THE

2    COURT.

3            THE COURT:  I MEAN, I'M GOING TO ASK THE GOVERNMENT TO

4    COMMENT AND SAY WHAT IS NOT ONLY -- I UNDERSTAND IT'S HARD

5    ENOUGH TO DEAL WITH MR. LEONARD FRANCIS'S MEDICAL SITUATION,

6    BUT THEN YOU OVERLAY WHAT THE PROGNOSIS IS FOR THE CASES GOING

7    FORWARD.  I UNDERSTAND THAT, AND AFTER I READ BOTH OF THESE

8    LETTERS, MR. BURSTEIN, I'M GOING TO PERMIT THIS MEDICAL

9    FURLOUGH TO BE EXTENDED.  THAT'S MY TENTATIVE, ABSENT HEARING

10   SOMETHING FROM THE GOVERNMENT THAT WOULD DISAGREE WITH THAT.

11           MR. BURSTEIN:  OKAY.  THANK YOU, YOUR HONOR.

12           THE COURT:  YOU'RE WELCOME.

13           MR. PLETCHER, YOUR POSITION REGARDING THE MEDICAL

14   SITUATION, AND WHERE WE COULD PUT THE NEXT STATUS, AND WHAT

15   WE'RE GOING TO DO WITH THE CASE.

16           MR. PLETCHER:  THANK YOU, YOUR HONOR.  YOUR HONOR, AS

17   THE COURT HAS ARTICULATED BEFORE, AND WE AGREE WITH, THIS IS A

18   VERY UNIQUE SITUATION.  THIS IS IN MANY RESPECTS UNCHARTED

19   TERRITORY.

20           THE COURT:  IT IS.

21           MR. PLETCHER:  IN TRYING TO MANAGE HIS MEDICAL CARE AND

22   JUXTAPOSE THAT AGAINST MR. FRANCIS'S -- HE HAS SEVERAL MEDICAL

23   CONDITIONS.  THE PARTIES ARE ALL WORKING TO MAKE SURE THAT WE

24   KEEP EACH ONE OF THOSE CONSIDERATIONS IN MIND.

25           THE COURT:  NOTHING HAS CHANGED WITH REGARD TO THE

```
1    24-HOUR GUARD AND THE ACTIVITIES THAT ARE AUTHORIZED AND NOT
2    AUTHORIZED.
3            MR. PLETCHER:  THAT'S CORRECT.  AND FROM THE BEGINNING
4    OF THIS, OUR PREVAILING VIEWPOINT HAS BEEN THAT THE FURLOUGH IS
5    APPROPRIATE UNTIL MR. FRANCIS IS STABLE, UNTIL THERE ARE NOT
6    ACUTE, IMMEDIATE AND SERIOUS MEDICAL CONDITIONS, AND WE ARE
7    STILL IN THAT FORMER REGIME.
8
9                     .
10           THERE IS SOME GOOD NEWS INTERSPERSED IN THE MEDICAL
11   RECORD,
12                   AND DEPENDING ON WHAT THE PROGNOSIS IS ON THE
13
14
15              .   I THINK THAT'S ONE THAT AFTER THAT WE WOULD BE
16   LOOKING AT THE POTENTIAL OF STABILITY, SO THAT'S THE EXCISION
17   OF THE                         BY TAKING OUT -- JUST PHYSICALLY
18                               .  ALL OF THAT IS JUST A RECAP OF
19   WHAT'S IN THE LETTER.
20           WE AGREE WITH THE COURT IN THIS REGARD IS THAT ALL THE
21   PARTIES NEED TO CONTINUE TO TAKE CAREFUL NOTE OF THIS.  I THINK
22   IT MAKES SENSE TO RECONVENE AFTER THE                      .
23   HOPEFULLY, THEY'LL BE ABLE TO FIX THE
24
25   WILL MOVE TO CHART SOME TYPE OF MEDICAL TRAJECTORY, AND THAT
```

1    WILL GIVE US A GOOD UNDERSTANDING OF HOW WE SHOULD PROCEED.
2    PERIOD.  THE COURT --

3         THE COURT:  WHAT ABOUT THE OTHER CASES?  WHILE THIS IS
4    -- I DON'T HAVE A PROBLEM WITH BOTH YOU AND THE DEFENSE, AND
5    THE COURT AGREES, WHAT THE APPROPRIATE COURSE OF CONDUCT IS FOR
6    MR. LEONARD FRANCIS AND HIS MEDICAL TREATMENT -- AND MR.
7    BURSTEIN WILL TELL US WHEN                    MEETING, AND
8    WE'LL SET THE HEARING AT LEAST A WEEK OR TWO AFTER THAT IN
9    JANUARY OF 2019 -- BUT WHAT'S THE IMPLICATION FOR THIS?  HOW
10   MANY CASES DO WE HAVE OUTSTANDING, NINE?

11        MR. PLETCHER:  WE HAVE ONE CASE WITH NINE DEFENDANTS,
12   AND THEN TWO CASES WITH ONE EACH, SO 11 DEFENDANTS.  TAKING
13   JUST THE 7TH FLEET CASE, BECAUSE THAT'S THE ONE THAT'S MOST
14   SIGNIFICANT, AND A BIT MORE MATURE, AS THE COURT KNOWS THERE IS
15   A MOTION HEARING DATE SET.

16        DEFENSE HAS RECENTLY REACHED OUT TO ME TO ASK WHETHER
17   WE WOULD AGREE TO CONTINUE THAT TO GIVE THEM MORE TIME FOR
18   THEIR MOTIONS.  I'M WORKING WITH MR. CHEEKS TO SEE IF THERE'S A
19   SCHEDULE THAT ALLOWS THAT TO HAPPEN.  I DON'T WANT TO
20   DISADVANTAGE THOSE DEFENDANTS.  CERTAINLY THERE HAS BEEN AN
21   AWFUL LOT OF TIME SINCE THE INDICTMENT IN THAT CASE, AND SO
22   TIME TO FILE MOTIONS SEEMS TO BE UPON US.

23        IF WE DO COME TO AN AGREEMENT, AND WE GET MOTIONS ON
24   FILE, MY ANTICIPATION IS WE WOULD BE LOOKING TO SET A TRIAL
25   DATE FOR A MID-2019 TRIAL.  THAT DOESN'T SEEM LIKE IT WOULD BE

1    TOO FAR OUT, CERTAINLY IT WOULD BE -- A TRIAL DATE IN MID-2019

2    WOULD BE MORE THAN TWO YEARS AFTER THE ORIGINAL INDICTMENT,

3    EVEN WITH THE DISCOVERY IN THIS CASE IT SEEMS LIKE SUFFICIENT

4    TIME, AND IF THAT'S THE CASE, MY BEST GUESS AT THIS MOMENT,

5    SITTING HERE RIGHT NOW, IS MR. FRANCIS WOULD JUST BE A

6    TESTIFYING WITNESS.

7         THE COURT:  YOU HAD SHARED AT ONE TIME THE POSSIBILITY

8    OF CAPTURING HIS TESTIMONY BY DEPOSITION.

9         MR. PLETCHER:  THAT'S STILL AN ONGOING AND IMMEDIATE

10   CONSIDERATION FOR US.  THE REALITY IS THAT IF HE CAN JUST

11   SIMPLY TESTIFY ONE TIME, THAT'S BETTER FOR EVERYONE.  IT'S MORE

12   EFFICIENT.  A DEPOSITION WILL PROBABLY TAKE AT LEAST AN ENTIRE

13   WEEK OF THE COURT'S TIME, OF OUR TIME, WHEREAS LIVE TESTIMONY

14   MAY TAKE ONE TIME, SO THAT'S JUST THE REALITY OF THE DIFFERENCE

15   BETWEEN DEPOSITION AND TRIAL, AND SO WE ARE MONITORING THAT.

16   IF IT LOOKS LIKE THE TRIAL DATE IS GOING TO BE FURTHER INTO

17   2019 OR INTO 2020, THEN WE WOULD BE IN A DIFFERENT CALCULUS AND

18   WE WOULD BE ASKING THE COURT TO TAKE A DEPOSITION.

19        THE COURT:  THE GOVERNMENT IS CONTINUING TO MONITOR AND

20   ASSESS THE NEED FOR MR. LEONARD FRANCIS TO PARTICIPATE, SO

21   THAT'S FINE.

22        MR. PLETCHER:  IT'S A VERY DIFFICULT CALCULUS AND

23   CONVERSATION FOR US, RIGHT, BECAUSE WE TAKE THE BEST

24   INFORMATION WE HAVE FROM THE DOCTORS, AND ALSO NOT JUST HIS

25   PROGNOSIS BUT HOW IS HE IN TERMS OF THE

8

1    █████████████████      HIS RECOVERY TIME, SO ALL THOSE ARE

2    DIFFICULT CONVERSATIONS IN TRYING TO MAKE SURE THAT WE MAKE THE

3    BEST DECISIONS POSSIBLE FOR MR. FRANCIS, FOR THE COURT, AND FOR

4    THE CASES.

5         THE COURT:  FAIR ENOUGH.  SO EVERYBODY IS IN AGREEMENT.

6    DID YOU WANT TO ADD SOMETHING TO IT, MR. BURSTEIN?

7         MR. BURSTEIN:  YES, YOUR HONOR.  JUST BRIEFLY TO THAT

8    POINT -- AND MR. FLETCHER KNOWS BECAUSE HE WAS THERE -- WE WERE

9    ABLE TO WORK WITH THE NAVY PROSECUTORS AND THE JAG OFFICER FOR

10   THE DEPOSITION, SET A SCHEDULE WHERE MR. FRANCIS WAS ABLE TO

11   TAKE REGULAR BREAKS.

12        THE COURT:  THE ONE THAT I READ ABOUT IN THE PAPER?

13        MR. BURSTEIN:  THE ONE THAT YOU READ ABOUT IN THE

14   PAPER, YEAH.  WE HAVE DIFFERENT VIEWS OF HOW THAT WENT.

15        THE COURT:  ALL I KNOW IS WHAT I READ IN THE PAPER.

16        MR. BURSTEIN:  YEAH, BUT THE LONG STORY SHORT, THE

17   INDISPUTABLE FACT IS HE WAS ABLE TO PERFORM WITH MORE BREAKS

18   THAN NORMAL, BUT HE JUST -- EVERYBODY WAS COGNIZANT.  HE WAS

19   ABLE TO ESSENTIALLY RAISE HIS HAND AND SAY, "CAN I HAVE A

20   BREAK, I'M FEELING TIRED."

21        THE COURT:  I APPRECIATE WHAT THE GOVERNMENT SAYS.

22   IT'S EASIER IF IT'S JUST STRAIGHT TESTIMONY RATHER THAN DOING A

23   DEPOSITION FOR LATER.  I JUST WANT EVERYBODY TO BE MINDFUL, AND

24   I KNOW YOU ARE -- I WANTED TO BE UPDATED MORE THAN ANYTHING --

25   THAT YOU'RE MONITORING THIS AND ALL ASPECTS OF IT.  I'M WILLING

```
1    TO PUT THIS OVER AND EXTEND THE FURLOUGH TO ANOTHER DATE, AND

2    I'M WONDERING WHEN ▮▮▮▮▮▮▮▮▮, IF YOU KNOW, IS GOING TO

3    MEET IN JANUARY?

4              MR. BURSTEIN:  I DON'T KNOW.  I THINK IT'S SUPPOSED TO

5    BE EARLY JANUARY, SO IF WE CAN SET A LATER JANUARY DATE NOW AND

6    IF WE NEED TO MOVE IT, WE CAN MOVE IT.

7              JUST TWO MORE POINTS BEFORE WE SET THE DATE.

8              THE COURT:  OF COURSE.

9              MR. BURSTEIN:  ONE IS AS NORMAL, WHAT'S BECOMING

10   NORMAL, I'M GOING TO FILE A PROPOSED ORDER ON THE -- TO BE

11   FILED ON THE RECORD.  SO THAT EVERYBODY IS AWARE, IT'S GOING TO

12   SAY FOR GOOD CAUSE SHOWN IT'S EXTENDED TO JANUARY SUCH AND

13   SUCH, A SEALED HEARING WILL BE HELD ON SUCH AND SUCH, IF THAT'S

14   ACCEPTABLE.

15             THE COURT:  EVERYBODY KNOWS WE'RE DISCUSSING THE

16   MEDICAL SITUATION.  THE DETAILS ARE NOT APPROPRIATELY MADE

17   PUBLIC, BUT THEY KNOW WHAT WE'RE DOING GENERALLY.

18             MR. BURSTEIN:  RIGHT, YOUR HONOR.  THE LAST POINT IS

19   SOMETHING I'VE DISCUSSED BRIEFLY WITH THE GOVERNMENT, BUT IT'S

20   MORE OF A PRETRIAL.  THERE'S STARTED -- WHEN WE ORIGINALLY DID

21   THIS ALMOST A YEAR AGO, IT WAS A VERY -- SUPPOSED TO BE A VERY

22   SHORT THING.  WE DIDN'T EVEN KNOW ABOUT ▮▮▮▮▮▮▮.  THERE'S

23   STANDARD HOME DETENTION LANGUAGE IN EVERY CASE THAT IS NOT A

24   PART OF THE ORDER IN THIS CASE, BUT I THINK WE AGREE IT SHOULD

25   BE, IF THAT'S --
```

```
 1              THE COURT:  WHAT LANGUAGE ARE YOU SPECIFICALLY

 2      REFERRING TO?

 3              MR. BURSTEIN:  YOU ARE RESTRICTED TO YOUR RESIDENCE AT

 4      ALL TIMES -- I CAN GIVE THIS TO THE COURT.  THE COURT POSSIBLY

 5      HAS IT.

 6              THE COURT:  YOU'RE RESTRICTED TO YOUR RESIDENCE AT ALL

 7      TIMES EXCEPT FOR EMPLOYMENT, EDUCATION, RELIGIOUS SERVICES,

 8      MEDICAL, ETC., ETC., DOWN TO AND/OR OTHER ACTIVITIES

 9      PREAPPROVED BY PROBATION.  IS THAT WHAT YOU'RE REFERENCING?

10              MR. BURSTEIN:  YES, YOUR HONOR.

11              THE COURT:  YOU'RE ASKING THAT BE INCLUDED?

12              MR. BURSTEIN:  YES.  THE COURT HAS IT.  IT COULD BE IN

13      A MINUTE ORDER OR I CAN SUBMIT IT IN A FORMAL WRITTEN ORDER,

14      BUT THAT WOULD GIVE MR. KOSMO, WHO HAS BEEN MONITORING MR.

15      FRANCIS, THE DISCRETION.

16              THE PRETRIAL SERVICES OFFICER:  YES, YOUR HONOR, MR.

17      BURSTEIN AND I DISCUSSED THIS.  WE DON'T OPPOSE.  HE'S BEEN IN

18      COMPLIANCE AND BEEN ON SUPERVISION FOR ALMOST A YEAR NOW.

19              THE COURT:  IF WE WERE TO ADD THIS, HE WOULD TAKE

20      SECURITY WITH HIM?

21              MR. BURSTEIN:  ALWAYS.  MAYBE I SHOULD PUT IT IN THE

22      WRITTEN ORDER.

23              THE COURT:  LET ME SEE IF THE GOVERNMENT HAS ANY

24      CONCERNS ABOUT THIS.

25              MR. PLETCHER:  I WASN'T AWARE THAT THIS WAS THE ISSUE.
```

1    THE COURT:  DO YOU WANT TO DISCUSS IT?  IF EVERYBODY IS

2    IN AGREEMENT, AS LONG AS HE HAS SECURITY, BUT IF THERE'S A

3    CONCERN -- HE'S NOT EMPLOYED.  HE'S NOT DOING EDUCATIONAL

4    THINGS.  WE'VE LET HIM OUT FOR MEDICAL.  WE KNOW THAT.  WE'VE

5    LET HIM OUT TO DO THE

6         MR. PLETCHER:  HE'S BEEN TO RELIGIOUS SERVICES ONCE A

7    WEEK.  IN MANY INSTANCES, THERE'S STANDARD LANGUAGE, AND THEN

8    WE JETTISON IT BECAUSE THE COURT FASHIONS LANGUAGE SPECIFIC FOR

9    THE PURPOSE.  THAT'S MY ONLY CONFUSION IS I DON'T KNOW WHAT

10   THIS IS GIVING US THAT WE HAVEN'T ALREADY THOUGHT OF.

11        THE COURT:  WHAT IS THE PROBLEM?  I MEAN, IS THERE

12   SOMETHING THAT HE HAS TO GO TO REGULARLY THAT HE NEEDS TO COME

13   TO YOU FOR?

14        THE PROBATION OFFICER:  WHAT MR. BURSTEIN IS ASKING FOR

15   HAS, YOU KNOW, MORE TO DO WITH HOME DETENTION.  HE CAN GO TO

16   CHURCH MORE OFTEN.  HIS KIDS ARE IN THE UNITED STATES, AND HE

17   WANTS TO BE ABLE TO TAKE THEM TO SCHOOL, AND HE'S ASKING FOR --

18   I DON'T KNOW IF YOUR HONOR THINKS THIS IS APPROPRIATE, BUT MR.

19   FRANCIS IS ASKING TO GO TO PERHAPS A GROCERY STORE EVERY ONCE

20   IN AWHILE BECAUSE HE'S BEEN OUT FOR SEVERAL MONTHS NOW.

21        MR. PLETCHER:  I'M COMFORTABLE WITH THE WAY IT'S

22   CURRENTLY WRITTEN.

23        THE COURT:  I DIDN'T KNOW HIS FAMILY WAS HERE.  HIS

24   FAMILY IS HERE NOW?

25        MR. BURSTEIN:  HIS FAMILY IS HERE.

```
1          THE COURT:  AND THEY'LL GET TO SEE HIM?

2          MR. BURSTEIN:  THEY GET TO SEE HIM.  HIS MOTHER -- SO

3    WHAT HAPPENED WAS -- I DON'T KNOW IF THE COURT IS INTERESTED IN

4    THIS, HIS MOTHER BROUGHT THE KIDS TO VISIT, AND THEN HIS MOTHER

5    IS THE PRIMARY CARETAKER.  HIS MOTHER

6                                        SO THE KIDS ARE HERE.

7                                               THE KIDS ARE HERE WITH

8    MOM, NOT IN THE SAME RESIDENCE.  THEY'RE IN THE MAIN RESIDENCE.

9          THE COURT:  ARE THEY IN SCHOOL?

10         MR. BURSTEIN:  THEY SHOULD BE GOING INTO -- THERE'S A

11                                         I THINK THE KIDS ARE

12   GOING TO BE GOING TO.

13         THE COURT:  I THINK WE LEAVE THINGS THE WAY THEY ARE

14   RIGHT NOW, AND IF YOU ALL WANT TO TALK AND SUBMIT SOMETHING,

15   THOUGHTFULLY, IN PERSON, I'M A LITTLE CONCERNED ABOUT MAKING IT

16   HOME DETENTION KIND OF IN NAME ONLY.  WE'RE TAKING THE KIDS TO

17   SCHOOL, GOING TO KIDS VISITS.  I NEED TO THINK THIS THROUGH,

18   MR. BURSTEIN.

19         MR. BURSTEIN:  OKAY.

20         MR. PLETCHER:  THAT RIGHT NOW IS MY VIEW.  WE'VE HAD AN

21   ISSUE WITH RESPECT ANYWAY TO SOMEWHAT TRYING TO LEARN WHERE MR.

22   FRANCIS LIVES, WHICH WAS EXTANT TO THE NAVY PROCEEDING, SO I

23   THINK --

24         MR. BURSTEIN:  SOMEONE FOLLOWED ME.

25         THE COURT:  HERE'S AN INTERESTING THING; I'VE MET MR.
```

```
 1    FRANCIS IN PERSON A COUPLE OF TIMES.  HE'S OF TALL STATURE, AND
 2    A BIG GENTLEMAN, AND HE'S EASILY -- IF HE WERE IN A GROUP, HE
 3    WOULD BE EASILY PICKED OUT.  I'VE WONDERED MYSELF, WITH THE
 4    LATITUDE THAT HE HAS, IF HE WENT TO A CHURCH OR SYNAGOGUE OR
 5    OTHER PLACE OF WORSHIP, I THINK HE WOULD BE READILY PICKED OUT
 6    AND PEOPLE COULD FOLLOW HIM AND HIS SECURITY, SO THERE IS SOME
 7    CONCERN HERE.

 8            MR. PLETCHER:  I GUESS IT'S JUST AN EXTRA DEGREE OF
 9    CARE AND CAUTION, THINKING THROUGH THIS, AND INSTEAD OF SAYING,
10    "HEY, WE'RE JUST GOING TO TICK THE BOX TO THE STANDARD
11    CONDITIONS LANGUAGE THAT WAS INADVERTENTLY OMITTED," IT WASN'T
12    INADVERTENTLY OMITTED.  THE CONDITIONS OF HIS RELEASE WERE VERY
13    SPECIFICALLY CHOSEN.  MR. BURSTEIN CAME BACK AT THE LAST ONE --
14    OR ONE PREVIOUS OCCASION AND ASKED IF HE COULD GO TO CHURCH
15    ONCE A WEEK, AND WE ADDED THAT.  I THINK THAT KIND OF
16    INCREMENTAL STEP IS WHERE WE NEED TO BE.  WITH THE CARE AND
17    CONCERN THAT EVERYONE IS TAKING WITH THIS CASE, WE SHOULD
18    FOLLOW THAT CAUTIOUS PATH.

19            THE COURT:  I THINK SO, AND IT'S NOTHING SPECIFIC, BUT
20    I THINK WE NEED TO BE CAREFUL.  AS YOU LEARNED, THE VISIBILITY
21    OF YOUR CLIENT IN THE COMMUNITY IS GOING TO BE NOTED.

22            MR. BURSTEIN:  RIGHT.  WHAT I'LL DO IS I'LL TRY AND
23    COME BACK WITH SOMETHING MORE SPECIFIC THAT PERHAPS ALLOWS HIM
24    TO GO TO CHURCH MORE THAN ONCE A WEEK.  I THINK HE NEEDS TO GO
25    MEET WITH THE SCHOOL PRINCIPAL, QUITE FRANKLY, AS PART OF THE
```

14

1    ADMISSIONS. MAYBE THE SCHOOL PRINCIPAL CAN COME TO HIM OR

2    VIDEO CONFERENCE.

3              THE COURT: MAYBE THEY VIDEO CONFERENCE. I THINK WE

4    NEED TO BE VERY CAREFUL. WORK WITH PRETRIAL. WORK WITH MR.

5    PLETCHER, AND I THINK THIS HAS BEEN -- FOR SUCH AN UNUSUAL

6    CIRCUMSTANCE AS WE FACE HERE, IT'S BEEN REMARKABLY COOPERATIVE,

7    AND I THINK IT'S WORKED AS WELL AS IT POSSIBLY COULD.

8              MR. BURSTEIN: I THINK THAT'S THE ONLY WAY THIS WORKS

9    IS IF EVERYBODY IS ONBOARD. I'M NOT ASKING THE COURT TO MAKE A

10   RULING THAT THE GOVERNMENT'S NOT COMFORTABLE WITH. LET ME GO

11   BACK -- THANK YOU, YOUR HONOR, I'LL GO BACK AND DISCUSS WITH

12   MR. PLETCHER AND MR. KOSMO AND SEE IF WE CAN COME UP WITH

13   SOMETHING.

14             THE COURT: EVEN THOUGH SOMEBODY WAS FOLLOWING YOU TO

15   TRY TO FIND MR. FRANCIS, I MEAN, HE WILL BE NOTICED.

16             MR. BURSTEIN: RIGHT.

17             THE COURT: I KNOW THAT RELATED TO THE MILITARY CASE

18   THEY CAME OUT HERE FOR A DEPOSITION, BUT I WOULD BE VERY, VERY

19   CAREFUL, FOLKS.

20             MR. BURSTEIN: YES, YOUR HONOR, WE WILL. THANK YOU.

21             MR. PLETCHER: THANK YOU, YOUR HONOR, NOTHING FURTHER.

22             THE CLERK: STATUS HEARING?

23             THE COURT: THANK YOU, ALEX.

24             MR. PLETCHER: MID TO LATE JANUARY.

25   (DISCUSSION HELD OFF THE RECORD.)

```
1           THE COURT:  WE COULD DO THE 24TH OF JANUARY OR THE

2    31ST.  WE DON'T KNOW  ███████████████████  MEET.  WE CAN

3    ALWAYS ADVANCE IT OR MOVE IT, IF THERE'S SOMETHING THAT

4    REQUIRES US TO GET TOGETHER EARLIER, AS WE HAD TO POSTPONE THIS

5    ONE BECAUSE OF SCHEDULING.

6           MR. PLETCHER:  EITHER IS FINE.

7           THE COURT:  WE CAN DO THE 31ST.

8           MR. BURSTEIN:  COULD WE ASK THE COURT TO HAVE THE GREEN

9    SHEET REFLECT THE DATE SO --

10           THE COURT:  CERTAINLY.  THE ORDER I ENTER WILL EXTEND

11    THE HEARING TO FEBRUARY 1ST, AND THE HEARING WILL BE ON THE

12    31ST.

13           THE CLERK:  AT 10:00.

14           MR. BURSTEIN:  I'LL SUBMIT THAT ON THE RECORD AND EMAIL

15    THAT TO YOUR E-FILE.

16           THE COURT:  I DON'T REMEMBER, HELP ME, MR. PLETCHER,

17    WE'VE BEEN DOING THIS EXCLUSION OF TIME ORDERS --

18           MR. BURSTEIN:  SINCE HE PLED GUILTY, YOUR HONOR.

19           THE COURT:  SO WE'RE GOOD ON THAT.

20           MR. PLETCHER:  YOU'RE RIGHT ON THE PENDING CASES, BUT

21    SINCE HE'S PLED --

22           THE COURT:  IF YOU NEED ANYTHING, COUNSEL, BEFORE THEN,

23    EITHER OF YOU, OR PRETRIAL FOR THAT MATTER, BECAUSE THIS IS

24    UNCHARTED TERRITORY, WE'LL SET YOU AS SOON AS WE CAN.

25           MR. BURSTEIN:  THANK YOU, YOUR HONOR.
```

```
 1              MR. PLETCHER:  THANK YOU, YOUR HONOR.

 2              THE COURT:  THANKS EVERYBODY.

 3         (THE HEARING CONCLUDED.)

 4

 5

 6

 7

 8                   C E R T I F I C A T E

 9

10              I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
          QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
11        STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
          ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
12        ABOVE-ENTITLED MATTER ON OCTOBER 4, 2018; AND THAT THE FORMAT
          USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
13        STATES JUDICIAL CONFERENCE.

14

15        DATED:  DECEMBER 13, 2021     /S/ GAYLE WAKEFIELD
                                        GAYLE WAKEFIELD, RPR, CRR
16                                      OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25
```

17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,        )      13-CR-3781-JLS
            PLAINTIFF,           )      13-CR-3782-JLS
                                 )      13-CR-4287-JLS
VS.                              )
                                 )      SAN DIEGO, CA
LEONARD GLENN FRANCIS, *ET AL.*, )      JANUARY 31, 2019
            DEFENDANTS.          )      10:00 A.M.

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:   MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA   92101

FOR THE DEFENDANT:    WARREN & BURSTEIN
                      BY:   DEVIN J. BURSTEIN, ESQ.
                            KATIE JENKINS, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA   92101

PRETRIAL SERVICES:    ERIC KOSMO

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA   92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                    PAGE

NEXT HEARING DATE                13

1       THE DEPUTY CLERK:  NUMBER ONE ON THE CALENDAR, NUMBER

2   TWO AND NUMBER THREE, 13-CR-3781, 13-CR-3782, AND 13-CR-4287,

3   UNITED STATES VS. LEONARD GLENN FRANCIS, FOR STATUS.

4       MR. PLETCHER:  GOOD MORNING, YOUR HONOR.  MARK

5   PLETCHER FOR THE UNITED STATES.

6       THE COURT:  THANK YOU, MR. PLETCHER.

7       MR. BURSTEIN:  AND GOOD MORNING, YOUR HONOR.  DEVIN

8   BURSTEIN AND KATIE JENKINS ON BEHALF OF MR. FRANCIS.

9       THE COURT:  THANK YOU.

10      MS. JENKINS:  GOOD MORNING, YOUR HONOR.

11      THE COURT:  GOOD MORNING.  THANK YOU.

12      MR. BURSTEIN:  YOUR HONOR, WE'D LIKE TO BEGIN BY

13  ASKING THE COURT TO PLACE THIS PROCEEDING UNDER SEAL AND TO

14  SEAL THE COURTROOM, AND TO ASK ANYBODY WHO'S NOT A PARTY TO

15  THE MATTER TO LEAVE, BECAUSE WE'RE GOING TO BE DISCUSSING MR.

16  FRANCIS' PRIVATE, CONFIDENTIAL MEDICAL ISSUES AND NOTHING

17  ELSE.

18      THE COURT:  OKAY.  DO YOU RECOGNIZE WHO'S IN THE

19  COURTROOM?

20      MR. PLETCHER:  BEHIND ME --

21      THE COURT:  ARE YOU NOT IN THE COURTROOM ON THIS

22  MATTER?  ARE YOU ON THE NEXT MATTER?

23      UNIDENTIFIED SPEAKER:  I'M HERE JUST AS A MEMBER OF

24  THE PUBLIC TO OBSERVE THE HEARING.

25      THE COURT:  WELL, OKAY.  WELL, NORMALLY, YOU'RE

1   WELCOME, SIR, BUT THIS INVOLVES CONFIDENTIAL MEDICAL

2   INFORMATION, SO I'M GOING TO ASK YOU TO STEP OUTSIDE.  ARE YOU

3   BOTH TOGETHER?

4           UNIDENTIFIED SPEAKER:  YES.

5           THE COURT:  OKAY.  SO YOU'LL BE BACK IN VERY SHORTLY.

6           UNIDENTIFIED SPEAKER:  OKAY.

7           THE COURT:  THANK YOU.

8           NOW, THE TWO GENTLEMEN OVER HERE, ARE THEY WITH THIS

9   CASE?

10          MR. PLETCHER:  THEY ARE, YOUR HONOR.  THOSE ARE

11  DEPUTY U.S. MARSHALS WHO HAVE REPLACED MISS SCHIMMEL ON THIS

12  MATTER.

13          THE COURT:  OKAY.  VERY WELL.

14          MR. KOSMO:  AND THEN ERIC KOSMO FOR PRETRIAL

15  SERVICES.

16          THE COURT:  OKAY.  VERY WELL.

17          SO LET'S LET EVERYBODY GET OUT AND ALEX SECURE THE

18  COURTROOM, AND THEN WE'LL GET STARTED.

19          MR. BURSTEIN:  THANK YOU, YOUR HONOR.

20          THE COURT:  WELL, THE COURTROOM IS NOW SECURED, AND

21  WE KNOW WHO'S HERE IN THE COURTROOM.  IT'S ONLY PEOPLE RELATED

22  TO THE MATTER AND THE COURT'S STAFF.

23          SO, MR. BURSTEIN, WHAT IS THE STATUS OF YOUR CLIENT'S

24  HEALTH AT THIS POINT, SIR?

25          MR. BURSTEIN:  I JUST WANTED TO MAKE SURE THE COURT

1  GOT THE JANUARY 28TH SUMMARY THAT WE SUBMITTED. IT'S A

2  BULLET-POINT SUMMARY. I HAVE AN EXTRA COPY.

3              THE COURT: IT WAS IN AN EMAIL?

4              MR. BURSTEIN: IT WAS IN AN EMAIL.

5              THE COURT: I DO HAVE A COPY OF THAT.

6              MR. BURSTEIN: SO -- OKAY. SO, THEN, THAT'S THE

7  LATEST STATUS FOR MR. FRANCIS CURRENTLY. HE IS SCHEDULED FOR

8  WEEKLY MEDICAL APPOINTMENTS, WHICH MR. KOSMO WAS GIVEN ADVANCE

9  NOTICE OF, AND THEN HE WILL BE

10             THE COURT: AND THAT        IS MARCH 8TH, I BELIEVE.

11             MR. BURSTEIN: YEAH. I'M NOT SURE IF THE

12       MARCH 8TH AND              MARCH 9TH OR THE

13                                          , BUT IT'S WITHIN

14  24 HOURS OF THE              .

15             THE COURT: OKAY.

16             MR. BURSTEIN: SO THIS SUMMARIZES. I CAN PUT IT ON

17  THE RECORD IF THE COURT WANTS, BUT OTHERWISE --

18             THE COURT: WELL, THIS IS BY WAY OF AN EMAIL, WHICH I

19  DID HAPPEN TO RECEIVE A COPY OF. I DON'T KNOW, BUT YOU SHOULD

20  PUT SOME OF THIS ON THE RECORD.

21             MR. BURSTEIN: OKAY.

22             THE COURT: THE RECORD OF THESE PROCEEDINGS WILL BE

23  SEALED UNTIL FURTHER ORDER OF THE COURT. THE COURTROOM IS

24  SEALED. SO WHY DON'T YOU GO AHEAD?

25             MR. BURSTEIN: YES, YOUR HONOR. SO, IN ADVANCE OF

```
 1 │ THIS HEARING, YOUR HONOR, I SPOKE WITH THE MAIN TREATING
 2 │ PHYSICIAN,            , ABOUT THE CURRENT STATUS OF MR.
 3 │ FRANCIS.  HE ADVISED ME, YOUR HONOR, FIRST, THAT ALONG WITH
 4 │ THE                                  MR. FRANCIS CONTINUES
 5 │ TO HAVE A NUMBER OF CHRONIC HEALTH PROBLEMS THAT ARE POSING
 6 │ SIGNIFICANT ISSUES WITH,                             .  SO,
 7 │ OF THESE PROBLEMS, THE MOST SERIOUS AT THIS POINT IS A
 8 │                         THAT NEEDS TO BE TREATED.  OBVIOUSLY, IF
 9 │ THERE'S -- I DON'T KNOW WHAT THE PROPER TERMINOLOGY IS.  I'M
10 │ SURE MR. PLETCHER DOES.  BUT IF IT
11 │
12 │         SO THE
13 │                                     TREATED VERY SOON.  IT
14 │ REQUIRES                            .  I'M ADVISED
15 │ THAT THAT IS CONSIDERED            .  THIS       WILL
16 │ SERVE TWO PURPOSES:  NOT ONLY WILL IT ALLOW FOR THEM TO
17 │                      , BUT IT WILL ALSO ALLOW FOR A
18 │
19 │         DURING THE                 THE DOCTORS WILL BE
20 │ ABLE TO                      THEY FEEL THAT THEY,
21 │                                       FEEL THAT
22 │ THIS IS THE PROPER COURSE GIVEN MR. FRANCIS' SIZE, HIS,
23 │ FRANKLY, HIS GIRTH.  THEY NEED TO REALLY
24 │         I DON'T WANT TO BE VERY CRUDE OR GRAPHIC, BUT THEY
25 │ NEED TO
```

```
 1        SO, FOR THAT TO TAKE PLACE, THAT WILL GIVE THEM THE
 2   BEST OPPORTUNITY TO                                        ,
 3   BECAUSE RIGHT NOW THEY KNOW IT                    THERE'S
 4   SOME WORRY ABOUT              WHICH I'LL GET TO, BUT THEY
 5   DON'T KNOW A HUNDRED PERCENT ABOUT THE IMMEDIATE
 6                                       SO THAT'S WHAT THEY'RE
 7   GOING TO BE LOOKING FOR.
 8        HE'LL BE                           , YOUR HONOR, ON
 9   MARCH 8TH.  THE REASON FOR THE --
10        THE COURT:  HE'S GOING TO BE AT
11        MR. BURSTEIN:  YEAH, THE SAME HOSPITAL THAT HE WAS
12   PREVIOUSLY WHEN HE ORIGINALLY CAME OUT ON FURLOUGH.
13        THE COURT:  AND EVEN WHEN HE'S IN THE HOSPITAL, HE
14   WILL HAVE SECURITY WITH HIM?
15        MR. BURSTEIN:  ABSOLUTELY, YOUR HONOR.  NOTHING WILL
16   CHANGE WITH THE CONDITIONS.
17        THE COURT:  OKAY.
18        MR. BURSTEIN:  IF WE HAVE TO TAKE GPS OFF AT ALL,
19   WHICH I DON'T ANTICIPATE, WE'LL COORDINATE IT WITH MR. KOSMO
20   AND THE COURT, BUT WE DON'T --
21        THE COURT:  WELL, YOU'RE GOING TO HAVE TO TAKE THAT
22                        , I'M SURE, AREN'T YOU?
23        MR. BURSTEIN:  WE'VE BEEN ABLE TO NOT TAKE IT OFF.
24   I'LL LET MR. KOSMO SPEAK TO THAT.
25        THE COURT:  WELL, WE'LL GET TO HIM IN JUST A MINUTE.
```

1   KEEP GOING.

2        MR. BURSTEIN: I DON'T ANTICIPATE HAVING TO TAKE IT

3   OFF, AND 24-HOUR SECURITY WILL REMAIN IN PLACE PER THE COURT'S

4   ORDER.

5        ████████████████ , YOUR HONOR, CAN'T BE DONE SOONER

6   BECAUSE THE DOCTORS NEED TO ASSURE ENOUGH TIME FOR HIM ████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████

9   ██████████████████████████████████████████

10   ████████████████████████████████████████████

11   ██████████████

12        ████████████████████████████████████████████

13   ██████████████████████████████████████████████████

14   ████████████████████████████████████████████

15        ██████████ ASSUMING THERE ARE NO MAJOR COMPLICATIONS FROM

16   THE ██████████████████████████████████████ , THE

17   PLAN IS TO TAKE MR. FRANCIS ████████████████████████

18   ████████████████████████████ - -- I DON'T REMEMBER THE

19   TERM, AND I'M SORRY, BUT IT'S BASICALLY ████████████████

20   ████████████████████████████████████████████████

21   ██████

22        CANDIDLY, IF THERE ARE ████████████████████████

23   ██████████████████████████████████████████████ ,

24   THEN I'M NOT SURE WHAT OTHER STEPS THEY'RE GOING TO BE ABLE TO

25   TAKE. SO I'M NOT EVEN GOING TO ENTERTAIN THAT POSSIBILITY.

1   I'M JUST GOING TO ASSUME BEST CASE, THAT IT                    .

2   YEAH.  I'LL JUST LEAVE IT AT THAT.

3          SO THAT WOULD BE THE                    .  OBVIOUSLY, THE

4                                     .  THEY'RE MONITORING, AND I

5   SAID FOR                    , FOR THE LAST FEW MONTHS.  HE'S HAD A

6

7                                     .  THEY'RE ABLE TO,

8                                          SO THEY'RE JUST NOT

9   SURE.  THEY'RE DOING

10

11                                                     , AND THEY

12  JUST DON'T KNOW, BUT IT'S THE DOMINO EFFECT OF THINGS STARTING

13  TO FALL APART.

14

15

16                                          THAT I THINK

17  COULD -- I'M NOT A MEDICAL EXPERT, BUT IT COULD BE A RESULT OF

18                                     .  IT COULD BE A

19  RESULT OF THE                    IT COULD BE A RESULT OF ANYTHING.

20  BUT I THINK HE'S HAVING SOME                    , AS I

21  UNDERSTAND IT, YOUR HONOR.

22          SO THAT IS, FOR THE RECORD, THE FULL STATE AS I KNOW

23  IT AS OF TODAY FOR MR. FRANCIS.

24          THE COURT:  WELL, LET'S ASSUME BEST-CASE SCENARIO AND

25  HE HAS          ON OR AROUND MARCH 8TH.  DO YOU KNOW THE LENGTH

1   OF THE HOSPITAL STAY?  AND I GUESS WHAT I'M WONDERING IS WHEN
2   WE SHOULD SET OUR NEXT STATUS TO DETERMINE HOW THINGS ARE
3   GOING, BECAUSE WE'LL KNOW SO MUCH MORE AFTER THAT
4
5           AND I'LL HEAR FROM YOU IN JUST A MINUTE, MR.
6   PLETCHER, AND YOU ALSO.
7           BUT I JUST WANT TO KNOW IF YOU KNOW THE ANSWER TO
8   THAT.
9           MR. BURSTEIN:  YEAH.  YES, I DO, YOUR HONOR.  I SPOKE
10  TO                        , ABOUT THAT, AND HE SUGGESTED THAT HE
11  COULD PROBABLY GET A MORE COMPLETE REPORT TO THE COURT POST
12                              --
13           THE COURT:  RIGHT, RIGHT.
14           MR. BURSTEIN:  -- AND DEPENDING ON HIS RECOVERY TIME,
15  WE THINK SOMETHING MID-APRIL WOULD BE (PAUSE) --
16           THE COURT:  OKAY.
17           MR. BURSTEIN:  -- WE WOULD HAVE A FULL, COMPLETE
18  REPORT THAT WE COULD NOT ONLY GET TO THE COURT, BUT GET TO THE
19  GOVERNMENT AND THE MARSHALS SERVICE IN ADVANCE OF THE COURT
20  HEARING.  SO I WOULD SUGGEST SOMETHING IN MID-APRIL, AND THEN
21  WE'LL ALSO BE ABLE TO HAVE AN UPDATE ON THE
22           ASSUMING THAT IS GOING TO HAPPEN.
23           THE COURT:  OKAY.  VERY WELL.  THANK YOU.
24           MR. PLETCHER.
25           MR. PLETCHER:  THANK YOU, YOUR HONOR.

11

```
1        I DON'T HAVE MUCH TO ADD.  I APPRECIATE THE FULL
2   MEDICAL REPORT, AND I THINK WE ALL ARE WISHING MR. FRANCIS THE
3   BEST INTO THIS NEXT PHASE.
4        THE COURT:  RIGHT.
5        MR. PLETCHER:  I AGREE WITH THE COURT.  WE -- IT
6   LOOKS LIKE WE WILL KNOW A LOT MORE FOLLOWING THE
7
8
9                    AND, YOU KNOW, THERE'S A BEST-CASE SCENARIO
10  HERE THAT HAS A SIGNIFICANT UP SIDE, AND THEN THERE'S OTHER
11  SCENARIOS THAT AREN'T THAT.  SO I THINK IT'S PRUDENT TO SET
12  THIS STATUS IN APRIL OR -- YEAH, IN APRIL, IF THAT'S THE BEST
13  GUESS AS TO WHEN WE'LL HAVE THIS INFORMATION, AND THEN PRESENT
14  THE INFORMATION TO THE COURT AND MAKE OUR NEXT BEST MOVES
15  THEN.
16        THE COURT:  OKAY.
17        MR. PLETCHER:  THANK YOU, YOUR HONOR.
18        THE COURT:  THANK YOU.
19        MR. KOSMO:  YES, YOUR HONOR.  SO HE'LL BE HAVING
20
21                                                   .  THE
22  SAME THING WITH THE          IF IT'S NOT LOCALIZED WHERE THE
23  DEVICE IS, IT DOESN'T NEED TO BE REMOVED.  HOWEVER, IT WOULD
24  BE GOOD IF WE CAN ALL AGREE THAT IF THERE IS A MEDICAL
25  EMERGENCY, I CAN GO OUT TO THE HOSPITAL AND REMOVE IT IF
```

1    NEEDED, IF YOUR HONOR'S AGREEABLE, AND WE COULD PUT IT BACK ON

2    WHEN IT'S MEDICALLY SAFE TO DO SO.

3            THE COURT:  WELL, THAT'S AGREEABLE WITH THE COURT IF

4    IT'S AGREEABLE WITH BOTH COUNSEL.

5            MR. BURSTEIN:  YES, YOUR HONOR.

6            MR. PLETCHER:  OF COURSE, IN THE EVENT OF A MEDICAL

7    EMERGENCY, WE WILL --

8            THE COURT:  ABSOLUTELY.  THANK YOU.

9            MR. PLETCHER:  -- WE SHOULD TAKE ALL STEPS NECESSARY.

10           MR. KOSMO:  RIGHT, YOUR HONOR.

11           THE COURT:  EXACTLY.

12           MR. KOSMO:  AND THEN PROCEDURALLY IF HE WOULD -- YOU

13   KNOW, AT SOME POINT, IF HE'S ABLE, LIKE LAST TIME, WE WOULD DO

14   A VISIT AT THE HOSPITAL, LIKE WHEN HE WAS THERE ORIGINALLY,

15   WHEN IT'S SAFE FOR HIM FOR THAT TO HAPPEN.

16           THE COURT:  OKAY.  VERY WELL.

17           AND THAT'S AGREEABLE WITH THE COURT IF IT'S AGREEABLE

18   WITH YOU.

19           MR. BURSTEIN:  ABSOLUTELY.  WE'VE BEEN WORKING

20   CLOSELY WITH MR. KOSMO, AND HE'S BEEN VERY HELPFUL.

21           THE COURT:  I MEAN, THE COOPERATION AMONG EVERYBODY

22   IS VERY GOOD AT THIS POINT, AND I THINK IT WILL CONTINUE.

23           SO I'M CERTAINLY WILLING TO SET THE NEXT HEARING, THE

24   NEXT STATUS, IN MID-APRIL, ALEX.  PICK AN OFF DAY, BECAUSE IT

25   WILL AGAIN BE A CLOSED PROCEEDING BECAUSE OF THE NATURE OF

1   THESE MATTERS AND HEALTH ISSUES. SO, WHERE CAN WE PUT IT?

2         THE DEPUTY CLERK: APRIL 18TH -- THAT'S A THURSDAY --

3   AT TEN O'CLOCK A.M.

4         THE COURT: DOES THAT WORK FOR BOTH COUNSEL? DOES

5   THAT WORK FOR YOU, MR. BURSTEIN, MR. PLETCHER?

6         MR. PLETCHER: YES, YOUR HONOR. THANK YOU.

7         MR. BURSTEIN: I'M SORRY. I'M SUPPOSED TO BE OUT OF

8   TOWN WITH MY WIFE THAT DAY. COULD WE DO THE -- I KNOW IT'S A

9   WEEK LATER, AND I'M SORRY. AND I'M SORRY, MARK, IF THIS IS

10   NOT IDEAL. BUT CAN WE DO THE 25TH INSTEAD?

11         THE COURT: THAT'S FINE. AT TEN O'CLOCK.

12         MR. PLETCHER: THAT'S FINE ALSO.

13         THE COURT: NO, THAT'S AGREEABLE.

14         DOES THAT WORK FOR EVERYBODY, THE 25TH OF APRIL, AT

15   TEN A.M.?

16         MR. KOSMO: YES, YOUR HONOR.

17         MR. PLETCHER: YES, YOUR HONOR. THANK YOU.

18         THE COURT: OKAY. CERTAINLY.

19         MR. BURSTEIN: THANK YOU, YOUR HONOR.

20         AND THEN --

21         THE COURT: YOU'RE WELCOME.

22         MR. BURSTEIN: -- THE NEXT THING WE NEED IS AN ORDER

23   FROM THE COURT EXTENDING THE FURLOUGH TO APRIL 26TH, IF THAT

24   PLEASES THE COURT.

25         THE COURT: NO, I WILL CERTAINLY DO THAT. WE'LL

1    EXTEND IT ON THE SAME TERMS AND CONDITIONS.  IT'S EXTENDED TO

2    APRIL 26TH.

3          MR. BURSTEIN:  OKAY.  DOES ANYBODY NEED -- I DON'T

4    THINK AT THIS POINT ANYBODY NEEDS A WRITTEN ORDER.  I DON'T

5    KNOW IF THE MARSHALS DO.

6          THE DEPUTY MARSHAL:  IF YOU COULD PROVIDE ONE, YES,

7    WE WOULD LIKE TO HAVE A COPY OF ONE.

8          THE COURT:  I THINK A WRITTEN ORDER IS PROBABLY

9    BETTER BECAUSE --

10         MR. BURSTEIN:  OKAY.  I'LL SUBMIT IT UNDER SEAL.

11         THE COURT:  SUBMIT IT UNDER SEAL, SHOW IT TO MR.

12   PLETCHER, AND I'LL TAKE CARE OF IT AS SOON AS IT COMES IN.  I

13   THINK THE MARSHAL WANTS THAT.

14         GO AHEAD.  IS THERE SOMETHING ELSE YOU WANTED TO SAY?

15         THE DEPUTY MARSHAL:  YES, YOUR HONOR.  I'M SORRY.

16         THE COURT:  THAT'S OKAY.  IT'S JUST EASIER FOR ME TO

17   HEAR YOU, AND STATE YOUR NAME FOR THE RECORD, IF YOU WOULD.

18         THE DEPUTY MARSHAL:  YES.  I AM DEPUTY ELUID SOTO

19   WITH THE U.S. MARSHALS.  AND, YES, THE MARSHALS SERVICE WOULD

20   LIKE TO HAVE A COURT ORDER STATING THE EXTENSION FOR THE

21   MEDICAL FURLOUGH.

22         THE COURT:  OKAY.  AND WE WILL CERTAINLY PROVIDE ONE.

23   IT WILL BE COMING SHORTLY.

24         MR. BURSTEIN:  JUST SO YOU KNOW, IT WILL COME IN THE

25   MAIL TO ME, AND I WILL SCAN IT AND EMAIL IT TO YOU AND TO MARK

1  AND TO MR. KOSMO AS WELL.

2          THE DEPUTY MARSHAL:  THAT SOUNDS GOOD.

3          MR. BURSTEIN:  BUT IT WILL TAKE TIME, SO YOU WON'T

4  HAVE IT.  EVEN THOUGH THE COURT HAS ORALLY ORDERED IT, YOU

5  WON'T HAVE IT.

6          THE DEPUTY MARSHAL:  OKAY.

7          THE COURT:  OKAY.  THANK YOU.

8          ANYTHING ELSE, MR. PLETCHER?

9          MR. PLETCHER:  I KNOW THE COURT HAS ASKED ABOUT THIS

10 ISSUE BEFORE, SO I RAISE IT NOW, IS THAT IN OUR APRIL HEARING

11 WHERE WE HAVE A GOOD PICTURE OF WHAT THE FUTURE MAY HOLD --

12          THE COURT:  RIGHT.

13          MR. PLETCHER:  -- I THINK WE'LL BE ABLE TO REVISIT

14 SUBSTANTIVELY NOT JUST WHAT THE FUTURE HOLDS FOR MR. FRANCIS'

15 HEALTH, OR FURLOUGH, OR                      , BUT ALSO HOW THAT

16 IMPACTS THE TRAJECTORY OF THE SUBSTANTIVE CASES THAT ARE

17 PENDING.  AND, OF COURSE, OUR HOPE IS THAT MR. FRANCIS IS WELL

18 ON HIS WAY TO RECOVERY, AND IS HERE AND ABLE TO PRESENT

19 TESTIMONY AS A LIVE WITNESS.  IF WE HAVE DIFFERENT

20 INFORMATION, AGAIN, WE'LL HAVE TO ADJUST AT THAT TIME.  JUST

21 SO THAT'S ON THE COURT'S RADAR FOR OUR NEXT STEP.

22          THANK YOU, YOUR HONOR.

23          THE COURT:  VERY GOOD.  I APPRECIATE THAT, AND AGAIN

24 EVERYBODY WISHES MR. FRANCIS WELL AS HE TREATS ON SOME VERY,

25 VERY SERIOUS ISSUES.

1    AND I THINK YOU DID THE RIGHT THING, MR. BURSTEIN.

2    YOU TAKE THE APPROACH THAT EVERYTHING'S GOING TO GO WELL, AND

3    THAT'S CERTAINLY WHAT WE'RE ALL HOPING FOR.

4         SO WE'LL SEE YOU IN APRIL.   THANK YOU.

5         MR. BURSTEIN:   THANK YOU, YOUR HONOR.

6         MR. PLETCHER:   THANK YOU, YOUR HONOR.

7         MS. JENKINS:   THANK YOU, YOUR HONOR.

8         (PROCEEDINGS ADJOURNED AT 10:11 A.M.)

9    ---------------------------------------------------------------

10              (END OF TRANSCRIPT)

11

12         I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

13   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

14   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

15

16         S/FRANK J. RANGUS

17         FRANK J. RANGUS, OCR

18

19

20

21

22

23

24

25



**Calendar of the United States District Court**
**Southern District of California**
**San Diego**
**Friday, May24, 2019**
**Courtroom 4D**

**Present the Honorable: Janis L. Sammartino**      **District Judge**

**Deputy Clerk: A. Ramos**      **Court Reporter/ECR: M SETTERMAN**      **Interpreter:**

# \*\*\* SEALED PROCEEDINGS \*\*\*
## 11:00 AM

| **10a.** | 13CR3781-JLS<br>13CR3782-JLS<br>13CR4287-JLS | USA | V. | **LEONARD GLENN FRANCIS** |

                                        **RETD DEVIN BURSTEIN**
                                              KATIE JENKINS
                                              JEREMY WARREN

                                        **AUSA MARK PLETCHER**
                                              **ROBERT HUIE**
                                              ERIC BESTE
                                              PATRICK HOVAKIMIAN

                                        **USPT**   ERIC KOSMO
                                              KIMURA HAZARD
                                              **VANESSA ANDREWS**

                                        **USM**   JAIME SCHIMMEL
                                              Jaime.schimmel@usdoj.gov
                                              619-247-4498 (Cell)
                                              ELUID SOTO

**STATUS HEARING**

Notes:
Sentence w/PSR set for **MARCH 20, 2020**

COURT CONTINUES MEDICAL FURLOUGH TO 9/9 2019 (USM ABSTRACT)

STATUS HEARING RE MEDICAL FURLOUGH SET FOR **9/6/2019 AT 11:00 AM**

0:14

SEALED FINAL

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

HONORABLE JANIS L. SAMMARTINO
UNITED STATES DISTRICT JUDGE PRESIDING

---------------------------------------------------------

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 13-CR-3781-JLS |
| | ) 13-CR-3782-JLS |
| PLAINTIFF, | ) 13-CR-4287-JLS |
| | ) |
| | ) SEPTEMBER 6, 2019 |
| VS. | ) |
| | ) STATUS HEARING |
| LEONARD GLENN FRANCIS, | ) |
| | ) (SEALED HEARING) |
| DEFENDANT. | ) |

---------------------------------------------------------

APPEARANCES:

FOR THE PLAINTIFF:          MARK W. PLETCHER
                            ROBERT HUIE
                            U.S. ATTORNEY'S OFFICE

FOR THE DEFENDANT:          DEVIN J. BURSTEIN
                            KATIE JENKINS
                            WARREN & BURSTEIN

THE COURT REPORTER:     GAYLE WAKEFIELD, RPR, CRR

SEPTEMBER 6, 2019

2                        MORNING SESSION

3          THE CLERK:  NUMBER 8 ON THE CALENDAR, 13-CR-3781,

4  13-CR-1382, 13-CR-4287, UNITED STATES VS. LEONARD GLENN FRANCIS

5  FOR STATUS.

6          MR. PLETCHER:  GOOD MORNING, YOUR HONOR, MARK PLETCHER

7  AND ROBERT HUIE FOR THE UNITED STATES.

8          MR. HUIE:  GOOD MORNING, YOUR HONOR.

9          THE COURT:  GOOD MORNING.

10          MR. BURSTEIN:  GOOD MORNING, YOUR HONOR, DEVIN BURSTEIN

11  AND KATIE JENKINS ON BEHALF OF MR. FRANCIS.

12          MS. JENKINS:  GOOD MORNING, YOUR HONOR.

13          THE COURT:  GOOD MORNING, MS. JENKINS.

14          GO AHEAD, MR. BURSTEIN.

15          MR. BURSTEIN:  YOUR HONOR, I SPOKE WITH THE HEAD OF HIS

16  MEDICAL TEAM,              , RECENTLY.              INFORMED ME

17  THAT THE BIGGEST ACUTE ISSUE THAT WE HAD ADDRESSED LAST TIME

18  WAS THIS LINGERING           IN HIS -- IN MR. FRANCIS'S

19          AREA THAT WAS VERY, VERY DIFFICULT TO CONTROL BECAUSE

20  OF HIS                          THAT LED TO HIS

21  ON TWO DIFFERENT OCCASIONS.  THEY SENT HIM TO A SPECIALIST -- I

22  FORGET THE EXACT TITLE, SO I APOLOGIZE TO THE COURT -- BUT A

23  SPECIALIST WHO WAS ABLE TO GET THAT UNDER CONTROL

24                                                        .

25  THAT WAS A SIGNIFICANT DELAY THOUGH IN HIS              .  SO

```
 1    NOW THAT THAT'S UNDER CONTROL, HE'S BACK ON HIS ███ -- HIS
 2    SECOND OR THIRD ███████████.
 3              HE HASN'T ██████████████████████████████. IT'S
 4    SOMEWHERE -- I PUT ██████████ IN THE EMAIL, AND IT'S ABOUT
 5    ██████████. IT MAY NOW BE A LITTLE BIT MORE. THAT'S OF
 6    SIGNIFICANT CONCERN TO ████████████ IN HIS EXPERIENCE, THAT IS
 7    OFTEN A SIGN OF ████████████████. HE HASN'T PICKED UP
 8    ██████████ --
 9              THE COURT: LET ME STOP YOU FOR A SECOND. WHEN WE WERE
10    LAST TOGETHER, WASN'T IT BEFORE HE WAS GOING TO HAVE SOME
11    ██████ AND THEY WERE -- IT WAS GOING TO BASICALLY BE ALMOST AN
12    ████████████ FROM THE STANDPOINT OF DETERMINING THE STATUS OF
13    ██████████████████████? SO LET ME JUST BACK YOU UP FOR A
14    SECOND AND ASK WHAT THEY LEARNED FROM THAT, IF ANYTHING.
15              MR. BURSTEIN: THAT WAS TWO TIMES AGO, YOUR HONOR. I
16    KNOW THESE TEND TO RUN TOGETHER. THAT'S WHAT LED TO THE
17    ████████, THEY THINK. ████████████ WAS ACTUALLY AWHILE AGO,
18    AND WHAT HAPPENED THERE IS THEY WERE ██████████████, THERE
19    WAS THE ████████████████, AND THEY CHECKED AND ████████ IN
20    THIS AREA -- ████████████████████████████ -- HAD NOT
21    ██████████ ANYTHING LIKE THAT. THEIR MAIN CONCERN IS THE ███
22    ██████████████████████████████████████████████████, AND
23    SO THAT -- AND THEN AFTER THE ██████████████████████ IN AND
24    THAT BECAME EVERYBODY'S FOCUS BECAUSE IT GOT VERY, VERY, VERY
25    SERIOUS.
```

3

```
 1          THE COURT:  RIGHT, AND HE WAS  ██████████  FOR THAT

 2   ██████

 3          MR. BURSTEIN:  TWICE.  AND SO NOW THAT HE'S  ██████

 4   ████████████████████████████████████████████████████.  NOW

 5   THAT  ████████████████████████, THEY'RE GOING TO HAVE  ████

 6   ████████████████  AND THEN REEVALUATE THE  ████████████.  ██

 7   ████████  STRONG PREFERENCE IS FOR  ████████████; IT ALWAYS HAS

 8   BEEN.  I THINK THERE IS -- I'M AT LIBERTY TO TELL THE COURT

 9   THERE IS SOME RELUCTANCE ON MR. FRANCIS'S PART, GIVEN WHAT

10   HAPPENED  ████████████████████████████████████████████.

11          THERE'S ALSO A NEED FOR  ████████████████████████,

12   AND SO THAT MIGHT BE THE  ████████████.  I KNOW THAT IS  ██

13   ████████████████████████████████████.  ASSUMING THAT

14   THE NEXT ROUND  ████████████  SHOW THAT HE IS  ████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████

17          ████████  WILL THEN STILL BE AN OPTION.

18          THE COURT:  THE ████████████ IS TO DO WHAT?

19          MR. BURSTEIN:  ████████████████████████████████████

20   ██, SO THAT'S THE CURRENT PLAN.

21          THE COURT:  WHAT'S THE TIMELINE FOR ALL OF THIS?

22          MR. BURSTEIN:  THE SCANS WOULD BE  ████████████████

23   ████████████████████████  FROM NOW.  THE  ████████████████

24   WOULD THEN BE SHORTLY THEREAFTER, AND THEN A RECOVERY, AND THEN

25   THE  ████████████████████.  IF EVERYTHING'S OKAY -- THE BIG
```

4

```
1    UNKNOWN NOW IS ███████████. WAS THAT A PRODUCT OF THE

2    ███████████████████████████████████████████████

3    ██████████████ OR IS IT SOMETHING ELSE OR WHAT?

4          THE COURT:  MR. LEONARD FRANCIS IS A BIG MAN.  I'VE MET

5    HIM ONCE OR TWICE IN COURT.  IT'S BEEN QUITE SOME TIME, BUT

6    EVEN FOR A BIG MAN, ██████████████████████████.

7          MR. BURSTEIN:  YES, YOUR HONOR.

8          THE COURT:  HOW IS HE FEELING?  HOW ARE HIS SPIRITS?

9    HIS FAMILY IS HERE NOW?

10         MR. BURSTEIN:  HIS FAMILY IS HERE.  HE'S IN ████████

11   ████████████████████████████████████████, BUT HE REMAINS

12   REMARKABLY POSITIVE.  I THINK THE CHURCH, THAT HER HONOR KNOWS

13   HE'S ALLOWED TO GO TO ONCE A WEEK, THAT REALLY HELPS HIS

14   SPIRITS.  HIS FAITH IS VERY, VERY STRONG.  YOU KNOW, HE KEEPS

15   HIS MIND AS ACTIVE AS IT CAN BE, AND HE'S POSITIVE.  I MEAN,

16   IT'S NOTICEABLE ████████████████.

17         THE COURT:  HE'S GETTING THE BEST CARE THAT ANYBODY

18   COULD GET FOR THIS SITUATION, AS DIFFICULT AS IT IS.  GO AHEAD,

19   I DIDN'T MEAN TO CUT YOU OFF BY --

20         MR. BURSTEIN:  THAT'S WHERE WE ARE.  WE'LL KNOW A LOT

21   MORE AFTER THIS NEXT ████████████████ THREE MONTHS, AND THEN

22   WE'LL HAVE HOPEFULLY ████████ SCHEDULED TO REPORT TO THE

23   COURT.

24         THE COURT:  OVER WHAT PERIOD OF TIME HAS HE ████████

25   ████ ?
```

```
1          MR. BURSTEIN:  I DON'T HAVE -- I CAN TELL -- I CAN TELL
2     THE COURT MY PERCEPTIONS OF IT.
3          THE COURT:  JUST YOUR PERCEPTIONS.
4          MR. BURSTEIN:  MS. JENKINS CAN SPEAK TO IT, TOO,
5     BECAUSE WE'RE THE ONES WHO SEE HIM.  I WOULD SAY OVER THE LAST
6     ███████████████
7          MS. JENKINS:  ███████████
8          MR. BURSTEIN:  ████████████████  IT FEELS LIKE.  HE
9     WAS PRETTY ██████████████████████.  HE WAS THE SAME AS HE'S
10    ALWAYS BEEN SINCE I'VE KNOWN HIM.  I MEAN, █████████████████
11    ██████████████████████████████  ████████████████████
12    ████████████████████, BUT I STARTED NOTICING IT WHEN --
13    ██████████████████████████████████.  I'LL TELL YOU
14    ████████████████████████████.  I SAW HIM ABOUT A WEEK AND A
15    HALF AGO, AND NOW THAT HE'S NOT IN AN ████████████, HE'S
16    LOOKING AT LEAST -- NOT IN TERMS OF ████████████
17    ██████████████████████████.  HE LOOKS BETTER THAN HE
18    DID ████████████████████████.
19         THE COURT:  SO YOU'RE ASKING ME TO EXTEND THE MEDICAL
20    FURLOUGH.
21         MR. BURSTEIN:  FOR FOUR TO SIX MONTHS, DEPENDING ON
22    WHAT THE GOVERNMENT THINKS AND WHAT THE COURT'S PREFERENCE IS.
23    I MEAN, FOR ME -- WE KIND OF KNOW WHAT THE NEXT FOUR MONTHS
24    WILL LOOK LIKE, BUT I'M HAPPY TO COME IN AND REPORT WITH THE
25    ████████████, IF THAT'S WHAT THE COURT WANTS, OR I CAN COME
```

1    AFTER ▮▮▮▮▮▮▮.

2         THE COURT:  LET ME HEAR WHAT THE GOVERNMENT HAS TO SAY.

3    MR. PLETCHER, IN ADDITION TO MAINTAINING SOME SEMBLANCE OF A

4    SCHEDULE ON THESE STATUS REPORTS, IF YOU WOULD UPDATE THE COURT

5    ON WHAT THIS MEANS, IF ANYTHING, IN YOUR VIEW, FOR THE CASES

6    THAT STILL REMAIN ACTIVE THAT ARE OUTSTANDING.

7         MR. PLETCHER:  WE AGREE WITH THE COURT THAT HAVING

8    PROBABLY STATUS REPORTS ON MORE -- THE SAME FREQUENCY, NOT

9    PUTTING THEM OUT FOR SIX MONTHS.

10        THE COURT:  SIX MONTHS IS TOO FAR.

11        MR. PLETCHER:  TOO FAR, BECAUSE THE COURT HAS BEFORE

12   AND HAS APPROPRIATELY COMMENTED ABOUT THE NEED TO KEEP CAREFUL

13   WATCH OVER THIS CASE GIVEN ITS NOTORIETY, GIVEN --

14        THE COURT:  MR. PLETCHER, YOU'VE BEEN AT THE HEARINGS

15   WHERE THE GROUP OF DEFENDANTS THAT ARE LITIGATING AGGRESSIVELY

16   IN THIS MATTER HAVE OPENLY CHALLENGED THE MEDICAL FURLOUGH, AND

17   THE NEED FOR THE MEDICAL FURLOUGH, AND I SAID, "I'M SUPERVISING

18   IT.  I'M TELLING YOU IT'S MEDICALLY WARRANTED.  IT'S NOT JUST

19   IN EXCHANGE FOR SOME DEAL WITH THE GOVERNMENT."

20        MR. PLETCHER:  EXACTLY, AND SO WE THINK THAT THAT'S

21   EXACTLY THE RIGHT ANALYSIS, AND I THINK ONE WAY TO MAKE SURE

22   THE COURT CONTINUES TO KEEP TABS ON THAT IS NOT JUST FREQUENT

23   UPDATES AND STATUS, BUT, YOU KNOW, TO THE EXTENT THAT ▮▮▮▮

24   ▮▮▮▮▮  IS ABLE TO SUBMIT MEDICAL REPORTS TO THE COURT --

25   OBVIOUSLY MR. BURSTEIN IS ABLE TO BE A MOUTHPIECE FOR THAT, BUT

```
1    HAVING BOTH HIS                                    WEIGH IN ON WHAT

2    EXACTLY IS HAPPENING FROM A MEDICAL PERSPECTIVE CONTINUES TO BE

3    HELPFUL I THINK, CERTAINLY FROM THE GOVERNMENT'S PERSPECTIVE,

4    BECAUSE WE ARE ASSESSING THE ONGOING NEED FOR A FURLOUGH, JUST

5    LIKE THE COURT IS, AND ENSURING THAT IT'S APPROPRIATE FOR US TO

6    JOIN IN THAT REQUEST, AND OBVIOUSLY THE COURT NEEDS THOSE FACTS

7    TO MAKE AN APPROPRIATE FINDING.  SO I THINK MORE FREQUENT OR

8    SAME FREQUENCY SCHEDULE STATUS HEARINGS IS APPROPRIATE,

9    INCLUDING FOUR MONTHS TO THE NEXT ONE AS WE SEE WHAT THE

10                           IS SPECIFICALLY RELATED TO THIS.

11              I DON'T HAVE ANYTHING TO COMMENT ON WITH RESPECT TO THE

12   EXACT MEDICAL PROGNOSIS, NOR COULD I, RIGHT?

13                     .  I HOPE VERY MUCH THAT IT'S RELATED TO THE

14                                         I HOPE THAT THE

15                                              .   I KNOW THE

16   COURT HAS EXPRESSED AND EVERYONE IN THE COURTROOM WISHES MR.

17   FRANCIS THE BEST AND SPEEDY RECOVERY AND -- TO ALL EXTENT

18   POSSIBLE.

19              ON THE FINAL ISSUE THAT THE COURT ASKED TO COMMENT ON,

20   WE CONTINUE TO HOPE THAT WE WILL GET A TRIAL DATE SET IN THE

21   NEAR FUTURE.  OUR PREFERENCE IS -- I THINK FOR EVERYONE'S SAKE

22   -- FOR MR. FRANCIS TO BE A LIVE WITNESS.  I THINK THAT'S THE

23   BEST COURSE FOR THE COURT.  IT'S THE MOST EFFICIENT.  FROM OUR

24   PERSPECTIVE, THE DEPOSITION COULD BE A VERY INEFFICIENT

25   EXERCISE IN WHAT COULD TAKE A VERY, VERY LONG TIME, AS OPPOSED
```

1    TO LIVE TESTIMONY THAT WE THINK WE'D BE ABLE TO VERY TIGHTLY

2    CIRCUMSCRIBE THE ISSUES.  WE WOULD KNOW EXACTLY WHAT THE ISSUES

3    WERE AT THE TIME, OBJECTIONS COULD BE HEARD AND RULED UPON, AND

4    THE SCOPE OF THE ISSUES AS TO HIS TESTIMONY AND

5    CROSS-EXAMINATION CAN BE LIMITED IN LIVE TESTIMONY IN A WAY

6    THAT IT'S HARDER TO DO IN DEPOSITION BECAUSE THAT'S TAKING

7    PLACE SO MUCH IN ADVANCE OF AN ACTUAL TRIAL.

8         SO WE'RE VERY HOPEFUL THAT, SPECIFICALLY WITH RESPECT

9    TO THE 7TH FLEET CASE, WE CAN GET A TRIAL DATE, YOU KNOW, IN

10   EARLY 2020 AND HAVE THOSE MATTERS PROCEED.

11        IF THE COURT IS ASKING ME, WE DO NOT SEE MR. FRANCIS AS

12   A WITNESS IN THE BROOKS PARKS TRIAL, AND WE SEE HIM AS ONLY A

13   POTENTIAL WITNESS WITH RESPECT TO DAVID HAAS.  SO THE MATTER

14   THAT WE ARE FOCUSED ON, AND I THINK THE COURT AND EVERYONE HAS

15   SPENT THEIR MOST TIME AND ATTENTION ON, IS THE 7TH FLEET CASE.

16   I HOPE THAT WE ARE HONING AND FOCUSING THE ISSUES AND RESOLVING

17   MOST OF THEM AND CONTINUING TO RESOLVE THE ISSUES AS THEY ARISE

18   IN AN EFFORT TO GET TO AS EARLY A TRIAL DATE AS POSSIBLE FOR

19   EVERYONE'S SAKE.  THE CASE HAS NOW BEEN INDICTED FOR TWO

20   AND-A-HALF YEARS.  I'M SURE THE DEFENDANTS ALSO FEEL A NEED TO

21   COME TO SOME RESOLUTION, IF WE'RE GOING TO HAVE TRIAL.

22        THE COURT:  WHICH ONE WOULD BE THE FIRST TRIAL, MR.

23   PLETCHER, WHICH ONE WOULD GO FIRST?

24        MR. PLETCHER:  I HOPE IT WILL BE THE 7TH FLEET CASE.

25   IT'S ALSO POSSIBLE THAT IT COULD BE THE BROOKS PARKS CASE, JUST

BY VIRTUE OF THE FACT THAT IT'S SO MUCH NARROWER. I THINK THAT
CASE WE COULD SET FOR LATER THIS YEAR OR EVEN BEFORE,
OCTOBER/NOVEMBER. THAT, FROM THE GOVERNMENT'S PERSPECTIVE -- I
DON'T MEAN TO SPEAK FOR MR. STEWART OR MR. OWENS, AS TO THE
LEVEL OF THEIR PREPARATION. I KNOW THEY'VE BEEN DILIGENTLY
WORKING ON SOME SOFTWARE AND SOME EVIDENCE REVIEW ISSUES, BUT
AS A MATTER OF EVIDENCE, THE 7TH FLEET CASE IS AN 88-PAGE
INDICTMENT, SPANNING SIX YEARS WITH NINE DEFENDANTS. THAT'S A
SIGNIFICANT STORY TO TELL FROM A MATTER OF AFFIRMATIVE EVIDENCE
PRESENTATION, AND THE DEFENDANTS -- NINE DEFENDANTS WILL EACH
HAVE SPECIFIC DEFENSES THAT THEY WILL WANT TO DIFFERENTIATE
THEIR CLIENTS AND CROSS-EXAMINE PEOPLE AS TO CREDIBILITY.

IT'S JUST A MUCH MORE SIGNIFICANT EXERCISE THAN THE
BROOKS PARKS CASE, WHICH IS REALLY A HANDFUL OF WITNESSES,
MAYBE THE GOVERNMENT'S CASE-IN-CHIEF IS THREE DAYS, FOUR DAYS,
SOMETHING LIKE THAT.

THE COURT: I BRING IT UP BECAUSE I KNOW LIVE
TESTIMONY, OF COURSE, IS ALWAYS PREFERABLE. BUT BECAUSE
ESPECIALLY THE 7TH FLEET CASE IS GOING TO TAKE SOME
CONSIDERABLE TIME, I DON'T KNOW THE LIKELIHOOD, YOU PROBABLY
DO, OF ANYTHING SHORT OF A TRIAL IN THAT MATTER. I JUST
WONDERED -- A LONG TIME AGO WE TALKED ABOUT PRESERVING SOME OF
MR. LEONARD FRANCIS'S TESTIMONY, AND I'M NOT AN ADVOCATE OF IT,
BUT I INDICATED I WOULD PRESIDE OVER A DEPOSITION IF THAT WAS
NECESSARY. AND THAT'S FRAUGHT WITH PROBLEMS, I REALIZE THAT,

```
1    BUT --

2              MR. FLETCHER:  THE SECOND PART OF MY COMMENTS HERE IS

3    WE'RE GOING TO BEGIN STEPS FOR THAT EXERCISE, TO THE EXTENT IT

4    LOOKS LIKE THAT'S OUR LAST RESORT, AND SO WE'RE GOING TO BEGIN

5    TO PREPARE BOTH FOR A DEPOSITION AND/OR FOR LIVE TRIAL

6    TESTIMONY, JUST TO MAKE SURE THAT ONE WAY OR ANOTHER THAT MR.

7    FRANCIS'S TESTIMONY AND HIS PERSPECTIVE ON THIS MATTER IS

8    PRESERVED, BUT ALSO THAT THE DEFENDANTS' ABILITY TO

9    CROSS-EXAMINE AND ELICIT WHATEVER TESTIMONY FAVORABLE TO THEM

10   THAT THEY BELIEVE HE HAS CAN BE PRESERVED AS WELL.  IT'S AN

11   EQUAL AND OPPOSITE QUESTION WITH RESPECT TO THAT.  EITHER WAY,

12   I THINK EVERYONE IS WEIGHING ALL OF THESE ISSUES, THE VERY

13   SIGNIFICANT MEDICAL ISSUES, THE VERY SIGNIFICANT ISSUES RELATED

14   TO A DEPOSITION.  I THINK IF WE WERE TO SCHEDULE A DEPOSITION,

15   I THINK THE COURT MAY HAVE TO BLOCK THREE WEEKS, RIGHT, WHEREAS

16   IF IT WERE LIVE TESTIMONY IN TRIAL, MAYBE IT'S TWO DAYS, AND

17   THAT'S A SIGNIFICANT DIFFERENCE.

18              THE COURT:  IF WE WERE TO BLOCK TIME FOR THE 7TH FLEET

19   CASE TO GO TO TRIAL, WE'RE BLOCKING PROBABLY A COUPLE MONTHS.

20              MR. PLETCHER:  WE WOULD BE, JUST OVERALL.

21              THE COURT:  LET ME SAY THIS, I'VE BEEN WITH THESE CASES

22   FROM THE BEGINNING, AND WE'VE TAKEN A NUMBER OF YEARS TO GET TO

23   THIS POINT, SO WHEN THAT COMES TO PASS, I WILL ADJUST MY

24   SCHEDULE ACCORDINGLY AND DEAL WITH IT IN A TIMELY FASHION WHEN

25   WE'RE READY TO GO.  I'M JUST INQUIRING BECAUSE IT SEEMS AS
```

```
1    THOUGH FOR A LONG TIME MR. LEONARD FRANCIS'S MEDICAL
2    CONDITION -- HE'S NEVER GOING TO
3                                          .  HE COULD STILL
4    LIVE.  I DON'T KNOW WHAT THE MEDICAL PROGNOSIS IS, BUT WITH A
5    LITTLE GOOD FORTUNE, HE COULD STILL LIVE FOR A LONG TIME, BUT
6    HE'S ALWAYS GOING TO BE                                    .
7    LIFE IS NEVER QUITE THE SAME AFTER YOU HAVE THIS KIND OF
8    DIAGNOSIS AND THESE EVENTS HAPPEN IN YOUR LIFE.
9             MR. PLETCHER:  I THINK THAT'S WHAT            SAID IN
10   HIS FIRST APPEARANCE BEFORE THE COURT, HE SAID THIS
11                                          .  IT'S AN UNCERTAINTY
12   AS TO HOW LONG, BUT IT DEFINITELY IS SOMETHING THAT'S GOING TO
13   IMPACT THAT.
14            MR. BURSTEIN AND I HAD TALKED BEFORE, IN JUST TRYING TO
15   FIGURE OUT HOW THIS IS GOING TO WORK, IT'S NOT JUST A
16   TESTIMONIAL ISSUE THAT WE'RE DEALING WITH, BUT AT THE END OF
17   THE DAY THE COURT HAS TO IMPOSE SENTENCE.
18            THE COURT:  THAT'S NOT LOST ON THE COURT.
19            MR. PLETCHER:  OF COURSE NOT, YOUR HONOR.
20            THE COURT:  THAT'S NOT LOST ON THE COURT, MR. PLETCHER.
21            MR. PLETCHER:  OF COURSE NOT.
22            THE COURT:  I THINK WE NEED TO KEEP TO A SCHEDULE.  IT
23   DOESN'T SOUND AS THOUGH ANYTHING IS GOING TO HAPPEN WITHIN THE
24   NEXT THREE MONTHS, SO I'M GOING TO SUGGEST, MR. BURSTEIN, THAT
25   WE SET SOMETHING FOUR MONTHS OUT.
```

```
1              MR. BURSTEIN:  I THINK THAT'S APPROPRIATE, YOUR HONOR.
2              THE COURT:  FOR FURTHER STATUS.  WHERE WOULD THAT PUT
3    US, ALEX, THE LATTER PART OF JANUARY?
4              THE CLERK:  WE COULD GO THE 24TH OR THE 31ST.
5    (DISCUSSION HELD OFF THE RECORD.)
6              MR. BURSTEIN:  I'M SORRY, YOUR HONOR, SOME STRANGE BUG
7    WAS ATTACKING ME AND MR. PLETCHER JUST SAVED ME
8              THE COURT:  THAT'S VERY KIND OF HIM.
9              MR. BURSTEIN:  I DON'T EVEN KNOW WHAT THIS IS, YOUR
10   HONOR.  I'VE NEVER EVEN SEEN THIS KIND OF BUG BEFORE.
11             THE COURT:  ALEX WILL TAKE CARE OF THIS AFTERWARDS.
12   WE'LL HAVE THIS PLACE SPRAYED OR SOMETHING.
13             MR. PLETCHER:  IF IT WERE JUST A SMALL INSECT, I WOULD
14   HAVE LET IT HAVE A GO AT MR. BURSTEIN, BUT IT WAS A HALF AN
15   INCH LONG AND I FIGURED I HAD SOME CIVIC RESPONSIBILITY AS AN
16   OFFICER OF THE COURT TO --
17             THE COURT:  PUT IT WHEREVER YOU WANT ON A FRIDAY, THE
18   SECOND OR THIRD FRIDAY.
19             THE CLERK:  WE'LL SET IT FOR JANUARY 24TH AT 11:00 A.M.
20             THE COURT:  SO TODAY WORKED OUT WELL AND WE'LL SEE.  IF
21   THERE'S ANYTHING BEFORE THEN, YOU KNOW YOU CAN BRING SOMETHING
22   BACK.  WE HOPE THIS GOES WELL.
23             MR. BURSTEIN:  THANK YOU, YOUR HONOR.  IF THERE ARE
24   ████████ S AND ANYTHING, I'LL IMMEDIATELY --
25             THE COURT:  IF THERE ARE MAJOR EVENTS, LET ME KNOW.
```

```
1              MR. BURSTEIN: I WILL, YOUR HONOR.

2              THE COURT: THANK YOU.

3              MR. PLETCHER: THANK YOU, YOUR HONOR.

4              MR. HUIE: THANK YOU, YOUR HONOR.

5              THE PRETRIAL SERVICES OFFICER: VANESSA ANDREWS WITH

6      PRETRIAL SERVICES. I WAS GOING TO ASK AS TO THE FURLOUGH, IF

7      THERE'S GOING TO BE AN EXTENSION. I THINK IT'S SET FOR MARCH.

8              THE COURT: WE'RE GOING TO EXTEND THE FURLOUGH TO THE

9      DATE OF THE HEARING.

10             MR. BURSTEIN: WE USUALLY DO IT THE MONDAY AFTERWARDS.

11     THE MARSHALS NEED IT FOR THE GREEN SHEET.

12             THE COURT: WE JUST EXTENDED TO JANUARY 24TH, SO WE'LL

13     DO IT THE 27TH.

14             MR. BURSTEIN: YES, YOUR HONOR.

15             THE COURT: WE'LL EXTEND THE MEDICAL FURLOUGH TO

16     JANUARY 27TH, 2020, AND WE'LL DEAL WITH IT ON THE 24TH.

17             MR. BURSTEIN: THANK YOU, YOUR HONOR.

18             THE COURT: IF THERE'S ANYTHING TO REPORT BEFORE THEN,

19     LET ME KNOW.

20             MR. BURSTEIN: THANK YOU.

21             MR. PLETCHER: THANK YOU, YOUR HONOR.

22     (THE HEARING CONCLUDED.)

23

24

25
```

```
 1                        C E R T I F I C A T E

 2

 3              I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
        QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
 4      STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
        ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
 5      ABOVE-ENTITLED MATTER ON SEPTEMBER 6, 2019; AND THAT THE FORMAT
        USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
 6      STATES JUDICIAL CONFERENCE.

 7

 8      DATED:   DECEMBER 13, 2021     /S/ GAYLE WAKEFIELD
                                       GAYLE WAKEFIELD, RPR, CRR
 9                                     OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



**Calendar of the United States District Court**
**Southern District of California**
**San Diego**
**Friday, September 6, 2019**
**Courtroom 4D**

**Present the Honorable: Janis L. Sammartino**          **District Judge**

**Deputy Clerk: A. Ramos**          **Court Reporter/ECR: G Wakefield**          **Interpreter:**

## *** SEALED PROCEEDINGS ***
## 11:00 AM

**8a.**    13CR3781-JLS          USA    V.    **LEONARD GLENN FRANCIS**
          13CR3782-JLS
          13CR4287-JLS

                                        **RETD    DEVIN BURSTEIN**
                                                KATIE JENKINS
                                                JEREMY WARREN

                                        **AUSA    MARK PLETCHER**
                                                **ROBERT HUIE**
                                                ERIC BESTE
                                                PATRICK HOVAKIMIAN

                                        **USPT    ERIC KOSMO**
                                                KIMURA HAZARD
                                                **VANESSA ANDREWS**

                                        **USM     JAIME SCHIMMEL**
                                                Jaime.schimmel@usdoj.gov
                                                619-247-4498 (Cell)
                                                ELUID SOTO

**STATUS HEARING**

Notes:
Sentence w/PSR set for **MARCH 20, 2020**

CONTINUED TO **1/24/2020 AT 11:00 AM**
MEDICAL FURLOUGH EXTENDED TO **1/27/2019**

UNITED STATES DISTRICT COURT **✱ SEALED ✱**
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA        )        CASE NUMBER 13CR 4287 JLS
                                )        ABSTRACT OF ORDER
            vs                  )        Booking No. 45415298
                                )
                                )
LEONARD GLENN FRANCIS )

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:
    Be advised that under date of: _____ 9/16/2019 _____
the Court entered the following order:

✓  Defendant be released from custody.

___  Defendant placed on supervised / unsupervised probation / supervised release.

___  Defendant continued on supervised / unsupervised probation / supervised release.

✓  Defendant released on $ __One W/GPS__ bond posted.

___  Defendant appeared in Court. FINGERPRINT & RELEASE.

___  Defendant remanded and ( _____ bond) ( _____ bond on appeal) exonerated.

___  Defendant sentenced to TIME SERVED, supervised release for _____ years.

___  Bench Warrant Recalled.

___  Defendant forfeited collateral.

___  Case dismissed.

___  Case dismissed, charges pending in case no. _____

✓  Defendant to be released to Pretrial Services for electronic monitoring.

✓  Other THE COURT REVISES PREVIOUS ABSTRACT TO ALLOW DEFENDANT TO
REMAIN ON MEDICAL FURLOUGH AND CONTINUED GPS NON PORKING UNTIL 1/27/2020
DEFENDANT WILL RETURN TO CUSTODY AND CONTINUED DETENTION ON 1/27/2020

                        Hon. Janis L. Sammartino
                UNITED STATES DISTRICT/MAGISTRATE JUDGE

                                            OR

Received _____                  JOHN MORRILL        Clerk
         DUSM                            by _____
                                                        Deputy Clerk
ATTN: ELIND SOTO
Crim-9  (Rev. 8-11)                                 ✱ U.S. GPO:
CC: PTSO

                        AUX RAMOS (619) 557-829

MARSHAL'S

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 13-CR-3781-JLS |
| PLAINTIFF, | ) | 13-CR-3782-JLS |
| | ) | 13-CR-4287-JLS |
| VS. | ) | |
| | ) | SAN DIEGO, CA |
| LEONARD GLENN FRANCIS, *ET AL.*, | ) | JANUARY 24, 2020 |
| DEFENDANTS. | ) | 3:30 P.M. |

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:    WARREN & BURSTEIN
                      BY:  DEVIN J. BURSTEIN, ESQ.
                           KATIE JENKINS, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA  92101

PRETRIAL SERVICES:    ALDO LOPEZ

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA  92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                          PAGE

NEXT HEARING DATE                      11

1          THE DEPUTY CLERK:  CALLING MATTER 15-A, 13-CR-3781,

2     13-CR-3782, AND 13-CR-4287, UNITED STATES VS. LEONARD GLENN

3     FRANCIS.

4          MR. PLETCHER:  GOOD AFTERNOON, YOUR HONOR.  MARK

5     PLETCHER FOR THE UNITED STATES.

6          THE COURT:  THANK YOU.

7          MR. BURSTEIN:  AND GOOD AFTERNOON, YOUR HONOR.  DEVIN

8     BURSTEIN AND KATIE JENKINS ON BEHALF OF MR. FRANCIS.

9          THE COURT:  OKAY.  THANK YOU BOTH.

10          WHO WANTS TO GO FIRST?  MR. BURSTEIN?

11          MR. BURSTEIN:  THANK YOU, YOUR HONOR.

12          WE ARE HERE TO PROVIDE AN UPDATE ON MR. FRANCIS'

13     MEDICAL CONDITION.

14          THE COURT:  LET ME STOP YOU FOR A SECOND.  LET ME

15     JUST INDICATE THE COURTROOM IS CLOSED.

16          WE HAVE ONE AGENT WITH THE GOVERNMENT?

17          THE DEPUTY MARSHAL:  I'M ELUID SOTO WITH THE U. S.

18     MARSHALS.

19          THE COURT:  OH, OKAY.  SO YOU'RE WITH THE U. S.

20     MARSHALS.  I'M SORRY.

21          THE DEPUTY MARSHAL:  NO, THAT'S FINE.

22          THE COURT:  AND I HAVE (PAUSE) --

23          MR. LOPEZ:  ALDO LOPEZ FOR PRETRIAL SERVICES, YOUR

24     HONOR.

25          THE COURT:  OKAY.  THANK YOU.

1        GO AHEAD.

2        OTHERWISE, THE COURTROOM'S CLOSED. THIS RECORD WILL

3 BE SEALED.

4        GO AHEAD.

5        MR. BURSTEIN: THANK YOU, YOUR HONOR.

6        SO I WILL -- AS WE'VE BEEN DOING, I WILL -- I

7 PROVIDED THE COURT AND THE PARTIES WITH A BRIEF UPDATE. THE

8 EMAIL, I'LL READ THAT INTO THE RECORD, WHICH IS THE WAY WE'VE

9 BEEN GOING WITH THAT, IF IT'S OKAY WITH THE COURT. I SPOKE

10 WITH         LAST WEEK HERE ON THE BULLET POINTS OF THE

11 LATEST, AND THEN IN ADDITION TO WHAT I'M ABOUT TO SAY, WE HAVE

12 A FURTHER UPDATE FROM, I BELIEVE, YESTERDAY.

13        SO, SO FAR, MR. FRANCIS REMAINS ON HIS

14                       . IT HAD BEEN NOT THE

15

16     UNFORTUNATELY, THE LAST

17

18     SAYS THAT THE PRESUMPTION IS WHEN THEY EXCEED, I

19 BELIEVE,

20         THAT MR. FRANCIS EXCEEDED THAT THRESHOLD. SO

21 THEY'RE OPERATING UNDER THE ASSUMPTION -- *OPERATING* IS A POOR

22 CHOICE OF WORDS. THEY'RE PROCEEDING UNDER THE ASSUMPTION THAT

23            . SO THEY'RE GOING TO CONTINUE -- THEY

24 DECIDED IN THE INTERVENING MONTHS TO CONTINUE ON

25

1   ████████, TO FIND OUT IF THEY CAN MAKE A DETERMINATION
2   WITHOUT GOING IN.
3           AS THE COURT MAY REMEMBER, THE LAST TIME, THERE WAS
4   AN ████████████. MR. FRANCIS CAME VERY, VERY CLOSE TO
5   ████████████ HE HAD TO BE ████████████████ TWO
6   TIMES. SO THEY'RE GOING TO TRY TO AVOID THAT. AT THE END OF
7   THIS MONTH OR EARLY NEXT MONTH, PROBABLY NOT EARLY NEXT MONTH
8   BECAUSE THERE ARE SOME OTHER PROCEDURES THAT HAVE TO HAPPEN
9   QUICKLY, THEY'RE GOING TO DO ANOTHER ████████████. IF
10  THE ████████████████████████████
11  ████████████ THEY WILL BE. IF THEY ARE STILL ████████
12  THEY WILL NEED, MEDICALLY NEED TO DO ████████████
13  TO MAKE A, SO THEY CAN MAKE A FINAL DETERMINATION, A
14  DETERMINATION AS TO THAT THEY ARE IN FACT OR ARE NOT
15  ████████
16          IF THE ████████████, WHICH IS THE OPERATING
17  ASSUMPTION, THAT WILL CHANGE THE PLAN FOR ████████. AS THE
18  COURT PROBABLY RECALLS, FOR THE LAST SIX OR SO MONTHS, THE
19  PLAN HAD BEEN TO ████████████████ONCE MR. FRANCIS
20  WAS STABLE ████████████████████
21  ████████████████, HOWEVER, HAS ALREADY ████████
22  ████████████████████████ BECOMES
23  LESS VIABLE BECAUSE, YOU KNOW, NOT TO BE CURT, BUT WHAT'S THE
24  POINT? ████████████████████
25  ████████████████████████

1    AND THEY WILL HAVE A BETTER IDEA OF ALL OF THAT IN, AFTER █████

2    ████████

3           I'D NOTE THE LAST BULLET POINT I PROVIDED WAS THAT HE

4    WAS LIKELY TO HAVE ████████ IN THE NEXT FEW WEEKS BECAUSE

5    THERE WAS ██████████ AND ACTUALLY -- I DIDN'T PUT IT

6    HERE -- █████████████████. HE WENT TO THE

7    DOCTOR, AND HE HAS NOW, I THINK TODAY, BEGAN A THREE-PART

8    TREATMENT TO ██████████████████████.

9    IT'S SCHEDULED FOR TODAY, TOMORROW, AND MONDAY.

10           THERE'S ALSO --

11           THE COURT:  I'M SORRY.  I DIDN'T UNDERSTAND.  WHAT

12    WAS THAT?

13           MR. BURSTEIN:  IT'S AN ████████████████

14    ███████████████████████████████

15    ██████ --

16           THE COURT:  OKAY.

17           MR. BURSTEIN:  -- ISSUES THAT HE'S HAD.  AND THEY'RE

18    SPLITTING IT OVER THREE DAYS, I ASSUME -- WELL, IT DOESN'T

19    MATTER WHAT I ASSUME, BUT I ASSUME BECAUSE OF HIS OTHER HEALTH

20    CONCERNS.  SO THEY DON'T WANT TO DO IT ALL AT ONCE.

21           THERE ARE ALSO SOME ISSUES WITH HIS █████ THEY MAY

22    NEED TO DO AN ██████████████ IN HIS ████████ TO

23    MAKE SURE THAT'S NOT ████████ BUT WE'RE NOT SURE ABOUT THAT.

24           I THINK PRETRIAL SERVICES, AND I THINK WE ALL AGREE,

25    IS GOING TO ASK FOR A STANDING ORDER TO BE ABLE TO REMOVE GPS

1  FOR PURPOSES OF ANY PROCEDURES ON HIS ▮▮▮▮▮▮▮▮▮▮▮, JUST

2  SO THAT WE DON'T HAVE TO CONTINUOUSLY, YOU KNOW, TAKE UP THE

3  COURT'S TIME.

4         SO, WITH THAT, THAT'S MY SUMMARY.  THAT'S MY SEGUE

5  FOR PRETRIAL SERVICES.  IF THE COURT HAS ANY QUESTIONS.

6         THE COURT:  OKAY.  NOT RIGHT NOW, MR. BURSTEIN.

7  THANK YOU.

8         GO AHEAD.

9         MR. LOPEZ:  YES, YOUR HONOR.

10        WE'LL BE ASKING THE COURT TO ALLOW OUR OFFICE TO

11  REMOVE THE GPS TRACKER PRIOR TO ANY MEDICAL PROCEDURE, AND

12  THEN REINSTALL THE TRACKER AFTER THE PROCEDURE.

13        THE COURT:  OKAY.  AND, OF COURSE, YOU DON'T DISAGREE

14  WITH THAT.

15        ANY CONCERNS ABOUT THAT, MR. PLETCHER?

16        MR. PLETCHER:  NO.  IT SEEMS EMINENTLY REASONABLE.

17  WE'VE WORKED THROUGH THAT ISSUE WITH THE GPS BEFORE, AND

18  MOSTLY IT'S BEEN AN ISSUE WITH PRETRIAL SERVICES JUST

19  LOGISTICALLY BEING AROUND TO TAKE IT ON AND OFF.  SO IT SEEMS

20  EMINENTLY REASONABLE AND VERY EFFICIENT.

21        THE COURT:  IT DOES TO THE COURT ALSO, SO THAT YOU

22  HAVE THE ABILITY TO RESPOND IF NEEDED.  SO I'M ASSUMING THE

23  PROCEDURES THAT ARE SET TO ASSIST WITH THE ▮▮▮▮▮ ▮▮▮

24  ▮▮▮ REQUIRE THAT TO BE REMOVED.

25        MR. LOPEZ:  THAT'S CORRECT, YOUR HONOR, AND WE'LL

1   WORK WITH MR. BURSTEIN OR MISS JENKINS TO COORDINATE THAT AND

2   REMOVE THE GPS TRACKER.

3           THE COURT:  OKAY.

4           MR. BURSTEIN:  EVERYTHING ELSE REMAINS THE SAME.

5   SECURITY IS IN PLACE.  SAME LOCATION.  EVERYTHING ELSE IS THE

6   SAME.

7           I GUESS THE ONLY REMAINING THING, UNLESS MR. PLETCHER

8   HAS SOMETHING, IS TO SET THE NEXT STATUS.  WE HAD BEEN GOING

9   IN A KIND OF FOUR-TO-SIX-MONTH RANGE.

10          THE COURT:  SIX MONTHS IS TOO LONG IN THE COURT'S

11  MIND.  WE COULD GO THREE OR FOUR MONTHS.  THREE MONTHS, MAYBE.

12          WHAT DOES THE GOVERNMENT THINK?

13          MR. PLETCHER:  I AGREE, ESPECIALLY AT THIS POINT, A

14  SHORTER INTERVAL IS BETTER.  OBVIOUSLY, WE'RE ALL MONITORING

15  THIS SITUATION VERY CLOSELY.  IT'S PREVALENT ON EVERYONE'S

16  MIND WHETHER THERE COMES AT SOME POINT WHERE WE HAVE TO MAKE A

17  MOTION FOR A DEPOSITION.

18          THE COURT:  YOU KNOW, COUNSEL, I WAS GOING TO SAY I'M

19  ASSUMING YOU DON'T NEED HIS TESTIMONY, BECAUSE THIS IS NOT

20  A -- THIS IS A VERY SERIOUS SITUATION THAT HE FINDS HIMSELF

21  IN.

22          MR. PLETCHER:  YES.

23          THE COURT:  I MEAN, IF HIS ███████████████ TO

24  ████████████████, IT'S NOT A GOOD SITUATION, AND HOW SICK

25  A MAN DO YOU WANT TO TAKE A DEPO WITH, SIR?

1          MR. PLETCHER:  WELL, I THINK IT'S A BALANCING ACT,

2  AND IT'S SOMETHING WE'VE BEEN COGNIZANT OF FROM THE VERY

3  BEGINNING.  I MEAN, ONE THING IS THAT, YOU KNOW, A DEPOSITION

4  IS, BY ITS VERY NATURE, GOING TO TAKE A LOT OF THE COURT'S

5  TIME, A LOT OF EVERYBODY'S TIME, PROBABLY, YOU KNOW, MAYBE AN

6  ORDER OF MAGNITUDE OF TIME AND ENERGY RESOURCES LONGER THAN

7  ACTUAL TESTIMONY WOULD TAKE.  SO WE'VE BEEN GUARDED IN OUR

8  OPTIMISM THAT THE                      WOULD GO FORWARD.

9          OBVIOUSLY, THIS IS THE FIRST, YOU KNOW, WE'RE HEARING

10 OF POTENTIAL

11         SO, YOU KNOW, IT'S SOMETHING THAT WE'RE

12 TRYING TO BALANCE.  I THINK EVERYBODY'S TRYING TO BALANCE, AND

13 NOW, YOU KNOW, WE HAVE A TRIAL DATE IN THE CASE, WHICH IS, YOU

14 KNOW, OUT INTO JANUARY OF 2021, AND SO THAT'S A NEW

15 DEVELOPMENT THAT EVERYONE IS TRYING TO, I THINK, MANAGE AND

16 FIGURE OUT HOW TO MOST EFFICIENTLY HANDLE THE SITUATION.  IT'S

17 A VERY DIFFICULT SITUATION FOR EVERYONE INVOLVED.

18         THE COURT:  EVERYONE.  AND, YOU KNOW, WE'VE ALWAYS

19 WISHED MR. LEONARD FRANCIS THE BEST IN HIS MEDICAL CARE.  I

20 HAVE TO TELL YOU IT'S A VERY SERIOUS SITUATION, I GUESS.  I

21 CAN KIND OF TELL BY YOUR DEMEANOR, MISS JENKINS.  HE'S IN A

22         RIGHT NOW, AND WE HOPE FOR SOMETHING

23 MORE POSITIVE TO COME THROUGH.

24         MR. BURSTEIN:  RIGHT.  WE'RE REALLY HOPING THAT THAT

25         , BECAUSE I THINK

```
 1   IT'S REALLY A GAME-CHANGER IF IT HAS.
 2          THE COURT:  IT IS, IT IS.  SO, WILL YOU KNOW MORE
 3   AFTER THE          THE END OF, OR THE BEGINNING OF NEXT MONTH?
 4          MR. BURSTEIN:  WE'LL KNOW -- WHAT WE'RE GOING TO KNOW
 5   IS MORE AFTER THE
 6
 7              , AND THAT'S NOT GOING TO HAPPEN UNTIL SOMETIME IN
 8   MARCH,                     .  SO I WOULD SAY --
 9          THE COURT:  SO WE SHOULD GO OUT TO THE END OF APRIL,
10   THE BEGINNING OF MAY, MAYBE, FOR (PAUSE) --
11          MR. BURSTEIN:  I THINK THAT'S --
12          THE COURT:  -- FOR OUR NEXT STATUS.
13          MR. BURSTEIN:  RIGHT.
14          THE COURT:  SO LET'S GO OUT -- WHERE WOULD THREE
15   MONTHS PUT US, JESSICA?
16          THE DEPUTY CLERK:  WELL, YOU DO HAVE APRIL 24TH,
17   WHICH IS A FRIDAY, OR IF YOU WANT THE BEGINNING OF MAY.
18          THE COURT:  MAY 1ST?
19          THE DEPUTY CLERK:  YES.
20          THE COURT:  WE COULD GO MAY 1ST, APRIL 24TH.
21          MR. PLETCHER:  EITHER ONE IS OKAY WITH THE UNITED
22   STATES.  I'D NOTE THAT IN THIS THAT --
23          THE COURT:  I MEAN, I NEED TO EXTEND THE MEDICAL
24   FURLOUGH --
25          MR. PLETCHER:  RIGHT.
```

1      MR. BURSTEIN:  RIGHT.

2           THE COURT:  -- TO, I'LL SAY, MAY 1ST.

3           MR. BURSTEIN:  WE ALWAYS DO IT THE DAY -- SORRY TO

4  INTERRUPT THE COURT.  WE ALWAYS EXTEND THE MEDICAL FURLOUGH TO

5  ONE DAY AFTER --

6           THE COURT:  AFTER.

7           MR. BURSTEIN:  -- THE LAST STATUS HEARING.

8           THE COURT:  RIGHT.  WELL, I WAS GOING TO SAY MAY 1ST,

9  AND I WAS GOING TO SET THIS APRIL 24TH.

10          MR. BURSTEIN:  LET ME MAKE SURE.  I KNOW I'M AT THE

11 CIRCUIT -- YEAH, I'M AT THE NINTH CIRCUIT ON THE 24TH.

12          THE COURT:  OKAY.  SO LET'S GO TO A HEARING ON MAY

13 1ST AND EXTEND THE MEDICAL FURLOUGH TO THE FOLLOWING WEEK.

14          WHAT'S THE FOLLOWING MONDAY OR TUESDAY, JESSICA?

15          THE DEPUTY CLERK:  MAY 4TH.  IT'S A MONDAY.

16          THE COURT:  MAY 4TH, THE MEDICAL FURLOUGH IS

17 EXTENDED.  AND THEN THE HEARING WILL BE MAY 1ST, AT WHAT TIME,

18 JESSICA?

19          (OFF-THE-RECORD DISCUSSION BETWEEN THE COURT AND THE

20 COURTROOM CLERK)

21          THE DEPUTY CLERK:  SO MAY 1ST, AT 11 A.M.

22          THE COURT:  AND WE'LL SAY WE WISH HIM THE BEST IN HIS

23 MEDICAL CARE.

24          YES, SIR.

25          MR. PLETCHER:  I WAS JUST GOING TO OFFER THE

1   SUGGESTION THAT MAYBE, GIVEN WHAT'S GOING TO HAPPEN IN THE

2   INTERVENING TIME, MAY 1ST MAY BE A USEFUL TIME TO HAVE ▮

3   ▮ BACK WITH US SO WE CAN PERHAPS HEAR FIRSTHAND FROM HIM

4   A LITTLE BIT MORE CLEARLY WHAT THE PROGNOSIS, WHAT THE

5   DIAGNOSIS IS, WHAT THE PROGNOSIS IS.  IF HE'S GOING TO HAVE

6   THIS ▮ , WHAT DOES THAT LOOK LIKE?  BECAUSE ONCE WE

7   GET TO MAY 1ST, YOU KNOW, WE'RE WITHIN SHOUTING DISTANCE OF

8   TRIAL --

9           THE COURT:  WE ARE.

10          MR. PLETCHER:  -- AND SO IF WE'RE GOING TO, YOU KNOW,

11  IF WE'RE GOING TO TAKE DEPOSITIONS, THEN THAT'S GOING TO BE,

12  THAT WOULD BE IN THE SEPTEMBER/OCTOBER TIME FRAME.  IF WE'RE

13  GOING TO, YOU KNOW, IF WE'RE GOING TO, BECAUSE HIS PROGNOSIS

14  IS GOOD ENOUGH, SO TO LET THIS EXTEND ALL THE WAY TO TRIAL AND

15  JUST TAKE TRIAL TESTIMONY IF THAT BECOMES, IF THAT'S WHAT'S

16  NECESSARY, BUT I THINK MAYBE -- I MEAN, I APPRECIATE THE

17  COURT'S, ALWAYS, MR. BURSTEIN'S, MISS JENKINS' PERSPECTIVE

18  HERE, BUT MAYBE ▮ WOULD BE JUST IN THE BEST

19  POSITION.

20          THE COURT:  YOU KNOW, HE WAS VERY RESPONSIVE TO

21  QUESTIONS AND EXPLANATIONS WHEN HE WAS HERE BEFORE.  I

22  REMEMBER HIM WELL.  SO I THINK MR. PLETCHER HAS A POINT.

23          MR. BURSTEIN:  I'LL ASK --

24          THE COURT:  NOW, WITH REGARD TO THAT, IF HE NEEDS AN

25  ADJUSTMENT AND A TIME CONSIDERATION, WHICH HE MAY GIVEN HIS

1  PROFESSIONAL COMMITMENTS, GET HOLD OF MR. PLETCHER.  WE'LL

2  WORK WITH YOU, AND WE'LL PUT IT WHERE WE NEED TO TO GET HIM

3  HERE.  I THINK THAT'S A GREAT SUGGESTION.

4      MR. PLETCHER:  YOU KNOW, I CAN IMAGINE ALTERNATIVES,

5  AND I DEFER TO THE COURT.  I MEAN, YOU KNOW, IF HE WERE TO

6  SUBMIT A WRITTEN REPORT, MAYBE THAT'S AN ALTERNATIVE.  IF HE

7  WANTS TO TELEPHONICALLY, THAT'S AN ALTERNATIVE.  I'M ALSO

8  COGNIZANT OF THE IMPORTANT WORK HE DOES

9      MR. BURSTEIN:  WE'LL CALL HIM THIS AFTERNOON AND TRY

10  TO GET IT ON HIS SCHEDULE.

11      THE COURT:  I MEAN, THIS IS A DIFFICULT SITUATION

12  BECAUSE, YOU KNOW, DOCTORS DON'T WANT TO SAY FOR CERTAINTY

13  THINGS BECAUSE THEY ARE NOT IN A POSITION OF DOING THAT.  THEY

14  TREAT AND THEY LOOK FOR GOOD OUTCOMES AND WHAT NOT, BUT WE'VE

15  BEEN KIND OF WORKING ON THIS FOR A WHILE.  IT SEEMS TO BE

16  GOING IN A DIRECTION THAT NOBODY WOULD LIKE IT TO GO IN.  SO

17  IT MIGHT BE HELPFUL TO US.  BUT, AGAIN, I AGREE WITH MR.

18  PLETCHER.  WE'RE SENSITIVE TO HIS PROFESSIONAL OBLIGATIONS AND

19  THE IMPORTANT WORK THAT HE DOES.  WE'RE JUST TRYING TO SORT

20  OUR WAY THROUGH THIS.

21      MR. BURSTEIN:  I THINK, AT A MINIMUM, WE CAN HAVE

22  HIM -- I HOPE TO HAVE HIM AVAILABLE TELEPHONICALLY.  IT'S

23  BETTER IN PERSON, BUT WE'LL GET SOMETHING.

24      THE COURT:  OKAY.  BUT EVEN FOR TELEPHONICALLY, IF WE

25  NEED TO ADJUST THE TIME, JUST LET US KNOW AND WE'LL DO THAT.

1    IF THERE'S A DAY OF THE WEEK OR TIME OF DAY, WE'LL MAKE IT

2    WORK.

3            MR. BURSTEIN:  OKAY.

4            THE COURT:  OKAY?

5            MR. BURSTEIN:  THANK YOU.

6            THE COURT:  THANK YOU, MISS JENKINS.

7            THANK YOU, MR. PLETCHER.

8            MR. BURSTEIN:  THANK YOU, YOUR HONOR.

9            MR. PLETCHER:  THANK YOU, YOUR HONOR.

10           MR. BURSTEIN:  AND I JUST WANT TO MAKE SURE THAT THE

11   MARSHALS WILL GET THEIR EXTENDED GREEN SHEET --

12           THE COURT:  OH, THEY WILL.

13           MR. BURSTEIN:  -- BECAUSE THAT CAN CAUSE PROBLEMS.

14           THE COURT:  WE'VE EXTENDED IT TO THE DATE I'VE

15   INDICATED.

16           MR. BURSTEIN:  AND THERE WILL BE NO ECF FROM THIS, I

17   ASSUME.

18           THE COURT:  THERE'S NO ECF FROM THIS.  ALEX KNOWS HOW

19   TO DO IT.  JESSICA IS TRAINING WITH ALEX, SO, AND COPIES OF

20   THIS ARE BEING SHREDDED AND EVERYTHING.  SO, OKAY.

21           THANK YOU.

22           MR. BURSTEIN:  THANK YOU, YOUR HONOR.

23           MS. JENKINS:  THANK YOU, YOUR HONOR.

24           (PROCEEDINGS ADJOURNED AT 3:25 P.M.)

25   ---------------------------------------------------------------

1                    (END OF TRANSCRIPT)

2

3            I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

4    HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

5    ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

6

7            S/FRANK J. RANGUS

8            FRANK J. RANGUS, OCR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

✗✗ SEALED ✗✗

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA )
) CASE NUMBER 12CR 3781 JLS
VS )
) ABSTRACT OF ORDER
)
) Booking No. 45415 298
)
EDWARD GLENN FRANCIS )
)

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of _____ 4/9/2020 _____

the Court entered the following order:

_____ Defendant be released from custody.

_____ Defendant placed on supervised / unsupervised probation / supervised release.

_____ Defendant continued on supervised / unsupervised probation / supervised release.

_____ Defendant released on $ _____ O/R W/HRS _____ bond posted.

_____ Defendant appeared in Court. FINGERPRINT & RELEASE.

_____ Defendant remanded and ( _____ bond) ( _____ bond on appeal) exonerated.

_____ Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____ Bench Warrant Recalled.

_____ Defendant forfeited collateral.

_____ Case dismissed.

_____ Case dismissed, charges pending in case no. _____

_____ Defendant to be released to Pretrial Services for electronic monitoring.

_____ Other: THE COURT REVISES PREVIOUS ABSTRACT TO ALLOW DETENANT TO REMAIN ON
MEDICAL FURLOUGH AND CONTINUED GPS MONITORING UNTIL 7/13/2020. THE DETENANT
WILL RETURN TO CUSTODY AND CONTINUE DETENTION ON 7/13/2020

_____
~~Janis L. Sammartino~~
UNITED STATES DISTRICT/MAGISTRATE JUDGE

OR

Received _____
DUSM

JOHN MORRILL     Clerk
by

ATN: DUSM COUGHLIN

Deputy Clerk

Crim-9   (Rev. 8-11)

✩ U.S. GPO: 1996-783-398/40151

CLERK'S COPY

289 alf     ALEX RAMOS (LA) S7-5061

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA  ⚹ *STAMP* ⚹

UNITED STATES OF AMERICA  )    CASE NUMBER 13 CR 3783-JLS

vs  )    **ABSTRACT OF ORDER**

)    Booking No. 45415298

LEONARD GLENN FRANCIS  )

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of _____ 4/9/2020 _____

the Court entered the following order:

_____✓_____ Defendant be released from custody.

_____ Defendant placed on supervised / unsupervised probation / supervised release.

_____ Defendant continued on supervised / unsupervised probation / supervised release.

_____✓_____ Defendant released on $ _O/R_ _w/GPS_ _____ bond posted.

_____ Defendant appeared in Court. FINGERPRINT & RELEASE.

_____ Defendant remanded and ( _____ bond) ( _____ bond on appeal) exonerated.

_____ Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____ Bench Warrant Recalled.

_____ Defendant forfeited collateral.

_____ Case dismissed.

_____ Case dismissed, charges pending in case no. _____

_____ Defendant to be released to Pretrial Services for electronic monitoring.

_____✓_____ Other. THE COURT REVISES PREVIOUS ABSTRACT TO ALLOW DEFENDANT TO REMAIN ON MEDICAL FURLOUGH AND CONTINUED GPS MONITORING UNTIL 7/13/2020. THE DEFENDANT WILL RETURN TO CUSTODY AND CONTINUE DETENTION ON 7/13/2020

Janis L. Sammartino

UNITED STATES DISTRICT/~~MAGISTRATE~~ JUDGE

OR

Received _____          JOHN MORRILL          **Clerk**
            DUSM                          by_____

RTN: MASAA COUGHLIN                       Deputy Clerk

Crim-9   (Rev. 8-11)                                  ⚹ U.S. GPO: 1996-783-398/40151

ALEX RAMOS
(619) 557-5291

CLERK'S COPY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

✱ SEALED ✱ 

UNITED STATES OF AMERICA )

CASE NUMBER __13CR 4287-TLS__

vs )

**ABSTRACT OF ORDER**

)
)
)

Booking No. __454 15 298__

EDWARD GLENN FRANCIS )

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of _____4/9/2020_____

the Court entered the following order:

__✓__ Defendant be released from custody.

_____ Defendant placed on supervised / unsupervised probation / supervised release.

_____ Defendant continued on supervised / unsupervised probation / supervised release.

__✓__ Defendant released on $ __OR  W/GPS__ bond posted.

_____ Defendant appeared in Court. FINGERPRINT & RELEASE.

_____ Defendant remanded and ( _____ bond) ( _____ bond on appeal) exonerated.

_____ Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____ Bench Warrant Recalled.

_____ Defendant forfeited collateral.

_____ Case dismissed.

_____ Case dismissed, charges pending in case no. _____

_____ Defendant to be released to Pretrial Services for electronic monitoring.

__✓__ Other. THE COURT ___ REVISES PREVIOUS ABSTRACT TO ALLOW DEFENDANT TO REMAIN ON MEDICAL FURLOUGH AND CONTINUED GPS MONITORING UNTIL 7/13/2020. THE DEFENDANT WILL RETURN TO CUSTODY AND CONTINUE DETENTION ON 7/13/2020 **Janis L. Sammartino**

UNITED STATES DISTRICT/~~MAGISTRATE~~ JUDGE

OR

Received _____
DUSM

**JOHN MORRILL**      **Clerk**
by

DUSM COUGHLIN

**Deputy Clerk**

✱ U.S.GPO: 1996-783-388/40151

CLERK'S COPY

24am

ALEX RAMOS (619)557-529)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,        )     13-CR-3781-JLS
          PLAINTIFF,             )     13-CR-3782-JLS
                                 )     13-CR-4287-JLS
VS.                              )
                                 )     SAN DIEGO, CA
LEONARD GLENN FRANCIS, ET AL.,   )     OCTOBER 2, 2020
          DEFENDANTS.            )     11:00 A.M.

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:    WARREN & BURSTEIN
                      BY:  DEVIN J. BURSTEIN, ESQ.
                           KATIE JENKINS, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA  92101

PRETRIAL SERVICES:    ALDO LOPEZ

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA  92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                              PAGE

NEXT HEARING DATE                          11

1      THE DEPUTY CLERK:  NUMBER 9-A ON THE CALENDAR,

2   13-CR-3781, 13-CR-3782, 13-CR-4287, UNITED STATES VS. LEONARD

3   GLENN FRANCIS, FOR STATUS.

4      MR. PLETCHER:  GOOD MORNING, YOUR HONOR.  MARK

5   PLETCHER FOR THE UNITED STATES.

6      THE COURT:  THANK YOU.  GOOD MORNING, MR. PLETCHER.

7      MR. BURSTEIN:  AND GOOD MORNING, YOUR HONOR.  DEVIN

8   BURSTEIN AND KATIE JENKINS ON BEHALF OF MR. FRANCIS.

9      THE COURT:  THANK YOU.  GOOD MORNING.

10      MS. JENKINS:  GOOD MORNING, YOUR HONOR.

11      THE COURT:  GOOD MORNING, OR GOOD AFTER -- WELL, IT'S

12   STILL MORNING FOR A FEW MINUTES.

13      SO WE'RE HERE ON STATUS.  WHO WANTS TO GO FIRST?

14      MR. PLETCHER:  MR. BURSTEIN, I THINK.  I'M NOT SURE

15   WE HAVE SO MUCH TO REPORT, YOUR HONOR, BUT THE COURT HAS BEEN

16   SO VIGILANT IN KEEPING VISIBILITY ON THIS MATTER THAT EVEN IF

17   THERE WAS NOTHING TO REPORT, I THINK IT'S USEFUL FOR THE COURT

18   TO BE AWARE.

19      THE COURT:  WELL, IT'S NOT JUST THE COURT.  I THINK

20   OTHERS ARE WATCHING THIS VERY CAREFULLY AND WHAT WE DO WITH

21   REGARD TO THE MEDICAL FURLOUGH.

22      SO GO AHEAD, MR. BURSTEIN.

23      MR. BURSTEIN:  THANK YOU, YOUR HONOR.

24      SO THE UPDATE IS, AS MR. PLETCHER SAID, NOT MUCH OF

25   AN UPDATE.  MR. FRANCIS HAS BEEN SELF-QUARANTINING.  HE HAS

```
1   NOT BEEN TO THE HOSPITAL.  HE'S IN COMMUNICATION WITH HIS
2   DOCTORS.  DR., I THINK, ███████████████████  HIS ███████
3   HAVE BEEN MOVED TO LATE OCTOBER, AND OTHER THAN THAT, IT'S THE
4   *STATUS QUO* IS THE *STATUS QUO*.
5            THE COURT:  WHEN WAS THE FURLOUGH TO END?  DO I HAVE
6   TO EXTEND IT?
7            MR. BURSTEIN:  YES, YOUR HONOR.
8            THE COURT:  IT WAS TO TERMINATE WHEN?
9            MR. BURSTEIN:  I THINK WE -- I'M NOT SURE.  I HAVEN'T
10  SEEN THE LATEST GREEN SHEET.  SO, TYPICALLY, WHAT WE'VE BEEN
11  DOING IS SETTING IT FOR A DAY AFTER OUR STATUS HEARING.
12           THE COURT:  CORRECT.
13           MR. BURSTEIN:  SO I ASSUME IT WILL BE TOMORROW.
14           THE COURT:  SO MAYBE IT'S TOMORROW.
15           THE DEPUTY CLERK:  IT IS.
16           THE COURT:  OKAY.
17           MR. BURSTEIN:  SO HE'S AT, HE'S AT THE HIGHEST RISK
18  LEVEL FOR COVID --
19           THE COURT:  OH, OF COURSE.
20           MR. BURSTEIN:  -- SO HE'S TAKING IT VERY, VERY
21  SERIOUSLY AND IS, YOU KNOW, SELF-QUARANTINED.
22           THE COURT:  DOES HE CONTINUE TO TREAT FOR HIS
23  VARIOUS -- ███████████?
24           MR. BURSTEIN:  RIGHT, RIGHT.
25           THE COURT:  HE GOES TO A MEDICAL FACILITY FOR THAT,
```

1  DOESN'T HE?

2      MR. BURSTEIN:  I THINK HE JUST GETS MEDICAL -- I

3  THINK HE -- NO. ███████████████

4      THE COURT:  OH, OKAY.

5      MR. BURSTEIN:  YEAH.

6      THE COURT:  IT'S AN ███████

7      MR. BURSTEIN:  IT'S AN ███ -- IT HAS ALWAYS BEEN, AS

8  FAR AS I RECALL, ██████████.  I'M LOOKING OVER AT MR.

9  PLETCHER BECAUSE I THINK HE COULD (PAUSE) -- THAT'S MY

10  RECOLLECTION.  MISS JENKINS' AS WELL.

11      THE COURT:  SO WHAT IS YOUR REQUEST ON BEHALF OF HIM

12  TODAY?

13      MR. BURSTEIN:  AT THIS POINT, I THINK WE SHOULD AND

14  WHAT I WOULD SUGGEST IS PUT IT OUT UNTIL THE BEGINNING OF THE

15  YEAR AND SEE WHERE WE ARE.  I KNOW THAT THERE WILL BE MORE --

16      THE COURT:  YOU SAID THERE'S GOING TO BE A ████████

17  ████████?

18      MR. BURSTEIN:  THEY HAVE BEEN MOVED CONSISTENTLY.

19      THE COURT:  BECAUSE?

20      MR. BURSTEIN:  NOT BRINGING HIM INTO A HOSPITAL

21  SETTING.

22      THE COURT:  BECAUSE?

23      MR. BURSTEIN:  OF HIS RISK OF COVID, IF HE WERE TO

24  CATCH COVID.

25      THE COURT:  HE'S NOT GOING TO CATCH COVID IN A

1    HOSPITAL.  THERE ARE GOING TO BE PROPER PRECAUTIONS.  PEOPLE

2    ARE GOING TO THE HOSPITAL EVERY DAY AND COMING OUT.

3            MR. BURSTEIN:  I UNDERSTAND.  I'M THE MESSENGER HERE.

4    I'M NOT MAKING THESE DECISIONS.

5            THE COURT:  I UNDERSTAND.  I'M JUST, YOU KNOW, I'M

6    JUST KIND OF CURIOUS, BUT THAT'S, THAT'S (PAUSE).

7            MR. BURSTEIN:  I ASSUME THAT THEY'LL BE HAPPENING

8    LATER THIS MONTH, OR IF THEY GET MOVED, I CAN ALERT THE COURT.

9            THE COURT:  IT'S A          .  CORRECT?

10           MR. BURSTEIN:  IT'S A                        , I

11   THINK?

12           MS. JENKINS:  YES.

13           MR. BURSTEIN:  YES.  SO --

14           THE COURT:  SO WE SHOULD PUT THIS OVER A COUPLE OF

15   MONTHS AND SEE WHERE WE ARE.  BUT IF SOMETHING WERE TO BREAK

16   OR SOME SIGNIFICANT DETERMINATION IS MADE WITH REGARD TO HIS

17   HEALTH, COME BACK IN SOONER THAN THEN.

18           MR. BURSTEIN:  ABSOLUTELY.  AS THE COURT MAY RECALL,

19   AND MR. PLETCHER WILL CONFIRM, THERE WAS A TIME ABOUT SIX

20   MONTHS AGO WHERE HE          .  NO, I GUESS NOW EIGHT MONTHS

21   AGO WHERE          .  AS SOON AS WE KNEW, WE ALERTED MR.

22   PLETCHER, AND I THINK WE ALERTED THE COURT AS WELL.  SO IF

23   THERE'S GOING TO BE A SIGNIFICANT DOWNTURN, WE WOULD LET THE

24   COURT KNOW AND COME IN.  BUT AT THIS POINT, I THINK MR.

25   PLETCHER HAS CONSISTENTLY EXPRESSED HIS VIEW THAT HE DIDN'T

1    WANT TO TAKE AN UNNECESSARY DEPOSITION UNLESS ABSOLUTELY
2    NEEDED, AND I THINK THE COURT WILL PROBABLY HAVE MORE CLARITY.
3    MY UNDERSTANDING IS ON THE 7TH FLEET CASE IN NOVEMBER, ON
4    WHETHER IT'S GOING TO TRIAL, OR WHEN IT'S GOING TO TRIAL.

5              THE COURT:  WELL, THERE'S A SEVERANCE MOTION SET IN
6    NOVEMBER, BUT THE TRIAL DATE IN JANUARY HAS BEEN VACATED.  THE
7    REQUEST FOR GREATER DETAILS ABOUT THE VERY TOPIC OF WHAT WE'RE
8    DISCUSSING AND A MEDICAL FURLOUGH HAS BEEN PUT OVER AND
9    CONTINUES TO BE PUT OVER UNTIL WE'RE CLOSER TO TRIAL TO
10   DETERMINE, YOU KNOW, IS MR. FRANCIS TESTIFYING, AND THE
11   RELEVANCY OF IT, WHICH THERE PROBABLY IS SOME RELEVANCY, BUT
12   YET TO BE DETERMINED.  BUT YOU HAVE A VIGILANT GROUP OF EIGHT
13   OR NINE PEOPLE -- I THINK WE'RE DOWN TO EIGHT -- WHO WOULD
14   LIKE MORE INFORMATION, AND THEY KNOW WHAT HE HAS.

15             MR. BURSTEIN:  YEAH.

16             THE COURT:  IN ONE OF THEIR MOST RECENT FILINGS,
17   THERE WAS A FOOTNOTE.  THEY SAID, WE KNOW HE HAS STAGE FOUR
18   RENAL CANCER AND IT'S VERY SERIOUS.  SO I DON'T KNOW HOW THEY
19   GOT THAT, BUT THEY'RE NOT STUPID.

20             MR. BURSTEIN:  NO, IT'S VERY SERIOUS.  IT'S ALWAYS
21   PUZZLED ME, BECAUSE HE HAS BEEN CROSS-EXAMINED ABOUT THIS WITH
22   MEMBERS OF THAT TEAM PRESENT DURING THE COURT-MARTIALS.  SO
23   EVERYBODY IN THE WHOLE WORLD WHO WANTS TO KNOW, THEY HAVE
24   ACCESS TO THAT TRANSCRIPT.  SO THEY KNOW.  NOT ONLY DO THEY
25   KNOW THE DIAGNOSIS, THEY KNOW ALMOST ALL THE DETAILS.

1    THE COURT:  WELL, DO THEY KNOW --

2    MR. BURSTEIN:  ANY SUGGESTION TO THE CONTRARY IS JUST

3    (PAUSE) -- WELL, I DON'T WANT TO SPEAK.

4    THE COURT:  WELL, NO, THAT'S FINE.  THAT'S HELPFUL TO

5    KNOW.  I DIDN'T KNOW HOW THEY KNEW, BUT IT CAME UP IN THE

6    COURT-MARTIAL.

7    MR. BURSTEIN:  IT WAS, AND A MEMBER OF THE DEFENSE

8    TEAM WAS THERE, AND THEY HAVE THE -- I ASSUME AND I WOULD BE

9    SHOCKED IF THEY DON'T HAVE THE TRANSCRIPT.  SO IT DEALT NOT

10   ONLY WITH THE DIAGNOSIS, HOUSING.  THE JUDGE, THE MILITARY

11   JUDGE ALLOWED RELATIVELY SIGNIFICANT CROSS-EXAMINATION, AS I

12   RECALL, INTO WHAT WAS GOING ON.  SO THERE'S NO MYSTERY OUT

13   THERE.  THEY ALL KNOW.

14   THE COURT:  THEY ALL KNOW.  OKAY.

15   MR. BURSTEIN:  ABSOLUTELY.

16   THE COURT:  WELL, THAT'S HELPFUL.

17   OKAY.  SO WE'LL PROBABLY PUT THIS OVER TO JANUARY.

18   MR. PLETCHER, ADD TO THIS, SIR.

19   MR. PLETCHER:  THANK YOU, YOUR HONOR.

20   I WAS JUST GOING TO AID THE COURT'S RECOLLECTION.  I

21   THINK THIS IS STILL WHERE WE ARE ON THE MEDICAL SIDE, WHICH IS

22   TO SAY HE'S GOT THESE ███████████.  THEN, DEPENDING ON THE

23   COURSE OF THE ███████████████████████████████████████

24   ████████████████████████████████████████████████████

25   █████████████████████████████████.

1    MR. BURSTEIN: ██████

2    THE COURT: ██████

3    MR. PLETCHER: I'M SORRY. OF HIS ████. I'M SORRY.

4    OF HIS ████████ IF HE'S DOING WELL -- IF THERE'S

5    SOMETHING DIFFERENT THAN THAT, THEN THEY WOULD CHANGE THE

6    COURSE OF TREATMENT. I HAD THE ABILITY TO SEE MR. FRANCIS

7    OVER A ZOOM VIDEO RECENTLY WITH HIS COUNSEL, AND, YOU KNOW, HE

8    APPEARS TO BE DOING WELL. I KNOW THE COURT WILL BE PLEASED TO

9    KNOW THAT, AND HE ALSO IS BEING HYPERVIGILANT WITH RESPECT TO

10   COVID AND --

11   THE COURT: UNDERSTANDABLY.

12   MR. PLETCHER: ABSOLUTELY UNDERSTANDABLE IN ALL

13   RESPECTS.

14   SO THAT'S WHERE WE ARE WITH RESPECT TO THE MEDICAL

15   FURLOUGH, AND SO WE, AS WE HAVE, DEFER TO THE COURT ON THIS,

16   BUT I THINK THAT THIS IS A GOOD COURSE OF ACTION GIVEN WHERE

17   WE'VE COME FROM.

18   ON THE OTHER SIDE, NOT ONLY IS -- AND WE'LL DEAL WITH

19   THE ISSUES RELATED TO DISCOVERY IN THE 7TH FLEET CASE AND

20   DISCOVERY ON THIS PARTICULAR ISSUE, BUT ALSO, AS THE COURT IS

21   WELL AWARE, IS THAT WE HAVE PERIODICALLY UNSEALED THE ORDERS

22   RELATED TO THIS WITH CERTAIN REDACTIONS, SO THAT THERE IS

23   MATERIAL OUT THERE PUBLICLY.

24   THE COURT: YOU MEAN WITH REGARD TO THE FURLOUGH.

25   MR. PLETCHER: WITH REGARD TO THE FURLOUGH.

1    THE COURT: YES.

2    MR. PLETCHER: RIGHT. SO WE HAVE SUBMITTED TO THE

3    COURT AND THE COURT HAS SIGNED AN UNSEALING ORDER WITH RESPECT

4    TO EACH OF THE ORDERS AND WITH CERTAIN OTHER DOCUMENTS WITH

5    APPROPRIATE REDACTIONS THAT REDACT CERTAIN, YOU KNOW, PERSONAL

6    IDENTIFYING INFORMATION OR MEDICAL INFORMATION. SO THAT

7    INFORMATION IS ALSO OUT ON THE PUBLIC DOCKET AS WELL, NOT IN

8    ADDITION TO THIS TRANSCRIPT. THAT'S NOT AN ISSUE BEFORE US.

9    AND AS THE ISSUE MATURES IN THE 7TH FLEET CASE, YOU KNOW,

10   WE'LL PUT ALL THAT IN FRONT OF THE COURT IN APPROPRIATE

11   FILINGS FOR YOUR DETERMINATION AS TO WHAT SHOULD BE RELEASED

12   WHEN.

13   THE COURT: OKAY. SO WITH THAT AND THE UNDERSTANDING

14   THAT, SHOULD ANYTHING DRAMATICALLY CHANGE FOR THE BETTER, FOR

15   THE WORSE, AT ANY TIME, COUNSEL SHOULD GET HOLD OF THE OTHER

16   SIDE. YOU SHOULD GET HOLD OF MR. PLETCHER AND COME IN AND

17   NOTIFY THE COURT. I DON'T WANT TO READ ABOUT THIS IN THE

18   NEWSPAPER, FOLKS, IF SOMETHING WERE TO HAPPEN.

19   BUT FOR NOW LET'S PUT THIS OVER TO MID- TO LATE

20   JANUARY AND SEE WHERE WE ARE, IF THAT'S AGREEABLE TO THE

21   GOVERNMENT AND AGREEABLE TO THE DEFENSE.

22   MR. BURSTEIN: YES, YOUR HONOR. LATE JANUARY WOULD

23   BE IDEAL FOR US.

24   MR. PLETCHER: I THINK THAT SOUNDS FINE. I MEAN,

25   I'LL BE IN TOUCH WITH MR. BURSTEIN AS TO THE RESULTS OF THESE

1    IN OCTOBER.

2          THE COURT:  WELL, THAT'S WHAT I MEAN, IF SOMETHING

3    SHOWS UP ON THE SCANS AND IT DOES NOT LOOK GOOD.  IF IT'S

4    STATUS QUO, YOU DON'T NEED TO DO ANYTHING.

5          MR. PLETCHER:  RIGHT.

6          THE COURT:  LET'S SEE WHERE WE ARE IN JANUARY.  BUT

7    IF THINGS ARE NOT LOOKING GOOD, I WOULD LIKE TO KNOW THAT AND

8    ASK YOU TO BRING IT BACK BEFORE THEN.

9          MR. PLETCHER:  YES, BECAUSE FROM OUR PERSPECTIVE, YOU

10   KNOW, IF, IN THE WORST-CASE SCENARIO, SOMETHING WERE TO, YOU

11   KNOW, START TO TREND DOWNWARD, THEN WE WOULD HAVE TO

12   RE-EVALUATE THIS IDEA OF A DEPOSITION.

13         MR. BURSTEIN:  AND I'LL REPRESENT THAT I WILL

14   IMMEDIATELY ALERT MR. PLETCHER AND THE COURT IF I -- IF

15   THERE'S ANYTHING AWRY WHATSOEVER.  EVEN IF IT'S A CLOSE CALL,

16   I'LL LET EVERYBODY KNOW.

17         THE COURT:  AND, YOU KNOW, WE WISH HIM ALL THE BEST,

18   AND IT'S BEST TO STAY QUARANTINED IN THIS VERY UNPREDICTABLE

19   AND UNCERTAIN TIME WITH THE CORONAVIRUS.

20         SO, ALEX, SET A DATE IN LATE JANUARY.

21         THE DEPUTY CLERK:  JANUARY 29TH, AT ELEVEN O'CLOCK

22   A.M.

23         THE COURT:  DOES THAT DATE WORK FOR EVERYBODY?

24         MR. PLETCHER:  YES FOR THE UNITED STATES.  THANK YOU.

25         MR. BURSTEIN:  AND YES FOR MR. FRANCIS' COUNSEL.

```
1            THE COURT:  OKAY.  WELL, THANK YOU.

2            MR. BURSTEIN:  THANK YOU, YOUR HONOR, AND HAVE A

3    WONDERFUL WEEKEND, EVERYBODY.

4            THE COURT:  YOU, TOO, AND EVERYBODY STAY SAFE AS

5    WELL.

6            MS. JENKINS:  AND JUST EXTENDING THE GREEN SHEET OUT.

7            MR. BURSTEIN:  OH, YES.  TO WHAT DATE, RIGHT.

8            MS. JENKINS:  PROBABLY THE FOLLOWING MONDAY.

9            THE COURT:  ABSOLUTELY.  THANK YOU.

10           SO THE WORK FURLOUGH CONTINUES TO -- WHAT'S THE

11   FOLLOWING MONDAY?

12           THE DEPUTY CLERK:  THE FURLOUGH IS EXTENDED TO

13   FEBRUARY 1.

14           THE COURT:  OKAY.  VERY WELL.

15           THANK YOU.

16           MR. PLETCHER:  THANK YOU, YOUR HONOR.

17           MR. BURSTEIN:  THANK YOU, YOUR HONOR.

18           MS. JENKINS:  THANK YOU, YOUR HONOR.

19           THE COURT:  THANK YOU.

20           (PROCEEDINGS ADJOURNED AT 12:08 P.M.)

21   ----------------------------------------------------------------

22                     (END OF TRANSCRIPT)

23

24

25
```

1    I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

2 HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

3 ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

4

5    S/FRANK J. RANGUS

6    FRANK J. RANGUS, OCR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25





**Calendar of the United States District Court**
**Southern District of California**
**San Diego**
**Friday, October 2, 2020**
**Courtroom 4D**

**Present the Honorable: Janis L. Sammartino**       **District Judge**

Deputy Clerk: A. Ramos          Court Reporter/ECR: F. RANGUS          Interpreter:

## *** SEALED PROCEEDINGS ***
## 11:00 AM

**9a.**     13CR3781-JLS          USA    V.      **LEONARD GLENN FRANCIS**
            13CR3782-JLS
            13CR4287-JLS
                                          **RETD   DEVIN BURSTEIN**
                                                   **KATIE JENKINS**
                                                   **JEREMY WARREN**

                                          **AUSA   MARK PLETCHER**

                                          **PSO    ALDO LOPEZ**
                                                   **KIMURA HAZARD**
                                                   **VANESSA ANDREWS**

**STATUS HEARING**

Notes:
**PSR/SENTENCE SET FOR MARCH 26, 2021 AT 9:00 AM**

CONTINUED TO 1/29/2021 AT 11:00 AM
MEDICAL FURLOUGH EXTENDED TO 2/1/2021

0:12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER 13CR3781-JLS |
| vs | **ABSTRACT OF ORDER** **SEALED** |
| LEONARD GLENN FRANCIS | Booking No. 45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of **OCTOBER 2, 2020**

the Court entered the following order:

|   |   |
|---|---|
| ✗ | Defendant be release from custody. |
|   | Defendant placed on supervised / unsupervised probation / supervised release. |
|   | Defendant continued on supervised / unsupervised probation / supervised release. |
| ✗ | Defendant released on          O/R W/GPS          Bond posted. |
|   | Defendant appeared in Court. FINGERPRINT & RELEASE. |
|   | Defendant remanded and (_____ bond ) (_____ bond on appeal ) exonerated. |
|   | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
|   | Bench Warrant Recalled. |
|   | Defendant forfeited collateral. |
|   | Case dismissed. |
|   | Case dismissed, charges pending in case no. |
|   | Defendant to be release to Pretrial Services for electronic monitoring. |
| ✗ | Other. The Court revises previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until January 31, 2021. The defendant will return to custody and continue detention on January 31, 2021. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

10/30/20

Electronically Sent to USMS

OR

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

**ATTN:**
**DENNIS COUGHLIN, DUSM**
**ELUID SOTO, DUSM**

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

**From:** <CAS.Releases@usdoj.gov>

**To:** Alex Ramos
**Sent:** Friday, October 30, 2020 11:14 AM
**Subject:** Read: 13CR3781-JLS SEALED ABSTRACT (MEDICAL FURLOUGH)

Your message

To: CAS Releases
Subject: 13CR3781-JLS SEALED ABSTRACT (MEDICAL FURLOUGH)
Sent: Friday, October 30, 2020 11:11:10 AM (UTC-08:00) Pacific Time (US & Canada)

was read on Friday, October 30, 2020 11:11:39 AM (UTC-08:00) Pacific Time (US & Canada).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

VS

LEONARD GLENN FRANCIS

CASE NUMBER  13CR3782-JLS

**ABSTRACT OF ORDER**  SEALED

Booking No.  45415298

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  OCTOBER 2, 2020

the Court entered the following order:

| | |
|---|---|
| X | Defendant be release from custody. |
| | Defendant placed on supervised / unsupervised probation / supervised release. |
| | Defendant continued on supervised / unsupervised probation / supervised release. |
| X | Defendant released on _____ O/R W/GPS _____ Bond posted. |
| | Defendant appeared in Court.  FINGERPRINT & RELEASE. |
| | Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated. |
| | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
| | Bench Warrant Recalled. |
| | Defendant forfeited collateral. |
| | Case dismissed. |
| | Case dismissed, charges pending in case no. |
| | Defendant to be release to Pretrial Services for electronic monitoring. |
| X | Other. The Court revises previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until January 31, 2021. The defendant will return to custody and continue detention on January 31, 2021. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

10/30/20

Electronically Sent to USMS

**ATTN:**
**DENNIS COUGHLIN, DUSM**
**ELUID SOTO, DUSM**

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

**From:** <CAS.Releases@usdoj.gov>

**To:** Alex Ramos
**Sent:** Friday, October 30, 2020 11:20 AM
**Subject:** Read: 13CR3782-JLS SEALED ABSTRACT (MEDICAL FURLOUGH)

Your message

To: CAS Releases
Subject: 13CR3782-JLS SEALED ABSTRACT (MEDICAL FURLOUGH)
Sent: Friday, October 30, 2020 11:11:16 AM (UTC-08:00) Pacific Time (US & Canada)

was read on Friday, October 30, 2020 11:18:14 AM (UTC-08:00) Pacific Time (US & Canada).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

VS

LEONARD GLENN FRANCIS

CASE NUMBER  13CR4287-JLS

**ABSTRACT OF ORDER**  **SEALED**

Booking No.  45415298

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  **OCTOBER 2, 2020**

the Court entered the following order:

| | |
|---|---|
| X | Defendant be release from custody. |
| | Defendant placed on supervised / unsupervised probation / supervised release. |
| | Defendant continued on supervised / unsupervised probation / supervised release. |
| X | Defendant released on _____ O/R W/GPS _____ Bond posted. |
| | Defendant appeared in Court.  FINGERPRINT & RELEASE. |
| | Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated. |
| | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
| | Bench Warrant Recalled. |
| | Defendant forfeited collateral. |
| | Case dismissed. |
| | Case dismissed, charges pending in case no. |
| | Defendant to be release to Pretrial Services for electronic monitoring. |
| X | Other. The Court revises previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until January 31, 2021. The defendant will return to custody and continue detention on January 31, 2021. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

10/30/20

Electronically Sent to USMS

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

**ATTN:**
**DENNIS COUGHLIN, DUSM**
**ELUID SOTO, DUSM**

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

| | |
|---|---|
| **From:** | Scott, Andrea (USMS) |
| **Sent:** | Friday, October 30, 2020 12:25 PM |
| **To:** | Alex Ramos |
| **Subject:** | Re: Sealed Abstract for 13CR4287 |

**CAUTION - EXTERNAL:**

Hi

Yes we received all 3, sorry about that.

Thank you,

Andrea

> On Oct 30, 2020, at 12:20 PM, Alex Ramos <Alex_Ramos@casd.uscourts.gov> wrote:
>
> Were you able to process the 3rd sealed abstract? I received the receipt for 3781 and 3782, but not 4287.
>
> Alex

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



Sunil Bhoyrul, M.D., FRCS, FACS

November 24, 2020

Judge Sammartino,

This letter is to notify you that Mr. Leonard Francis has been dismissed from our practice. We wish to congratulate him on his clean bill of health. Attached is the registered letter that was sent to Mr. Francis to inform him of his dismissal from our practice.

Please contact me if you have any questions or need any further information.

Sincerely,

Sunil Bhoyrul, MD., FRCS, FACS

Olde Del Mar Surgical

9850 Genesee Avenue Suite 570

La Jolla, CA 92037

P: (858) 457-4917

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          )     13-CR-3781-JLS
          PLAINTIFF,               )     13-CR-3782-JLS
                                   )     13-CR-4287-JLS
VS.                                )
                                   )     SAN DIEGO, CA
LEONARD GLENN FRANCIS, *ET AL.*,   )     DECEMBER 2, 2020
          DEFENDANTS.              )     11:00 A.M.

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:    WARREN & BURSTEIN
                      BY:  DEVIN J. BURSTEIN, ESQ.
                           KATIE JENKINS, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA  92101

PRETRIAL SERVICES:    MARISA ZVERS

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA  92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                      PAGE

NEXT HEARING DATE                  31

1          THE DEPUTY CLERK:  NUMBER THREE ON THE CALENDAR,

2     13-CR-3781, 13-CR-3782, 13-CR-4287, UNITED STATES VS. LEONARD

3     GLENN FRANCIS, FOR STATUS.

4          MR. PLETCHER:  JUDGE, GOOD MORNING.  MARK PLETCHER

5     FOR THE UNITED STATES.

6          THE COURT:  GOOD MORNING.

7          MR. BURSTEIN:  GOOD MORNING, YOUR HONOR.  DEVIN

8     BERSTEIN AND KATIE JENKINS FOR MR. FRANCIS.

9          THE COURT:  OKAY.  THANK YOU.

10          MS. ZVERS:  GOOD MORNING, YOUR HONOR.  MARISA ZVERS,

11     U. S. PRETRIAL SERVICES.

12          THE COURT:  THANK YOU.

13          THE COURT ASKED EVERYBODY TO COME TODAY FOR THIS

14     STATUS BECAUSE OF THE LETTER THAT WAS RECEIVED DIRECTLY BY THE

15     COURT FROM                  , FROM THE PHYSICIAN WHO HAS

16     APPEARED IN THIS COURT PREVIOUSLY TO DISCUSS MR. LEONARD'S,

17     LEONARD FRANCIS' HEALTH INDICATING THAT HE'S BEEN DISMISSED

18     FROM THE PRACTICE AND THEY          CONGRATULATE HIM ON HIS

19                        AND THEY ATTACHED A REGISTERED LETTER

20     THAT HAD BEEN SENT TO MR. FRANCIS INDICATING AN

21          , AMONGST SOME OTHER MATTERS, AND THERE ARE A COUPLE OF

22     POINTS, FOLKS, THAT YOU CAN ADDRESS FOR THE COURT THIS

23     MORNING.

24          THE FIRST IS:  WHAT IS THE STATUS OF HIS HEALTH?  A

25                        INDICATES A NUMBER OF THINGS TO THE

1    COURT.  NUMBER ONE, HE COULD BE HERE.  NUMBER TWO, WHAT I HAVE
2    TRADITIONALLY TOLD OTHER DEFENDANTS IN PENDING CASES IN THIS
3    OVERALL CONSPIRACY IS THAT THIS HAS BEEN A LEGITIMATE MEDICAL
4    FURLOUGH, AND AT THE POINT OF WHICH IT IS NO LONGER A
5    LEGITIMATE MEDICAL FURLOUGH, THE COURT MAY TAKE A DIFFERENT
6    POSITION.  THE OTHER CONCERN I HAVE IS, IF HE IS NOT
7    ▮▮▮▮▮▮▮▮▮▮, I'M CONCERNED.  IS HE PAYING HIS SECURITY
8    TEAM?  WHAT IS HIS STATUS?  I EVEN WENT SO FAR AS TO WONDER IF
9    HE IS STILL IN THIS COUNTRY.  SO I WOULD LIKE TO HEAR ALL OF
10   THOSE ADDRESSED.  AND THE OTHER THING IS, MR. BURSTEIN, MR.
11   PLETCHER, YOU HAVE BEEN VERY DILIGENT IN THIS MATTER, AND IT
12   SURPRISES ME THAT I HEAR THIS FROM THE DOCTOR DIRECTLY AND NOT
13   FROM YOU ALL WHEN THERE WAS A CHANGE OF CIRCUMSTANCES.  SO
14   THAT'S WHY I CALLED YOU HERE.
15            GO AHEAD, MR. BURSTEIN.
16            MR. BURSTEIN:  THANK YOU, YOUR HONOR.
17            I THINK MOST OF THIS CAN BE DONE VERY QUICKLY.  I
18   DON'T KNOW IF MR. RAMOS HAS BEEN ABLE TO GIVE YOU THE
19   PRINTOUT.
20            THE COURT:  HE DID.
21            MR. BURSTEIN:  OKAY.  SO I'LL GIVE THE COURT A
22   MINUTE, OR AS LONG AS THE COURT WANTS, TO FAMILIARIZE ITSELF
23   WITH THE PRINTOUT.
24            THE COURT:  WELL, I SEE THE LETTER.  HE CONTINUES TO
25   HAVE ▮▮▮▮▮▮▮▮▮▮.

1    MR. BURSTEIN:  CORRECT.  AND SO WHAT HAPPENED IS, YOU

2    KNOW -- AND I WAS, YOU KNOW, SHOCKED, OR DISMAYED, THAT YOU

3    RECEIVED A LETTER DIRECTLY FROM THE DOCTOR.  I THINK IT'S

4    ENTIRELY INAPPROPRIATE.

5         THE COURT:  WELL, I WAS SHOCKED, TOO.

6         MR. BURSTEIN:  YOU KNOW, WHATEVER -- I CAN GET, I CAN

7    GET TO WHAT I KNOW OF THE DISAGREEMENTS BETWEEN

8    AND MR. FRANCIS.

9         THE COURT:  LET ME SAY THIS IS A CLOSED HEARING

10   TODAY.  THE ONLY PEOPLE IN HERE IS THE U. S. MARSHAL IN THE

11   BACK, YOU KNOW.

12        SO GO AHEAD AND TELL ME WHAT YOU AGREED TO TELL ME.

13        MR. BURSTEIN:  WHAT I THINK IS FAR MORE IMPORTANT IS

14   THE MEDICAL ISSUES.  SO THE MEDICAL ISSUES ARE, AS YOU SEE, SO

15   MR. FRANCIS MADE A CHANGE TO          , TO THE ACTUAL

16            THERE.  AS THE COURT MAY RECALL,          IS

17            IN A DIFFERENT HOSPITAL.  MR. FRANCIS MADE A

18   CHANGE IN DOCTORS THAT WE CAN READ BETWEEN THE LINES AS TO

19   WHETHER THAT HAS CAUSED SOME OF THE FRICTION.  IN ANY EVENT,

20   HE'S NOW WITH TWO SPECIALIZED          , AND WHAT IS THE

21   LATEST IS THAT, THE GOOD PARTS ARE THAT HE DOES NOT HAVE ANY

22                                                    .

23   REMEMBER, ONE OF THE                     BUT AS HAS BEEN

24   INDICATED, THERE'S BEEN NO                     , OR

25   ANYTHING LIKE THAT.  THERE'S THE ISSUE OF THE          WHICH

1    REMAINS.  THEN THE MOST TROUBLING PART IS, ON THE THIRD PAGE,

2    IS THE ███████████████ THAT HAVE BEEN SEEN.

3              THE COURT:  WHERE ARE YOU?  I'VE GOT THE LETTER,

4    WHICH I TOTALLY UNDERSTAND.  THEN I'VE GOT A PAGE THAT SAYS

5    PROGRESS NOTES.

6              MR. BURSTEIN:  YES.  THEN YOU SHOULD HAVE A SECOND

7    PAGE --

8              THE COURT:  I DO, I DO.

9              MR. BURSTEIN:  -- CALLED PATIENT INSTRUCTIONS.

10             THE COURT:  OKAY.

11             MR. BURSTEIN:  THE FIRST LINE THERE -- AND WE COBBLED

12   THIS TOGETHER AS QUICKLY AS WE COULD YESTERDAY.

13             THE COURT:  NO, I UNDERSTAND.

14             MR. BURSTEIN:  WE PLAN TO MOVE FORWARD WITH THE ███.

15   SO, WHEN HE WENT TO THE ████████████, THEY DISCOVERED

16   A COUPLE OF THINGS THAT HADN'T BEEN DONE AT █████, AND I'M

17   NOT CASTING ASPERSIONS, BECAUSE I DON'T KNOW.  I'M JUST

18   REPORTING WHAT I KNOW.  THERE'S A PROCESS I THINK MR. PLETCHER

19   CAN MORE FULLY AND COMPLETELY AND COGENTLY EXPLAIN WHERE

20   THEY'RE SUPPOSED TO TAKE A █████████ ESSENTIALLY, KIND OF

21   ████████████████████████████████████████████████

22   █████████ THAT WAS NEVER DONE.  SO THEY DISCOVERED THESE

23   ████████████████, AND THEY'RE CONCERNED THAT THOSE █████

24   ████████████████

25             THE COURT:  THAT'S THE REFERENCE TO THESE █████████

1    █████ ?

2              MR. BURSTEIN:  RIGHT.

3              THE COURT:  OKAY.

4              MR. BURSTEIN:  AND SO WHAT THEY'RE DOING, YOU'LL SEE

5    THE LAST SENTENCE, ████████████████ .  DO YOU SEE THAT, YOUR

6    HONOR?

7              THE COURT:  YES.

8              MR. BURSTEIN:  MY UNDERSTANDING, AND MR. PLETCHER

9    WILL HELP WITH THIS, IS THAT THEY'RE GOING TO ██████ THAT,

10   WHICH SHOULD HAVE BEEN DONE BUT WASN'T, AND THEN THAT WILL

11   HELP THEM EVALUATE WHETHER THERE HAS BEEN A ████████████

12   █████████████████████████████████████████████████████

13   ████████████████████████████ .  SO THAT'S KIND OF THE

14   CURRENT SET.

15             YOU'LL ALSO SEE THAT HE HAS ████ SCHEDULED FOR --

16   MISS JENKINS -- FEBRUARY (PAUSE) --

17             MS. JENKINS:  FEBRUARY 8 AND 22.

18             MR. BURSTEIN:  AND THAT MIGHT NOT BE ON HERE.  I

19   APOLOGIZE.  THERE'S A ████████████████

20             MS. JENKINS:  AN ██████████

21             MR. BURSTEIN:  SCHEDULED FOR FEBRUARY, AND THAT'S THE

22   ████████████████ THAT'S REFERENCED IN THE FIRST STATEMENT.

23   AND THEN REPEAT THE ████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████ AND THAT IT JUST REMAINS ██████ , AND NOW THE ████

1   ISSUE, WHICH IS THE FIRST -- THIS IS NEW, AND THAT IS THE

2   CURRENT STATE OF THE ACTUAL BLACK-AND-WHITE MEDICAL DIAGNOSIS.

3            THE COURT:  SO, IS          , WHO'S ACTUALLY HIS

4   TREATING PHYSICIAN, THE PERSON WHO WROTE THE LETTER TO US?

5            MR. BURSTEIN:  YES, YOUR HONOR, AND WE'LL GET THEM TO

6   YOU.  MR. RAMOS EXPLAINED THAT YOUR HONOR DIDN'T WANT PAPERS.

7            THE COURT:  WE DON'T HAVE PAPERS ANYMORE FOR THE

8   OBVIOUS REASONS.  BUT GO AHEAD.

9            MR. BURSTEIN:  PRETRIAL HAS A COPY OF THIS, AND THE

10  GOVERNMENT DOES.  AND ALSO, BEFORE I GET TO THE SPECIFIC

11  DOCTORS, I WANTED THE COURT TO KNOW THAT PRETRIAL -- AND WE'VE

12  SPOKEN.  WE HAVE A WONDERFUL RELATIONSHIP.  THEY'VE BEEN AWARE

13  OF ALL THE DIFFERENT APPOINTMENTS HE'S BEEN GOING TO.  THAT'S

14  THE PRINCIPAL POINT OF CONTACT.  AT THIS POINT, YOU KNOW, I

15  CHECKED UP ON HIM, BUT AT THIS POINT THERE'S NOT A WHOLE LOT

16  MORE.

17           THE COURT:  DID YOU KNOW WHAT WAS GOING ON WITH THIS

18  LETTER TO HIM FROM THE DOCTOR AT               ?  YOU

19  CERTAINLY DIDN'T KNOW I WAS GETTING THE LETTER.

20           MR. BURSTEIN:  I KNEW PARTS.  I KNEW PARTS OF THE

21  PROBLEM BECAUSE THE DOCTOR HAD -- LET ME -- I'LL GET TO THAT,

22  I PROMISE, YOUR HONOR.

23           SO, ANYWAY, I JUST WANTED TO MAKE IT CLEAR THAT

24  PRETRIAL CAN SPEAK TO THAT.  HE'S NOW UNDER THE CARE OF TWO

25  DIFFERENT DOCTORS.  YOU'LL SEE ON THE FIRST PAGE DR.

1    ███████   AND SHE IS A --

2        MS. JENKINS:  *HE*.

3        MR. BURSTEIN:  HE IS A ██████████████

4    ████████████████████████████████████████.

5    AND THE OTHER ONE IS ████████████████████

6    ████████████████████████████  SO WE CAN SEND YOU THE

7    BIOS, YOUR HONOR, IF YOU'RE INTERESTED.  THEY'RE HERE.  SO

8    THAT'S, THAT'S WHO HE'S UNDER THE CARE OF.  HE HASN'T SEEN ███

9    ████  IN A LONG TIME.

10        THE COURT:  I WOULD ASSUME NOT.

11        MR. BURSTEIN:  SO MY UNDERSTANDING OF WHAT HAPPENED,

12    AND THIS IS --

13        THE COURT:  I MEAN, IT'S BIZARRE, COUNSEL, THAT HE

14    SAYS, WE ████████████████████████████████.

15        MR. BURSTEIN:  IT WILL BE LESS BIZARRE IN A MINUTE,

16    YOUR HONOR.

17        THE COURT:  OH, OKAY.

18        MR. BURSTEIN:  THIS IS MY UNDERSTANDING, AND THIS IS,

19    MUCH OF IT -- I'LL TELL YOU ABOUT MY DIRECT EXPERIENCE, AND

20    THEN I'LL MAKE CLEAR WHAT'S HEARSAY.  I WAS TOLD THAT THERE

21    HAD BEEN FOUND SOME BILLING DISCREPANCIES FROM █████████,

22    THAT THEY, THE FAMILY LAWYERS WHO ARE DEALING WITH THAT HAD

23    REQUESTED BACKUP DOCUMENTS TO PERFORM AN AUDIT BECAUSE THE

24    NUMBERS WERE VERY LARGE.  THE BACKUP DOCUMENTS REVEALED

25    DISCREPANCIES, WHICH LED TO AN IMPASSE IN TERMS OF BILLING.

1  THAT LED TO A TOTAL BREAKDOWN IN TRUST IN THE DOCTOR-PATIENT
2  RELATIONSHIP BECAUSE ONE PARTY WOULD NATURALLY FEEL LIKE
3  THEY'RE BEING TAKEN ADVANTAGE OF IN A TIME OF DIRE MEDICAL
4  NEEDS.  THAT LED TO A BREAKDOWN IN TRUST.  IN THAT
5  RELATIONSHIP, WHATEVER HAPPENED, IT HAPPENED.
6      SUBSEQUENTLY, NOW I CAN TELL YOU WHAT I RECEIVED, AND
7  MISS JENKINS.  WE RECEIVED NUMEROUS CALLS AND TEXT MESSAGES
8  FROM              IMPLORING US TO SOMEHOW CONVINCE
9                        AND SUGGESTING THAT IF HE DID NOT,
10  HE WOULD SEND A LETTER TO THE COURT NOTING BOTH THE
11
12  THE MESSAGE I RECEIVED IS VERY CLEAR, BECAUSE I SAID TO
13      SOMETHING TO THE EFFECT OF, AND MISS JENKINS WAS ON
14  MOST OF THESE CALLS --
15
16  WHEN'S THE LAST TIME YOU SAW HIM?  HE SAID, WELL, I HAVEN'T
17  SEEN HIM IN MONTHS, BUT I'M GOING TO PRESUME
18      I CAUTIONED HIM THAT HE HAD DOCTOR-PATIENT
19  CONFIDENTIALITY AND THAT IT SEEMED A BIT EXTORTIONATE, AT
20  LEAST TO ME, AND I WOULD REALLY HESITATE TO INFORM THE COURT
21  OF ANYTHING WITHOUT FIRST GETTING PERMISSION FROM MY PATIENT.
22  I SAID, I'M NOT AN EXPERT ON THIS, BUT THAT'S WHAT I
23  UNDERSTAND.  FROM THE LEGAL PERSPECTIVE, I WOULD NEVER DO
24  SOMETHING COUNTER TO MY CLIENT'S INTEREST WITHOUT KNOWING
25  CONSENT OF THE CLIENT.  SO I THOUGHT THE MATTER HAD DIED

11

11

1    THERE.

2              ▓▓▓▓▓▓▓  THEN TOLD ME -- AND, YOU KNOW, HE PUT

3    THIS AT ISSUE, SO I'LL JUST GO AHEAD AND SAY IT.  HE TOLD ME

4    THAT HIS PRACTICE WAS, THAT HE WAS GOING TO BE IN THE MIDDLE

5    OF SELLING HIS PRACTICE TO A PRIVATE EQUITY GROUP AND THIS WAS

6    CAUSING HIM SOME CONSTERNATION AND, YOU KNOW, I REALLY NEEDED

7    TO, OR WE REALLY NEEDED TO STEP IN TO GET THIS SOLVED.

8    OTHERWISE, HE WAS GOING TO TAKE ACTION.  WE MADE IT ABUNDANTLY

9    CLEAR WE ARE NOT ANYBODY'S KEEPERS.  THIS HAS NOTHING TO DO

10   WITH US.  WE ARE CRIMINAL DEFENSE LAWYERS REPRESENTING A

11   COOPERATOR IN A VERY IMPORTANT CASE, AND WE DON'T WANT ANY

12   PART OF THIS.

13             THE COURT:  AND WHAT HE INCLUDED IN THE LETTER TO ME

14   REGARDING THE ▓▓▓▓▓▓▓▓▓▓  HAS NO BUSINESS COMING TO THE

15   COURT.

16             MR. BURSTEIN:  I THINK IT'S TOTALLY INAPPROPRIATE.  I

17   THINK IT HAS CREATED DOUBT WHERE THERE SHOULD BE NONE.  YOU

18   KNOW, I'M DISTURBED THAT THIS HAPPENED.  LOOK, THERE'S NO

19   QUESTION THAT LEONARD FRANCIS OWES A DEBT OF GRATITUDE FOR HIS

20   LIFE ▓▓▓▓▓▓▓▓ .  ▓▓▓▓▓▓▓  IS THE PERSON WHO INITIALLY

21   SCHEDULED THE ▓▓▓▓  THAT LED TO THE ▓▓▓▓▓▓▓▓▓▓

22   ▓▓▓▓ THAT, YOU KNOW, BUT FOR THAT, HE WOULD ▓▓▓▓  YOU

23   KNOW, I WOULD ASSUME THAT THEY HAD A VERY GOOD RELATIONSHIP

24   UNTIL THE BILLING DISCREPANCIES WERE FOUND.  I WILL ASSUME

25   THAT -- YOU KNOW, I DON'T KNOW WHO IS RIGHT AND WRONG IN THIS,

1  AND I DON'T REALLY CARE.  IT HAS NOTHING TO DO WITH ME.  I DO

2  TAKE REAL ISSUE WITH A DOCTOR SAYING █████████████████

3  WHEN CLEARLY THAT CANNOT BE TRUE, AND IT IS CLEARLY NOT TRUE,

4  AND HE HAS NO BASIS TO SAY THAT.

5       SO THAT'S REALLY WHERE WE ARE.

6       THE COURT:  OKAY.  LET ME ASK YOU THIS.  HE'S OUT OF

7  THAT SITUATION.  HE'S NOW AT █████████████████████  --

8       MR. BURSTEIN:  YES.

9       THE COURT -- WITH PEOPLE WHOSE EXPERTISE AND ABILITY

10 IN THIS PARTICULAR AREA CANNOT TRULY BE QUESTIONED.  I THINK

11 IT'S ONE OF THE BEST IN THE COUNTY, IF NOT, IN SOUTHERN

12 CALIFORNIA.  SO, WITH THAT, LET ME ASK YOU THIS.  I UNDERSTAND

13 WHAT YOU PRESENTED ME WITH, AND IT'S HELPFUL IN LIGHT OF THIS

14 WHAT I THOUGHT WAS THE STRANGEST LETTER AND PROBABLY, AT BEST,

15 INAPPROPRIATE LETTER THAT WAS SENT TO THE COURT.  COULD WE GET

16 SOMETHING FROM EITHER ████████████████████  THAT KIND OF

17 SUMMARIZES THE PROGRESS NOTES FOR HIM?  THAT WOULD BE HELPFUL.

18      MR. PLETCHER KNOWS THAT THERE'S A CONTINUING INTEREST

19 IN THE MEDICAL FURLOUGH ISSUE WITH THE ONE OPEN CASE THAT I

20 HAVE.  I THINK I HAVE JUST THE ONE.  YEAH.  THE ONE OPEN CASE

21 WITH EIGHT OR NINE DEFENDANTS IN IT AT THIS JUNCTURE AS TO HIS

22 STATUS, HIS MEDICAL FURLOUGH AND WELL-BEING.  THEY DO KNOW --

23 AND I'M NOT REALLY SURE HOW THEY KNOW THIS.  THEY DO KNOW THAT

24 HE'S SERIOUSLY ILL.  THEY DO KNOW HE HAS RENAL CANCER BECAUSE,

25 MR. PLETCHER, IN SOME OF THE FOOTNOTES IN THE PUBLIC

1   PLEADINGS, THAT WAS IN THERE BY AT LEAST ONE OR MORE DEFENSE

2   COUNSEL. SO THEY KNOW IT'S SERIOUS. HOPEFULLY, THEY DON'T

3   TAKE GREAT EXCEPTION TO THIS, BECAUSE THE LEVEL OF CARE THAT

4   HE NEEDS CANNOT BE PROVIDED, PROBABLY, IN CUSTODY.

5           MR. BURSTEIN: RIGHT. AND JUST TO REFRESH THE

6   COURT'S RECOLLECTION ON THAT, THE DEFENDANTS KNOW VIRTUALLY

7   MOST EVERYTHING BECAUSE HE WAS SUBJECT TO CROSS-EXAMINATION --

8           THE COURT: OH, THAT'S RIGHT.

9           MR. BURSTEIN: -- AT THE COURT-MARTIAL, YOU KNOW, NOT

10  THE FULL EXTENT EXACTLY WHAT MEDICATIONS, BUT THEY KNOW

11  EVERYTHING THAT HAS BEEN PUBLICLY REPORTED, THAT HE HAS STAGE

12  FOUR CANCER FOLLOWING THAT. THIS SAYS STAGE THREE. I DON'T

13  KNOW WHAT THE DISCREPANCY IS THERE, BUT             AND THE

14  REPORT, WE ALL SAW IT WAS A            .

15          THIS IS WAY OVER MY HEAD. IT'S MUCH BETTER FROM MR.

16  PLETCHER. I KNOW HE'S CLOSER TO THAT. HE HAS MORE KNOWLEDGE

17  IN THAT AREA.

18          THE COURT: DOES HE HAVE AN M.D., TOO, MR. PLETCHER?

19          I'M TEASING.

20          MR. BURSTEIN: NO. THERE'S ONE IN THE U. S.

21  ATTORNEY'S OFFICE. WE CAN GET THE M.D. DOWN HERE, TOO.

22          THE COURT: NO, NO. WE'RE GOOD. I ALMOST

23  DISCREPANCY'D THIS LETTER, BUT I DIDN'T. I WANTED BOTH OF YOU

24  TO SEE WHAT HE HAD SENT ME, AND SO THERE IT IS.

25          MR. BURSTEIN: THERE IT IS, YES. WE TRIED TO DO THAT

1  YESTERDAY AS SOON AS WE GOT THE MESSAGE FROM ALEX. I TRIED TO
2  GET THE DOCTOR ON THE PHONE. THIS IS THE BEST I CAN COME UP
3  WITH IN, YOU KNOW, 24 HOURS, BUT WE WILL GET YOU SOME TYPE OF
4  REPORT. I WILL FILE IT UNDER SEAL.

5  THE COURT: LET ME ASK THIS. IN A LAYPERSON'S TERM,
6  HOW IS MR. LEONARD FRANCIS DOING? I MEAN, HE'S BEEN VERY ILL
7  FOR A VERY LONG TIME, AND DURING THIS COVID TIME I HOPE HE'S
8  QUARANTINED, BECAUSE IT WOULD NOT BE GOOD FOR HIM TO GET THE
9  VIRUS.

10  MR. BURSTEIN: HE IS INCREDIBLY CAUTIOUS. WHEN WE
11  SEE -- WE DO NOT SEE HIM VERY OFTEN. WHEN WE DO, IT'S ALWAYS
12  OUTSIDE AND HE'S GOT GLOVES ON, A MASK, FACE SHIELD. I THINK
13  THERE'S A REFERENCE IN HERE TO THE FACT THAT HE HAS NOT SEEN,
14  HE WAS NOT SEEN BY AN ███████ BECAUSE OF THE COVID
15  EPIDEMIC. THEY KEPT HIM OUT OF THE HOSPITAL. THERE'S A
16  REFERENCE ON THE FIRST PAGE IN THE NOTES TO THAT. IT'S A
17  TYPO. IT SAYS, HAS BEEN SEEN BY AN ███████, BUT I THINK
18  IT'S MEANT TO SAY, HAS NOT BEEN SEEN BY AN ███████
19  THE COURT: OKAY.
20  MR. BURSTEIN: NOW, HE HAS BEEN SEEN BY ███
21  ███████████ PRETRIAL CAN PROBABLY GIVE MORE
22  INFORMATION ON THE FREQUENCY, OR MISS JENKINS KNOWS MORE THAN
23  I DO ABOUT THAT. BUT IN ANSWER, IT'S A LONG-WINDED WAY OF
24  SAYING, YES, WE'LL WORK ON GETTING A MORE COMPLETE LAY
25  EXPLANATION LETTER, LIKE ███████ USED TO PROVIDE, AND I'LL

1  GET THAT FILED UNDER SEAL AS SOON AS I CAN.

2  THE COURT: LET ME ASK YOU THIS. SO THERE'S NO

3  PROBLEM WITH MR. LEONARD FRANCIS RIGHT NOW CONTINUING TO PAY

4  HIS 24/7 FULL-TIME SECURITY DETAIL?

5  MR. BURSTEIN: WHEN I SPOKE TO HIM, HE TOLD ME AND

6  MISS JENKINS REPEATEDLY THE ONE THING HE WANTED TO COMMUNICATE

7  DIRECTLY TO YOU IS THAT HE HAS 24-HOUR SECURITY IN PLACE. HE

8  SAID TO TELL -- I MEAN, MISS JENKINS CAN SAY IT. HE SAID,

9  TELL JUDGE SAMMARTINO THE SECURITY'S IN PLACE. THIS WAS AN

10  ISSUE WITH           OVERBILLING ME. HE WOULDN'T COME UP

11  WITH IT WHEN I ASKED FOR THE AUDIT, AND I LOST ALL FAITH IN

12  HIM BECAUSE I FELT HE WAS TRYING TO CHEAT ME, AND I WENT WITH

13           , WHICH I THINK IS THE LOGICAL THING

14  TO DO.

15  THE COURT: NO, I THINK IT IS.

16  THE OTHER QUESTION I HAVE IS THIS. HE CONTINUES TO

17  WEAR AN ANKLE BRACELET?

18  MR. BURSTEIN: YES. PRETRIAL IS MONITORING.

19  THE COURT: OKAY. SO I WAS CERTAIN THAT PRETRIAL

20  WOULD HAVE LET ME KNOW IF HE HAD, YOU KNOW, CUT IT OFF AND RUN

21  FOR THE BORDER, OR SOMETHING.

22  I'M TRYING TO THINK IF I HAVE ANY OTHER QUESTIONS.

23  I THINK NOT AT THIS PARTICULAR MOMENT.

24  MR. BURSTEIN: AND YOUR HONOR MAY RECALL HIS CHILDREN

25  ARE HERE.

1    THE COURT:  OH, I KNOW.  I KNOW THAT.

2    MR. BURSTEIN:  HE'S NOT GOING ANYWHERE.

3    THE COURT:  HE'S NOT INCENTIVIZED TO GO OUT THERE

4    RIGHT NOW BECAUSE HIS IMMEDIATE FAMILY'S HERE.

5    MR. BURSTEIN:  AND HIS DOCTORS.

6    THE COURT:  OKAY.  ONE OTHER QUESTION.  WASN'T HE

7    LIVING IN A CONDOMINIUM OWNED BY THIS DOCTOR?

8    MR. BURSTEIN:  YES.  IF THE COURT WILL RECALL --

9    THE COURT:  I DO RECALL.

10   MR. BURSTEIN:  -- HE WAS, BUT THEN THE COURT MAY NOT,

11   THE COURT PROBABLY DOES NOT RECALL, BUT WE HAD ADDRESSED THIS

12   ISSUE.  WITH PERMISSION AND APPROVAL FROM PRETRIAL AND, I

13   THINK, NOTICE TO THE COURT, HE HAD MOVED.  THIS IS ALL PART OF

14   THAT SAME ███████████ .

15   THE COURT:  SO, AT THIS JUNCTURE, HE'S NO LONGER

16   TREATING.  HE'S NO LONGER LIVING IN A CONDO THAT THIS DOCTOR

17   OWNS.  SO ALL TIES ARE CUT, AND THE COMMUNICATION OCCURRED

18   DIRECTLY TO THE COURT FROM THE DOCTOR.  YOU BOTH HAVE IT, AND

19   WE'LL HEAR FROM THEM.

20   BEFORE I COME TO YOU, MR. PLETCHER, LET ME ASK YOU

21   FOR YOUR COMMENTS.

22   MS. ZVERS:  YES, YOUR HONOR.

23   SO MR. FRANCIS WAS ANKLE-MONITORED.  WE DO KNOW WHERE

24   HE'S GOING EVERY SINGLE DAY.  WE VERIFY THAT HE'S GOING TO

25   DOCTOR APPOINTMENTS THAT I RECEIVE NOW FROM MISS JENKINS.

1    UNLESS HE WAS JUST STANDING IN A DOCTOR'S OFFICE, NOT GETTING

2    TREATMENT, WE'RE PRETTY SURE THAT HE'S THERE GETTING

3    TREATMENT.  I SEE HIM ALMOST ON A MONTHLY BASIS.

4             THE COURT:  YOU SEE HIM PERSONALLY?

5             MS. ZVERS:  YES.

6             THE COURT:  OKAY.

7             MS. ZVERS:  YES, IN PERSON.  NOW, WE MEET OUTSIDE --

8             THE COURT:  SURE.

9             MS. ZVERS:  -- BECAUSE OF THE PANDEMIC, BUT I DON'T

10   REALLY HAVE ANY CONCERNS TO REPORT TO THE COURT.

11            THE COURT:  OKAY.  SO YOU CAN CONFIRM THE SECURITY

12   DETAIL IS ALWAYS THERE?

13            MS. ZVERS:  SO THE SECURITY DETAIL IS WHEN YOU FIRST

14   WALK THROUGH THE DOOR.  I HAVEN'T BEEN THERE, THAT AREA OF THE

15   HOUSE, SINCE PROBABLY APRIL OR MAY, BUT I ACTUALLY HAVE

16   PHYSICALLY SEEN THE SECURITY OFFICER.  BUT THE NEXT TIME I GO

17   OUT, WHICH WILL BE DONE THIS MONTH, I'LL MAKE SURE THEY'RE

18   THERE.

19            THE COURT:  OKAY.  VERY WELL.

20            MR. BURSTEIN:  WE SEE THEM WHEN WE'RE THERE.  HE

21   ASSURES US THEY'RE THERE.  THERE'S NEVER BEEN A PROBLEM IN THE

22   PAST, SO.

23            THE COURT:  NO, I UNDERSTAND.  OKAY.

24            MR. PLETCHER, GO AHEAD, SIR.

25            MR. PLETCHER:  THANK YOU, JUDGE.

1    SO A COUPLE OF POINTS MAYBE FROM A SLIGHTLY DIFFERENT
2    PERSPECTIVE.

3        YESTERDAY, WHEN MR. RAMOS SENT THIS LETTER IS THE
4    FIRST THAT THE UNITED STATES HAD BEEN AWARE THAT HE HAD
5    TRANSITIONED CARE TO TWO DIFFERENT DOCTORS.  I THINK THAT'S
6    THE FIRST TIME THE COURT WAS ALSO AWARE OF THAT.  THE COURT IN
7    PARTICULAR HAS WORKED VERY HARD TO FASHION A PARTICULAR REMEDY
8    IN THIS CASE TO MEET VERY SPECIFIC CONCERNS AND HAS KEPT
9    ONGOING VIGILANCE, AS HAS THE UNITED STATES, IN THIS REGARD TO
10   MAKE SURE THAT THIS IS AN APPROPRIATELY CONSTRUCTED REMEDY FOR
11   DEFICIENCIES WITHIN THE PRETRIAL, PRESENTENCING HOUSING
12   CONDITIONS BY THE MARSHALS SERVICE AND SOME OTHER LIMITATIONS
13   GIVEN MR. FRANCIS' VERY SERIOUS MEDICAL CONDITION, AS
14   INITIALLY DIAGNOSED.

15       MY EXPECTATION IS -- AND I HAD HOPED MR. FRANCIS
16   WOULD HAVE DIALED IN FROM HIS RESIDENCE TODAY.  IT'S MY
17   EXPECTATION THAT ANYTHING THAT AMOUNTS TO A SIGNIFICANT CHANGE
18   LIKE THIS, I WOULD PREFER TO KNOW ABOUT IT WELL BEFORE IT
19   BECOMES AN ISSUE, BECAUSE IT REQUIRES, AT LEAST POTENTIALLY, A
20   RE-EVALUATION OF ANY OF THE TERMS, AND IF IT REQUIRES A
21   RE-EVALUATION OF ANY OF THE TERMS, THEN WE WOULD NEED TO KNOW
22   WHAT IT IS THAT IS OUT THERE.

23       AND SO I WAS DISMAYED NOT JUST THAT THE COURT
24   RECEIVED THE LETTER DIRECTLY, WHICH I THINK IS OUTSIDE THE
25   COURSE OF HOW THESE ISSUES SHOULD BE RAISED, BUT I WAS

1    DISMAYED TO LEARN WHAT I CONSIDERED TO BE A MATERIAL CHANGE IN

2    HIS CARE IN THIS FASHION.  AND I DON'T, YOU KNOW, I DON'T PUT

3    THIS BLAME NECESSARILY ON MR. BURSTEIN, BUT I DO PUT THE BLAME

4    ON MR. FRANCIS.  IF HE'S HAVING A DISPUTE, HE'S HAVING

5    SOMETHING THAT IMPACTS THIS COURT'S DECISION ON THE MEDICAL

6    FURLOUGH, THEN WE NEED TO BE THE FIRST PEOPLE TO KNOW.  MAYBE

7    I WOULD BE THE FIRST PERSON AND YOU BE THE SECOND, BUT NOT GET

8    TO SOME UNDISCLOSED, YOU KNOW, NONDESCRIPT POINT DOWN THE

9    ROAD, BECAUSE IT MAY BE THAT THIS CHANGES MY OPINION ABOUT ONE

10   CONDITION OR MANY.

11          THE COURT:  SO LET ME ASK YOU THIS, MR. PLETCHER.

12   YOU DID NOT KNOW ABOUT THIS UNTIL WE SENT YOU A COPY OF THE

13   LETTER I RECEIVED.

14          MR. PLETCHER:  I DIDN'T KNOW ABOUT ANY OF THIS,

15   INCLUDING THE CHANGE OF CARE, THE BILLING DISPUTE, ANYTHING.

16          THE COURT:  OKAY.  WELL, THAT'S VERY HELPFUL TO THE

17   COURT, BECAUSE YOU HAVE BEEN PARTICULARLY DILIGENT, AS HAS MR.

18   BURSTEIN, BUT SPEAKING JUST TO YOU, SIR, YOU'VE BEEN DILIGENT,

19   AND I THOUGHT, WHY HAVEN'T I HEARD SOMETHING?

20          MR. PLETCHER:  YES.

21          THE COURT:  OKAY.  GO AHEAD.  KEEP GOING.

22          MR. PLETCHER:  ALSO, THE SECOND POINT THERE IS THAT,

23   YOU KNOW, WE'VE HEARD FROM          , BUT ALSO WE'VE HEARD

24   FROM HIS          PARTNER OR COLLEAGUE          AS WELL

25   IN THIS COURTROOM ABOUT MR. FRANCIS' CONDITION, AND WE'VE

 1  TAKEN THOSE REPRESENTATIONS THAT THEY'VE GIVEN US AT FACE

 2  VALUE, AND WE'VE SEEN THE ████ IN TERMS OF THE MEDICAL THINGS

 3  THAT BACK THOSE THINGS UP.  WE MADE DECISIONS BASED ON THOSE

 4  REPRESENTATIONS.  I HAVE NO REASON TO DOUBT THE

 5  REPRESENTATIONS AT THAT TIME.  I THINK ████████ IS PROBABLY

 6  OUT UNDER HIS FEES A LITTLE BIT IN DECLARING ANYONE TO HAVE A

 7  ████████████████████████████████████████████████████████,

 8  BUT I'M NOT SURE THAT THE STATEMENT, THEREFORE, IS

 9  MEANINGLESS.

10          AND SO I AGREE WITH THE COURT, AND I HAVE ACTUALLY

11  ASKED THAT IT BE A VERY ROBUST REPORT BY HIS NEW DOCTORS.  AND

12  I UNDERSTAND THIS IS THE DOCTORS WRITING TO EACH OTHER FOR

13  PROGRESS NOTES, BUT I WOULD LIKE TO SEE SOMETHING WITH A

14  LITTLE LESS JARGON AND A LITTLE BIT MORE PLAINLY WORDED AS TO

15  WHAT EXACTLY, NOT JUST HIS CONDITION, BECAUSE WE CAN CONSTRUCT

16  THE VARIOUS HORRIBLES AROUND ██████████████████████,

17  BUT REALLY WHAT I WANT TO KNOW IS, DOES HIS TREATMENTS STILL

18  REQUIRE THIS TYPE OF MEDICAL FURLOUGH, OR IS THIS THE KIND OF

19  TREATMENT FROM AN OUTPATIENT PERSPECTIVE THAT HE CAN GET WITH

20  DOCTOR'S VISITS TO AND FROM THE FACILITY?  MAYBE, WITH

21  COVID-19, THAT'S NOT POSSIBLE.  RIGHT?  BUT AT LEAST I WOULD

22  LIKE TO SEE SOMEONE EVALUATE THE ISSUES THAT WE CARE ABOUT.

23  RIGHT?  NOT JUST THIS GENERALIZED IDEA THAT HE'S SICK.  WE

24  KNOW THAT HE HAS BEEN SICK, BUT --

25          THE COURT:  THAT WAS YEARS AGO.

1          MR. PLETCHER:  -- IT SEEMS THAT SOME OF THIS

2     TREATMENT HAS WORKED AND WORKED, I THINK, WORLDS BETTER THAN

3     CERTAINLY I EXPECTED.  I KNOW THE COURT HAS EXPRESSED DEEP

4     RESERVATIONS ABOUT HIS HEALTH IN THE PAST.  I DON'T WANT MY

5     COMMENTS TO BE LOST ON WHAT I THINK IS A VERY IMPORTANT

6     UNDERLYING THEME, WHICH IS, IN READING THROUGH ALL OF THIS, IT

7     APPEARS HE'S DOING VERY WELL, AND FOR THAT I AM THANKFUL, AND

8     I THINK THE COURT IS THANKFUL, THAT ALL OF THIS HAS HAD THIS

9     INTENDED AND HOPED-FOR RESULT, AND I KNOW I SPEAK FOR EVERYONE

10    HERE IN THAT WE HOPE FOR THE BEST FOR MR. FRANCIS IN HIS

11    HEALTH CONDITION.

12          SO I WOULD LIKE TO SEE                          NOT

13    JUST WRITE A LETTER TO THE COURT, BUT TO POTENTIALLY MAKE

14    THEMSELVES AVAILABLE.  I'D BE INTERESTED IN WHAT HIS CURRENT

15    CONDITION IS IN A VERY REAL AND PRAGMATIC SENSE, WHAT THE

16    COURSE OF TREATMENT IS.  YOU KNOW, BEFORE, WE HAD HEARD WE

17    WERE WAITING FOR A SERIES OF                          ,

18    BECAUSE HE WAS GOING TO BE EVALUATED FOR

19    WITH AN ATTEMPT TO

20                                           ON.  IS THAT

21    STILL ON THE TABLE?  I KNOW THAT HE'S BEEN TAKEN OFF SOME OF

22    HIS MEDICATION.  IS HE BACK ON THAT MEDICATION?  WHAT

23    MEDICATION IS HE TAKING, AND WHAT ARE THE SIDE EFFECTS OF THAT

24    MEDICATION?  IS HE IN ACTIVE            IS IT BY

25                                  ?  AND SO I'M INTERESTED

1   IN ALL OF THOSE THINGS.

2         I AM NOT INTERESTED NECESSARILY IN THE FACT THAT HE'S
3   BEEN REFERRED TO ████████████████████. RIGHT? THE
4   ISSUES THAT I AM FOCUSED ON ARE THE ONES THAT ARE SO
5   SIGNIFICANT UNDERLYING HIS HEALTH THAT HIS MORTALITY IS AT
6   STAKE, AND THAT THESE ARE THE CONDITIONS THAT THE MARSHALS
7   SERVICE AND THE PRISON SYSTEM CAN'T ACCOMMODATE.

8         SO THOSE ARE JUST A FEW WORDS, AND I'D LIKE MR.
9   BURSTEIN TO PASS BACK TO MR. FRANCIS IN THE STRONGEST POSSIBLE
10  TERMS THAT THESE AREN'T DISCRETIONARY IDEAS THAT WE HEAR ABOUT
11  WILLY-NILLY. RIGHT? HIS RELEASE HERE IS A MATTER OF UTMOST
12  IMPORTANCE TO THE COURT AND TO THE UNITED STATES IN TRYING TO
13  WALK A VERY FINE LINE BETWEEN THIS DEFENDANT'S PERSONAL
14  HEALTH, THE ABILITY OF THE MARSHALS SERVICE TO TREAT HIM, THE
15  RESOURCES THAT ARE BEING EXPENDED BY PRETRIAL, AND I DON'T
16  THINK THAT WE HAVE -- IN THIS, I DON'T THINK THAT WE HAVE
17  RECEIVED THE APPROPRIATE AMOUNT OF NOTICE OF MR. FRANCIS
18  UNDERSTANDING THE IMPORTANCE OF THESE ISSUES, AND MAYBE HIS
19  TIME HAS PASSED AND HE'S FORGOTTEN THAT THESE THINGS ARE
20  SUBJECT TO HEARINGS.

21        THIS IS A PARENTHETICAL, BUT I'M ON ANNUAL LEAVE
22  TODAY. MY SON IS HOME ALONE BECAUSE MY WIFE HAD TO GO TO
23  SANTA ANA. THIS IS A DAY I TOOK OFF SPECIFICALLY FOR THAT
24  PURPOSE, AND I'M IN HERE BECAUSE OF THE IMPORTANCE OF THIS
25  HEARING. I THINK EVERYONE IN THIS COURTROOM HAS THAT SAME

1   IDEA. THERE WAS NOT A SCHEDULED HEARING, BUT BECAUSE THIS

2   ISSUE CAME UP UNEXPECTEDLY TO ALL OF US, THAT WE ALL REACT TO

3   MAKE SURE THAT THE JUDICIAL SYSTEM IN THE UNITED STATES, THAT

4   THE POWER OF THE UNITED STATES, THAT THE DEFENSE ATTORNEYS ARE

5   ALL DOING THE RIGHT THINGS FOR THE RIGHT REASONS. SO I JUST

6   ASK, I GUESS, THAT MR. BURSTEIN AND MISS JENKINS CONVEY THAT

7   VERY SIGNIFICANT MESSAGE, THAT ACTIONS HAVE CONSEQUENCES AND

8   MR. FRANCIS NEEDS TO CONTINUE TO TURN RIGHT ANGLES ON THIS

9   VERY ISSUE.

10          THE COURT: HOW MUCH TIME DO YOU THINK, MR. PLETCHER,

11  SHOULD BE ALLOCATED TO GET THAT REPORT TO THE COURT AND MAYBE

12  SET A CONTINUED STATUS IN THIS MATTER?

13          MR. PLETCHER: I MEAN, YOUR HONOR, I'M COMFORTABLE

14  THAT HIS LIVING SITUATION AND HIS SECURITY SITUATION IS

15  UNCHANGED, YOU KNOW, THAT HE'S GOT --

16          THE COURT: SO IT'S JUST THE MEDICAL.

17          MR. PLETCHER: -- HE'S GOT HIS SECURITY AND THINGS

18  LIKE THAT. I KNOW PRETRIAL HAS BEEN EXTRAORDINARILY DILIGENT

19  THROUGHOUT ALL THIS, NOT JUST CHECKING THE ANKLE MONITOR,

20  MAKING SURE THAT HOUSING WAS APPROPRIATE, AND THAT ALL THE

21  OTHER CONDITIONS ARE BEING MET. SO I'M NOT CONCERNED THAT

22  HE'S GOING ANYWHERE. IT'S THE HOLIDAY SEASON. I THINK IF WE

23  PUT IT A MONTH OUT, I KNOW THAT THERE ARE SOME THINGS

24  SCHEDULED. I THINK IT'S FAIR TO GIVE THESE NEW DOCTORS -- I

25  SAY *NEW*. I DON'T KNOW WHEN THEY WERE NEW.

1          THE COURT:  THAT'S EXACTLY RIGHT.  WE DON'T KNOW HOW

2     LONG HE'S BEEN TREATING �ញ

3          MR. PLETCHER:  EXACTLY.  SO TO GIVE THESE DOCTORS THE

4     ABILITY TO, YOU KNOW, TO CREATE THE TYPE OF RESPONSE THAT I

5     THINK THE COURT IS ASKING FOR, IF WE WERE TO PUT IT OUT 30

6     DAYS, OR SOMETHING, INTO THE FIRST OR SECOND WEEK IN JANUARY

7     FOR ANOTHER SEALED STATUS.

8          MR. BURSTEIN:  YOUR HONOR, WE ALREADY HAVE A STATUS,

9     I BELIEVE, AT THE END OF JANUARY.

10          THE COURT:  WE HAD A STATUS SET WHEN?

11          JANUARY WHAT, ALEX?

12          MR. BURSTEIN:  29TH.

13          MS. JENKINS:  THE 29TH, YOUR HONOR.

14          MR. BURSTEIN:  I WON'T BE AROUND, BUT I THINK WE CAN

15     GET YOU A REPORT AHEAD OF TIME.  BUT I THINK WE NOTED TO THE

16     COURT, AND MAYBE I FAILED TO TELL EVERYBODY, THERE ARE▮

17     ▮COMING UP ON (PAUSE) --

18          MS. JENKINS:  ON FEBRUARY 8TH OF 2021, ▮▮▮

19     ▮▮▮

20          MR. BURSTEIN:  AND HE'LL BE SEEING HIS NEW DOCTORS IN

21     THE INTERIM.  SO WE CAN DO -- WE COULD KEEP OUR CURRENT

22     HEARING AND IN THE INTERIM I WILL TRY -- I WILL GET SOME

23     REPORT, AND IF THE COURT HAS QUESTIONS, MAYBE WE CAN DO A

24     TELEPHONIC CONFERENCE WITH THE DOCTOR.

25          THE COURT:  CERTAINLY, WE WOULD ACCOMMODATE THEIR

1   SCHEDULE.  THEY'RE VERY, VERY BUSY PEOPLE OUT THERE UNDERGOING

2   A TREMENDOUS CHANGE IN THEIR PROTOCOLS BECAUSE OF COVID.  SO

3   WE WILL, OF COURSE, ACCOMMODATE THEM.

4          I'M GOING TO SUGGEST WE LEAVE THE STATUS SET IF WE

5   HAVE IT ON JANUARY 29TH.

6          IS THAT AGREEABLE, MR. PLETCHER?

7          MR. PLETCHER:  IT IS.  I'M A BIG PROPONENT OF

8   EFFICIENCY FOR THE COURT'S SCHEDULE.  I'VE LOOKED AT THE

9   CALENDAR EVERY WEEK, AND I SEE THE COURT'S CALENDAR IS GROWING

10  BY LEAPS AND BOUNDS GIVEN ALL THE STUFF THAT HAS BEEN DEFERRED

11  IN THE LAST NINE MONTHS.  SO, COGNIZANT OF THAT, I DEFER TO

12  THE COURT.  IF WE WANTED TO BASICALLY SET A DATE OR LEAVE

13  JANUARY 29TH AS THE DATE THAT THE DOCTOR'S REPORT IS DUE TO

14  THE COURT, IT WOULD BE OKAY WITH THE UNITED STATES TO PUSH OUR

15  ACTUAL HEARING INTO FEBRUARY, AFTER THESE ▮▮▮▮, BECAUSE I

16  HAVE A FEELING THAT ON JANUARY 29TH WHAT WE'RE GOING TO HEAR

17  IS WE HAVE ▮▮▮▮ ON FEBRUARY 8TH AND THEN WE'LL KNOW A LOT

18  MORE.

19         THE COURT:  OKAY.  WE CAN DO THAT.  MY CONCERN IS,

20  ONCE THEY HAVE ▮▮▮▮ ON THIS, ON THE 8TH, IT WILL BE REVIEWED.

21  THEY'LL GO TO ▮▮▮▮▮▮▮▮▮▮.  THEY'LL BE EVALUATED BY A

22  TEAM OF PEOPLE OUT THERE.  WE COULD GO TO THE END OF FEBRUARY.

23         MR. PLETCHER:  WELL, YEAH.

24         MR. BURSTEIN:  I THINK THAT'S A GOOD IDEA, YOUR

25  HONOR.

1    MR. PLETCHER: I RETRACT MY PRIOR STATEMENT. I THINK
2  WE COULD KEEP THE STATUS ON THE 29TH.

3    THE COURT: YOU KNOW, I TEND TO THINK SO. I MEAN, I
4  DON'T MEAN THIS BECAUSE OF YOU OR MISS JENKINS. I THINK THIS
5  FALLS SQUARELY WITH MR. LEONARD FRANCIS, AND I THINK MR.
6  FRANCIS NEEDS TO UNDERSTAND, WHEN YOU CHANGE SOMETHING
7  SIGNIFICANT, AND THIS WAS A SIGNIFICANT CHANGE, HE NEEDS TO
8  LET YOU KNOW IN ADVANCE SO THAT YOU CAN LET MR. PLETCHER KNOW
9  AND YOU ALL CAN COME IN HERE AND TELL THE COURT. THIS COURT
10  HAS NEVER BEFORE HAD THE TYPE OF CASE SUCH AS THIS WHERE I
11  HAVE GRANTED A MEDICAL FURLOUGH FOR THIS PERIOD OF TIME, AND
12  SO I THINK IT BEHOOVES ALL OF US TO BE VERY CAUTIOUS TO MAKE
13  SURE THAT IT'S JUSTIFIED, AND I REALLY NEED TO HEAR FROM
14  SOMEBODY AT THE ██████████████ WHAT THE SITUATION IS,
15  WHAT THE PROGNOSIS IS, BASED ON WHAT THEY KNOW, BECAUSE WE'VE
16  BEEN AT THIS FOR A LONG PERIOD OF TIME. I KNOW I COULD GO
17  BACK THROUGH MY TRIALS AND FIND OUT THE DATE THAT DOCTOR --
18  AND I ALWAYS MISPRONOUNCE HIS NAME. ██████?

19    MR. BURSTEIN: ██████

20    THE COURT: ██████ WAS HERE. HE WAS HERE IN PERSON.
21  HE ANSWERED QUESTIONS, AND HE HAD BEEN VERY ACCOMMODATING AND
22  WHAT NOT, AND WE NEED THAT LEVEL OF UNDERSTANDING AS TO WHAT
23  THIS NEW TEAM THINKS ABOUT HIS CONDITION AND WHAT NOT. AND I
24  HOPE THEY UNDERSTAND THAT HE HAS TO ACCOUNT NOT ONLY TO HIS
25  OWN FAMILY, HIMSELF, FOR HIS MEDICAL TREATMENT, BUT EXPLAIN IT

1    TO THE COURT.  I DON'T KNOW WHAT THEY KNOW ABOUT THEIR NEW

2    PATIENT.

3          MR. BURSTEIN:  YEAH.  I DON'T, EITHER.  WHY DON'T WE

4    JUST, IF EVERYBODY IS AGREEABLE, AND THE COURT, MOST

5    IMPORTANTLY IF THE COURT IS AGREEABLE, IF WE LEAVE THE STATUS

6    ON AS A PLACEHOLDER RIGHT NOW.  LET US TRY AND GET ON THE

7    PHONE, SEE IF WE CAN JUST SHORT-CIRCUIT SOME OF THIS, SEE IF

8    WE CAN GET THE DOCTORS ON THE PHONE IN THE NEARER TERM, AND

9    THEN THE DOCTORS CAN ANSWER THE PRESSING QUESTIONS OF THE

10   MOMENT, OR A DOCTOR CAN ANSWER, AND THEN WHAT I EXPECT IS WHAT

11   MR. PLETCHER AND THE COURT SAID, THAT THEY'RE GOING TO TELL US

12   THAT THIS IS THE CURRENT STATUS, BUT WE'LL KNOW MORE ABOUT

13   THIS AFTER THESE        AND THEN WE CAN HAVE -- YOU KNOW,

14   THEN, INSTEAD OF DOING IT PIECEMEAL, PERHAPS WE CAN DO A

15   TELEPHONIC CONFERENCE WITH THE DOCTORS AS SOON AS POSSIBLE,

16   AND I'LL GET WORKING ON IT AS SOON AS I LEAVE, AND THEN WE CAN

17   SET THE NEXT HEARING AFTER THAT.

18          THE COURT:  THESE DOCTORS NEED TO UNDERSTAND THAT

19   THEIR PATIENT IS ON A MEDICAL FURLOUGH FROM THE FEDERAL

20   DISTRICT COURT IN THIS COUNTY.

21          MR. BURSTEIN:  I WILL EXPLAIN THAT TO THE DOCTORS.

22          THE COURT:  AND THAT THEY'RE GOING TO HAVE TO BE

23   WILLING AND ABLE TO ACCOUNT TO THE COURT FOR THE FACT THAT

24   HE'S NOT SITTING IN CUSTODY.

25          MR. BURSTEIN:  RIGHT.  I WILL EXPLAIN THAT TO THEM.

1    THE COURT: OKAY. THAT SHOULD GET THEIR ATTENTION A
2    LITTLE BIT. I CAN GUARANTEE YOU THEY'RE NOT GOING TO BE HAPPY
3    TO HAVE TO HAVE SOMEBODY OTHER THAN A FAMILY MEMBER ON THIS,
4    BUT IT'S JUST THE CIRCUMSTANCE THEY HAVE. I DON'T THINK WE
5    WERE OVERLY BURDENSOME TO HIS FIRST MEDICAL TEAM, AND I DON'T
6    THINK WE WILL BE TO THIS TEAM, BUT WE HAVE TO KNOW THE STATE
7    OF AFFAIRS NOW. YOU UNDERSTAND THAT, OF COURSE.

8    MR. BURSTEIN: RIGHT. I'M GOING TO CALL THE NUMBER
9    THAT THE COURT HAS AS SOON AS WE GET OUT OF COURT,      --
10   WELL, I'M NOT GOING TO READ IT INTO THE RECORD, BUT THAT
11   NUMBER, AND I'M GOING TO TRY AND GET          ON THE PHONE
12   AND I'LL FIND OUT IF SHE'S AVAILABLE FOR A CALL INTO THE
13   COURT, AND THEN IF SHE IS, I'LL TRY --

14   THE COURT: DO YOU HAVE PERMISSION TO EVEN TALK TO
15   HER ABOUT MR. FRANCIS' MEDICAL CONDITION?

16   MR. BURSTEIN: WELL, I THINK HE'LL GIVE PERMISSION
17   FOR ME TO SPEAK ABOUT IT.

18   THE COURT: OKAY.

19   MR. BURSTEIN: AND I'LL TRY TO GET A TIME ON AN OFF
20   DAY, AND THEN I'LL EMAIL EVERYBODY, AND THEN I'LL SEE IF WE
21   CAN GET THIS DONE IN THE SOONER TERM, RATHER THAN THE LONGER
22   TERM, AND THAT SHOULD ALLAY SOME OF THE CONCERNS AND PUT US
23   BACK ON THE RIGHT TRACK GOING FORWARD. AND THEN WE CAN
24   ACTUALLY, INSTEAD OF JUST KIND OF PICKING DATES AT RANDOM,
25   THEN WE CAN KNOW EXACTLY WHAT THE DOCTORS SUGGEST.

1          THE COURT:  MISS JENKINS ALWAYS COMES TO EVERY

2    HEARING I HAVE ON THE CASE, SO YOU KNOW.  MR. PLETCHER AND I

3    AND THE TEAM OF OTHERS ARE STILL LITIGATING AND THEY CARE

4    ABOUT THIS, AND WE NEED TO BE ON TOP OF IT, AND WHEN I SAY

5    SOMETHING, I WANT IT TO BE ACCURATE AND RELIABLE.

6          MR. BURSTEIN:  WE --

7          THE COURT:  SO -- GO AHEAD.  NO, I APPRECIATE THAT.

8          MR. BURSTEIN:  WE UNDERSTAND, YOUR HONOR.

9          THE COURT:  OKAY.

10         MR. BURSTEIN:  SORRY.  THIS IS UNFORTUNATE THAT IT

11   CAME UP IN THIS WAY.  OBVIOUSLY --

12         THE COURT:  WHEN DID YOU BECOME AWARE OF THIS?  MR.

13   PLETCHER FOUND OUT ABOUT IT WHEN I SENT HIM THE LETTER.  YOU

14   KNEW ABOUT IT BEFORE THE LETTER, I HOPE.

15         MR. BURSTEIN:  I KNEW -- WELL, IT DEPENDS ON WHAT

16   WE'RE TALKING ABOUT.  I MEAN, I TOLD THE COURT ABOUT THE CALLS

17   I RECEIVED AND WE RECEIVED FROM                    --

18         THE COURT:  RIGHT.

19         MR. BURSTEIN:  -- AND SO WE KNEW WE HAD AN UPCOMING

20   STATUS.  WE KNEW THAT, YOU KNOW, IN COORDINATING WITH

21   PRETRIAL,                          .  WE WOULD, OBVIOUSLY, HAVE A

22   REPORT TO THE COURT ON THE 29TH, AND THAT'S WHAT WE WERE

23   PLANNING, TO GO FORWARD AS WE WERE.  I DIDN'T REALLY KNOW

24   ABOUT THESE                              UNTIL MAYBE A FEW DAYS

25   AGO, OR A WEEK.  I DON'T REMEMBER EXACTLY WHEN I KNEW, BUT I

1  DID KNOW THAT THERE ▮▮▮▮▮▮▮▮. THAT WAS CONCERNING. BUT
2  UNTIL I ACTUALLY HAD SOMETHING DEFINITIVE TO TELL THE COURT, I
3  DIDN'T WANT TO RAISE A WHOLE BUNCH OF ALARMS.

4       MR. PLETCHER: LET ME JUST JUMP IN BEFORE WE END
5  HERE. I KNOW MR. BURSTEIN IS GOING TO ACT WITH ALL DUE
6  DISPATCH AS HUMANLY POSSIBLE. I WOULD REALLY LIKE TO SEE A
7  WRITTEN PRODUCT FROM THE DOCTORS.

8       THE COURT: A WRITTEN PRODUCT?

9       MR. PLETCHER: A WRITTEN PRODUCT FROM THE DOCTORS. I
10 MEAN, IT'S ONE THING TO HAVE --

11      THE COURT: IT WOULD BE VERY, VERY HELPFUL TO THE
12 COURT ALSO, BECAUSE THESE MATTERS NEED TO BE CONSIDERED
13 CAREFULLY.

14      MR. PLETCHER: YEAH. YES, THAT'S EXACTLY RIGHT,
15 JUDGE. IT'S ONE THING TO HAVE THE DOCTOR AVAILABLE TO ANSWER
16 QUESTIONS. I FEEL CONFIDENT IN OUR FLEXIBILITY TO ASK
17 QUESTIONS, BUT WITH A WRITTEN PRODUCT, IT WILL SHORT-CIRCUIT
18 THAT INTERROGATION.

19      MR. BURSTEIN: I'LL DO MY BEST. I MEAN, I CAN'T MAKE
20 THE DOCTORS.

21      THE COURT: NO, I UNDERSTAND.

22      MR. BURSTEIN: THESE ARE ▮▮▮▮▮▮▮. IT'S NOT LIKE
23 ▮▮▮▮▮ WHEN HE WAS KIND OF DIRECTLY HIRED BY MR. FRANCIS.
24 SO I'LL DO MY BEST TO EITHER GET A WRITTEN PRODUCT, BUT
25 FAILING THAT, I'LL GET THEM ON THE PHONE. I'LL DO EVERYTHING

1   I CAN.

2         THE COURT:  TELL THEM THEY MAY BE SUBPOENAED BY THE

3   GOVERNMENT TO COME AND TESTIFY.  THAT SHOULD MOTIVATE THEM TO

4   WRITE THESE.

5         MR. BURSTEIN:  WE, OBVIOUSLY, HAVE NO OBJECTION TO

6   THE GOVERNMENT IF MR. PLETCHER WANTS TO TALK TO THEM OR IF THE

7   COURT WANTS TO.  THIS SHOULD BE AN OPEN BOOK.  THIS IS NOT AN

8   ADVERSARIAL ISSUE.

9         THE COURT:  NO, IT'S NOT.  WE'RE ALL TRYING TO DO

10   WHAT'S BEST FOR MR. FRANCIS' HEALTH, BUT THERE ARE EIGHT OR

11   NINE OTHER DEFENDANTS WHO ARE WATCHING THIS WHO WANT

12   INFORMATION, AND WE JUST HAVE TO BE CAUTIOUS, AND WE WANT IT

13   TO BE A WELL-FOUNDED MEDICAL FURLOUGH.

14         MR. BURSTEIN:  YES, YOUR HONOR.

15         THE COURT:  SO I APPRECIATE EVERYBODY COMING HERE ON

16   SHORT NOTICE.  THANK YOU.  I HAD FAITH THAT HE WAS STILL IN

17   THE COUNTY BECAUSE YOU HAD BEEN IN TOUCH AND I WOULD HAVE

18   HEARD, BUT I WAS SURPRISED.  SO I APPRECIATE THE INFO.

19         WE'LL LEAVE THE STATUS SET FOR THE 29TH OF JANUARY,

20   2021.

21         MR. BURSTEIN:  THANK YOU, YOUR HONOR.

22         MR. PLETCHER:  THANK YOU, YOUR HONOR.

23         THE COURT:  OKAY.  THANK YOU.

24         MS. JENKINS:  THANK YOU, YOUR HONOR.

25         (PROCEEDINGS ADJOURNED AT 11:40 A.M.)

1   ----------------------------------------------------------------

2                       (END OF TRANSCRIPT)

3

4             I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

5   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

6   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

7

8           S/FRANK J. RANGUS

9           FRANK J. RANGUS, OCR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**Calendar of the United States District Court**
**Southern District of California**
**San Diego**
**Wednesday, December 2, 2020**
**Courtroom 4D**

| Present the Honorable: Janis L. Sammartino | | District Judge |
|---|---|---|
| Deputy Clerk: A. Ramos | Court Reporter/ECR: F RANGUS | Interpreter: |

## *** SEALED PROCEEDINGS ***
### 11:00 AM

**3.**  13CR3781-JLS   USA   V.   **LEONARD GLENN FRANCIS**
13CR3782-JLS
13CR4287-JLS

　　　　　　　　　　　　　　　　**RETD  DEVIN BURSTEIN**
　　　　　　　　　　　　　　　　　　　**KATIE JENKINS**
　　　　　　　　　　　　　　　　　　　JEREMY WARREN

　　　　　　　　　　　　　　　　**AUSA  MARK PLETCHER**

　　　　　　　　　　　　　　　　**PSO  ALDO LOPEZ**
　　　　　　　　　　　　　　　　　　　KIMURA HAZARD
　　　　　　　　　　　　　　　　　　　VANESSA ANDREWS
　　　　　　　　　　　　　　　　　　　**MARISA ZVERS**

　　　　　　　　　　　　　　　　**USM  DENNIS COUGHLIN**
　　　　　　　　　　　　　　　　　　　ELUID SOTO

**STATUS HEARING**

Notes:

*STATUS HEARING 1/29/2021 AT 11:00 AM*

*MEDICAL FURLOUGH EXTENDED TO 2/1/2021*

*SENTENCE W/PSR 3/26, 2021 AT 9:00 AM*

DEFENSE COUNSEL TO PROVIDE WRITTEN DOCUMENTATION ON MR. FRANCIS CURRENT MEDICAL CONDITION AND TREATMENTS.

MATTER CONTINUED AS CURRENTLY SET FOR 1/29/201 AT 11:00 AM

0:45

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )    13-CR-3781-JLS
         PLAINTIFF,            )    13-CR-3782-JLS
                               )    13-CR-4287-JLS
VS.                            )
                               )    SAN DIEGO, CA
LEONARD GLENN FRANCIS, *ET AL.*, )   DECEMBER 17, 2020
         DEFENDANTS.           )    2:15 P.M.

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:   OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:    WARREN & BURSTEIN
                      BY:  DEVIN J. BURSTEIN, ESQ.
                           KATIE JENKINS, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA  92101

PRETRIAL SERVICES:    MARISA ZVERS

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA  92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                    PAGE

NEXT HEARING DATE                22

1          THE DEPUTY CLERK:  CALLING NUMBER THREE ON THE

2     CALENDAR, 13-CR-3781, 13-CR-3782, 13-CR-4287, UNITED STATES

3     VS. LEONARD GLENN FRANCIS, FOR STATUS.

4          COUNSEL, PLEASE STATE YOUR APPEARANCES, BEGINNING

5     WITH DEFENSE.

6          MR. BURSTEIN:  GOOD AFTERNOON, YOUR HONOR.  DEVIN

7     BURSTEIN AND KATIE JENKINS ON BEHALF OF MR. FRANCIS.  AND,

8     YOUR HONOR, MR. FRANCIS IS ALSO PRESENT ON THE PHONE.

9          THE COURT:  OKAY.  THANK YOU, MR. BURSTEIN, MISS

10    JENKINS.

11          AND THANK YOU, MR. LEONARD FRANCIS, FOR JOINING US

12    THIS AFTERNOON.

13          ON BEHALF OF THE GOVERNMENT.

14          MR. PLETCHER:  GOOD AFTERNOON, JUDGE.  MARK PLETCHER

15    FOR THE UNITED STATES.

16          THE COURT:  THANK YOU.

17          AND WHO ELSE DO I HAVE WITH REGARD TO THE MATTER

18    PENDING?

19          MS. ZVERS:  YES, YOU HONOR.  MARISA ZVERS, U. S.

20    PRETRIAL SERVICES.

21          THE DEPUTY MARSHAL:  YES, YOUR HONOR.  DENNIS

22    COUGHLIN, U. S. MARSHAL.

23          THE COURT:  THANK YOU.

24          WE'RE HERE BECAUSE OF THE PETITION, THE REPORT THAT

25    WAS FILED BY MISS ZVERS IN THIS MATTER, AND THE COURT HAD SOME

1    CONCERNS, AND I'M HAPPY TO HEAR FROM BOTH SIDES.  I'M HAPPY TO
2    HEAR FROM MISS ZVERS ON THIS MATTER.  I'LL TELL YOU THE
3    COURT'S THOUGHTS AFTER I'VE HEARD FROM EVERYBODY.

4         MR. BURSTEIN:  OKAY.  THIS IS DEVIN BURSTEIN, YOUR
5    HONOR.  I DIDN'T KNOW IF THE COURT WANTED TO START WITH US OR
6    HOWEVER THE COURT (PAUSE).

7         THE COURT:  WELL, YOU KNOW, MAYBE I CAN MAKE IT
8    SIMPLE FOR EVERYBODY.  SECURITY MEANS SECURITY.  IT'S A
9    24-HOUR/SEVEN-A-DAY-A-WEEK SITUATION.  IT DOESN'T MEAN THAT IT
10   CONFORMS ONLY TO SOMEBODY'S SCHEDULE, AND THAT WAS THE COURT'S
11   CONCERN IN SETTING THIS MATTER.  IF SOMEBODY DESERVES AND
12   NEEDS BREAKS, WHICH ABSOLUTELY IS APPROPRIATE, THEN THERE
13   SHOULD BE A FILL-IN PERSON.  THAT'S THE COURT'S ONLY POINT.  I
14   CAN'T IMAGINE THIS -- I WAS SO SURPRISED TO LEARN THAT THIS
15   WAS BEING HANDLED IN THE WAY IT WAS.  SO THAT WAS THE ONLY
16   THING.  IT'S NOT A SUPER-BIG DEAL, BUT IT NEEDS TO BE TAKEN
17   CARE OF.  I WOULD HOPE THAT THE GOVERNMENT, TO SOME EXTENT,
18   WILL AGREE WITH THE COURT, BUT MAYBE NOT.  IT DOESN'T MATTER.
19   THAT'S THE COURT'S VIEW, MR. BURSTEIN.

20        MR. BURSTEIN:  WE AGREE, YOUR HONOR.  SO -- THIS IS
21   DEVIN BURSTEIN SPEAKING.  SO I CAN TELL THE COURT A FEW
22   DIFFERENT THINGS.

23        FIRST OF ALL, I KNOW THAT MR. FRANCIS WANTED TO
24   ADDRESS YOU, YOUR HONOR, PERSONALLY, SO I'D LIKE TO GIVE HIM A
25   CHANCE TO DO THAT.  AND THEN, AFTER THAT, MISS JENKINS WAS OUT

1   AT THE RESIDENCE YESTERDAY, AND SHE CAN GIVE YOU A REPORT ON

2   HER CONVERSATION WITH SECURITY, AND THEN I ASSUME MISS ZVERS

3   WILL ALSO WANT TO ADDRESS THE COURT.  BUT IF IT PLEASE THE

4   COURT, WE'D PROCEED IN THAT WAY, AND LET MR. FRANCIS ADDRESS

5   THE COURT FIRST.

6           THE COURT:  CERTAINLY.

7           MR. FRANCIS, THIS IS JUDGE SAMMARTINO.  IT'S BEEN

8   QUITE SOME TIME SINCE WE'VE SEEN EACH OTHER, SIR.

9           MR. FRANCIS:  YES.  AND GOOD AFTERNOON, YOUR HONOR.

10          I'M SO SORRY FOR WHAT HAS HAPPENED, AND I JUST WANT

11  TO LET YOU KNOW THAT THIS WILL NEVER HAPPEN AGAIN.  I'VE

12  ALWAYS BEEN CLEAR WITH MY PRETRIAL ARRANGEMENTS, AND I'VE

13  ALWAYS BEEN HERE, AND I JUST WANT TO APOLOGIZE.  I'M SO SORRY,

14  MA'AM.

15          THE COURT:  OKAY.  NO, I APPRECIATE THAT, MR. LEONARD

16  FRANCIS.  I DON'T THINK THERE'S ANYTHING, YOU KNOW, UNTOWARD

17  THAT WAS BEING PLOTTED HERE, OR ANYTHING.

18          LET ME ASK MR. BURSTEIN THIS.  I ALSO HAVE A LETTER

19  THAT HAS COME TO THE COURT SOMEHOW.  I'M NOT REALLY SURE HOW.

20  BUT I GOT A DECEMBER 14TH, 2020, LETTER FROM            ABOUT

21  MR. FRANCIS, AND I DON'T KNOW IF YOU WANT TO TALK ABOUT THAT

22  AT ALL.  IT'S IN THE FILE.  IT HAS COME TO THE COURT.

23          MR. BURSTEIN:  OH, GREAT, YOUR HONOR.  YES.  AND

24  THANK YOU TO ALEX FOR DOING THAT.

25          BECAUSE OF, YOU KNOW, THE LATEST SHUTDOWN, WE DIDN'T

1    FILE IT IN THE TYPICAL FASHION. WE JUST WANTED TO GET IT TO

2    THE COURT AS SOON AS WE GOT IT. GIVEN THE COURT'S CONCERNS

3    FROM OUR PREVIOUS STATUS HEARING, WE JUST THOUGHT THE SOONER,

4    THE BETTER. YEAH, WE WOULD -- I WOULD LOVE TO ADDRESS THAT

5    WITH THE COURT AT THE CONCLUSION OF, I GUESS, THIS PORTION, OR

6    I COULD JUST JUMP RIGHT INTO IT NOW. WHATEVER (PAUSE).

7    THE COURT: WELL, LET'S DEAL WITH ONE THING AT A

8    TIME. SO, IS THERE ANYTHING ELSE YOU WANT TO SAY? I

9    UNDERSTAND WHAT MR. FRANCIS HAS TO SAY THIS MORNING, OR THIS

10    AFTERNOON.

11    MR. BURSTEIN: JUST MISS JENKINS -- MR. PLETCHER

12    SUGGESTED THAT WE HAVE -- YOU KNOW, THAT ONE OF US, YOU KNOW,

13    HAVE PERSONALLY SPOKEN TO SECURITY TO MAKE EVERYTHING A

14    HUNDRED-PERCENT CLEAR. WE THOUGHT THAT WAS A GOOD SUGGESTION

15    FROM THE GOVERNMENT. WE ACTED ON THAT JUST YESTERDAY. MISS

16    JENKINS SPOKE TO SECURITY AND IS PREPARED TO GIVE THE COURT A

17    REPORT ON THAT CONVERSATION.

18    THE COURT: OKAY.

19    GO AHEAD, MISS JENKINS.

20    MS. JENKINS: THANK YOU, YOUR HONOR.

21    I WENT UP TO MR. FRANCIS' RESIDENCE YESTERDAY AND HAD

22    A MEETING WITH HIS SECURITY GUARD THERE, WHO IS THE SAME

23    SECURITY GUARD WHO SPOKE WITH MARISA LAST WEEK. HE CONVEYED

24    TO ME THAT HE WORKS FULL-TIME FOR MR. FRANCIS. HE WORKS EVERY

25    DAY. HE'S THERE SEVEN A.M. TO SEVEN P.M., AND ANOTHER

1  SECURITY GUARD TAKES OVER FOR A NIGHT SHIFT, SEVEN P.M. TO

2  SEVEN A.M.

3  HE ALSO CONFIRMED WITH ME THAT HE IS MR. FRANCIS'

4  ONLY MODE OF TRANSPORTATION. IN OTHER WORDS, HE TAKES MR.

5  FRANCIS TO AND FROM HIS MEDICAL APPOINTMENTS AND ANYTHING ELSE

6  THAT IS AUTHORIZED BY PRETRIAL SERVICES. OTHER THAN HIM, MR.

7  FRANCIS HAS NO ABILITY TO BE TRANSPORTED AROUND IN THAT

8  RESPECT.

9  ON THE DAY IN QUESTION, THE SECURITY OFFICER DID GO

10 OUT FOR A BRIEF LUNCH BREAK, AND WE ADMONISHED HIM

11 APPROPRIATELY TO TELL HIM THAT WAS NOT APPROPRIATE AND THAT

12 THERE SHOULD BE SOMEONE STANDING IN IF HE DOES, IN FACT, HAVE

13 TO LEAVE THE POST.

14 THE COURT: WELL, I DON'T KNOW WHO THE SECURITY

15 PERSON IS, BUT IT WOULD SEEM TO ME THAT IN A 12-HOUR SHIFT,

16 FROM SEVEN TO SEVEN, THIS INDIVIDUAL NEEDS A BREAK. SO IT'S

17 NOT A MATTER OF TAKING A BREAK. IT'S JUST A MATTER OF

18 SOMEBODY TO FILL IN. I MEAN, IT JUST SEEMS NOT APPROPRIATE TO

19 EXPECT SOMEBODY TO GO WITHOUT EITHER A MEAL BREAK OR A REST

20 BREAK AT SOME POINT, SO.

21 MR. BURSTEIN: WE UNDERSTAND, YOUR HONOR, AND THE

22 GUARD IS STATIONED AT THE RESIDENCE, SO HE CAN USE THE

23 FACILITIES IN THE RESIDENCE, AND WE WILL MAKE SURE THAT IF HE

24 IS EVER LEAVING THE RESIDENCE AGAIN, THAT HE HAS COVERAGE.

25 SO, IN OTHER WORDS, AS MR. FRANCIS SAID, THIS WON'T HAPPEN

1  AGAIN.

2  THE COURT: OKAY.

3  MR. -- WELL, MR. PLETCHER OR MISS ZVERS-- MR.

4  PLETCHER, WHAT'S YOUR THOUGHT, SIR? THEN I'M GOING TO HEAR

5  FROM MISS ZVERS.

6  MR. PLETCHER: HEY, JUDGE. THANK YOU.

7  I'D ALSO LIKE TO HEAR FROM MISS ZVERS AS WELL.

8  MY THOUGHTS AND CONCERNS COINCIDE DIRECTLY WITH THE

9  COURT'S. YOU KNOW, I WAS VERY, VERY SURPRISED, ESPECIALLY IN

10  THE CONTEXT OF OUR LAST HEARING, TO RECEIVE THIS REPORT. I

11  ECHO THE COURT'S CONCERNS THAT SECURITY MEANS SECURITY, AND,

12  FRANKLY, I'M A LITTLE CONCERNED ABOUT THE EXPLANATION. YOU

13  KNOW, BASED ON MISS ZVERS' REPORT, SHE ARRIVED AT THE

14  RESIDENCE AT 11 A.M. AND WASN'T RECONTACTED BY, YOU KNOW,

15  SECURITY PERSONNEL UNTIL 1:45. THAT'S SOMETHING MORE THAN A

16  LUNCH BREAK.

17  AND I DON'T MEAN TO, I DON'T MEAN TO RAISE ADDITIONAL

18  CONCERNS. I BELIEVE THAT MR. BURSTEIN AND MISS JENKINS WILL

19  ENSURE THAT THIS DOES NOT HAPPEN AGAIN BECAUSE OF ALL THE

20  REASONS THAT WE DISCUSSED AT THE LAST HEARING, NAMELY, HOW

21  UNIQUE A SITUATION THIS IS, HOW IMPORTANT IT IS FOR MR.

22  FRANCIS AND EVERYONE INVOLVED TO TURN VERY TIGHT CORNERS WITH

23  RESPECT TO THE COURT'S ORDER, THE COURT'S ORDER TO THE LETTER.

24  THERE'S NOTHING ABOUT THE COURT'S ORDER THAT IS DISCRETIONARY.

25  24 HOURS A DAY, SEVEN DAYS A WEEK, MEANS WHAT IT SAYS, AND

1   ANYTHING SHORT OF THAT IS NOT IN COMPLIANCE.

2            AND I KNOW HOW TO, I KNOW HOW TO ENSURE
3   24-HOURS-A-DAY/SEVEN-DAY-A-WEEK SECURITY.  I'M POSITIVE THAT
4   THE BUREAU OF PRISONS PROVIDES THAT.  AND SO, YOU KNOW, IF
5   ANYBODY IS, YOU KNOW, CONCERNED OR ANYBODY'S CONFUSED ABOUT
6   THE GOVERNMENT'S POSITION IN THIS, THE GOVERNMENT'S POSITION
7   IS, YOU KNOW, THAT THIS IS TWO INSTANCES IN VERY QUICK
8   SUCCESSION WHERE WE EXPECT BETTER, WE EXPECT MORE, MORE FULL,
9   AND MORE FULL TRANSPARENT COMPLIANCE WITH THE COURT'S ORDER.
10  THIS IS NOT A CIRCUMSTANCE WHERE MR. FRANCIS GETS TO DECIDE IF
11  OR WHEN SOMEBODY NEEDS TO LEARN OF A MATERIAL CHANGE IN WHAT'S
12  GOING ON.

13            THANK YOU.

14            THE COURT:  OKAY.

15            MISS ZVERS, GO AHEAD AND TELL THE COURT ANYTHING
16  YOU'D LIKE TO TELL ME, PLEASE.

17            MS. ZVERS:  YES, YOUR HONOR.  THANK YOU.

18            SO I DID MENTION AT THE LAST HEARING THAT WHEN I
19  WOULD GO OUT TO THE RESIDENCE AGAIN, I WOULD VERIFY THAT
20  SECURITY WAS IN PLACE.  SO I WAS A LITTLE SURPRISED WHEN I
21  ARRIVED AT THE HOUSE AND SECURITY WAS NOT THERE.  YOU KNOW,
22  MR. FRANCIS HAS BEEN VERY COMPLIANT.  HE OFFERED TO ME THE
23  EXPLANATION AND HAD THE SECURITY GUARD CALL ME WHEN HE
24  RETURNED TO THE RESIDENCE.

25            I THINK WE JUST WANTED TO BRING IT TO THE COURT'S

1    ATTENTION BECAUSE WE WERE A LITTLE UNCLEAR IF THE COURT'S
2    ORDER WAS SECURITY 24/7. SO THAT WAS KIND OF THE ISSUE THAT
3    WE HAD WITH WHAT WAS GOING ON. CERTAINLY, WE'LL CONTINUE TO
4    DO HOME VISITS, AND HOPEFULLY WE WON'T HAVE ANY MORE ISSUES
5    GOING FORWARD WITH SECURITY NOT BEING AT THE RESIDENCE, AND IF
6    WE DO, WE'LL PROMPTLY NOTIFY THE COURT.

7              THE COURT: I DON'T BELIEVE MR. FRANCIS OR HIS
8    COUNSEL OR THE GOVERNMENT HAD ANY DOUBT BUT THAT THIS COURT'S
9    ORDER WAS A 24-HOUR-A-DAY/SEVEN-DAY-A-WEEK SECURITY DETAIL. I
10   DON'T HAVE A HIGH LEVEL OF COMFORT THAT ONE PERSON CAN DO A
11   12-HOUR SHIFT WITHOUT A BREAK, WITHOUT A MEANINGFUL BREAK, AND
12   WHAT MISS ZVERS EXPERIENCED ON THE DATE IN QUESTION WAS A LOT
13   MORE, AS MR. PLETCHER HAS PUT IT, THAN A LUNCH BREAK. SO I
14   NEVER THOUGHT THAT I NEEDED TO PUT IN PLACE AN ORDER WHICH
15   SAID THERE WILL BE A PERSON WITH A BACKUP PERSON AND STRUCTURE
16   IT MYSELF, BUT I WILL IF I HAVE TO. I'D LIKE TO REMIND
17   EVERYBODY THIS IS AN EXTRAORDINARY SITUATION THAT WE'RE
18   DEALING WITH HERE.

19             MR. FRANCIS, WE ALL WISH YOU GOOD HEALTH AND A LONG
20   LIFE. SO IT HAS NOTHING TO DO WITH THAT. BUT I'VE GRANTED
21   THIS MEDICAL FURLOUGH TO HELP YOU ACHIEVE THAT, SIR, AND TO
22   NOT PUT YOU IN CUSTODY --

23             MR. FRANCIS: YES.

24             THE COURT: -- WHERE YOU MIGHT NOT GET THE TREATMENT
25   THAT REALLY YOU NEED TO STAY ALIVE, AND I CAN'T HELP BUT TELL

 1   YOU THERE WAS -- THE MOMENT I SAW THIS -- I TEND TO AGREE WITH

 2   MR. PLETCHER -- THIS IS THE SECOND SITUATION WHERE I THINK

 3   PEOPLE SHOULD HAVE BEEN A LITTLE BIT MORE FORTHCOMING ABOUT

 4   IT, AND THAT IS THE REASON WHY I SET THIS TODAY AND DID NOT

 5   WAIT UNTIL WE WERE GOING TO HAVE FURTHER DISCUSSIONS ON

 6   JANUARY 29TH.

 7          MR. FRANCIS:  YES, YOUR HONOR.

 8          THE COURT:  THIS IS A VERY SIGNIFICANT ISSUE, AND

 9   THERE'S A LOT OF INTEREST IN THIS MATTER, AND I HAVE ASSURED

10   PEOPLE IN THE OTHER CASE THAT'S PENDING THAT THIS IS A

11   LEGITIMATE MEDICAL FURLOUGH THAT'S BEEN GRANTED HERE AND THAT

12   ALL APPROPRIATE STEPS HAVE BEEN TAKEN, AND WHEN I SAW THIS, I

13   REALIZED THAT THEY WERE NOT BEING TAKEN, OR IF THEY WERE AT

14   SOME POINT IN TIME, THEY HAD BECOME LAX, FOR WHATEVER REASON.

15   AND I'M VERY CONCERNED, AND I THINK WHAT WOULD BE APPROPRIATE

16   WOULD BE TO HAVE -- IS THIS BEING CONTRACTED THROUGH A LOCAL

17   SECURITY COMPANY?  HOW IS THIS BEING HANDLED?  I HAD HOPED

18   THAT I WOULDN'T HAVE TO GET INTO THESE DETAILS, BUT, SADLY, I

19   THINK I DO.

20          MR. BURSTEIN:  MISS JENKINS WAS GOING TO ADDRESS

21   THAT, YOUR HONOR.  THIS IS DEVIN BURSTEIN.

22          THE COURT:  THANK YOU.

23          MS. JENKINS:  YES, YOUR HONOR.

24          THE SECURITY GUARDS ARE PRIVATE SECURITY GUARDS.

25   THEY'RE NOT CONTRACTED THROUGH A SECURITY COMPANY.  THEY ARE

1    PRIVATE SECURITY GUARDS WITH SECURITY LICENSES THROUGH THE

2    STATE OF CALIFORNIA.

3         THE COURT:  OKAY.  THEN I'M GOING TO SUGGEST YOU NEED

4    A THIRD PERSON TO BE A RELIEF PERSON.

5         MR. BURSTEIN:  WE WILL DO THAT, YOUR HONOR.  WE

6    WILL -- WELL, I MEAN, MR. FRANCIS -- WE'LL ALL WORK WITH MR.

7    FRANCIS TO GET A THIRD PERSON ON LINE AND GET THE CONTACT

8    INFORMATION, AS WE HAVE IN THE PAST, OVER TO PRETRIAL SERVICES

9    AND THE GOVERNMENT.

10        THE COURT:  I MEAN, I'M OPEN FROM PRETRIAL, FROM THE

11   GOVERNMENT, TO HEARING OTHER SUGGESTIONS, BUT I CAN'T THINK OF

12   ANY OTHER WAY OF DOING THIS.

13        MR. BURSTEIN:  WE WILL MAKE SURE THAT THERE'S A THIRD

14   PERSON AVAILABLE FOR BACKUP.  WE'LL GET TO WORK ON THAT AS

15   SOON AS THIS CALL ENDS.

16        THE COURT:  WELL, LET ME SAY THIS.  THE NEXT TIME

17   THERE'S A LAPSE IN COVERAGE, THE COURT MAY NOT BE AS

18   UNDERSTANDING OF IT, AND I'M NOT HAPPY ABOUT THIS AT ALL,

19   BECAUSE I THINK EVERYBODY WHO'S ON THIS CALL, INCLUDING MR.

20   FRANCIS, KNOWS THAT THIS WAS NOT WHAT WAS INTENDED, EVER.

21        MR. BURSTEIN:  YES, YOUR HONOR.

22        THE COURT:  MR. PLETCHER OR PRETRIAL, DOES ANYBODY

23   HAVE ANY OTHER SUGGESTIONS OTHER THAN SEEING THE STATEMENT AS

24   TO, YOU KNOW, A THIRD PERSON BEING RETAINED TO BE THE BACKUP

25   PERSON, THE FILL-IN PERSON?  THAT'S THE ONLY THING I CAN COME

1    UP WITH, AND WE CAN SEE THE SCHEDULE.  I DON'T KNOW WHAT ELSE

2    TO DO.  MR. PLETCHER OR MISS ZVERS?

3              MS. ZVERS:  YES, YOUR HONOR.  MARISA ZVERS SPEAKING.

4         WE'LL CONTINUE TO DO OUR UNANNOUNCED HOME VISITS.

5    PERHAPS WE COULD INCREASE THE FREQUENCY IN WHICH WE DO THOSE

6    JUST TO VERIFY THAT SECURITY IS ALWAYS IN PLACE.  THAT WOULD

7    BE MY SUGGESTION.

8              THE COURT:  OKAY.  I THINK THAT'S A GOOD ONE, AND I

9    LIKE THAT, AND I WOULD URGE THAT TO OCCUR.  I'LL LET YOU

10   DETERMINE THE FREQUENCY.  THEY WILL BE UNANNOUNCED, AND YOU

11   WILL NOTIFY THE COURT IMMEDIATELY OF ANYTHING.

12             MR. PLETCHER, ANYTHING ELSE YOU WOULD LIKE TO

13   SUGGEST, SIR?

14             MR. PLETCHER:  JUDGE, THANK YOU.  THIS IS MARK

15   PLETCHER.

16             I WANT TO JUST POINT OUT EVERYONE KNOWS THAT THIS IS

17   ALSO A CONDITION, BUT, YOU KNOW, MR. FRANCIS HAS AN ANKLE

18   BRACELET ON.  HIS ANKLE BRACELET IS BEING MONITORED BY

19   PRETRIAL.  SO THERE IS THAT REDUNDANCY ALREADY BUILT INTO THE

20   SYSTEM, AND I THINK THE COURT WAS, YOU KNOW, DID THAT ON

21   PURPOSE WHEN FASHIONING THESE CONDITIONS, AND VERY JUDICIOUSLY

22   SO, YOU KNOW, IN CASE, IN CASE THERE WERE EVER AN ISSUE.  SO

23   WE DO HAVE THAT.

24             WITH RESPECT TO HOW TO ENSURE 24-HOUR COMPLIANCE, I'M

25   JUST NOT SURE THAT I'VE GOT THE TOOLS OR THE IDEAS, YOU KNOW,

1   OTHER THAN JUST ADDING ADDITIONAL PEOPLE TO, YOU KNOW, TO
2   EITHER NOT MAKE IT A 12-HOUR SHIFT, TO MAKE IT THREE
3   EIGHT-HOUR SHIFTS SO THAT PEOPLE AREN'T WORKING SUCH PROLONGED
4   PERIODS IN UNINTERRUPTED FASHION.  YOU KNOW, THAT'S ONE
5   POSSIBILITY.  BUT FRANKLY, I DON'T KNOW THAT I -- AND I KNOW
6   THE COURT HAS EXPRESSED ITS WISH IT DIDN'T HAVE TO GET INTO
7   THIS LEVEL OF DETAIL.  YOU KNOW, YOU'RE IN THE BEST POSITION
8   TO FASHION THAT.

9           YOU KNOW, I THINK MAYBE MISS ZVERS MAY BE IN THE BEST
10  POSITION TO TALK WITH THE PRIVATELY RETAINED SECURITY GUARDS
11  INDEPENDENTLY -- I KNOW SHE INTERVIEWED THE ONE -- AND TO MAKE
12  SURE THAT THEY UNDERSTAND THE COURT'S ORDER AND TO UNDERSTAND
13  THAT WHEN THEY ARE NOT IN THEIR PLACE PURSUANT TO THE COURT'S
14  ORDER, THAT, YOU KNOW, THAT THAT'S WHAT'S, THAT THAT MAY PUT
15  THEIR LICENSURE AT JEOPARDY AS WELL, AND MAYBE GIVE THEM A
16  LITTLE EXTRA INTEREST IN MAINTAINING ADDITIONAL ASSIDUOUS
17  CARE.

18          THE COURT:  OKAY.  SO THOSE ARE GOOD SUGGESTIONS.
19          MISS ZVERS, DO YOU FEEL COMFORTABLE KIND OF WORKING
20  WITH THIS SCHEDULE THAT MR. BURSTEIN AND MISS JENKINS ARE
21  GOING TO GIVE YOU SO THAT YOU CAN SAY THIS IS ADEQUATE?  I
22  THINK THERE ARE ANY NUMBER OF WAYS OF SOLVING THIS.  I SAID
23  ADD A PERSON BECAUSE SOMEBODY'S DOING A 12-HOUR SHIFT.  MR.
24  PLETCHER SAID BREAK DOWN THE 12-HOUR SHIFTS.  THERE ARE A LOT
25  OF DIFFERENT WAYS THIS COULD BE STRUCTURED, AND NEITHER MR.

1   PLETCHER NOR I SHOULD BE THE ONES DOING IT.  SO IF MR.

2   BURSTEIN AND MISS JENKINS AND MR. FRANCIS TAKE A LOOK AT THIS,

3   COME UP WITH A PLAN, PRESENT IT TO MISS ZVERS, AND WE'LL TAKE

4   IT FROM THERE.

5           IS THAT AGREEABLE WITH EVERYBODY?

6           MS. ZVERS:  YES, YOUR HONOR.

7           MR. BURSTEIN:  YES, YOUR HONOR.  ON BEHALF OF MR.

8   FRANCIS, DEFINITELY, AND I THINK MR. PLETCHER HAS A GOOD

9   SUGGESTION.  I THINK, YOU KNOW, IT IS PROBABLY, YOU KNOW

10  (PAUSE) -- PRETRIAL AND MR. FRANCIS HAVE BEEN WORKING TOGETHER

11  NOW FOR, I BELIEVE, YOU KNOW, CLOSE TO THREE YEARS.  THIS IS

12  CERTAINLY NOT, YOU KNOW, MY SPECIALTY, MISS JENKINS'

13  SPECIALTY, AND WE ARE HAPPY TO -- YOU KNOW, WE HAVE COMPLETE

14  TRUST IN THE RELATIONSHIP BETWEEN PRETRIAL SERVICES AND MR.

15  FRANCIS.  IT'S ALWAYS BEEN EXCELLENT.  THEY HAVE INDEPENDENT

16  COMMUNICATION THAT WE HAVE NOTHING TO DO WITH, AND WE ARE

17  HAPPY FOR THEM TO CONTINUE IN THAT ROLE, AND WE HAVE EVERY

18  EXPECTATION THAT THE ORDER WILL BE FOLLOWED TO THE LETTER.

19  AND I THINK IF PRETRIAL SERVICES IS GOING TO KIND OF TAKE THE

20  LEAD IN THAT, THEY SEEM TO BE THE MOST APPROPRIATE PARTY, AS

21  MR. PLETCHER INDICATED, TO DO THAT, SINCE IT IS ULTIMATELY

22  THEIR RESPONSIBILITY TO MONITOR THE CONDITIONS.

23          THE COURT:  OKAY.

24          MR. FRANCIS, DO YOU AGREE THAT YOU COULD WORK

25  DIRECTLY WITH PRETRIAL?

1    MR. FRANCIS:  YES, YOUR HONOR.  I APPRECIATE

2    EVERYTHING.  I'M SO SORRY.  I'VE BEEN HERE 36 MONTHS, AND I'LL

3    MAKE SURE THAT EVERYTHING IS FULFILLED AS IS REQUIRED, YOUR

4    HONOR.

5         THE COURT:  OKAY.

6         MR. FRANCIS:  I'LL WORK WITH PRETRIAL ON IT.

7         THE COURT:  OKAY.

8         MR. BURSTEIN:  AND MR. FRANCIS JUST SAID, FOR THE

9    RECORD, THAT HE WILL WORK DIRECTLY WITH PRETRIAL SERVICES, AND

10   THEN THAT PROVIDES THE LAWYERS THE OPPORTUNITY TO STAY DOING

11   THE LAWYER THINGS AND NOT, AS MR. PLETCHER WOULD SAY, GET OUT

12   OVER OUR SKIS.

13        THE COURT:  OKAY.  BUT YOU UNDERSTAND, MR. BURSTEIN,

14   MISS JENKINS, MR. FRANCIS, THAT THIS NEEDS TO BE A

15   COMPREHENSIVE PLAN THAT COVERS THE ENTIRE PERIOD OF THE DAY

16   AND THE WEEK.

17        AND AGAIN, MR. FRANCIS, YOU UNDERSTAND THIS IS AN

18   EXTRAORDINARY SITUATION THAT'S BEEN ACCEPTED BY THE COURT TO

19   ENSURE THAT YOU RECEIVE THE ADEQUATE MEDICAL CARE THAT YOUR

20   CONDITION WARRANTS, SIR.

21        SO I THINK MISS ZVERS HAS BEEN EXCELLENT IN HANDLING

22   THIS, AND I WILL WAIT TO HEAR FROM HER.  I WOULD LIKE THIS

23   RESOLVED AS EXPEDITIOUSLY AS POSSIBLE.  I KNOW IT'S THE

24   HOLIDAY TIME.

25        MISS ZVERS, WHAT DO YOU THINK WOULD BE AN APPROPRIATE

1   TIME FRAME FOR YOU TO GET BACK TO THE COURT TO LET ME KNOW HOW

2   THIS HAS BEEN RESOLVED?

3           MS. ZVERS:  PERHAPS, YOUR HONOR, IN TWO WEEKS?

4           THE COURT:  OKAY.

5           MS. ZVERS:  IF THAT WOULD BE ACCEPTABLE.

6           THE COURT:  WELL, WHERE DOES TWO WEEKS PUT US AT,

7   ALEX?

8           THE DEPUTY CLERK:  TWO WEEKS IS DECEMBER 31ST, NEW

9   YEAR'S EVE, BUT YOU'RE NOT AVAILABLE.

10          THE COURT:  TWO WEEKS IS NEW YEAR'S EVE, SO WE'RE

11  GOING TO HAVE TO GO A LITTLE BIT FURTHER.

12          THE DEPUTY CLERK:  IT WOULD BE JANUARY 7.  JANUARY 7,

13  ON A THURSDAY.  DID YOU WANT IT TO BE ON A FRIDAY?  WE DO HAVE

14  A STATUS HEARING SET FOR JANUARY 29.

15          THE COURT:  WELL, I DON'T WANT TO WAIT UNTIL THE 29TH

16  OF JANUARY.

17          MR. RAMOS IS TELLING ME THAT WE HAVE A SCHEDULED

18  MEETING THEN.

19          YOU KNOW WHAT WE COULD DO?  YOU COULD SUBMIT A REPORT

20  TO THE COURT, MISS ZVERS, AND THAT WOULD GO TO THE DEFENSE, TO

21  THE GOVERNMENT, AND THE COURT.  WE CAN ALL SEE IT.  AND YOU

22  CAN TELL FROM THE WAY I SET THIS HEARING, I HAVE NO HESITANCY.

23  I DON'T CARE IF IT'S THE HOLIDAYS, OR EVEN IF IT IS NEW YEAR'S

24  EVE.  IF I FEEL WE NEED TO GET TOGETHER, WE'LL GET TOGETHER

25  AND DISCUSS THIS TELEPHONICALLY.  LET ME SEE.  MAYBE IT WILL

1  ALL BE RESOLVED, AND THAT'S MY HOPE.

2          SO, DOES THAT SOUND AGREEABLE?

3          MS. ZVERS: YES, YOUR HONOR.

4          MR. BURSTEIN: THE DEFENSE AGREES, YOUR HONOR.  WE

5  DON'T THINK A HEARING IS NECESSARY UNLESS THERE IS AN ISSUE.

6          THE COURT: YES.  I'M HOPING IT WILL BE RESOLVED.

7          MR. PLETCHER, LET ME ASK YOU, SIR.  DO YOU AGREE WITH

8  THAT SO FAR?

9          MR. PLETCHER: THAT'S A FINE COURSE OF ACTION, JUDGE.

10  THANKS.  I LOOK FORWARD TO THE REPORT.  LIKE I SAID, I HAVE

11  GREAT FAITH IN MR. BURSTEIN AND MISS JENKINS TO MAKE SURE THAT

12  THIS KIND OF ISSUE DOES NOT RECUR.

13          THE COURT: RIGHT.

14          MR. PLETCHER: THIS IS, YOU KNOW, LIKE I MENTIONED,

15  THE COURT HAS MENTIONED, THIS IS TWO BLIPS ON THE RADAR IN

16  VERY QUICK SUCCESSION, AND, FRANKLY, THAT'S ENOUGH.  I MEAN,

17  THIS KIND OF VERY TENUOUS ARRANGEMENT, YOU KNOW, DOES NOT HAVE

18  ENOUGH SLACK IN THE SYSTEM FOR ADDITIONAL BLIPS ON THE RADAR.

19  AND I KNOW MR. FRANCIS HAS HEARD NOW ME SAY THAT A COUPLE

20  TIMES AND HAS HEARD THE COURT SAY THAT, BUT THAT'S ENOUGH.

21  AND, YOU KNOW, IF THIS KIND OF RELATIONSHIP WITH THIS KIND OF

22  ARRANGEMENT THAT THE COURT HAS SET UP IS GOING TO PERSIST TO

23  ALLOW MR. FRANCIS TO GET THE MEDICAL CARE HE NEEDS, THEN THE

24  REQUIREMENTS ARE 100-PERCENT COMPLIANCE, NOT DISCRETIONARY

25  COMPLIANCE, NOT ANYTHING SHORT OF THAT.  SO IT'S ENOUGH.

1    THE COURT:  OKAY.  THANK YOU, MR. PLETCHER.

2    I THINK THAT'S ALL WE CAN DO ON THIS ISSUE, SO LET'S

3    PUT THIS SECURITY ISSUE ASIDE.

4    AND LET ME ASK YOU, MR. BURSTEIN AND MISS JENKINS, IF

5    YOU WANTED TO ADDRESS THE LETTER FROM ███████ THAT THE COURT

6    HAS BEEN MADE PRIVY TO.  IT'S NOT ACTUALLY ADDRESSED TO ME,

7    BUT I DO HAVE A COPY OF IT.  IT'S A DECEMBER 14TH, 2020,

8    LETTER.

9    MR. BURSTEIN:  RIGHT.  AND JUST TO GIVE THE COURT

10   SOME BACKGROUND, AT THE LAST HEARING, MR. FRANCIS -- WE

11   EXPLAINED THE SITUATION TO MR. FRANCIS.  HE GOT IN TOUCH WITH

12   THE DOCTOR, GOT IN TO SEE THE DOCTOR.  THE DOCTOR THEN VERY

13   QUICKLY -- I THINK WITHIN A FEW MINUTES OF THAT.  THE LATEST

14   MEETING GENERATED THIS LETTER, WHICH WENT ELECTRONICALLY TO

15   MR. FRANCIS' ████████.  THAT'S JUST THE WAY THEY DO THINGS AT

16   ████ SINCE IT'S, YOU KNOW, ███████████████, RATHER THAN

17   █████████████, AND SO WE GOT A COPY OF THAT, FORWARDED IT

18   TO THE GOVERNMENT, PRETRIAL, AND TO THE COURT TO GIVE THE

19   LATEST UPDATE.

20   I THINK IT CONFIRMS THE DOCUMENTS WE HAD SUBMITTED TO

21   THE COURT AT THE PRIOR HEARING AND SUGGESTS THAT WE HAVE A --

22   I THINK IT'S FEBRUARY 8TH -- ████████ COMING UP, AND SO WE'LL

23   KNOW A WHOLE LOT MORE ABOUT THE █████████████████, I

24   THINK, AS WELL AS WE HAD MENTIONED THAT THERE WERE SOME

25   ████████████████████████████████████████ THAT

1    THEY'RE GOING TO TAKE A LOOK AT, ALSO. SO WE'LL KNOW A LOT

2    MORE AFTER THAT FEBRUARY 8TH DATE. I THINK THIS LETTER DOES

3    GIVE, THOUGH, THE MOST CURRENT STATUS.

4    SO I GUESS THE QUESTION IS, WE'RE TRYING -- WE

5    HAVEN'T BEEN ABLE TO SPEAK TO THE DOCTOR YET. WE'RE TRYING --

6    WE'RE WORKING WITH THE DOCTOR'S ASSISTANT TO TRY AND SCHEDULE

7    A TIME. AS SOON AS THAT HAPPENS, I'LL OR MISS JENKINS WILL

8    FILE ANOTHER UNDER-SEAL STATUS. BUT IN THE MEANTIME, I GUESS

9    THE QUESTION WAS, GIVEN THAT WE ALL KNOW THIS ▮▮▮▮ IS GOING

10    TO HAPPEN ON FEBRUARY 8TH, IF IT MAKES SENSE TO SCHEDULE OUR

11    NEXT STATUS SHORTLY THEREAFTER, BECAUSE WE'RE NOT, IN ALL

12    CANDOR, GOING TO HAVE ANYTHING ELSE TO TELL THE COURT, EXCEPT

13    FOR WHAT I'M SAYING RIGHT NOW, AT THE END OF JANUARY, BECAUSE

14    THERE WON'T BE ANY OTHER TESTING OF ANY SIGNIFICANCE BY THEN.

15    THE COURT: OKAY.

16    MR. PLETCHER, YOUR VIEW?

17    MR. PLETCHER: THANKS, JUDGE.

18    AT THE END OF THE LAST HEARING, WE SET THE STATUS ON

19    JANUARY 29TH SO THAT WE COULD RECEIVE A WRITTEN REPORT FROM

20    THE DOCTOR, WRITTEN IN COMPLETE, IN COMPLETE FASHION AND WITH

21    THE HOPES THAT IT WOULD BE WRITTEN IN LAYPERSON'S TERMS SO WE

22    COULD HAVE A GOOD UNDERSTANDING OF WHERE MR. FRANCIS' MEDICAL

23    CONDITION WAS AT THE CURRENT MOMENT.

24    YOU KNOW, THIS WAS MOTIVATED BY THE LETTER DIRECTLY

25    FROM HIS PREVIOUS DOCTOR TO THE COURT GIVING HIM, ASSIGNING

1    ███████████████████████████ AND SO THAT'S, YOU KNOW, THAT'S --
2    THAT KIND OF WRITTEN REPORT IS SOMETHING THAT I'M STILL
3    WAITING FOR.  I DON'T THINK THAT THIS VERY SHORT PARAGRAPH --
4    FOR ME, ANYWAY -- DOES VERY MUCH IN TERMS OF MY CURRENT
5    UNDERSTANDING OF HIS HEALTH.  THERE ARE SOME WORDS MISSING.  I
6    MEAN, I UNDERSTAND THAT THE DOCTOR WROTE IT IN GREAT HASTE.
7    IT'S WRITTEN LARGELY IN PARTIAL SENTENCES.  IT'S NOT THE KIND
8    OF MEDICAL REPORT DIRECTED TO THE COURT FOR THIS PURPOSE AND
9    AT LEAST I WAS HOPING FOR.

10            SO IT WOULD BE MY SUGGESTION TO HOLD OUR JANUARY 29TH
11   HEARING, TO HOLD MR. FRANCIS AND HIS DOCTORS TO THE TYPE OF
12   WRITTEN REPORT THAT WAS ORIGINALLY REQUESTED, AND WE ALL KNOW
13   THAT NEW ███████ AND WHAT NOT IS COMING UP IN FEBRUARY, BUT
14   REALLY THIS IS TO GET TO THE BOTTOM OF WHY THE PREVIOUS
15   DOCTORS, YOU KNOW, ASSIGNED HIM A ████████████████ AND
16   KIND OF WISHED HIM WELL ON HIS WAY OUT THE DOOR.  WE HAVE THE
17   BACKGROUND OF THE, YOU KNOW, PRACTICE AND ████████████████,
18   BUT IT'S AT LEAST MY RESPONSIBILITY, AND THE COURT HAS, I
19   THINK, HAS ASSUMED THE SAME RESPONSIBILITY, TO UNDERSTAND HIS
20   MEDICAL CONDITION AND HIS COURSE OF TREATMENT TO ENSURE THAT
21   THAT MEDICAL FURLOUGH IS CONTINUED, IS CONTINUED TO BE
22   REQUIRED IN THESE CIRCUMSTANCES.

23            MR. BURSTEIN:  YOUR HONOR, IF I COULD JUST RESPOND
24   BRIEFLY.  THIS IS DEVIN BURSTEIN HERE.

25            THE COURT:  SURE.

1    MR. BURSTEIN:  I DON'T KNOW THAT THAT'S COMING.

2    WE'RE TRYING TO GET IN TOUCH WITH THE DOCTORS.  THIS IS A VERY

3    DIFFERENT SITUATION NOW THAT HE'S AT THE          .  THIS

4    IS NOT A          .  THIS IS WHAT THE DOCTOR PROVIDED.

5    WE'RE TRYING OUR BEST TO GET IT, BUT, YOU KNOW, TO ME --

6        THE COURT:  MR. BURSTEIN.

7        MR. BURSTEIN:  -- I DON'T (PAUSE).

8        THE COURT:  MR. BURSTEIN.

9        MR. BURSTEIN:  YES, YOUR HONOR.

10       THE COURT:  MR. FRANCIS IS A PRIVATE PATIENT AT THE

11            .  HE'S NOT AT A PUBLIC CLINIC.

12   THEY WILL PROVIDE A WRITTEN STATEMENT.  THEY NEED TO KNOW THE

13   LEGAL SITUATION OF THEIR CLIENT -- OF THEIR PATIENT, YOUR

14   CLIENT, AND THEY WILL PREPARE THAT.  YOU KNOW, WHEN YOU SAY

15   THIS IS NOT, HE'S NOT A PRIVATE PATIENT, HE ABSOLUTELY IS A

16   PRIVATE PATIENT.  THEY'RE ABLE TO HANDLE PRIVATE PATIENTS.  WE

17   ALL KNOW THAT.       IS LIKE EVERY OTHER MEDICAL CENTER RIGHT

18   NOW.  THEY'RE INUNDATED WITH COVID, BUT THEY ARE FUNCTIONING,

19   THEY ARE HANDLING CRITICAL CASES, AND I THINK MR. LEONARD

20   FRANCIS WOULD, RIGHT NOW, COME UNDER THAT UMBRELLA BECAUSE OF

21   HIS LONG-TERM DIAGNOSIS WITH

22       SO IT WILL BE PREPARED.  WE'RE GOING TO KEEP THE

23   HEARING ON THE 29TH, AND WE'LL LOOK FORWARD TO READING THE

24   REPORT.

25       THAT CONCLUDES THIS MATTER.

1           THANK YOU.

2           MR. BURSTEIN:  THANK YOU, YOUR HONOR.

3           MS. JENKINS:  THANK YOU.

4           MR. PLETCHER:  THANK YOU, JUDGE.

5           MS. ZVERS:  THANK YOU, YOUR HONOR.

6           THE DEPUTY MARSHAL:  THANK YOU, YOUR HONOR.

7              (PROCEEDINGS ADJOURNED AT 2:50 P.M.)

8    ------------------------------------------------------------

9                    (END OF TRANSCRIPT)

10

11           I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

12   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

13   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

14

15           S/FRANK J. RANGUS

16           FRANK J. RANGUS, OCR

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )      13-CR-3781-JLS
     PLAINTIFF,                )      13-CR-3782-JLS
                       )      13-CR-4287-JLS
VS.                            )
                       )      SAN DIEGO, CA
LEONARD GLENN FRANCIS, *ET AL.*,  )      JANUARY 29, 2021
     DEFENDANTS.               )      11:30 A.M.

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:    OFFICE OF THE U. S. ATTORNEY
                      BY:  MARK W. PLETCHER, ESQ.
                      880 FRONT STREET, RM. 6293
                      SAN DIEGO, CA  92101

FOR THE DEFENDANT:     WARREN & BURSTEIN
                      BY:  DEVIN J. BURSTEIN, ESQ.
                          KATIE JENKINS, ESQ.
                      501 W. BROADWAY, SUITE 240
                      SAN DIEGO, CA  92101

PRETRIAL SERVICES:     WILLIAM PERALES

COURT REPORTER:        FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE
                      333 W. BROADWAY, SUITE 420
                      SAN DIEGO, CA  92101
                      (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                          PAGE

NEXT HEARING DATE                      14

1             THE DEPUTY CLERK: NUMBER 1-A ON THE CALENDAR,

2  13-CR-3781, 13-CR-3782, 13-CR-4287, UNITED STATES VS. LEONARD

3  GLENN FRANCIS, FOR STATUS.

4             COUNSEL, PLEASE STATE YOUR APPEARANCES, BEGINNING

5  WITH DEFENSE COUNSEL.

6             MR. BURSTEIN: GOOD MORNING, YOUR HONOR. DEVIN

7  BURSTEIN AND KATIE JENKINS ON BEHALF OF MR. FRANCIS, WHO IS

8  PRESENT ON THE PHONE.

9             THE COURT: OKAY. GOOD MORNING. THANK YOU.

10            MS. JENKINS: GOOD MORNING, YOUR HONOR.

11            MR. PLETCHER: GOOD MORNING, JUDGE. THIS IS MARK

12  PLETCHER FOR THE UNITED STATES.

13            THE COURT: OKAY. THANK YOU.

14            WHO IS HERE FOR PRETRIAL?

15            MR. PERALES: GOOD MORNING, YOUR HONOR. WILLIAM

16  PERALES ON BEHALF OF PRETRIAL SERVICES STANDING IN FOR MARISA

17  ZVERS OF MY OFFICE.

18            THE COURT: OKAY. THANK YOU.

19            WELL, MR. BURSTEIN, I HAVE A COPY OF WHAT YOU

20  PRESENTED TO THE COURT. DO YOU WANT TO ADD TO THAT, OR WHAT

21  WOULD YOU LIKE TO SAY, SIR?

22            MR. BURSTEIN: NOTHING TOO MUCH, YOUR HONOR, UNLESS

23  THE COURT HAS SPECIFIC QUESTIONS, AS YOU CAN SEE HOW MISS

24  JENKINS AND I DID EVERYTHING POSSIBLE TO GET A FURTHER REPORT

25  FROM ███████. BUT I DON'T KNOW IF THE COURT REMEMBERS.

1    THIS IS A LITTLE BIT WHAT I WAS WORRIED ABOUT AT OUR LAST

2    HEARING, BUT WE'VE NOW -- MR. FRANCIS IS NOW UNDER THE CARE OF

3    A PRIMARY-CARE PHYSICIAN AT THIS TIME.  SO WE THINK WE'LL BE

4    ABLE TO GET A MORE COMPLETE, UPDATED REPORT AFTER THE NEXT

5    STATUS IN FEBRUARY.  HE'S GOT FOLLOW-UP MEETINGS AT THE END OF

6    THE MONTH AND A NUMBER OF OTHER TASKS.  SO WE'RE HOPING THAT

7    BY MID- TO LATE MARCH WE'LL BE BACK ON TRACK WITH

8    COMPREHENSIVE REPORTS.

9            AND THEN THE OTHER THING WAS, WE ALL RECEIVED MISS

10   ZVERS' MEMORANDUM TO THE COURT REGARDING THE SECURITY UPDATE,

11   AND SO EVERYTHING ON THAT FRONT IS BACK ON TRACK AS WELL.

12           SO, UNLESS THE COURT HAS QUESTIONS, I DON'T REALLY

13   HAVE A WHOLE LOT.

14           YES.  GO AHEAD, YOUR HONOR.

15           THE COURT:  THE ONLY THING THAT I WAS WONDERING, MR.

16   BURSTEIN, WAS THIS.  MR. FRANCIS HAS A RIGHT TO HIS OWN

17   MEDICAL RECORDS, OF COURSE, AND I WAS WONDERING ABOUT THE

18   ABILITY OF TAKING THOSE RECORDS AND HAVING THEM REVIEWED BY AN

19   INDEPENDENT          , WHOEVER THE RIGHT SPECIALIST IS, WHO

20   WOULD BE WILLING TO PRESENT A LAYPERSON'S ACCURATE ASSESSMENT

21   OF WHAT'S GOING ON.  I DO APPRECIATE THAT THE

22                                 IS A VERY BUSY PLACE.  IT SADDENS

23   ME THAT THE DOCTOR WHO WROTE THIS OR COMMUNICATED THIS TO YOU

24   FELT A COMPELLING NEED TO INVOLVE RISK MANAGEMENT.  THIS IS

25   NOT A CIVIL LAWSUIT WHERE IT'S A MEDICAL CENTER THAT'S IN

1   JEOPARDY IN ANY FASHION OVER HIS TREATMENT. THIS IS MERELY
2   BECAUSE OF THE STATUS OF YOUR CLIENT, AND IT'S UNFORTUNATE,
3   BUT IT MAY HOLD THINGS UP.

4         SO I WAS JUST WONDERING, WHAT IF MR. FRANCIS' MEDICAL
5   RECORDS WERE PROVIDED TO AN AGREED-UPON MEDICAL SPECIALIST WHO
6   WAS WILLING TO REVIEW AND PROVIDE A SUMMARY THAT WAS
7   INTELLIGIBLE TO THE COURT, MORE SO THAN WHAT I'VE HAD IN THE
8   PAST. I DON'T KNOW. AND I'LL THROW THAT OUT THERE, AND MAYBE
9   MR. PLETCHER WOULD LIKE TO COMMENT, AND THEN YOU COULD
10  RESPOND, MR. BURSTEIN. BUT THAT WAS THE ONLY THOUGHT I HAD TO
11  ASSIST AND TO EXPEDITE THIS A LITTLE BIT.

12        MR. BURSTEIN: RIGHT, YOUR HONOR. JUST BEFORE MR.
13  PLETCHER JUMPS IN, THAT SHOULDN'T BE A PROBLEM. WE ACTUALLY
14  THINK THAT WE'RE GOING TO BE SPEAKING WITH THE PRIMARY-CARE
15  PHYSICIAN. THIS IS MUCH MORE UP HIS ALLEY IN TERMS OF
16  AGGREGATING ALL THE INFORMATION, BUT THERE'S NOTHING -- AT
17  THIS POINT, THERE'S REALLY NOTHING SUBSTANTIVE TO PROVIDE TO
18  THE COURT, ALSO. THERE WERE A NUMBER OF OTHER TASKS RELATED
19  TO IT. SO WE THINK THAT ONCE THOSE ARE DONE, AND THEY'LL ALL
20  BE DONE IN FEBRUARY, WE WILL HAVE COMPREHENSIVE RECORDS, WITH
21  THE DOCTOR TAKING THE FIRST STEP, SHOT AT THE COMPREHENSIVE
22  REPORT, AND THEN IF, FOR SOME REASON, WE HAVE ANY TROUBLE, WE
23  CAN HIRE ANY INDEPENDENT DOCTOR THAT WE RUN BY MR. PLETCHER TO
24  PROVIDE A REPORT.

25        SO I THINK THE COURT'S SUGGESTION IS GOOD. JUST GIVE

1  US A LITTLE BIT MORE TIME TO GET ALL THE WORK DONE, GET THE

2  RECORDS IN, AND THEN WE WILL DO OUR VERY BEST, AS WE ALWAYS

3  DO, TO GET THE REPORT TO THE COURT AND TO MR. PLETCHER AND TO

4  PRETRIAL AS FAST AS POSSIBLE.

5            THE COURT:  OKAY.

6            LET ME HEAR FROM MR. PLETCHER.

7            GO AHEAD, SIR.

8            MR. PLETCHER:  JUDGE, THANK YOU.  GOOD MORNING.

9            I, LIKE THE COURT, FOUND THE LETTER FROM THE DOCTOR

10  THAT WAS SUBMITTED TO BE ENTIRELY DISPIRITING.  AT THE END OF

11  OUR LAST HEARING, IT WAS A VERY CLEAR REQUEST THAT WE HAVE

12  SOME UNDERSTANDING, NOT OF MR. FRANCIS, NECESSARILY, OF WHAT

13  HIS NEXT          WILL SHOW, BUT OF WHAT, YOU KNOW, WHERE WE HAVE

14  BEEN AND WHERE WE STAND RIGHT NOW.  AND THIS WAS CAUSED,

15  RIGHT, BY THE KERFUFFLE BETWEEN MR. FRANCIS AND HIS FORMER

16  DOCTOR WHO SENT A LETTER TO THE COURT, YOU KNOW,

17                                           , AND SO THE HOPE WAS

18  THAT WE WOULD GET A STATUS REPORT THAT THIS WAS THE DIAGNOSIS,

19  THIS HAD BEEN THE STATE OF MR. FRANCIS' HEALTH, HE UNDERWENT

20  THE FOLLOWING TREATMENTS, HE WAS TESTED AT THESE INTERVALS,

21  AND THIS IS WHAT THE SCANS CLEARLY SHOW NOW.  SO NOW THIS

22  CURRENT DOCTOR SAYS WE ARE SEEING WITH A PATIENT WITH A

23                        WELL, WE ALL KNOW THAT WE HAVE A PATIENT

24  WITH A HISTORY OF CANCER, AND WITH ALL DUE RESPECT TO THE

25  DOCTOR, THAT WAS ENTIRELY UNHELPFUL AND NOT AT ALL WHAT WAS

1    ASKED TO BE SUBMITTED.

2         SO THAT'S MY REFLECTION ON WHAT WE'VE GOT.  I WILL
3    TELL THE COURT ALSO I'VE TRIED TO CONTACT THE DOCTOR MYSELF,
4    AND I WAS UNSUCCESSFUL.  THE DOCTOR WAS NOT ABLE TO RETURN MY
5    SEVERAL TELEPHONE CALLS ASKING QUESTIONS WHICH SOUGHT -- I
6    DIDN'T GET TO ASK ANY QUESTIONS -- BUT WHICH SOUGHT TO ASK
7    QUESTIONS AND POTENTIALLY EVEN HAVE HER ON THE LINE DURING
8    THIS HEARING SO WE COULD HEAR DIRECTLY FROM THE DOCTOR.

9         SO I GUESS THAT'S A LONG WAY OF SAYING, JUDGE, THAT I
10   SECOND YOUR SUGGESTION TO HAVE THE MEDICAL RECORDS REVIEWED BY
11   SOMEONE WHO'S WILLING TO COME TO COURT AND TELL US WHAT'S
12   GOING ON.  I WANT TO KNOW FROM MY OWN ABILITY TO MAKE
13   RECOMMENDATIONS TO THE COURT WHAT IS THE CURRENT STATE OF MR.
14   FRANCIS'S HEALTH, WHERE IT HAS COME FROM, AND WHAT IS THE
15   EVALUATION OF THE TREATMENT, THE COURSE OF TREATMENT THAT HAS
16   BEEN UNDERTAKEN IN THE PAST.  MY UNDERSTANDING IS HE'S
17   RESPONDED VERY, VERY WELL.  I HOPE THAT THAT'S THE CASE.
18   THAT'S THE REPORT I WANT, BUT I ALSO NEED THAT.  I NEED BETTER
19   AND MORE INFORMATION TO MAKE GOOD RECOMMENDATIONS TO THE COURT
20   ABOUT THE ONGOING REQUIREMENT OF THE MEDICAL FURLOUGH, ALSO TO
21   TELL THE MARSHALS SERVICE ABOUT THE CAPABILITIES TO HANDLE MR.
22   FRANCIS' MEDICAL CARE, AND FRANKLY, WITHOUT THAT INFORMATION,
23   YOU KNOW, AT LEAST I FEEL VERY UNCERTAIN ON HOW TO PROCEED.
24        THANK YOU.
25        THE COURT:  WHAT ARE YOU SUGGESTING WE DO AT THIS

1 JUNCTURE, MR. PLETCHER?

2         MR. PLETCHER:  JUDGE, I THINK YOUR SUGGESTION OF

3 HAVING HIS MEDICAL RECORDS REVIEWED BY NOW A THIRD DOCTOR WHO

4 CAN COME INTO COURT TO TALK ABOUT THIS.  FRANKLY, I AM

5 CONCERNED THAT IN THE MEDICAL COMMUNICATIONS THAT WE'RE

6 RECEIVING, THAT PEOPLE ARE WRITING AN ADVOCACY PIECE, AND I

7 DON'T WANT AN ADVOCACY PIECE.  I WANT TO KNOW WHAT THE DETAILS

8 ARE.  I WANT TO KNOW WHAT THE OBJECTIVE DATA SHOWS, AND I WANT

9 SOMEONE TO BE ABLE TO ACCOUNT AND ANSWER QUESTIONS THAT I'M

10 SURE THE COURT HAS AND THAT I CERTAINLY HAVE.  SO IF THE BEST

11 WAY TO ACCOMPLISH THAT IS A THIRD-PARTY PHYSICIAN, IF THE BEST

12 WAY TO ACCOMPLISH THAT IS A PRIMARY-CARE PHYSICIAN, IF THE

13 BEST WAY TO ACCOMPLISH THAT IS HIS          , ANY OF THOSE

14 THREE SEEM LIKE VIABLE OPTIONS, OR A COMBINATION THEREOF.

15         AND WHILE I CARE OVERALL ABOUT MR. FRANCIS', YOU

16 KNOW, THE GESTALT OF MR. FRANCIS' HEALTH, I CARE LESS ABOUT

17 EVERYTHING ELSE EXCEPT          .  YOU KNOW,

18 DIAGNOSIS AND TREATMENT IS THE REASON HE'S ON MEDICAL

19 FURLOUGH, NOT BECAUSE HE HAS, YOU KNOW, RESIDUAL ISSUES

20 RELATED TO          , OR, YOU KNOW, SOME OTHER VERY

21 MANAGEABLE CONDITIONS THAT THE BUREAU OF PRISONS AND THE

22 MARSHALS SERVICE HANDLE EVERY DAY.  SO, YOU KNOW, ALL THOSE

23 OTHER THINGS ARE ANCILLARY, AT LEAST AS FAR AS I'M CONCERNED,

24 TO THE CRUX OF THE ISSUE HERE, AND IF -- I DEFER TO MR.

25 BURSTEIN ON THIS.  IF A THIRD-PARTY DOCTOR OR PRIMARY-CARE

1   PHYSICIAN CAN GET THIS DONE, THEN, FINE.  BUT WE CERTAINLY
2   HAVE ENOUGH TIME FOR SOMEBODY TO PROVIDE WHAT WAS ASKED, AND
3   TO JUST SORT OF THROW UP OUR HANDS AND SAY WE COULDN'T GET IT
4   FROM THE ▮▮▮▮▮ IS, FROM MY HUMBLE PERSPECTIVE, AN
5   IMPERFECT POSITION TO BE IN AT THIS POINT.
6          THE COURT:  OKAY.
7          MR. BURSTEIN:  YOUR HONOR, COULD I JUST FOLLOW UP AND
8   ECHO THAT --
9          THE COURT:  OF COURSE.  IS THAT MR. BURSTEIN?
10         MR. BURSTEIN:  YES.  YES, IT'S MR. BURSTEIN, YOUR
11  HONOR.  I'M SORRY.
12         THE COURT:  FOR SOME REASON, I'M HAVING A HARD TIME.
13  SLOW DOWN.
14         MR. BURSTEIN:  OKAY.  CAN THE COURT HEAR ME NOW?  HOW
15  ABOUT NOW?
16         THE COURT:  THAT'S BETTER.  THANK YOU.
17         MR. BURSTEIN:  I JUST WANTED TO ECHO WHAT MR.
18  PLETCHER SAID.  WE ARE VERY FRUSTRATED WITH THE CIRCUMSTANCES.
19  WE DIDN'T EXPECT THEM.  I THINK, AS THE COURT HAS SEEN AND
20  FROM MY CONVERSATIONS WITH MR. PLETCHER, TOO, WE'RE DOING OUR
21  VERY BEST.  I THINK, YOU KNOW, A YEAR HAS GONE ON.  HOPEFULLY,
22  THE COURT AGREES MISS JENKINS AND I HAVE DONE A SOLID JOB OF
23  PROVIDING INFORMATION IN A TIMELY FASHION.  WE APOLOGIZE AND
24  REGRET THE SNAFUS THAT HAVE BEEN OCCURRING.  WE'RE JUST A
25  COUPLE WEEKS AWAY FROM GETTING BACK ON TRACK.

1     WE'D ASK FOR THE COURT'S AND THE GOVERNMENT'S

2  INDULGENCE TO ALLOW US A LITTLE BIT OF ADDITIONAL TIME, YOU

3  KNOW, THAT EVERYTHING WITH          WAS WHAT IT WAS.  WE'RE

4  NOW IN, YOU KNOW, WE'RE NOW IN -- WE THINK WE'RE IN A GOOD

5  PLACE.  WE THINK WE'LL BE ABLE TO HAVE GREAT COMMUNICATION

6  WITH THE DOCTOR.  HE'S CONNECTED TO        WE THINK WE'LL BE

7  ABLE TO GET HIM TO PROVIDE THE COURT, ANSWER QUESTIONS FOR THE

8  COURT, AND SO IF WE COULD HAVE SOME -- AND IF WE DON'T -- IF,

9  FOR SOME REASON, WE'RE WRONG ABOUT THAT, THEN WE'LL GET A

10  THIRD-PARTY DOCTOR TO DO IT.

11     WE THINK THE COURT'S SUGGESTIONS AND MR. PLETCHER'S

12  SUGGESTIONS ARE ALL GOOD.  I THINK ON THIS WE ARE ALL ON THE

13  SAME TEAM, WHICH IS VERY NICE.  WE JUST WANT THE OBJECTIVE

14  FACTS IN A WAY THAT WE CAN ALL UNDERSTAND THEM AND THEN MAKE

15  THE BEST DECISIONS GOING FORWARD.  SO WE THINK WE'RE A LITTLE

16  BIT OF TIME AWAY FROM THAT, AND WE WOULD ASK THE COURT TO GIVE

17  US TIME.

18     BEFORE I SUBMIT, YOUR HONOR, I DID WANT TO NOTE ON

19  THE RECORD A SEPARATE MATTER.  I THINK THAT THE COURT WILL BE

20  PLEASED WITH THIS.  THAT ONE OF THE AGENTS ON THE CASE DID GO

21  OUT FOLLOWING THE ZVERS' MEMORANDUM TO DO A SECURITY CHECK ON

22  MR. FRANCIS AND EVERYTHING WAS FINE THERE, TOO.  SO I DID WANT

23  TO NOTE THAT AS ANOTHER GOOD THING, WHICH I FORGOT TO TELL THE

24  COURT IN THE CALL.

25     THE COURT:  OKAY.  MY CONCERN IS THIS.  TIME IS

1  MOVING ALONG HERE, AND I WILL GIVE YOU SOME TIME, BUT THESE
2  RECORDS ARE WHAT THEY ARE AT THIS JUNCTURE.     , WHATEVER
3  TYPE OF    MR. FRANCIS IS HAVING ARE READ FAIRLY
4  EXPEDITIOUSLY AT THE
5  , IF THAT'S NECESSARY.  MY CONCERN IS THAT YOU'VE
6  LOCKED YOURSELF UP, NOT THROUGH YOUR FAULT, BUT MAYBE THROUGH
7  THE     FAULT AND RISK MANAGEMENT AND OTHER PEOPLE
8  GETTING INVOLVED, YOU MAY NEVER COME OUT OF THAT MORASS.  SO I
9  WOULD URGE YOU TO BE PREPARED TO STEP IN.  HOW MUCH TIME --
10 WITH ANOTHER PHYSICIAN WHO WOULD JUST BE LOOKING AT THE
11 RECORDS AND PROVIDING A NEUTRAL ANALYSIS TO THE COURT AND TO
12 THE GOVERNMENT.  HOW MUCH TIME?  I'M NOT WILLING TO PUT THIS
13 OVER TOO FAR.  LET ME HEAR FROM BOTH OF YOU AS TO HOW MUCH
14 TIME YOU THINK IS NECESSARY TO DO THAT.
15          THE     ARE THE FIRST WEEK IN FEBRUARY.  CORRECT?
16          MR. BURSTEIN:  CORRECT.  BUT THE FOLLOW-UP WITH THE
17 DOCTOR IS NOT UNTIL -- MISS JENKINS -- I BELIEVE THE 25TH OR
18 THE 28TH?
19          MS. JENKINS:  YES.  FEBRUARY 25TH IS THE FOLLOW-UP.
20          MR. BURSTEIN:  FEBRUARY 25TH IS THE FOLLOW-UP.
21          THE COURT:  OKAY.  BUT WE KNOW THAT DOCTOR --
22          MR. BURSTEIN:  WE WOULD ASK --
23          THE COURT:  MR. BURSTEIN, WE KNOW THAT DOCTOR IS NOT
24 LIKELY TO BE OF MUCH ASSISTANCE TO THE COURT, SO LET'S HAVE
25 THAT                              .  THAT REPORT WILL

1  BE IN HIS CHART MUCH MORE EXPEDITIOUSLY THAN THE 25TH.  HOW

2  MUCH TIME DO YOU THINK YOU NEED TO ACCOMPLISH THIS?  I MEAN,

3  EXTRAORDINARY RELIEF HAS BEEN GRANTED TO MR. FRANCIS,

4  APPROPRIATELY SO, WITH THE GOVERNMENT'S CONCURRENCE.  SO ALL

5  WE'RE ASKING IS FOR THE APPROPRIATE INFORMATION TO BE PROVIDED

6  TO CONTINUE THAT, IF THAT'S WHAT SHOULD BE DONE.

7          MR. BURSTEIN:  RIGHT.  RIGHT.  I JUST -- YOU KNOW,

8  THE -- I FEEL LIKE WE'VE LET THE COURT DOWN AND THE GOVERNMENT

9  DOWN NOW FOR A COUPLE OF SESSIONS IN A ROW, AND I JUST

10 DON'T -- I'M WARY OF MAKING PROMISES I CAN'T KEEP.  I'M NOT

11 TRYING TO PUT THIS OUT LONGER.

12          THE COURT:  MR. BURSTEIN.

13          MR. BURSTEIN:  YES.

14          THE COURT:  MR. BURSTEIN, MONDAY IS THE 1ST OF

15 FEBRUARY.

16          MR. BURSTEIN:  RIGHT.

17          THE COURT:  MR. PLETCHER, JUMP IN HERE.

18          BUT WE COULD GO TO A HEARING THE END OF THE FIRST

19 WEEK OR SECOND WEEK IN MARCH, BUT I'M NOT WILLING TO GO ANY

20 FARTHER THAN THAT, AND MR. --

21          MR. BURSTEIN:  YES.

22          THE COURT:  AND MR. PLETCHER IS CORRECT.  YOU KNOW,

23 WHEN THAT DOCTOR WROTE TO THE COURT AND SAID, WE

24                                        , GODSPEED AS YOU GO OFF

25 INTO THE WORLD, YOU KNOW, THAT GOT MY ATTENTION.  IT GOT MR.

1   PLETCHER'S ATTENTION.  SO WE NEED TO UNDERSTAND.  WE HOPE THAT

2   HE IS IN SIGNIFICANT            , WHATEVER THE RIGHT MEDICAL

3   TERMINOLOGY IS, BUT MR. PLETCHER AND THE COURT ARE ENTITLED TO

4   KNOW THAT, AND THAT DOES NOT DEPEND --

5               MR. PLETCHER:  JUDGE, THIS IS MARK PLETCHER.

6               THE COURT:  THAT DOES NOT DEPEND ON THE        IN

7   FEBRUARY.

8               MR. BURSTEIN:  RIGHT.

9               THE COURT:  I HOPE THE        IN FEBRUARY ARE CLEAR.

10  I DON'T KNOW.  AND THAT COULD BE TAGGED ONTO THE END OF A

11  REPORT THAT COULD BE COMMISSIONED NOW.  SO THAT'S MY THOUGHT.

12              MR. PLETCHER, DO YOU WANT TO ASK FOR A MODIFICATION

13  OR ADD SOME THOUGHTS TO THAT, SIR?

14              MR. PLETCHER:  NO, JUDGE.  I DEFER TO THE COURT IN

15  TERMS OF TIMING.  WE CAN BE READY FOR THE, YOU KNOW, THE NEXT

16  STATUS CONFERENCE IN THIS ISSUE, ON THIS ISSUE AT ANY TIME.

17  IF THE COURT THINKS THAT EARLY MARCH IS SUFFICIENT OR LATE

18  FEBRUARY IS SUFFICIENT, I HAVE NO, I HAVE NO INDEPENDENT

19  INSIGHT ON THAT.  I JUST DEFER TO THE COURT AND TO MR.

20  BURSTEIN AS TO WHEN THE NEXT HEARING IS.  I THINK EVERYONE HAS

21  SAID WHAT NEEDS TO BE SAID ABOUT THIS ISSUE, AND TO CONTINUE

22  TO REINFORCE THE SIGNIFICANCE AND IMPORTANCE TO THE UNITED

23  STATES THAT FULL, COMPLETE, AND TIMELY INFORMATION CONTINUE TO

24  BE PROVIDED TO US SO THAT WE CAN ADJUST COURSE ACCORDINGLY,

25  AND THAT WE CAN MAKE SURE THE COURT IS AWARE AT EVERY TURN IF

1   THERE'S SOMETHING MATERIAL THAT NEEDS TO BE EITHER BROUGHT TO

2   THE COURT'S ATTENTION OR CHANGED.

3            THE COURT:  OKAY.

4            WHAT IS THE FIRST FRIDAY, ALEX, IN MARCH?  IS THAT

5   THE 5TH?

6            THE DEPUTY CLERK:  IT IS.  MARCH 5TH.

7            THE COURT:  MARCH 5TH.  LET'S SET THIS MATTER FOR

8   FRIDAY, MARCH 5TH, AND I'LL DEFER TO ALEX TO PICK THE TIME.

9            THE DEPUTY CLERK:  WE COULD SET IT FOR 2:30 P.M.

10           THE COURT:  2:30 P.M.

11           MR. PLETCHER:  VERY GOOD.  THANK YOU.

12           THE COURT:  HOLD ON.

13           (OFF-THE-RECORD DISCUSSION BETWEEN THE COURT AND THE

14   COURTROOM CLERK)

15           THE COURT:  ALEX IS TELLING ME -- MR. RAMOS IS

16   TELLING ME THAT MR. FRANCIS' SENTENCING IS SET FOR MARCH 26TH,

17   AT NINE A.M.  IS THAT GOING TO BE CONTINUED?

18           MR. BURSTEIN:  YES, YOUR HONOR.

19           MR. PLETCHER:  THAT WAS ORIGINALLY SET WITH THE

20   ANTICIPATION OF THE 7TH FLEET CASE TO BE TRIED AND OVER BY

21   THEN.  OBVIOUSLY, BECAUSE OF THE PANDEMIC, WE'VE BEEN DELAYED.

22   SO I WOULD EXPECT THAT WE'D HAVE AN ADDITIONAL CONTINUANCE,

23   ABSENT SOME OTHER DISCUSSION WITH MR. BURSTEIN, BUT THAT'S THE

24   EXPECTATION AS OF NOW.

25           THE COURT:  OKAY.  ALEX WAS JUST CALLING THAT TO MY

1  ATTENTION.  SO THAT'S --

2  MR. PLETCHER:  THANK YOU, ALEX.

3  THE COURT:  THAT'S WHAT'S GOING TO HAPPEN THERE IN

4  ALL LIKELIHOOD, AND WE'RE GOING TO SET THIS MATTER.

5  DO YOU UNDERSTAND, MR. BURSTEIN, WHAT THE EXPECTATION

6  IS AT THIS HEARING, SIR?

7  MR. BURSTEIN:  YES, YOUR HONOR.

8  THE COURT:  BECAUSE WE DON'T WANT TO BE IN THE SAME

9  POSITION.  I KNOW YOU DON'T.  I KNOW MR. FRANCIS DOESN'T WANT

10  TO BE THERE.  MR. PLETCHER AND I DON'T WANT TO BE IN THAT

11  POSITION EITHER, SIR.  WE JUST WANT AN UNDERSTANDING OF HIS

12  CURRENT MEDICAL CONDITION AND THAT WOULD HOLD FOR TODAY ABSENT

13  THE      BUT, BY THE 5TH OF MARCH, WE'LL KNOW THE

14  THE      WILL BE DONE.  MR. FRANCIS WILL KNOW THE RESULTS OF

15  THE      LONG BEFORE THE 25TH OF FEBRUARY.  ALL HE NEEDS TO

16  DO IS GO TO HIS CHART AND READ THEM.  HE MAY NEED A LITTLE BIT

17  OF INTERPRETATION TO ASSIST HIM.  BUT TRUST ME, THOSE

18  DON'T SIT AROUND AND WAIT FOR WEEKS TO BE READ.

19  SO, WITH THAT, I THINK WE'VE CONCLUDED THIS, BUT WE

20  EXPECT A STATEMENT AS TO HIS CURRENT STATE OF HEALTH TO

21  INCLUDE THE      UPDATE AND BE IN A FASHION THAT IS HELPFUL.

22  THE SOONER THAT CAN BE PROVIDED, AS SOON AS IT'S COMPLETED,

23  GET IT TO MR. PLETCHER, GET IT TO THE COURT, SO THAT WE CAN

24  READ IT AND DIGEST IT BEFORE THE HEARING, MR. BURSTEIN.

25  AND I KNOW, SIR, THAT YOU WOULD HOPE, YOU AND MISS

1   JENKINS, AND MR. FRANCIS, FOR THAT MATTER, TOO, THAT THE

2   PHYSICIANS WOULD BE A LITTLE BIT MORE SUPPORTIVE OF PROVIDING

3   THIS INFORMATION.  AGAIN, I'M SURE THESE DOCTORS KNOW THEY ARE

4   NOT ENGAGED IN LITIGATION IN CIVIL COURT.  THEY'RE TALKING

5   ABOUT A PATIENT WHO IS ON MEDICAL FURLOUGH FROM THE FEDERAL

6   BUREAU OF PRISONS, AND I THINK THAT'S A FAR CRY FROM WHAT'S

7   CAUSING THIS ISSUE.  BUT I TRUST THAT YOU HAVE EXPLAINED THAT

8   TO THEM, AS ALWAYS.

9            DO WE NEED TO EXTEND THE MEDICAL FURLOUGH THROUGH,

10  PROBABLY, THE 8TH OF MARCH?

11           MR. BURSTEIN:  YES, YOUR HONOR, THAT WOULD BE

12  HELPFUL, TO EXTEND THE MEDICAL FURLOUGH.

13           AND ALSO, WHILE WE'RE HERE, IF, ALEX, WE CAN MOVE THE

14  SENTENCE, LIKE, SIX MONTHS EACH TIME, SINCE WE ALL HAVE TO BE

15  ON THE PHONE FOR EFFICIENCY'S SAKE.  WE'LL BE HAPPY TO FILE A

16  MOTION TO CONTINUE IT.  BUT IF, ALEX, IF THERE'S A DATE THAT'S

17  AVAILABLE SO I DON'T HAVE TO BOTHER TO EMAIL YOU LATER, THAT

18  WOULD BE PREFERRED.

19           THE COURT:  OKAY.

20           IS THAT AGREEABLE, MR. PLETCHER, TO MOVE THIS

21  SENTENCING FROM MARCH 26 OUT SIX MONTHS?  WE'LL GIVE YOU A

22  DATE NOW, BUT A MOTION WILL NEED TO BE FILED.

23           MR. PLETCHER:  YES, YOUR HONOR.

24           MR. BURSTEIN:  YES, YOUR HONOR, WE'LL FILE.

25           THE COURT:  OKAY.  MR. RAMOS IS GOING TO GIVE YOU

1   THAT DATE IN JUST A MOMENT.

2           THE DEPUTY CLERK:  SEPTEMBER 25TH, AT NINE O'CLOCK

3   A.M.

4           MR. PLETCHER:  VERY GOOD.

5           MR. BURSTEIN:  THANK YOU.

6           AND THE MARCH HEARING, IS THAT MARCH 5TH HEARING AT

7   2:30?

8           THE COURT:  YES, SIR.

9           MR. BURSTEIN:  OKAY.

10          THE COURT:  OKAY.  THANK YOU.

11          MR. BURSTEIN:  WE'RE ON IT, YOUR HONOR.

12          THE COURT:  THANK YOU.

13          MR. BURSTEIN:  THANK YOU.

14          MS. JENKINS:  THANK YOU.

15          MR. PLETCHER:  THANK YOU, JUDGE.  HAVE A GOOD

16  WEEKEND.

17          THE COURT:  YOU, TOO.  THANK YOU.  GOOD-BYE.

18          (PROCEEDINGS ADJOURNED AT 11:52 A.M.)

19  ------------------------------------------------------------

20              (END OF TRANSCRIPT)

21

22

23

24

25

1         I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

2  HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

3  ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

4

5        S/FRANK J. RANGUS

6        FRANK J. RANGUS, OCR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**Calendar of the United States District Court**
**Southern District of California**
**San Diego**
**Friday, January 29, 2021**
**Courtroom 4D**

**Present the Honorable: Janis L. Sammartino**     **District Judge**

Deputy Clerk: A. Ramos          Court Reporter/ECR: F RANGUS          Interpreter:

## \*\*\* SEALED PROCEEDINGS \*\*\*
## 11:30 AM

**1a.**  13CR3781-JLS      USA    V.    **LEONARD GLENN FRANCIS**
         13CR3782-JLS
         13CR4287-JLS
                                  **RETD  DEVIN BURSTEIN**
                                         **KATIE JENKINS**
                                         JEREMY WARREN

                                  **AUSA  MARK PLETCHER**

                                  **PSO   WILLIAM PARELES**
                                         ALDO LOPEZ
                                         KIMURA HAZARD
                                         VANESSA ANDREWS
                                         MARISA ZVERS

                                  **USM   DENNIS COUGHLIN**

**STATUS HEARING**

Notes:

STATUS HEARING CONTINUED TO **3/5/2021 AT 2:30 PM**
MEDICAL FURLOUGH EXTENDED TO 3/8/2021

DEFENSE COUNSEL TO SUBMIT JOINT MOTION/PROPOSED ORDER TO CONTINUE SENTENCE W/PSR FROM
3/26/2021 TO 9/25/2021 AT 9:00 AM

**0:28**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA   **SEALED**

UNITED STATES OF AMERICA

vs

LEONARD GLENN FRANCIS

CASE NUMBER  13CR3781-JLS

**ABSTRACT OF ORDER**

Booking No.  45415298

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  **January 29, 2021**

the Court entered the following order:

|  |  |
|---|---|
| ✕ | Defendant be release from custody. |
|  | Defendant placed on supervised / unsupervised probation / supervised release. |
|  | Defendant continued on supervised / unsupervised probation / supervised release. |
| ✕ | Defendant released on     **O/R W/GPS**     Bond posted. |
|  | Defendant appeared in Court.  FINGERPRINT & RELEASE. |
|  | Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated. |
|  | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
|  | Bench Warrant Recalled. |
|  | Defendant forfeited collateral. |
|  | Case dismissed. |
|  | Case dismissed, charges pending in case no. |
|  | Defendant to be release to Pretrial Services for electronic monitoring. |
| ✕ | Other.  The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until March 8, 2021. The defendant will return to custody and continue detention on March 8, 2021. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

2/4/21

Electronically Sent to USMS

**ATTN: DENNIS COUGHLIN, DUSM**

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

Crim-9 (Rev. 05/20)
Original

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA



**SEALED**

| UNITED STATES OF AMERICA | CASE NUMBER 13CR3782-JLS |
|---|---|
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No. 45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of **January 29, 2021**

the Court entered the following order:

|  |  |
|---|---|
| ✕ | Defendant be release from custody. |
|  | Defendant placed on supervised / unsupervised probation / supervised release. |
|  | Defendant continued on supervised / unsupervised probation / supervised release. |
| ✕ | Defendant released on **O/R W/GPS** Bond posted. |
|  | Defendant appeared in Court.  FINGERPRINT & RELEASE. |
|  | Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated. |
|  | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
|  | Bench Warrant Recalled. |
|  | Defendant forfeited collateral. |
|  | Case dismissed. |
|  | Case dismissed, charges pending in case no. |
|  | Defendant to be release to Pretrial Services for electronic monitoring. |
| ✕ | Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until March 8, 2021. The defendant will return to custody and continue detention on March 8, 2021. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

2/4/21

Electronically Sent to USMS

ATTN: DENNIS COUGHLIN, DUSM

OR

JOHN MORRILL, Clerk of Court

by    Alex Ramos ext. 5291

Crim-9 (Rev. 05/20)
Original

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          )     13-CR-3781-JLS
         PLAINTIFF,                )     13-CR-3782-JLS
                                   )     13-CR-4287-JLS
VS.                                )
                                   )     SAN DIEGO, CA
LEONARD GLENN FRANCIS, *ET AL.*,   )     MARCH 12, 2021
         DEFENDANTS.               )     2:30 P.M.

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:  OFFICE OF THE U. S. ATTORNEY
                     BY:  MARK W. PLETCHER, ESQ.
                     880 FRONT STREET, RM. 6293
                     SAN DIEGO, CA  92101

FOR THE DEFENDANT:   WARREN & BURSTEIN
                     BY:  DEVIN J. BURSTEIN, ESQ.
                          KATIE JENKINS, ESQ.
                     501 W. BROADWAY, SUITE 240
                     SAN DIEGO, CA  92101

PRETRIAL SERVICES:   ALDO LOPEZ

COURT REPORTER:      FRANK J. RANGUS, OCR
                     U. S. COURTHOUSE
                     333 W. BROADWAY, SUITE 420
                     SAN DIEGO, CA  92101
                     (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                          PAGE

NEXT HEARING DATE                      14

1            THE DEPUTY CLERK:  NUMBER 17 ON THE CALENDAR,

2    13-CR-3781, 13-CR-3782, 13-CR-4287, THE UNITED STATES VS.

3    LEONARD GLENN FRANCIS, FOR A STATUS HEARING.

4            COUNSEL, PLEASE STATE YOUR APPEARANCES, BEGINNING

5    WITH DEFENSE.

6            (PAUSE)

7            THE COURT:  WHO DO WE HAVE APPEARING FOR THE DEFENSE

8    THIS AFTERNOON?

9            MR. BURSTEIN:  GOOD AFTERNOON, YOUR HONOR.  THIS IS

10   DEVIN BURSTEIN APPEARING FOR MR. FRANCIS, ALONG WITH KATIE

11   JENKINS, AND MR. FRANCIS IS ALSO ON THE PHONE, YOUR HONOR.

12           THE COURT:  OKAY.  THANK YOU.  GOOD AFTERNOON,

13   COUNSEL.

14           GOOD AFTERNOON, MR. FRANCIS.

15           APPEARING ON BEHALF OF THE GOVERNMENT.

16           MR. PLETCHER:  GOOD AFTERNOON, JUDGE.  MARK PLETCHER

17   FOR THE UNITED STATES.

18           THE COURT:  THANK YOU.

19           APPEARING ON BEHALF OF PRETRIAL.

20           MR. LOPEZ:  GOOD AFTERNOON, YOUR HONOR.  ALDO LOPEZ,

21   PRETRIAL SERVICES.

22           THE COURT:  THANK YOU.

23           WHO WOULD LIKE TO BEGIN?  IT'S PROBABLY APPROPRIATE

24   FOR MR. BURSTEIN TO GO FIRST.

25           MR. BURSTEIN:  THANK YOU VERY MUCH, YOUR HONOR.

1    SO IT TOOK LONGER THAN WE WANTED TO, AND I KNOW
2    CERTAINLY LONGER THAN THE COURT WANTED IT TO, BUT WE FEEL LIKE
3    WE FINALLY GOT A HANDLE ON GETTING THE MEDICAL REPORTS THE WAY
4    THEY SHOULD BE DONE AFTER WHAT HAPPENED THE LAST TIME. SO WE
5    SUBMITTED TWO DIFFERENT REPORTS TO THE COURT AND THE
6    GOVERNMENT AND PRETRIAL. WE THINK THEY -- I HOPE, UNLESS THE
7    COURT, YOU KNOW -- I HOPE THAT THOSE SATISFY WHAT WE NEEDED TO
8    DO IN TERMS OF BRINGING EVERYBODY UP TO SPEED ON THE
9    CONTINUING NEED FOR THE MEDICAL FURLOUGH, GIVE EVERYBODY THE
10   UPDATE THAT THEY WERE LOOKING FOR, INCLUDING US.

11        SO WE KNOW THAT WE -- WELL, LET ME JUST BACK UP. WE
12   TOOK, OBVIOUSLY, THE COURT'S ADVICE. IT WAS VERY GOOD ADVICE,
13   TO FIND A THIRD-PARTY DOCTOR, AND SO WE HAVE DONE THAT WITH
14          WE EXPECT THAT, GOING FORWARD FOR THE FORESEEABLE
15   FUTURE,          WILL BE THE PRIMARY PERSON PROVIDING MEDICAL
16   UPDATES TO THE COURT AND THE GOVERNMENT. AS          WAS
17   GETTING UP TO SPEED, THERE WAS THE NEW INFORMATION ABOUT THE
18                    . SO WE WERE ABLE TO -- WELL, MR. FRANCIS,
19   REALLY, WAS ABLE TO GET THAT AND AT LEAST GIVE US SOMETHING TO
20   PROVIDE THE COURT ABOUT THAT NEW INFORMATION. SO, JUST SO THE
21   COURT KNOWS, HE WORKED VERY DILIGENTLY PUSHING THE DOCTORS AT
22          THAT HE REALLY NEEDED THIS STUFF TO GIVE TO THE COURT AND
23   WITH          . SO, REALLY, THE CREDIT IS TO HIM, NOT US, THAT
24   HE WAS ABLE TO FINALLY GET THIS DONE IN THE WAY THAT IT SHOULD
25   BE DONE.

1        SO WHAT WE KNOW NOW IS THAT THERE'S CONCERNING ███

2    AROUND THE ███, THAT THERE'S AN ██████████ SCHEDULED FOR

3    THE END OF THIS MONTH, THAT IT DOES APPEAR THAT THE ███

4    REALLY NEEDS TO BE ██████. IT'S POSSIBLE THAT THEY CAN DO

5    THE TESTING OF THE ███ AROUND THE ███ AND THE ███ ███

6    IN THE SAME PROCEDURE, BUT THEY'RE NOT SURE IF MR. FRANCIS WAS

7    TOO GREAT AT RISK. SO THAT IS SOMETHING STILL BEING FIGURED

8    OUT.

9        BUT THAT IS WHERE WE ARE. I THINK THE REPORTS SPEAK

10   FOR THEMSELVES. I'M CERTAINLY NO EXPERT HERE, BUT I'M HAPPY

11   TO TRY AND ANSWER ANY QUESTIONS THE COURT MAY HAVE.

12       THE COURT: OKAY. SO THE NEXT APPOINTMENT THAT MR.

13   FRANCIS HAS IS THE END OF THIS MONTH?

14       MR. BURSTEIN: THAT'S JUST FOR AN ██████████. SO

15   THAT'S -- YEAH. SO THE ANSWER IS, HE HAS OTHER FOLLOW-UP

16   APPOINTMENTS, BUT I THINK THAT'S THE NEXT PROCEDURE, AND THEN

17   WE'RE STILL WAITING FOR THE SCHEDULING OF THE ██████████

18   AND THE TESTING OF THE ██████████. AND THE ███,

19   OBVIOUSLY, IS JUST FROM THE OUTSIDE, AND IT WILL NOT GO INTO

20   THE ██████████, AND MY UNDERSTANDING IS

21   THAT NEEDS TO HAPPEN LATER.

22       THE COURT: OKAY. SO, IN LIGHT OF THESE, WHAT IS

23   YOUR REQUEST THIS AFTERNOON, MR. BURSTEIN?

24       MR. BURSTEIN: YOUR HONOR, PRIOR TO THE UNFORTUNATE

25   HAPPENING OF ██████████, WE HAD BEEN ON A STEADY

1    COURSE IN PROVIDING REPORTS TO THE COURT ABOUT, ON A QUARTERLY
2    BASIS, AND I THINK -- MR. PLETCHER CAN CORRECT ME OR ALEX CAN
3    CORRECT ME IF I'M WRONG, BUT I THOUGHT WE WERE GOING OUT ABOUT
4    THREE MONTHS, WHICH WE'RE REALLY HAPPY TO DO WHATEVER PLEASES
5    THE COURT.  SO I SUGGEST WE GO OUT AND GO BACK TO THAT AND WE
6    PROVIDE ANOTHER REPORT IN A FEW MONTHS IN ADVANCE OF THE NEXT
7    HEARING AS WE HAVE MORE INFORMATION AND AS THE NEW DOCTORS
8    REALLY KIND OF GET A GRASP ON EVERYTHING.  IF THE COURT WANTS
9    TO DO IT SOONER, WE CAN DO IT SOONER, BUT MY SUGGESTION WOULD
10   BE APPROXIMATELY 90 DAYS.
11           THE COURT:  OKAY.  THANK YOU.
12           I HAVE BOTH THE LETTER FROM
13   , AND THEY WERE CERTAINLY BOTH MORE
14   HELPFUL THAN THE PRIOR INFORMATION.  SO I APPRECIATE THAT, MR.
15   BURSTEIN.
16           LET ME ASK MR. PLETCHER FOR HIS COMMENTS.
17           MR. PLETCHER:  THANK YOU, YOUR HONOR, AND I'VE GOT
18   BOTH LETTERS AS WELL.
19           REALLY, THE MESSAGING FROM BOTH LETTERS IS THAT MR.
20   FRANCIS IS DOING QUITE WELL, AND HIS PROGNOSIS, WHILE IT
21   REQUIRES A CAREFUL EYE AND DILIGENT ATTENTION, IT APPEARS FROM
22   THE LETTERS THAT HIS PROGNOSIS IS GOOD, PARTICULARLY WITH
23   RESPECT TO THE              .  SO I JUST WANT TO MAKE NOTE
24   OF THAT SPECIFICALLY AND THAT THAT'S A VERY IMPORTANT FINDING,
25   AND I THINK I AND THE COURT CAN SPEAK FOR EVERYONE IN THE

1  COURTROOM THAT WE CONTINUE TO WISH MR. FRANCIS THE BEST AS HE
2  GOES THROUGH THESE SORT OF MEDICAL ISSUES.

3  I HAVE NO EXACT OBJECTION TO MR. BURSTEIN'S REQUEST
4  TODAY, BUT I DO WANT TO TAKE A SECOND, AND MAYBE I'M NOT --
5  I'M SPEAKING FOR THE RECORD. I'M SPEAKING FOR MR. FRANCIS.
6  THE DEFENSE THAT TRANSPIRED WITH ▮▮▮▮▮▮ AND THE CHANGE IN
7  MR. FRANCIS' MEDICAL CARE FROM ▮▮▮▮▮ DOWN TO DIFFERENT
8  PHYSICIANS HAS CAUSED THE UNITED STATES AND THE COURT AND
9  EVERYBODY INVOLVED AN UNDULY BURDENSOME AMOUNT OF TIME, AND
10  IT'S TIME THAT COULD HAVE BEEN AVOIDED WITH ADDITIONAL
11  DILIGENCE ON MR. FRANCIS' BEHALF, ADDITIONAL NOTICE TO ME AND
12  TO THE COURT, AND ADDITIONAL COMMUNICATION SO WE KNEW WHAT WAS
13  GOING ON.

14  AND SO I WOULD LIKE TO REQUEST THAT AS WE MOVE
15  FORWARD, THAT WE BE PROVIDED WITH THE KINDS OF REAL-TIME
16  UPDATES AS TO MATERIAL CHANGES IN MR. FRANCIS' MEDICAL CARE
17  THAT WE DESERVE IN ORDER TO MAKE GOOD RECOMMENDATIONS AND FOR
18  THE COURT TO MAKE GOOD DECISIONS. I DON'T WANT TO BE IN THE
19  POSITION WE WERE IN BEFORE WHERE WE GOT UNSOLICITED LETTERS
20  COMING TO THE COURT AND EVERYBODY IS CAUGHT OFF-GUARD. THERE
21  WAS ABSOLUTELY NO CAUSE FOR THAT, AND, YOU KNOW, THIS, I
22  THINK, IS OUR THIRD OR FOURTH HEARING, YOU KNOW, SINCE THAT
23  TIME IN VERY SHORT ORDER, WITH AN ENORMOUS AMOUNT OF
24  COMMENSURATE WASTE, AND SO I WOULD ENCOURAGE MR. FRANCIS, I
25  WOULD ENCOURAGE MR. BURSTEIN AND MISS JENKINS TO DILIGENTLY

1    ATTEND TO THAT SO WE'RE NOT LEFT IN THIS POSITION.

2          FINALLY, YOUR HONOR, I'LL JUST UNDERSCORE WHAT WE

3    SEEM TO SAY AT EVERY HEARING, IS THAT THIS IS A VERY UNIQUE

4    AND DIFFICULT PROBLEM THAT WE'RE GRAPPLING WITH.  THIS IS NOT

5    ON A GLIDE-PATH COURSE THAT WILL JUST SORT OF BE RENEWED

6    WITHOUT OBJECTION OR SCRUTINY ON EVERY OCCASION.  SO WE REALLY

7    ARE GOING TO TAKE INTO ACCOUNT THE MEDICAL DIAGNOSIS, AND IF

8    MR. FRANCIS ACHIEVES A PLACE WHERE HIS HEALTH IS STABLE, THEN

9    EVERYONE HERE IS GOING TO RE-EVALUATE THE SITUATION AS TO

10   WHETHER THE MEDICAL FURLOUGH REMAINS APPROPRIATE WITH THE

11   POINT OF THIS FROM THE MARSHALS SERVICES' PERSPECTIVE, FROM

12   OUR PERSPECTIVE, THE COURT'S PERSPECTIVE, IS TO BE ABLE TO

13   PROVIDE MR. FRANCIS THE DESPERATELY NEEDED MEDICAL CARE THAT

14   HE COULD NOT OTHERWISE GET AND THAT THREATENED HIS HEALTH.

15   WHEN THAT CONDITION PREDICATE IS, DISSOLVES, THEN WE

16   NECESSARILY HAVE TO RE-EVALUATE WHERE WE ARE, AND SO THAT, I

17   THINK, IS JUST WORTH NOTING FOR THE RECORD.  THAT'S WHERE WE

18   HAVE BEEN AND CONTINUE TO BE EVERY TIME.

19         I KNOW THE COURT IS WATCHING THIS AND IS CAREFULLY

20   CONSIDERING ALL OF THE MEDICAL ADVICE ON EVERY OCCASION TO

21   MAKE THE BEST DECISION POSSIBLE IN THIS REGARD, AND, YOU KNOW,

22   I, AND FOR THE RECORD, THIS IS SOMETHING WHERE EVERYONE

23   INVOLVED IS GOING TO CONTINUE TO DO SO.

24         THE COURT:  MR. PLETCHER, LET ME JUST ASK YOU THIS.

25   I WANT TO MAKE SURE I HEARD YOU CORRECTLY.  AT THIS JUNCTURE,

1    GIVEN THESE TWO LETTERS AND WHAT MR. BURSTEIN HAS SAID, YOU DO

2    NOT OPPOSE AND YOU DON'T FEEL WE'VE REACHED THE POINT WHERE

3    THE MEDICAL FURLOUGH IS NO LONGER APPROPRIATE.

4         MR. PLETCHER:  THAT'S CORRECT, THOUGH, YOU KNOW, THIS

5    IS SOMETHING WHERE WE DEFER TO THE COURT'S ANALYSIS, AND

6    ULTIMATELY IT IS A DECISION LEFT WITH THE COURT.  BUT GIVEN

7    THE ISSUES, ESPECIALLY WITH THE

8    , WHICH I UNDERSTAND TO BE A

9    AND THAT POTENTIAL, THAT THAT'S           .

10    THERE'S ALSO THE ONGOING MONITORING OF THE

11    HAVE

12    YOU KNOW, BASED ON MY READING OF THIS RECORD.

13         SO I THINK, YOU KNOW, THERE'S STILL GOOD CAUSE.  I

14    DON'T THINK THE MARSHALS SERVICE IS RAISING THEIR HAND AND

15    EAGER TO SCHEDULE, YOU KNOW,

16    AND SO I THINK WE'RE STILL IN THAT SAME SITUATION.

17    BUT IT IS ONE WHERE, YOU KNOW, I THINK WHETHER IT'S ON A

18    THREE-MONTH BASIS, OR WHATEVER, YOU KNOW, REPORTS LIKE THIS

19    ARE CRITICAL, BECAUSE THE FACT THAT MR. FRANCIS HAS UNDERLYING

20    MEDICAL PROBLEMS IS REALLY SECONDARY TO AT LEAST OUR

21    CONSIDERATION OF THE ISSUE.

22         THE ISSUE IS                          AND HIS

23    TREATMENT FOR A LIFE-THREATENING DISEASE, AND SO WHILE I THINK

24    IT'S INTERESTING TO HAVE THIS LITANY OF THINGS LIKE, YOU KNOW,

25    AND, YOU KNOW, THE                              ,

1   THOSE ARE CONDITIONS THAT PEOPLE SUFFER SIMPLY WITH AGE AND

2   OTHER THINGS AND ARE NOT SPECIFICALLY UNIQUE IN ANYONE WHO'S

3   INSIDE OR OUTSIDE OF THE PRISON POPULATION.  WHAT WE'RE REALLY

4   LOOKING AT HERE IS THE LIFE-THREATENING CONDITIONS AND HOW

5   THOSE HAVE TO BE TREATED TO MAKE SURE THAT MR. FRANCIS HAS THE

6   ABILITY TO LIVE A LONG AND FRUITFUL LIFE WHEN, ULTIMATELY, ALL

7   THIS IS SAID AND DONE.

8           SO I THINK THAT IS WHERE WE COME OUT TODAY, AND WITH

9   MY OTHER COMMENTS, UNLESS THE COURT HAS ANYTHING ELSE.

10          THE COURT:  NO, THANK YOU.

11          MR. PLETCHER:  THANK YOU.

12          THE COURT:  DOES PRETRIAL WANT TO SAY ANYTHING AT

13  THIS TIME?

14          MR. LOPEZ:  NO, YOUR HONOR.  WE WOULD NOTE THAT MR.

15  FRANCIS HAS REMAINED IN COMPLIANCE.  WE HAVE CONDUCTED THREE

16  UNANNOUNCED VISITS SINCE THE LAST HEARING, AND NO ISSUES HAVE

17  BEEN ENCOUNTERED.

18          THE COURT:  OKAY.  EXCELLENT.

19          WELL, FOR MR. FRANCIS' STANDPOINT, WE HOPE, SIR,

20  SINCE YOU'RE LISTENING IN AND ON THE LINE --

21          MR. FRANCIS:  YES, YOUR HONOR.

22          THE COURT:  -- THAT YOU HAVE GOOD HEALTH.  ONCE AN

23  INDIVIDUAL, BE IT YOU OR ANYBODY ELSE, MR. FRANCIS, RECEIVES A

24  ████      DIAGNOSIS, WHICH IS SERIOUS WHATEVER ████ IT IS,

25  WHATEVER BODY PARTS, IT'S A SERIOUS THING.  LIFE IS DIFFERENT

1  AFTER THAT POINT. NOW, THAT DOESN'T MEAN THAT YOU CAN'T LIVE
2  A LONG AND GOOD LIFE AFTER THAT. IT JUST MEANS THAT THE
3  MONITORING AND THE CONDITIONS THAT YOU GO THROUGH TO TAKE CARE
4  OF YOURSELF ARE A LITTLE DIFFERENT, OR SIGNIFICANTLY
5  DIFFERENT, AND I THINK THE REQUEST FOR REAL-TIME UPDATES ON
6  YOUR CONDITION THAT MR. PLETCHER MENTIONED IS A GOOD ONE TO
7  HELP THE COURT BEST UNDERSTAND WHAT'S GOING ON, AND I TEND TO
8  AGREE THAT MANY OF THE THINGS THAT ARE MENTIONED IN YOUR
9  MEDICAL HISTORY ARE NOT OF THE NATURE THAT, EVEN COLLECTIVELY,
10 WOULD CAUSE THIS COURT TO GRANT A MEDICAL FURLOUGH. WHAT
11 CAUSED THIS COURT TO GRANT A MEDICAL FURLOUGH WAS A
12 LIFE-THREATENING DIAGNOSIS AND THE NEED FOR ACCURATE TREATMENT
13 ON                        , AND WITH A LITTLE GOOD FORTUNE AND
14 A LOT OF GOOD MEDICAL CARE, HOPEFULLY, THAT IS BROUGHT UNDER
15 CONTROL.
16         NOW, HAVING SAID THAT, I THINK YOU'RE AT A CROSSROADS
17 RIGHT NOW WHERE SOME TESTS ARE GOING TO BE DONE, SOME ANALYSIS
18 IS GOING TO BE DONE, AND I'M NOT SUGGESTING THAT, TODAY,
19 THERE'S NOT A NEED FOR THE CONTINUED MEDICAL FURLOUGH, BUT I
20 WOULD SAY THIS. A DIAGNOSIS OF          THAT IS ACCEPTABLY
21 TREATED AND MANAGED DOES NOT NECESSARILY MEAN THAT SOMEBODY,
22 FOR THE BALANCE OF WHATEVER TIME THE CASE CONTINUES, WARRANTS
23 A MEDICAL FURLOUGH, AND I THINK THAT'S SOMETHING THAT I KNOW,
24 MR. FRANCIS, YOU'RE MINDFUL OF, AND I KNOW YOUR COUNSEL IS
25 MINDFUL OF.

1    SO I WOULD LIKE TO REQUEST, BOTH TO THE GOVERNMENT

2    AND THE COURT, REAL-TIME UPDATES ON YOUR CONDITION.  I'M GOING

3    TO SET THIS MATTER AND CONTINUE THE MEDICAL FURLOUGH FOR 90

4    DAYS, BECAUSE WITHIN THAT 90 DAYS THERE SHOULD BE SOME

5    REAL-TIME UPDATES WITH REGARD TO WHAT HAPPENS ON THE TESTING

6    AND ANALYSIS THAT'S GOING TO BE DONE ON THE

7    A VARIETY OF THINGS, AND WE'LL CONTINUE TO DO SO AND

8    MONITOR THIS SITUATION.

9    BUT THIS IS AN EXTRAORDINARY RELIEF THAT'S BEEN

10   GRANTED HERE.  I'VE BEEN A JUDGE FOR, GOSH, MORE YEARS THAN I

11   WOULD CARE TO ADMIT.  I THINK IT'S, YOU KNOW, APPROACHING 27,

12   28 YEARS NOW, AND, MR. FRANCIS, I THINK YOU'RE THE ONLY PERSON

13   WHERE A MEDICAL FURLOUGH THAT HAS EXTENDED FOR THAT PERIOD OF

14   TIME HAS EXISTED.  CERTAINLY, YOU GRANT A MEDICAL FURLOUGH FOR

15   LIFE-SAVING SURGERY OR SOMETHING THAT CAN ONLY BE PERFORMED IN

16   AN OUTPATIENT OR IN A PRIVATE HOSPITAL, BUT THIS HAS GONE ON

17   FOR QUITE SOME TIME, AND WE DON'T EVER WANT TO BE IN THE

18   POSITION AS WE WERE WHEN WE DID RECEIVE, WHEN I RECEIVED THE

19   UNSOLICITED LETTER FROM YOUR PRIOR PHYSICIAN

20   THAT WAS UNCALLED FOR, IT WAS

21   UNWARRANTED, AND WE SHOULDN'T HAVE SEEN IT THAT WAY.  WE'VE

22   GOTTEN PAST THAT.  YOU'VE GOT A NEW TEAM ON BOARD.  AGAIN,

23   IT'S BEEN HELPFUL TO RECEIVE THESE LETTERS, BUT I'M GOING TO

24   CONTINUE THE FURLOUGH TO SEE WHERE THESE TESTS LEAD.

25   BUT WE WISH YOU A LONG LIFE, AND I THINK THAT'S

1    DEFINITELY POSSIBLE. THE MEDICAL CARE THAT THAT'S GOING TO

2    REQUIRE BECAUSE OF YOUR ORIGINAL DIAGNOSIS IS DIFFERENT THAN

3    HAD YOU NOT HAD THAT DIAGNOSIS, AND I GUESS THE QUESTION IS,

4    DOES THAT CONDITION OF ████████████████████████████

5    ████████████████████████████████? AND, YOU KNOW,

6    THAT'S GOING TO HAVE TO BE AN ANALYSIS THAT'S PERFORMED AS WE

7    GO THROUGH THIS.

8          SO I'M PUTTING THIS OVER 90 DAYS, ALEX, FOR FURTHER

9    STATUS.

10          BUT I DO EXPECT, MR. BURSTEIN, IN THE MEANTIME TO

11   HAVE SOME UPDATES TO MR. PLETCHER AND THE COURT.

12         GO AHEAD, MR. PLETCHER.

13         MR. PLETCHER: YOUR HONOR, I JUST WANTED TO REMIND

14   THE COURT, AND AS LONG AS THE COURT IS TALKING ABOUT UPDATES,

15   THERE WAS ORIGINALLY A PROPOSAL THAT MR. FRANCIS WOULD HAVE A

16   ████████████████████████████████████████████████████.

17   THAT HAS BEEN PUT OFF BECAUSE OF HIS ILL HEALTH AND OTHER

18   TYPES AND OTHER TREATMENT PLANS. THAT WAS SOMETHING THAT,

19   BACK IN THE DAY, WAS MEANT TO BE KIND OF A MORE PERMANENT,

20   SUCCESSFUL TREATMENT OPTION, AND SO IF THAT REMAINS UNDER

21   CONSIDERATION BY THE ████████, MAYBE THE NEXT UPDATE, OR AT

22   LEAST IN 90 DAYS, WE'D HAVE SOME REPORT AS TO WHETHER THAT WAS

23   PROPOSED, BECAUSE I JUST -- THAT WOULD BEAR UPON AT LEAST MY

24   RECOMMENDATIONS TO THE COURT AND THE COURT'S DECISION-MAKING

25   IF DOCTORS WERE THINKING THREE OR SIX MONTHS OUT THERE'S GOING

1    TO BE A ████████████████ OR SOMETHING LIKE THAT.  SO I

2    JUST WANTED TO PUT THAT OUT THERE AS A POSSIBILITY THAT, AS TO

3    INFORMATION WE MIGHT RECEIVE BEFORE THE NEXT HEARING.

4          THANK YOU.

5          THE COURT:  OKAY.  I THINK THAT'S A POINT WELL TAKEN,

6    MR. BURSTEIN.

7          MR. BURSTEIN:  YES, YOUR HONOR.  I UNDERSTAND, AND WE

8    WILL FOLLOW UP WITH THE DOCTORS ABOUT THAT.

9          THE COURT:  OKAY.

10         SO, ALEX, GO AHEAD AND SET THE NEXT HEARING.

11         THE DEPUTY CLERK:  STATUS HEARING WILL BE SET FOR

12   JUNE 18, AT ELEVEN O'CLOCK A.M.  MEDICAL FURLOUGH WILL BE

13   EXTENDED TO JUNE 21ST, 2021.

14         THE COURT:  OKAY.  ANYTHING ELSE, MR. BURSTEIN, MISS

15   JENKINS, MR. FRANCIS, MR. PLETCHER, OR PRETRIAL?

16         MR. PLETCHER:  NOTHING FROM THE UNITED STATES.

17         THANK YOU, JUDGE.

18         MR. LOPEZ:  NO, YOUR HONOR.

19         MR. BURSTEIN:  NO, YOUR HONOR.

20         THE COURT:  OKAY.  THANK YOU.

21         MR. BURSTEIN:  THANK YOU, YOUR HONOR.

22         THE COURT:  THANK YOU.

23         MR. BURSTEIN:  HAVE A GOOD AFTERNOON AND GOOD

24   WEEKEND.

25         THE COURT:  THANK YOU.  YOU, TOO.

1    MR. BURSTEIN:  THANK YOU.  BYE-BYE.

2    THE COURT:  THANK YOU, MR. PLETCHER.

3    MR. PLETCHER:  THANK YOU, JUDGE.  IT'S GOOD TO SEE

4    YOU.

5    (PROCEEDINGS ADJOURNED AT 2:55 P.M.)

6    ----------------------------------------------------------------

7    (END OF TRANSCRIPT)

8

9    I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

10   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

11   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

12

13   S/FRANK J. RANGUS

14   FRANK J. RANGUS, OCR

15

16

17

18

19

20

21

22

23

24

25



**Calendar of the United States District Court**
**Southern District of California**
**San Diego**
**Friday, March 12, 2021**
**Courtroom 4D**

**Present the Honorable: Janis L. Sammartino**          District **Judge**

Deputy Clerk: A. Ramos          Court Reporter/ECR: F RANGUS          Interpreter:

---

## \*\*\* SEALED PROCEEDINGS
### \*\*\* 2:30 PM

**17.**  **13CR3781-JLS**          **USA   V.**   **LEONARD GLENN FRANCIS**
     **13CR3782-JLS**
     **13CR4287-JLS**

                              **RETD   DEVIN BURSTEIN (TELEPHONIC)**
                                     **KATIE JENKINS**
                                     JEREMY WARREN

                              **AUSA   MARK PLETCHER**

                              **PSO    WILLIAM PARELES**
                                     ALDO LOPEZ
                                     KIMURA HAZARD
                                     VANESSA ANDREWS
                                     MARISA ZVERS

                              **USM    DENNIS COUGHLIN**

#### STATUS HEARING

Notes:

Sentence w/PSR set for **9/24/2021 at 9:00 AM**

Medical Furlough extended to 3/15/2021

PARTIES TO PROVIDE THE COURT REAL-TIME UPDATES OF DEFENDANT'S MEDICAL CONDITION

STATUS HEARING CONTINUED TO **6/18/2021 AT 11:00 AM**

MEDICAL FURLOUGH EXTENDED TO **6/21/2021**

**0:20**

---

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER 13CR3781-JLS |
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No. 45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of **March 12, 2021**

the Court entered the following order:

_____ X _____ Defendant be release from custody.

_____ Defendant placed on supervised / unsupervised probation / supervised release.

_____ Defendant continued on supervised / unsupervised probation / supervised release.

_____ X _____ Defendant released on _____ O/R W/GPS _____ Bond posted.

_____ Defendant appeared in Court. FINGERPRINT & RELEASE.

_____ Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated.

_____ Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____ Bench Warrant Recalled.

_____ Defendant forfeited collateral.

_____ Case dismissed.

_____ Case dismissed, charges pending in case no.

_____ Defendant to be release to Pretrial Services for electronic monitoring.

_____ X _____ Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until June 21, 2021. The defendant will return to custody and continue detention on June 21, 2021.

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

3/16/21

Electronically Sent to USMS

**ATTN: DENNIS COUGHLIN, DUSM**

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **To:** | Alex Ramos |
| **Sent:** | Tuesday, March 16, 2021 3:14 PM |
| **Subject:** | Read: 13CR3781 Sealed Abstract |

Your message

To: CAS Releases
Subject: 13CR3781 Sealed Abstract
Sent: Tuesday, March 16, 2021 2:30:07 PM (UTC-08:00) Pacific Time (US & Canada)

was read on Tuesday, March 16, 2021 3:13:29 PM (UTC-08:00) Pacific Time (US & Canada).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER 13CR3782-JLS |
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No. 45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of **March 12, 2021**

the Court entered the following order:

X  Defendant be release from custody.

_____ Defendant placed on supervised / unsupervised probation / supervised release.

_____ Defendant continued on supervised / unsupervised probation / supervised release.

X  Defendant released on **O/R W/GPS** Bond posted.

_____ Defendant appeared in Court. FINGERPRINT & RELEASE.

_____ Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated.

_____ Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____ Bench Warrant Recalled.

_____ Defendant forfeited collateral.

_____ Case dismissed.

_____ Case dismissed, charges pending in case no.

_____ Defendant to be release to Pretrial Services for electronic monitoring.

X  Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until June 21, 2021. The defendant will return to custody and continue detention on June 21, 2021.

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

JOHN MORRILL, Clerk of Court

by Alex Ramos ext. 5291

3/16/21

Electronically Sent to USMS

**ATTN: DENNIS COUGHLIN, DUSM**

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **To:** | Alex Ramos |
| **Sent:** | Tuesday, March 16, 2021 3:15 PM |
| **Subject:** | Read: 13CR3782 Sealed Abstract (Duplicate Email) |

Your message

To: CAS Releases
Subject: 13CR3782 Sealed Abstract (Duplicate Email)
Sent: Tuesday, March 16, 2021 2:31:45 PM (UTC-08:00) Pacific Time (US & Canada)

was read on Tuesday, March 16, 2021 3:14:37 PM (UTC-08:00) Pacific Time (US & Canada).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER  13CR4287-JLS |
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No.  45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  March 12, 2021

the Court entered the following order:

| | |
|---|---|
| ✕ | Defendant be release from custody. |
| | Defendant placed on supervised / unsupervised probation / supervised release. |
| | Defendant continued on supervised / unsupervised probation / supervised release. |
| ✕ | Defendant released on  O/R W/GPS  Bond posted. |
| | Defendant appeared in Court.  FINGERPRINT & RELEASE. |
| | Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated. |
| | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
| | Bench Warrant Recalled. |
| | Defendant forfeited collateral. |
| | Case dismissed. |
| | Case dismissed, charges pending in case no. |
| | Defendant to be release to Pretrial Services for electronic monitoring. |
| ✕ | Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until June 21, 2021. The defendant will return to custody and continue detention on June 21, 2021. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

3/16/21

Electronically Sent to USMS

JOHN MORRILL, Clerk of Court

**ATTN: DENNIS COUGHLIN, DUSM**

by   Alex Ramos ext. 5291

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **To:** | Alex Ramos |
| **Sent:** | Tuesday, March 16, 2021 3:15 PM |
| **Subject:** | Read: 13CR4287 Sealed Abstract |

Your message

    To: CAS Releases
    Subject: 13CR4287 Sealed Abstract
    Sent: Tuesday, March 16, 2021 2:32:54 PM (UTC-08:00) Pacific Time (US & Canada)

 was read on Tuesday, March 16, 2021 3:14:53 PM (UTC-08:00) Pacific Time (US & Canada).

.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNDER SEAL**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos.: |
| Plaintiff, | 3:13-cr-03781-JLS<br>3:13-cr-03782-JLS |
| | 3:13-cr-04287-JLS |
| v. | |
| LEONARD GLENN FRANCIS, | ORDER CONTINUING STATUS<br>HEARING AND MODIFYING<br>RELEASE ORDER |
| Defendant. | SEALED |

Medical necessity having been established, and for good cause shown, the Court amends the temporary release order, as follows:

1. The status hearing shall be continued from June 18, 2021, to August 20, 2021, at 11:00 a.m.

2. The medical furlough is extended through August 23, 2021.

3. All other conditions remain in effect.

This order shall be filed under seal and shall be served on defense counsel and the Government. Defense counsel shall provide copies to the United States Marshals Service and Pretrial Services.

IT IS SO ORDERED.

Dated: June 1, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

1
2
3 **UNDER SEAL**
4 UNITED STATES DISTRICT COURT
5 FOR THE SOUTHERN DISTRICT OF CALIFORNIA
6
7 UNITED STATES OF AMERICA,

Case Nos.:
8       Plaintiff,

3:13-cr-03781-JLS
9

3:13-cr-03782-JLS

3:13-cr-04287-JLS
10       v.
11 LEONARD GLENN FRANCIS,

ORDER CONTINUING STATUS
HEARING AND MODIFYING
RELEASE ORDER
12
13       Defendant.

SEALED
14
15     Medical necessity having been established, and for good cause shown, the Court
16 amends the temporary release order, as follows:
17     1. The status hearing shall be continued from June 18, 2021, to August 20, 2021,
18       at 11:00 a.m.
19     2. The medical furlough is extended through August 23, 2021.
20     3. All other conditions remain in effect.
21     This order shall be filed under seal and shall be served on defense counsel and the
22 Government. Defense counsel shall provide copies to the United States Marshals Service
23 and Pretrial Services.
24     IT IS SO ORDERED.
25
26 Dated: June 1, 2021

Janis L. Sammartino
27

Hon. Janis L. Sammartino
United States District Judge
28

**UNDER SEAL**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos.: |
| Plaintiff, | 3:13-cr-03781-JLS |
| | 3:13-cr-03782-JLS |
| v. | 3:13-cr-04287-JLS |
| LEONARD GLENN FRANCIS, | ORDER CONTINUING STATUS HEARING AND MODIFYING RELEASE ORDER |
| Defendant. | SEALED |

Medical necessity having been established, and for good cause shown, the Court amends the temporary release order, as follows:

1. The status hearing shall be continued from June 18, 2021, to August 20, 2021, at 11:00 a.m.

2. The medical furlough is extended through August 23, 2021.

3. All other conditions remain in effect.

This order shall be filed under seal and shall be served on defense counsel and the Government. Defense counsel shall provide copies to the United States Marshals Service and Pretrial Services.

IT IS SO ORDERED.

Dated: June 1, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 13-CR-3781-JLS |
| PLAINTIFF, | ) | 13-CR-3782-JLS |
| | ) | 13-CR-4287-JLS |
| VS. | ) | |
| | ) | SAN DIEGO, CA |
| LEONARD GLENN FRANCIS, *ET AL.*, | ) | AUGUST 23, 2021 |
| DEFENDANTS. | ) | 2:00 P.M. |

UNDER SEAL

TRANSCRIPT OF STATUS HEARING

BEFORE THE HONORABLE JANIS L. SAMMARTINO

UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:  OFFICE OF THE U. S. ATTORNEY
                     BY:  MARK W. PLETCHER, ESQ.
                     880 FRONT STREET, RM. 6293
                     SAN DIEGO, CA  92101

FOR THE DEFENDANT:   WARREN & BURSTEIN
                     BY:  DEVIN J. BURSTEIN, ESQ.
                          KATIE JENKINS, ESQ.
                     501 W. BROADWAY, SUITE 240
                     SAN DIEGO, CA  92101

PRETRIAL SERVICES:   JUSTIN GARCIA

COURT REPORTER:      FRANK J. RANGUS, OCR
                     U. S. COURTHOUSE
                     333 W. BROADWAY, SUITE 420
                     SAN DIEGO, CA  92101
                     (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

PROCEEDINGS:                          PAGE

HEARING DATES                          18

1    THE DEPUTY CLERK:  NUMBER ONE ON THE CALENDAR,

2    13-CR-3781, 13-CR-3782, 13-CR-4287, UNITED STATES VS. LEONARD

3    GLENN FRANCIS, FOR A SEALED STATUS HEARING.

4    MS. JENKINS:  GOOD AFTERNOON, YOUR HONOR.  KATIE

5    JENKINS AND DEVIN BURSTEIN ON BEHALF OF MR. FRANCIS.

6    THE COURT:  THANK YOU.  GOOD AFTERNOON.

7    MR. PLETCHER:  GOOD AFTERNOON, JUDGE.  MARK PLETCHER

8    FOR THE UNITED STATES.

9    LET ME JUST BEG THE COURT'S FORGIVENESS FOR NOT BEING

10   HERE ON FRIDAY.  I WAS OUT OF THE DISTRICT WITH MY SON DEEP

11   INTO THE YELLOWSTONE BACK COUNTRY.  I HAD FORGOTTEN TO ALERT

12   OTHERS TO THE FACT OF THE HEARING, AND BECAUSE IT'S SEALED, IT

13   DIDN'T COME UP ON ECF, AND I HUMBLY APOLOGIZE.  I THINK IN MY

14   TEN YEARS IN THE DISTRICT THAT'S THE FIRST COURT HEARING I'VE

15   EVER MISSED.

16   THE COURT:  HOW LONG HAS THIS CASE BEEN PENDING, MR.

17   PLETCHER?  YEARS.

18   MR. PLETCHER:  MAYBE FOREVER.

19   THE COURT:  IT FEELS LIKE FOREVER.  BUT LET ME SAY

20   THIS.  IT'S THE FIRST TIME IT'S EVER HAPPENED.  APOLOGIES

21   ACCEPTED.  WE UNDERSTAND.

22   MR. PLETCHER:  THANK YOU, JUDGE.

23   WE INDICTED THE FIRST -- WE ARRESTED THE FIRST SERIES

24   OF DEFENDANTS AND INDICTED THE FIRST SERIES OF CASES IN

25   SEPTEMBER, 2013.

1    THE COURT:  OKAY.  SO LONGER THAN I THOUGHT.  I WAS
2  GOING TO SAY SIX YEARS.  WELL, OKAY.  IT'S NEVER HAPPENED
3  BEFORE.  I UNDERSTAND.
4    MR. GARCIA:  AND GOOD AFTERNOON, YOUR HONOR.  JUSTIN
5  GARCIA FOR PRETRIAL.
6    THE COURT:  OKAY.  I DON'T KNOW HOW I HAVE RECEIVED
7  IT, BUT I HAVE A LETTER FROM ▆▆▆ SIGNED BY DOCTOR -- I DON'T
8  KNOW HOW HE PRONOUNCES HIS NAME.  ▆▆▆▆▆▆▆▆▆▆▆ ]?
9    MS. JENKINS:  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆
10   THE COURT:  TELL ME ABOUT HIS CONDITION.  SO GO
11 AHEAD, MISS JENKINS.
12   MS. JENKINS:  YES, YOUR HONOR.  SO WE PROVIDED THE
13 LETTER FROM ▆▆▆▆▆▆▆, WHO IS MR. FRANCIS' TREATING
14 PHYSICIAN OVER AT ▆▆.  IN THE LETTER, WE HAVE SEVERAL
15 UPDATES FROM THE PREVIOUS LETTER THAT WE PROVIDED TO THE
16 COURT.  MOST NOTABLY, HIS ▆▆ IN HIS, ▆▆▆▆▆, THE ▆▆
17 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  HE HAS A
18 FOLLOW-UP ▆▆▆▆▆▆, I BELIEVE, NEXT WEEK TO MONITOR
19 THE --
20   THE COURT:  GET A LITTLE BIT CLOSER.
21   MS. JENKINS:  SURE.  HE HAS A ▆▆ SCHEDULED NEXT
22 WEEK TO MONITOR ▆▆▆▆▆▆▆▆▆, AND HE'S WORKING WITH
23 A ▆▆▆▆▆▆▆▆ ON THOSE.
24   NOTABLY, THE NEXT PARAGRAPH DISCUSSES THE ▆▆
25 ▆▆▆▆▆▆▆▆.  THE DOCTORS ARE CONCERNED BECAUSE THEY

1    SEE ELEVATED █████████, MORE ████████████████████████.

2    THEY'RE CONCERNED THAT THERE COULD BE ████████████████.

3    ████████████████████. HE WILL HAVE A FOLLOW-UP IN SEPTEMBER

4    WITH AN ████████████████████████████. IF THERE'S MORE

5    ████████████████, THEY'LL HAVE TO DISCUSS EXTRACTING THE

6    ████████████████████████████████████████.

7    SO, ALL IN ALL, WE HAVE CONCERNS IN THE ████████

8    ████████████████████████████████████████████████

9    ████████████████████████ TO MAKE SURE THERE'S NO ISSUES

10   THERE.

11          THE COURT: SO WHAT IS THE REQUEST TODAY?

12          MS. JENKINS: SO THE PARTIES HAVE SPOKEN. WE'RE

13   REQUESTING TO CONTINUE THE NEXT STATUS MOST LIKELY OUT UNTIL

14   AFTER THE 7TH FLEET TRIAL, THE REASON BEING SO MR. FRANCIS CAN

15   FOCUS ON HIS TESTIMONY IN PREPARATION WITH THE GOVERNMENT, AND

16   WE'VE SPOKEN WITH THE GOVERNMENT ABOUT THAT. THEY'RE IN

17   AGREEMENT.

18          THE COURT: ARE THERE ANY SPECIAL ACCOMMODATIONS THAT

19   WILL BE NEEDED, MISS JENKINS, FOR HIS TESTIMONY? AND IF SO,

20   WHAT WOULD WE BE DOING TO ACCOMMODATE HIM?

21          MS. JENKINS: I THINK RIGHT OFF THE BAT -- WE HAVEN'T

22   HAD A CHANCE TO TALK ABOUT THOSE LOGISTICS, BUT I WOULD

23   SUGGEST PROBABLY A TIME-LIMIT ACCOMMODATION WHERE HE'S NOT ON

24   THE --

25          THE COURT: SO THE DURATION OF THE TIME THAT HE'S

1    ACTUALLY (PAUSE) --

2              MS. JENKINS:  RIGHT.

3              THE COURT:  -- TESTIFYING.

4              MS. JENKINS:  AND THAT WOULD BE THE FIRST ON THAT.

5              MR. BURSTEIN.

6              THE COURT:  GO AHEAD, MR. BURSTEIN.

7              MR. BURSTEIN:  YES, YOUR HONOR.  THANK YOU, YOUR

8    HONOR.  DEVIN BURSTEIN ON BEHALF OF MR. FRANCIS.

9              THAT WAS THE TIME ACCOMMODATION THAT WAS SIMILAR TO

10   WHAT WAS WORKED OUT DURING HIS TESTIMONY DURING THE

11   COURT-MARTIAL.  I THINK HE WAS ON THE STAND FOR NO MORE THAN

12   90 MINUTES AT A TIME, AND I THINK THE COURT HAD TASKED, THE

13   JUDGE IN THAT CASE HAD KIND OF TASKED US WITH MONITORING AND

14   THEN ALERTING THE GOVERNMENT IN THAT CASE TO RAISE THEIR HANDS

15   WHEN IT WAS TIME FOR HIM TO TAKE A BREAK.

16             THE COURT:  SO TELL ME THIS, AND I'VE NEVER READ THE

17   TRANSCRIPT OF THE COURT-MARTIAL, BUT 90 MINUTES AND WHAT?  A

18   BREAK AND THEN RETURNING, OR 90 MINUTES FOR A DAY AND THEN

19   COMING BACK THE NEXT DAY?  TELL ME EXACTLY HOW IT WORKED.

20             MR. BURSTEIN:  IT WAS THE FIRST, YOUR HONOR.  IT WAS

21   90 MINUTES FOLLOWED BY A 10- OR 15-MINUTE BREAK, AND THEN 90

22   MINUTES FOLLOWED BY A BREAK, AND THEN THAT USUALLY TOOK US

23   TILL ABOUT LUNCH.

24             THE COURT:  OKAY.  FAIR ENOUGH.

25             OKAY.  GO AHEAD, MISS JENKINS.  ANYTHING ELSE?

1    SO YOU WERE THINKING TO EXTEND THE MEDICAL FURLOUGH

2    TILL AFTER AT LEAST HE TESTIFIES IN THE TRIAL THAT'S UPCOMING.

3         MS. JENKINS:  UH-HUH.  CURRENTLY, I THINK THAT WOULD

4    LOOK AT ABOUT MAYBE THE END OF FEBRUARY OR EARLY MARCH.

5         THE COURT:  OKAY.  THANK YOU.

6         MR. PLETCHER.

7         MR. PLETCHER:  THANK YOU, JUDGE.

8         I THINK, BEFORE TURNING TO THOSE ISSUES, THE LETTER

9    FROM ▉ IS ACTUALLY REASONABLY ENCOURAGING COMPARED TO WHERE

10   WE COULD BE AND COMPARED TO WHEN WE STARTED THIS JOURNEY WHERE

11   MR. FRANCIS COULD HAVE BEEN.  YOU KNOW, HE'S STABLE AND

12   THEY'RE MONITORING.  THERE ARE AREAS OF CONCERNS WHERE THERE

13   WILL ALWAYS BE WITH A ▉▉▉▉▉▉▉▉▉ PATIENT, BUT ALL

14   IN ALL, YOU KNOW, HIS HEALTH IN THAT REGARD IS STABLE.  I

15   MEAN, PUT IN CONTEXT, THAT CAN CHANGE AT THE DROP OF A HAT --

16        THE COURT:  SURE.

17        MR. PLETCHER:  -- AND HE'S GOT TESTING COMING UP.

18   BUT I THINK THAT, ALL IN ALL, IS OVERALL GOOD NEWS.  I KNOW

19   THE COURT HAS EXPRESSED PREVIOUSLY, AND I HAVE, AND, OF

20   COURSE, MISS JENKINS AND MR. BURSTEIN HAVE, THAT MR. FRANCIS'

21   HEALTH IS THE REASON PREDOMINANTLY THAT ALL THESE VERY, VERY

22   UNIQUE CIRCUMSTANCES HAVE BEEN PUT IN PLACE, AND THE GOOD NEWS

23   IS, YOU KNOW, HE SEEMS TO BE RESPONDING WELL TO THAT.  SO

24   JUST --

25        THE COURT:  WELL, I DON'T REMEMBER, AND I KNOW MISS

1   JENKINS OR MR. BURSTEIN WOULD KNOW, EXACTLY WHEN THE MEDICAL
2   ISSUES STARTED.  DO YOU REMEMBER WHEN THEY STARTED?
3          MS. JENKINS:  THEY STARTED IN DECEMBER OF 2017.
4   WELL, THAT'S WHEN HE WAS OUT AND HIS ███████████  AND
5   THEY DISCOVERED ████████ .
6          THE COURT:  OKAY.  SO DECEMBER, 2017.
7          MR. PLETCHER:  AND IF THE COURT REMEMBERS, THE
8   INITIAL FURLOUGH WAS FOR THE VERY LIMITED PURPOSE FOR HIM TO
9   HAVE ████████  ON AN UNRELATED ISSUE, AND WHILE THEY WERE
10  HAVING, WHILE THEY WERE PERFORMING THAT ████████ , THEY WERE --
11  ████████████████████████████████████████████████████
12  ████████  I THINK HIS ████████  WAS REMOVED IN THE SAME ████████
13  ████████  AND THEN EVERYTHING HAS FLOWED FROM THERE.
14         THE COURT:  AND THE REASON I WAS ASKING IS, THE
15  DOCTOR ENDS ON A NOTE THAT MOST DOCTORS DON'T END ON THESE
16  DAYS IF YOU'RE TREATING ████████  AND I ASSUME HE'S TREATING
17  ████████████████████████████████████████████████████ .
18         MS. JENKINS:  YES.
19         THE COURT:  OKAY.  I MEAN, THE ████████████
20  ████████████████████████████████████████████  WHEN YOU
21  CONSIDER THE THINGS HE HAS.  HE'S CLOSE TO BEATING THAT
22  ████████  STATISTIC.  HE'S GETTING THE BEST OF CARE, AND WITH
23  A LITTLE GOOD FORTUNE HE WILL, AND WE HOPE THAT HE DOES, AND
24  THAT'S WHY I WAS ASKING HOW LONG IT'S BEEN.  I KNEW IT HAD
25  BEEN A NUMBER OF YEARS, BUT WE'RE CLOSE TO THE ████████  MARK.

1   SO (PAUSE).

2           MR. PLETCHER:  SO --

3           THE COURT:  GO AHEAD, MR. PLETCHER.

4           MR. PLETCHER:  SO THAT WAS JUST A BIT OF AN ASIDE.

5           THE GOVERNMENT THINKS THAT MISS JENKINS'

6   RECOMMENDATION IS RIGHT ON, YOU KNOW, TO EXTEND THE FURLOUGH

7   SOME PERIOD OF TIME.  OBVIOUSLY, WE HAVE THE 7TH FLEET TRIAL

8   STARTING NOVEMBER 1ST.  MR. FRANCIS IS EXPECTED TO TESTIFY.

9   YOU KNOW, WHETHER THAT COMES TO FRUITION EXACTLY OR NOT, I'M

10  NOT PROGNOSTICATING, BUT HE'S EXPECTED TO TESTIFY, AND SO, YOU

11  KNOW, PUTTING OUT BOTH THE STATUS CONFERENCE AS WELL AS, I

12  THINK, HIS SENTENCING IS SET HERE IN THE INTERVENING PERIOD

13  UNTIL THAT IS DONE.

14          THE COURT:  WHEN'S THE SENTENCING SET?

15          MS. JENKINS:  SEPTEMBER 24TH.

16          THE COURT:  OH, SEPTEMBER 24TH.  THAT'S DEFINITELY

17  GOING TO BE CONTINUED.  CORRECT?

18          MR. PLETCHER:  YES.  SO TO MOVE BOTH OF THOSE THINGS

19  OUT UNTIL EITHER, AT THE COURT'S PLEASURE, AFTER HIS TESTIMONY

20  OR AFTER THE COMPLETION OF THE TRIAL SEEMS PRUDENT.

21          THE COURT:  OKAY.  I WOULD SAY AFTER THE TRIAL, BUT

22  I'M OPEN TO SUGGESTIONS.  I MEAN, AT THIS POINT, IT SEEMS AS

23  THOUGH WE'RE ALL GOING TO BE VERY BUSY ONCE THAT TRIAL STARTS.

24  SO YOU WOULD, YOU WOULD (PAUSE).

25          MR. PLETCHER:  I DON'T HAVE ANY OBJECTION TO THAT,

1    YOUR HONOR.  I KNOW THE COURT HAS, YOU KNOW, TRIED TO KEEP A
2    CLOSE MONITOR OF APPROXIMATELY EVERY THREE MONTHS PREVIOUSLY.
3    OBVIOUSLY, THIS SITUATION IS DIFFERENT BECAUSE OF THE
4    INTERVENING TRIAL.  SO IF THE COURT'S COMFORTABLE TO THE
5    BEGINNING OF MARCH, THERE'S NO OBJECTION FROM THE GOVERNMENT.

6              THE COURT:  I'M JUST THINKING.  WE HAVE BEEN DOING
7    EVERY THREE MONTHS, HAVEN'T WE?

8              MR. PLETCHER:  APPROXIMATELY.  I MEAN, DEPENDING ON
9    MEDICAL APPOINTMENTS AND THE EBB AND FLOW OF SCHEDULES AND THE
10   COURT'S CALENDAR, SOMETIMES, YOU KNOW, IT SLIPS A LITTLE, BUT
11   APPROXIMATELY.

12             THE COURT:  YEAH.  OKAY.

13             MS. JENKINS:  AND JUST TO ADD TO THAT, WE CAN
14   CONTINUE TO PROVIDE THE COURT WITH AN UPDATED LETTER AS WE GET
15   INFORMATION.  WE CAN UPDATE THE COURT THAT WAY, THE WAY THAT
16   WE'VE BEEN DOING.  AS WE GET REPORTS RECEIVED, WE CAN TURN
17   THEM OVER.

18             THE COURT:  OKAY.  I'M JUST THINKING.  NOW, WE'RE ALL
19   GOING TO BE TOGETHER ANYWAY.  I ASSUME YOU'LL BE MONITORING,
20   EVEN AFTER HIS TESTIMONY, THAT TRIAL CAREFULLY.  I DON'T KNOW.
21   MAYBE YOU WON'T.  BUT YOU'VE BEEN WITH ME ON ALMOST EVERY TIME
22   I'VE BEEN IN SESSION ON THIS, MISS JENKINS, SO I ASSUME THAT'S
23   GOING TO CONTINUE THROUGHOUT THAT TRIAL.  SO I'M JUST
24   THINKING.  MAYBE WE SET A STATUS ON THE MEDICAL FURLOUGH
25   (PAUSE) --

1    MR. PLETCHER: JUDGE, MAYBE I HAVE --

2    THE COURT:  -- THE BEGINNING, THE VERY BEGINNING OF

3    THE YEAR.

4    MR. PLETCHER: I WAS GOING TO SAY I THINK WE HAVE

5    SUGGESTED WITH RESPECT TO THE TRIAL CALENDAR THAT THE TWO

6    WEEKS AROUND CHRISTMAS BE DARK.

7    THE COURT: RIGHT.

8    MR. PLETCHER: MAYBE THE COURT WANTS TO SET A STATUS

9    ON THIS MATTER WITHIN THAT PERIOD IF THE COURT IS GOING TO BE

10   IN SESSION ON ANY OF THOSE DAYS.

11   THE COURT: WITH A LITTLE GOOD FORTUNE, I WON'T BE,

12   BUT --

13   MR. PLETCHER: I HOPE.

14   THE COURT:  -- I THINK EVERYBODY'S GOING TO NEED A

15   BREAK, MR. PLETCHER. AND YOU WILL TOO, SIR. I MEAN, YOU'RE

16   MY LEAD TRIAL COUNSEL, AREN'T YOU?

17   MR. PLETCHER: YES.

18   THE COURT: OKAY. LOOK, YOU'RE GOING TO NEED A

19   BREAK, SIR, AND I THINK I WILL, TOO. BUT I'M STILL GOING TO

20   DO FRIDAY CALENDARS, AND THERE ARE GOING TO BE SOME FRIDAYS

21   THAT I HAVE TO BUMP TO A WEDNESDAY OR THURSDAY BECAUSE OF THE

22   COURT'S SCHEDULE. SO THERE ARE GOING TO BE SOME WEEKS, MR.

23   PLETCHER, DURING THAT TRIAL WHERE WE COULD SET THAT ON EITHER

24   A LATE FRIDAY AFTERNOON OR, YOU KNOW, LATE MORNING. I'M JUST

25   LOOKING AT THIS.

1    MR. PLETCHER:  WE'LL BE AVAILABLE, JUDGE, SO WHATEVER

2    DAY WORKS FOR THE COURT.

3    MR. JENKINS:  YOUR HONOR, WOULD IT BE POSSIBLE TO TRY

4    FOR THE END OF JANUARY AS OPPOSED TO THE BEGINNING?

5    THE COURT:  SURE.  DOES THAT HELP?

6    MS. JENKINS:  YES, WITH OUR SCHEDULES.

7    THE COURT:  OKAY.  I MEAN, IF THERE'S ANYTHING,

8    ANY -- IS THERE ANYTHING UPCOMING MEDICALLY THAT I NEED TO

9    TAKE INTO ACCOUNT, MISS JENKINS, IN SETTING THIS?

10   MS. JENKINS:  NO, YOUR HONOR.

11   THE COURT:  OKAY.  BUT YOU'D LIKE TO GO THE LATTER

12   PART OF JANUARY?

13   MS. JENKINS:  UH-HUH.

14   THE COURT:  WELL, LET'S SEE.

15   IS THE 17TH A HOLIDAY, ALEX?  IT'S CIRCLED.

16   THE DEPUTY CLERK:  IF IT'S CIRCLED, IT'S A HOLIDAY.

17   THE COURT:  IT'S A HOLIDAY.

18   HOW ABOUT THE 21ST OF JANUARY, IN THE AFTERNOON?

19   DOES THAT WORK?

20   MS. JENKINS:  THAT WORKS, YOUR HONOR.

21   THE COURT:  OKAY.  I MEAN, THAT'S GOING OUT ONE, TWO,

22   THREE, FOUR, ALMOST FIVE MONTHS.  SO THAT'S A LITTLE FARTHER

23   THAN I'D LIKE TO GO.  WHY DO WE NEED TO GO THAT FAR?  BECAUSE

24   (PAUSE).

25   MS. JENKINS:  I THINK JUST WITH THE HOLIDAYS IN

1  DECEMBER AND THEN EARLY JANUARY, PARTS OF OUR OFFICE, WE'RE

2  NOT HERE.  THE END OF JANUARY WORKS FOR OUR SCHEDULES.

3      THE COURT:  WE CAN ALSO PUT THIS ON -- WELL (PAUSE).

4  THERE ARE NOT A LOT OF CHOICES HERE.  BUT THE TRIAL IS LIKELY

5  TO GO -- DIDN'T I SET THE DATE AND THE TIME FOR 8:30 TO TWO

6  EACH DAY?

7      MR. PLETCHER:  YES, YOUR HONOR.

8      THE COURT:  SO WE COULD DO THIS AFTER A DAY OF TRIAL,

9  TOO.  SO LET ME THINK ABOUT THAT FOR A SECOND.  BECAUSE IT

10  WOULDN'T TAKE VERY LONG.  IT WOULD TAKE A BRIEFING ON HOW

11  THINGS ARE, JUST MAKE SURE.  I MEAN (PAUSE).

12      MR. PLETCHER:  IF WE MOVE IT A MONTH EARLIER, I

13  THINK, INTO EARLY TO MID-DECEMBER WITHOUT IMPACTING THE

14  SCHEDULE THAT MR. BURSTEIN AND MISS JENKINS HAVE TALKED ABOUT

15  AND STILL --

16      THE COURT:  I THINK THE WEEK OF THE 13TH OF DECEMBER,

17  ANY DAY AFTER TRIAL, I COULD DO.  LOOK AT YOUR SCHEDULES AND

18  SEE WHAT WORKS.  MR. PLETCHER IS GOING TO BE WITH ME.

19      MR. PLETCHER:  I WILL BE HERE.

20      MS. JENKINS:  HOW ABOUT DECEMBER 17TH?

21      THE COURT:  OKAY.  SO YOU'D RATHER -- YOU TAKE

22  GREATER CHANCES ON A FRIDAY CALENDAR BECAUSE THEY'RE SO

23  RIDICULOUSLY HEAVY THESE DAYS, AND THEN IF I KNOW I'M GOING TO

24  BE IN TRIAL EARLIER THAT WEEK, I KNOW I'M GOING TO END -- WHAT

25  DID I SAY?  TWO OR 2:30?

1          MR. PLETCHER: I THINK TWO O'CLOCK.

2          THE COURT: I THINK TWO O'CLOCK.

3          MR. PLETCHER: 8:30 TO TWO, MONDAY THROUGH THURSDAY.

4          MS. JENKINS: OKAY. THE 16TH.

5          THE COURT: LET'S GO WITH THE 16TH --

6          MS. JENKINS: YES.

7          THE COURT: -- AND LET'S PICK -- WE'LL BE DONE BY --

8     OKAY. DECEMBER THE 16TH. I'M GOING TO SAY TWO -- ALL RIGHT,

9     LET'S SAY THREE O'CLOCK. IT GIVES MR. PLETCHER A CHANCE TO

10    CATCH HIS BREATH, GRAB A CUP OF COFFEE, AND WE'LL RECONVENE.

11    IF WE CAN DO IT SOONER, YOU'LL PROBABLY BE HERE, TOO. SO

12    THAT'S WHAT WE'LL DO FOR FURTHER STATUS ON THE MEDICAL

13    FURLOUGH.

14          LET ME INDICATE THAT, BASED ON WHAT I HAVE IN THIS

15    LETTER, I THINK THE MEDICAL FURLOUGH CONTINUES TO BE

16    APPROPRIATELY EXTENDED BASED ON THE HEALTH, THE CONDITIONS,

17    THE NEED TO MONITOR, AND WHAT'S GOING ON WITH HIM FROM A

18    MEDICAL STANDPOINT. I APPRECIATE THE LETTER DATED AUGUST

19    10TH, 2021.

20          DO WE WANT TO MOVE THE SENTENCING FROM SEPTEMBER 24TH

21    AT THIS TIME? AND IF SO, WHAT'S THE REQUEST?

22          MS. JENKINS: YES, YOUR HONOR. I THINK FOR

23    SENTENCING IT SHOULD BE AFTER THE 7TH FLEET TRIAL, SO SOMETIME

24    IN MARCH OR APRIL OF 2022.

25          MR. PLETCHER: I THINK THAT'S RIGHT, JUDGE. YOU

1   KNOW, IN THE NORMAL COURSE OF THINGS, YOU KNOW -- WELL, IN THE
2   NORMAL COURSE OF THINGS, WE'D BE ABLE TO FULLY EVALUATE
3   SUBSTANTIAL ASSISTANCE AND THINGS LIKE THAT AFTER THE TRIAL IS
4   COMPLETE.  SO I THINK IT MAKES GOOD SENSE TO SET IT INTO MARCH
5   OF 2022 WITH AN EXPECTATION THAT THE TRIAL WILL END SOMETIME
6   IN FEBRUARY.
7                THE COURT:  OKAY.  WITH A LITTLE GOOD FORTUNE.  OKAY.
8        I'M HAPPY TO PICK ANY DATE IN MARCH, ALEX.
9        I TEND TO THINK -- AND HELP ME HERE, COUNSEL -- THAT
10  THIS SENTENCING WOULD BE HARD TO DO ON A REGULAR FRIDAY
11  CALENDAR, THAT MAYBE IT SHOULD BE SET ON AN OFF DAY SO THAT
12  NOBODY IS RUSHED.  WE CAN TAKE AS MUCH TIME AS WE NEED TO.  I
13  CAN HEAR FROM ANYBODY WHO NEEDS TO ADDRESS THE COURT.  I DON'T
14  KNOW.  SO I'M GOING TO ASK MR. PLETCHER THAT AND MISS JENKINS
15  THAT.
16               MR. PLETCHER:  I AGREE, YOUR HONOR.
17               MS. JENKINS:  I AGREE.
18               MR. PLETCHER:  I THINK THERE ARE A NUMBER OF -- I
19  MEAN, THE COURT'S AWARE OF THE ISSUES THAT ARE GOING TO BE
20  BEFORE US, NOT JUST THE RUN-OF-THE-MILL SENTENCING ISSUES, BUT
21  THERE'S RESTITUTION AND FORFEITURE ISSUES THAT THE COURT WILL
22  HAVE TO RESOLVE, AND THEN MY GUESS IS THAT THE BUREAU OF
23  PRISONS AND OTHER FOLKS WILL HAVE TO WEIGH IN ON THE MEDICAL
24  TREATMENT ISSUES RELATED TO HIS SENTENCING IN CUSTODY.
25               THE COURT:  AND LET ME JUST SAY THIS.  IF THOSE ARE

1   THE ISSUES THAT ARE GOING TO COME UP, OFTEN THEY NEED TO BE
2   COMMUNICATED TO THE BUREAU OF PRISONS IN ADVANCE, OR ELSE WE
3   NEED TO KNOW THAT IT'S GOING TO BE A MULTI-STEP SENTENCING, A
4   NUMBER OF MULTIPLE HEARINGS, SHALL I SAY, FOR SENTENCING IN
5   ORDER TO GET THAT INFORMATION, BECAUSE WE GENERALLY DON'T HAVE
6   IT.  SO KEEP THAT IN MIND.  I'LL SET THE FIRST DATE, AND IF
7   YOU HAVE THAT INFORMATION, GREAT.  IF YOU DON'T, WE'LL HAVE TO
8   GET IT AND BRING IT BACK.

9              MR. PLETCHER:  YES.  THANKS, JUDGE.  WE'LL DO OUR
10  BEST TO HAVE THE INFORMATION FROM THE BUREAU OF PRISONS, AND
11  IF WE NEED A PARTICULAR REPRESENTATIVE OR MEDICAL
12  REPRESENTATIVE FROM THE BUREAU OF PRISONS, WE'LL HAVE THEM
13  HERE IN COURT.

14             THE COURT:  OKAY.

15             MR. PLETCHER:  THAT WILL BE OUR HOPE.  IF WE HAVE TO
16  DO IT IN MULTI-STAGE --

17             THE COURT:  RIGHT.

18             MR. PLETCHER:  -- SENTENCING HEARINGS, WE CAN DO THAT
19  ALSO.

20             THE COURT:  OKAY.  WITH THE COMPLICATED MEDICAL
21  SITUATIONS, I'VE HAD TO DO THEM IN MULTIPLE HEARINGS, MR.
22  PLETCHER.  THAT'S THE ONLY REASON I BRING IT UP.

23             MR. PLETCHER:  OKAY.

24             THE COURT:  I'M INCLINED TO GO THE VERY, THE LATTER
25  PART OF MARCH, BUT WHATEVER (PAUSE).

1          MS. JENKINS:  JUST ONE POINT, YOUR HONOR, TOO.  WE

2     HAVE OTHER DEFENDANTS THAT ARE AWAITING SENTENCING IN THIS, IN

3     MR. FRANCIS' CASE AND IN OTHER RELATED MATTERS.  THEIR

4     SENTENCINGS ARE SET FOR, I BELIEVE, MARCH AND APRIL OF 2022.

5     SO I'M NOT SURE IF THE GOVERNMENT INTENDS FOR MR. FRANCIS TO

6     BE SENTENCED LAST, AND IF SO, THEN WE WOULD NEED TO MOVE OUT

7     FURTHER THAN MARCH.

8          THE COURT:  MISS JENKINS, YOU'RE THINKING OF THINGS

9     THAT I'M NOT THINKING OF RIGHT NOW.  WHO DO I HAVE SET FOR

10    SENTENCING, MA'AM?  DO YOU KNOW OFF THE TOP OF YOUR HEAD?

11          OR, ALEX, DO YOU KNOW?

12          MS. JENKINS:  DEFENDANT SANCHEZ, DEFENDANT ARUFFO,

13    DEFENDANT JESUS CANTU --

14          THE COURT:  OKAY.

15          MS. JENKINS:  -- JUST TO NAME A FEW.

16          THE COURT:  OKAY.  OKAY.  I DIDN'T KNOW THEIR

17    SENTENCING DATES.

18          GO AHEAD, MR. PLETCHER.

19          MR. PLETCHER:  THERE ARE A SMALL HANDFUL OF OTHER

20    DEFENDANTS WHO ARE ANALOGOUSLY SITUATED TO MR. FRANCIS.  I

21    DON'T THINK THERE'S ANY GRAND SCHEME THAT MR. FRANCIS NEEDS TO

22    BE SENTENCED LAST IN THAT REGARD, BUT MISS JENKINS RAISES A

23    DECENT POINT THAT MAYBE, ALSO BEARING IN MIND THE PERSONAL

24    SCHEDULE OF MINE, MAYBE INTO THE MIDDLE OR END OF APRIL WOULD

25    BE OUR BEST DATE TO TRY TO GET AWAY FOR MY SON'S SPRING BREAK

1    AT THE END OF MARCH.

2              THE COURT:  OKAY.  VERY WELL.  SO LET'S GO TO THE

3    LATTER PART OF APRIL NOW.  AGAIN, I'D LIKE TO GO ON AN OFF

4    DAY.

5              NO TRIALS ARE SET IN APRIL YET.  RIGHT, ALEX?

6              THE DEPUTY CLERK:  NO, JUDGE.

7              THE COURT:  OKAY.  SO LOOK AT THE WEEK OF THE 18TH,

8    THE WEEK OF THE 25TH OF APRIL, AND TELL ME WHAT APPEALS TO

9    YOU.  WE'LL START IT AT NINE O'CLOCK IN THE MORNING ON

10   WHATEVER DAY, AND WE WILL GO UNTIL WE FINISH.

11             MS. JENKINS:  EITHER OF THOSE WEEKS WORKS FOR US.

12             THE DEPUTY CLERK:  MONDAY, APRIL 18, AT NINE O'CLOCK

13   A.M.

14             THE COURT:  AND IF THAT NEEDS TO BE ADJUSTED, WE

15   ADJUST.

16             MS. JENKINS:  AND THEN ONE OTHER THING.  I JUST WANT

17   TO MAKE SURE THE GREEN SHEET FOR THE MEDICAL FURLOUGH IS

18   EXTENDED TO DECEMBER 17TH, THE DAY AFTER OUR STATUS.

19             THE COURT:  CORRECT.

20             AND, MR. PLETCHER, LAST WEEK, WHEN WE CONTINUED TO

21   TODAY, WE EXTENDED ONE DAY BECAUSE IT WAS SET TO EXPIRE TODAY.

22   SO WE EXTENDED IT TO TOMORROW.  WE'LL NOW EXTEND THE MEDICAL

23   FURLOUGH TO DECEMBER 17TH, AND SETTING THE STATUS ON THE 16TH,

24   AT THREE P.M., SENTENCING ON APRIL 18TH, AT NINE A.M., OF

25   2022.

1          MR. PLETCHER:  VERY GOOD.  THANK YOU, JUDGE.

2          THE COURT:  OKAY.  ANYTHING ELSE?

3          MS. JENKINS:  NO, YOUR HONOR.

4          THE COURT:  OKAY.  AND THIS IS A SEALED HEARING.  THE

5    TRANSCRIPT IS SEALED UNTIL FURTHER ORDER OF THE COURT.

6          THANK YOU.

7          MR. BURSTEIN:  THANK YOU, YOUR HONOR.

8          MS. JENKINS:  THANK YOU.

9          MR. PLETCHER:  THANK YOU, JUDGE.

10          MR. GARCIA:  THANK YOU, YOUR HONOR.

11          (PROCEEDINGS ADJOURNED AT 2:23 P.M.)

12    ------------------------------------------------------------

13                    (END OF TRANSCRIPT)

14

15          I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

16    HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

17    ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

18

19          S/FRANK J. RANGUS

20          FRANK J. RANGUS, OCR

21

22

23

24

25

 DISTRIBUTE



**Calendar of the United States District Court**
**Southern District of California**
**San Diego**
**Monday, August 23, 2021**
**Courtroom 4D**

**Present the Honorable: Janis L. Sammartino**     **District Judge**

**Deputy Clerk: A. Ramos**     **Court Reporter/ECR: F RANGUS**     **Interpreter:**

---

## *** SEALED PROCEEDINGS ***
## 2:00 PM

**1**

13CR3781-JLS
13CR3782-JLS
13CR4287-JLS

          **USA**    **V.**    **LEONARD GLENN FRANCIS**

                   **RETD**   **DEVIN BURSTEIN**
                          **KATIE JENKINS**
                          **JEREMY WARREN**

                   **AUSA**   **MARK PLETCHER**

                   **PSO**    **MARISA ZVERS**        **JUSTIN GARCIA**
                          **WILLIAM PARELES**
                          **ALDO LOPEZ**
                          **KIMURA HAZARD**
                          **VANESSA ANDREWS**

                   **USM**    **DENNIS COUGHLIN**

      **STATUS HEARING**

      Notes:

STATUS HEARING CONTINUED TO **12/16/2021 AT 3:00 PM**
MEDICAL FURLOUGH EXTENDED FROM 8/24/2021 TO 12/17/2021

SENTENCING CONTINUED FROM 9/24/2021 TO **MONDAY, 4/18/2022 AT 9:00 AM**

**0:20**

---

Created on: 08/20/2021                                          Page 1 of 1

**SEALED**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER  13CR3781-JLS |
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No.  45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  **August 23, 2021** (*Nunc Pro Tunc*)

the Court entered the following order:

☒ — Defendant be release from custody.

_____ — Defendant placed on supervised / unsupervised probation / supervised release.

_____ — Defendant continued on supervised / unsupervised probation / supervised release.

☒ — Defendant released on _____ **O/R W/GPS** _____ Bond posted.

_____ — Defendant appeared in Court.  FINGERPRINT & RELEASE.

_____ — Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated.

_____ — Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____ — Bench Warrant Recalled.

_____ — Defendant forfeited collateral.

_____ — Case dismissed.

_____ — Case dismissed, charges pending in case no.

_____ — Defendant to be release to Pretrial Services for electronic monitoring.

☒ — Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until December 17, 2021. The defendant will return to custody and continue detention on December 17, 2021.

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

12/01/21

Electronically Sent to USMS

**ATTN: ANDREA SCOTT**

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

Crim-9 (Rev. 05/20)
Original

**Alex Ramos**

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **Sent:** | Wednesday, December 01, 2021 4:00 PM |
| **To:** | Alex Ramos |
| **Subject:** | Read: 13CR3781-JLS Abstract re Medical Furlough 08-23-2021 (Sealed) |
| **Attachments:** | Read: 13CR3781-JLS Abstract re Medical Furlough 08-23-2021 (Sealed) |

CAUTION - EXTERNAL:

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER  13CR3782-JLS |
| vs | **ABSTRACT OF** ORDER |
| LEONARD GLENN FRANCIS | Booking No.  45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  <u>August 23, 2021 (*Nunc Pro Tunc*)</u>

the Court entered the following order:

X  Defendant be release from custody.

____  Defendant placed on supervised / unsupervised probation / supervised release.

____  Defendant continued on supervised / unsupervised probation / supervised release.

X  Defendant released on _____ O/R W/GPS _____ Bond posted.

____  Defendant appeared in Court. FINGERPRINT & RELEASE.

____  Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated.

____  Defendant sentenced to TIME SERVED, supervised release for _____ years.

____  Bench Warrant Recalled.

____  Defendant forfeited collateral.

____  Case dismissed.

____  Case dismissed, charges pending in case no.

____  Defendant to be release to Pretrial Services for electronic monitoring.

X  Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until December 17, 2021. The defendant will return to custody and continue detention on December 17, 2021.

Janis L. Sammartino
_____
UNITED STATES DISTRICT JUDGE

OR

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

<u>12/01/21</u>
Electronically Sent to USMS

**ATTN: ANDREA SCOTT**

Crim-9 (Rev. 05/20)
Original

**Alex Ramos**

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **To:** | Alex Ramos |
| **Sent:** | Wednesday, December 01, 2021 4:02 PM |
| **Subject:** | Read: 13CR3782-JLS Abstract re Medical Furlough 08-23-2021 (Sealed) |

Your message

To: CAS Releases
Subject: 13CR3782-JLS Abstract re Medical Furlough 08-23-2021 (Sealed)
Sent: Wednesday, December 1, 2021 3:25:15 PM (UTC-08:00) Pacific Time (US & Canada)

was read on Wednesday, December 1, 2021 5:01:05 PM (UTC-08:00) Pacific Time (US & Canada).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER  13CR4287-JLS |
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No.  45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  **August 23, 2021 (*Nunc Pro Tunc*)**

the Court entered the following order:

X     Defendant be release from custody.

     Defendant placed on supervised / unsupervised probation / supervised release.

     Defendant continued on supervised / unsupervised probation / supervised release.

X     Defendant released on     O/R W/GPS     Bond posted.

     Defendant appeared in Court.  FINGERPRINT & RELEASE.

     Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated.

     Defendant sentenced to TIME SERVED, supervised release for _____ years.

     Bench Warrant Recalled.

     Defendant forfeited collateral.

     Case dismissed.

     Case dismissed, charges pending in case no.

     Defendant to be release to Pretrial Services for electronic monitoring.

X     Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until December 17, 2021. The defendant will return to custody and continue detention on December 17, 2021.

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

OR

12/01/21

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **To:** | Alex Ramos |
| **Sent:** | Wednesday, December 01, 2021 4:02 PM |
| **Subject:** | Read: 13CR428-JLS Abstract re Medical Furlough 08-23-2021 (Sealed) |

Your message

To: CAS Releases
Subject: 13CR428-JLS Abstract re Medical Furlough 08-23-2021 (Sealed)
Sent: Wednesday, December 1, 2021 3:27:14 PM (UTC-08:00) Pacific Time (US & Canada)

was read on Wednesday, December 1, 2021 5:01:26 PM (UTC-08:00) Pacific Time (US & Canada).

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

HONORABLE JANIS L. SAMMARTINO
UNITED STATES DISTRICT JUDGE PRESIDING

_____

UNITED STATES OF AMERICA,        )   NO.  13-CR-3781-JLS
                                 )        13-CR-3782-JLS
                  PLAINTIFF,     )        13-CR-4287-JLS
                                 )
                                 )   DECEMBER 10, 2021
VS.                              )
                                 )   STATUS HEARING
LEONARD GLENN FRANCIS,           )
                                 )   (SEALED HEARING)
                  DEFENDANT.     )

_____

APPEARANCES:

FOR THE PLAINTIFF:      MARK W. PLETCHER
                        U.S. ATTORNEY'S OFFICE

FOR THE DEFENDANT:      DEVIN J. BURSTEIN
                        KATIE JENKINS
                        WARREN & BURSTEIN

THE COURT REPORTER:     GAYLE WAKEFIELD, RPR, CRR

```
 1    DECEMBER 10, 2021

 2                         MORNING SESSION

 3              THE PRETRIAL SERVICES OFFICER:  GOOD MORNING, YOUR

 4    HONOR, ALDO LOPEZ, PRETRIAL SERVICES.

 5              THE CLERK:  THIS IS A SEALED PROCEEDING.  NUMBER 11 ON

 6    THE CALENDAR, 13-CR-3781, 13-CR-3782, 13-CR-4287, UNITED STATES

 7    VS. LEONARD GLENN FRANCIS FOR A STATUS.

 8              MR. PLETCHER:  GOOD MORNING, YOUR HONOR, MARK PLETCHER

 9    FOR THE UNITED STATES.

10              MR. BURSTEIN:  GOOD MORNING, YOUR HONOR, DEVIN BURSTEIN

11    AND KATIE JENKINS ON BEHALF OF MR. FRANCIS.

12              THE COURT:  WHO WANTS TO GO FIRST?  WHAT I RECEIVED FOR

13    TODAY'S HEARING WAS A LETTER FROM                        DATED

14    DECEMBER THE 8TH, 2021, SO I HAVE READ THAT LETTER.  GO AHEAD.

15              MR. BURSTEIN:  YOUR HONOR, BASED -- MR. PLETCHER AND

16    MYSELF AND MS. JENKINS HAD A CHANCE TO TALK BEFORE THE HEARING.

17    WE WERE GOING TO SUGGEST TO THE COURT THAT GIVEN THE LETTER,

18    AND THE CURRENT NEED FOR FURTHER REVIEW, ESPECIALLY REGARDING

19    THE

20                                           , WE WOULD SUGGEST

21    CONTINUING THE FURLOUGH OUT UNTIL AFTER THE CURRENT TRIAL

22    CONCLUDES -- AFTER THE SCHEDULED FEBRUARY TRIAL CONCLUDES.

23              THE COURT:  OKAY.

24              MR. PLETCHER:  YOUR HONOR, NO OBJECTION FROM THE UNITED

25    STATES IN THAT REGARD.  OBVIOUSLY, WE HAVE TRIAL COMING UP, AND
```

WHEN THAT TRIAL IS COMPLETE, THEN WE WILL FINISH THE REST OF
THE CASE, THE REMAINING DEFENDANTS WHO HAVE YET TO BE
SENTENCED, INCLUDING MR. FRANCIS, INCLUDING THE OTHER
DEFENDANTS IN THAT REGARD, AND DEAL WITH THE AFTERMATH OF THE
TRIAL, SO I THINK MR. BURSTEIN'S PROPOSAL IS A REASONABLE ONE,
BUT THERE'S A LIGHT AT THE END OF THIS TUNNEL WHICH RELATES TO
THE SENTENCING AND THEN ALLOWING THIS ISSUE TO BE COMMITTED
BACK TO THE BUREAU OF PRISONS.  THE COURT REMEMBERS WE'RE HERE
IN LARGE PART BECAUSE PRETRIAL SERVICES AND THE MARSHAL SERVICE
DON'T HAVE THOSE RESOURCES, BUT THE BUREAU OF PRISONS IS
DIFFERENTLY SITUATED AS FAR AS PROVIDING MEDICAL CARE.

THE COURT:  THE ONLY THING I WOULD ASK OF YOU, MR.
PLETCHER, IS IF YOU HAVE ANY CONCERNS WITH REGARD TO HIS HEALTH
STATUS GIVEN WHAT'S BEEN SAID IN THE PODCAST.  THE PODCAST
TRANSCRIPT, YOU SHOULD KNOW, HAS BEEN LODGED WITH THIS COURT BY
THE DEFENDANTS IN THE TRIAL THAT'S GOING FORWARD, SO I HAVE
SEEN THAT.  ANY COMMENTS OR CONCERNS BASED ON HIS COMMENTS
THERE?

MR. PLETCHER:  WE HAVE AS WELL, YOUR HONOR, AND I GUESS
I AND THE COURT, PRIMARILY BEFORE THAT POINT, HAVE BEEN TAKING
OUR DIRECTION FROM MR. FRANCIS'S DOCTORS AND THE MEDICAL
EVIDENCE THAT HAS BEEN PRESENTED TO US.  THE MEDICAL EVIDENCE
THAT'S BEEN PRESENTED -- AND TO "US" I MEAN "US" COLLECTIVELY,
NOT THE UNITED STATES, AND TO THE COURT DURING THESE
PROCEEDINGS REGARDING HIS EVOLVING HEALTH, HIS ███████████,

```
1    AND ████████████████████████████  THERE THAT IS

2    CONCERNING.  THERE APPEAR TO BE NOW ADDITIONAL ████████ THAT

3    REQUIRE ADDITIONAL MEDICAL CARE THAT THEY'RE GOING TO

4    ██████████████████  WHICH REQUIRES AN ADDITIONAL INVASIVE

5    PROCEDURE.

6         AND SO WE READ, LIKE THE COURT READ THE TRANSCRIPT, AND

7    HEARD THE PODCAST WITH A DEGREE OF CONCERN, AND AT THE SAME

8    TIME HAVE TO BALANCE THAT AGAINST THE MEDICAL EVIDENCE FROM

9    DOCTORS WHO ARE CREDIBLE, UPSTANDING PROFESSIONALS AT THE

10   FLAGSHIP HOSPITALS IN THIS COMMUNITY, AND SO I -- IN TRYING TO

11   BALANCE THAT INTEREST, WE'RE LEFT WITH NO OBJECTION TO

12   CONTINUING THE FURLOUGH AS WE HAVE.  AND TO THE EXTENT THAT

13   THOSE COMMENTS SUGGEST THAT MR. FRANCIS'S HEALTH CONTINUES TO

14   BE STABLE AND THAT HE'S NOT IN ANY IMMEDIATE EXTREMIS

15   SITUATION, THAT THAT'S SOMETHING THAT WE'VE ALL EXPRESSED

16   THANKFULNESS FOR THROUGHOUT, AND WE DO AS WELL.

17        THIS EXERCISE IN CRIMINAL JUSTICE IS NOT AN EXERCISE IN

18   MORTALITY, AND SO WE'VE BEEN BALANCING THOSE INTERESTS

19   THROUGHOUT.  I SAY WE, BUT REALLY THE COURT HAS BEEN

20   FUNDAMENTALLY METICULOUS IN GOING THROUGH THIS EVIDENCE AS IT'S

21   PRESENTED, TO TAKING -- WE'VE HAD ████████ AND OTHER PEOPLE

22   IN THE COURTROOM TO TESTIFY AND TO PROVIDE THE COURT WITH

23   INFORMATION THROUGHOUT.

24        THE CONDITIONS OF THE FURLOUGH HAVE BEEN RIGOROUSLY

25   CRAFTED BY THE COURT, HAVE BEEN ENFORCED BY PRETRIAL SERVICES,
```

NOT JUST HOME VISITS, BUT WE KNOW THAT THEY'RE MONITORING THE
ANKLE BRACELET, AS THEY HAVE.  WE'VE REVISITED THE ISSUE OF
HAVING THE GUARDS OUT FRONT AND THE IMPORTANCE OF THAT
CONDITION.

ALL OF THOSE THINGS I THINK GIVE US SOME DEGREE OF
COMFORT THAT -- ESPECIALLY WITH THE LIGHT AT THE END OF THE
TUNNEL, THAT CONTINUING THE MEDICAL FURLOUGH FOR THIS SHORT
ADDITIONAL PERIOD IS THE APPROPRIATE COURSE OF ACTION, BUT WITH
FULL NOTICE TO EVERYONE THAT AT THE END OF THE TUNNEL IS THE
END OF THE TUNNEL, AND WE KNOW THAT THIS CONDITION AND THESE
THINGS CAN BE TREATED, UPON SENTENCING, BY THE BUREAU OF
PRISONS, LIKE SO MANY OTHER INMATES WHO HAVE TREATABLE CHRONIC
CONDITIONS IN THE GENERAL PRISON POPULATION.

I HOPE THAT THAT WAS A COMPLETE ANSWER, CERTAINLY
LONGER THAN INTENDED.

THE COURT:  THAT WAS VERY HELPFUL.  LET ME ASK
PRETRIAL, AND THEN I'LL LET YOU MAKE A FINAL COMMENT.

THE PRETRIAL SERVICES OFFICER:  GOOD MORNING, YOUR
HONOR, ALDO LOPEZ FOR PRETRIAL SERVICES.

YOUR HONOR, MR. FRANCIS HAS BEEN IN FULL COMPLIANCE
WITH HIS TERMS AND CONDITIONS OF RELEASE.  NO ISSUES TO REPORT.

THE COURT:  EXCELLENT.  ANYTHING YOU WANT TO ADD, MR.
BURSTEIN?

MR. BURSTEIN:  NO, YOUR HONOR, I WOULD JUST ECHO WHAT
MR. PLETCHER SAID.  THE OBJECTIVE FACTS ARE THE OBJECTIVE

```
1    FACTS.  THE PODCAST IS REGRETTABLE.

2             THE COURT:  I THINK WE'LL JUST LEAVE IT THERE.  I'M

3    GOING TO CONTINUE THE MEDICAL FURLOUGH BASED ON THE INFORMATION

4    I HAVE FROM                        AND MR. FRANCIS'S TREATING

5    PHYSICIANS.

6             THE QUESTION IS WHERE DO WE PUT THIS?  TO THE BEST OF

7    MY KNOWLEDGE, I'M STARTING TRIAL ON THE REMAINING DEFENDANTS

8    FEBRUARY THE 7TH, SCHEDULED TO GO FOR THREE, POSSIBLY

9    FOUR MONTHS.  I GUESS IT DEPENDS ON HOW MANY PEOPLE REMAIN IN

10   THAT CASE.  WE CAN ALWAYS MOVE IT OUT IF WE DO THIS -- MAYBE WE

11   SET IT THE SECOND HALF OF MAY AND SEE IF WE'RE DONE.

12            MR. BURSTEIN:  I THINK WE WILL BE.  I THINK THAT WILL

13   WIND UP BEING THE DATE, SO I THINK THAT'S A GREAT IDEA.

14            THE COURT:  WHAT DO YOU THINK OF THAT, MR. PLETCHER?

15            MR. PLETCHER:  THAT'S FINE, YOUR HONOR.  IT ULTIMATELY

16   IS EVERYONE'S BEST GUESS AT THIS POINT, AND WE CAN ADVANCE IT

17   IF WE'RE DONE EARLY.

18            THE COURT:  WE COULD.

19            MR. PLETCHER:  AND WE CAN EXTEND IF WE'RE NOT DONE YET,

20   SO IT REALLY IS JUST A CONVENIENCE DATE TO SET --

21            THE COURT:  TO KEEP TRACK OF EVERYTHING.  SO GO MID TO

22   LATTER HALF OF MAY.

23            THE CLERK:  SO FURLOUGH WILL BE EXTENDED FROM TODAY TO

24   MAY 23RD, 2022.

25            THE COURT:  WHAT DAY OF THE WEEK IS THAT?
```

```
1           THE CLERK:  THAT'S A MONDAY.

2           THE COURT:  SO WE WANT TO SET THIS MATTER FOR HEARING

3    THE FRIDAY BEFORE.

4           MR. PLETCHER:  HOW ABOUT THE THURSDAY BEFORE --

5           THE COURT:  BECAUSE WE'LL PROBABLY BE IN TRIAL.

6           MR. PLETCHER:  I'M SORRY.

7           THE COURT:  SO WILL YOU, MR. PLETCHER.

8           MR. PLETCHER:  WE HAVE GREAT FAITH, JUDGE, WE'LL BE

9    DONE.

10          MR. BURSTEIN:  YES.

11          THE COURT:  SO GO TO THE FRIDAY BEFORE, ALEX, FOR

12   STATUS.

13          THE CLERK:  STATUS WILL BE SET FOR MAY 20TH AT 11:00

14   A.M.  WE ALSO HAVE SENTENCING SET CURRENTLY FOR APRIL 18TH.

15          MR. BURSTEIN:  THAT WAS GOING TO BE OUR -- WE HAD ONE

16   FURTHER JOINT REQUEST SINCE WE'RE HERE, FOR EFFICIENCY'S

17   PURPOSE, COULD WE MOVE OUT THE SENTENCING NOW OR DID THE COURT

18   WANT US TO FILE SOMETHING?

19          THE COURT:  IT'S SET IN APRIL?

20          MR. BURSTEIN:  YES.

21          THE COURT:  DID YOU COME UP WITH A DATE YOU WANTED TO

22   SET IT TO?

23          MR. PLETCHER:  TRY THE BEGINNING OF JUNE.  IF I'M

24   RECOLLECTING CORRECTLY, I DON'T BELIEVE THAT THE PRESENTENCE

25   REPORT HAS BEEN COMPLETED YET.
```

THE COURT:  I DON'T THINK IT'S BEEN DONE.

                    MR. PLETCHER:  MR. FRANCIS WOULD HAVE TO --

                    MR. BURSTEIN:  IT WILL WAIT --

                    MR. PLETCHER:  -- ENGAGE IN THAT PROCESS BETWEEN NOW
        AND THEN, BUT --

                    THE COURT:  SHOULD WE PUT IT ON MAY THE 20TH?  WE'LL
        ALL BE BACK TOGETHER AND WE'LL HAVE A BETTER IDEA THEN.  WE
        KNOW IT'S GOING TO BE A STATUS.  IT'S NOT GOING TO BE
        SENTENCING, BUT WE'LL HAVE A BETTER IDEA WHERE TO PUT IT.  AND
        YOU SAID -- HAS IT BEEN STARTED?  HAS ANYTHING BEEN DONE ON HIS
        PRESENTENCE REPORT?

                    MR. BURSTEIN:  NO, YOUR HONOR.

                    MR. PLETCHER:  OBVIOUSLY PRESENTENCE REPORTS FOR 27
        OTHER DEFENDANTS HAVE BEEN CREATED AND PREPARED, SO THERE'S
        SOME TEMPLATE OUT THERE AS TO THE FACTS OF THE CASE AND
        WHATNOT, BUT PROBATION WILL NEED TO DO AN INTERVIEW AND
        ADDITIONAL SIGNIFICANT WORK RELATED TO A NUMBER OF ISSUES.  I
        WOULD DEFER TO THE COURT WHETHER WE SET IT FOR STATUS OR PUT
        SENTENCING AT THE END OF JUNE OR BEGINNING OF JULY AND ASSUME
        THAT THAT WILL BE A DATE THAT IS OUR BEST GUESS.

                    THE COURT:  DO YOU HAVE A PREFERENCE, COUNSEL?

                    MR. BURSTEIN:  I THINK MR. PLETCHER'S LATTER SUGGESTION
        IS RIGHT.  I THINK WE SHOULD JUST PUT IT AT THE END OF JULY,
        WITH THE IDEA THAT THAT'S WHEN WE'RE GOING TO BE GOING FORWARD,
        AND IF SOMETHING FALLS APART 12 WEEKS BEFORE, WE CAN PUSH IT

BACK.

THE COURT: GO TO MID-JULY, ALEX, AFTER THE 4TH, BUT NOT THE VERY END.

THE CLERK: THIS MATTER WILL BE SET FOR THURSDAY, JULY 14, AT 9:00 A.M.

MR. BURSTEIN: IS THAT AN OFF DAY FOR THE COURT?

THE CLERK: IT IS AN OFF DAY.

THE COURT: I THINK ALEX IS THINKING IF WE GO FORWARD IT MIGHT TAKE MORE TIME THAN WE HAVE ON THE REGULAR FRIDAY CALENDAR, FOR A VARIETY OF REASONS.

MR. PLETCHER: YES. IS THAT ALSO BASTILLE DAY?

THE COURT: DO YOU LIKE THAT, MR. PLETCHER? DOES THAT SOUND GOOD TO YOU?

MR. PLETCHER: I LOOK FOR SYMBOLISM IN ALL LIFE.

THE COURT: OKAY.

MR. PLETCHER: I'M JOKING, YOUR HONOR.

THE COURT: ANYTHING ELSE, COUNSEL?

MR. BURSTEIN: NO, YOUR HONOR.

MR. PLETCHER: I DON'T THINK SO. I WAS GOING THROUGH ALL THE VARIOUS THINGS THAT WE GENERALLY DEAL WITH, BUT I THINK THAT THAT COVERS EVERYTHING RELATED TO MR. FRANCIS.

THE COURT: I THINK IT DOES. WE HAVE A STATUS SET BEFORE THE MEDICAL FURLOUGH EXPIRES. I THINK WE'RE OKAY. WE SET THE SENTENCING OUT.

MR. PLETCHER: LET ME JUST GO PROPHYLACTICALLY FIRST,

1   CONSISTENT WITH THE COURT'S ORDER IN THE 7TH FLEET CASE, THE
2   COURT WILL BE SEEING A MOTION TO PARTIALLY UNSEAL ASPECTS OF
3   THESE PREVIOUS HEARINGS AND ORDERS.  WE'RE COMPILING, WITH MR.
4   FRANCIS'S ATTORNEYS, THE DATES OF THOSE HEARINGS.  WE'RE
5   WORKING WITH THE COURT REPORTER TO GET TRANSCRIPTS THAT ARE
6   REDACTED OF MEDICAL INFORMATION.  SO JUST ALERTING THE COURT TO
7   THE FACT THAT THAT'S FORTHCOMING, PROBABLY BEFORE THE END OF
8   DECEMBER.

9           THE COURT:  VERY WELL.  THANK YOU.

10          MR. PLETCHER:  IN AN EFFORT TO MEET THE TIMELINE THE
11  COURT SET.

12          THE COURT:  ANYTHING ELSE?

13          MR. BURSTEIN:  NO, YOUR HONOR.

14          THE COURT:  THANK YOU, PRETRIAL, I APPRECIATE IT.

15          MR. PLETCHER:  THANK YOU, YOUR HONOR.

16  (THE HEARING CONCLUDED.)

17

18                  C E R T I F I C A T E

19          I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
    QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
20  STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
    ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
21  ABOVE-ENTITLED MATTER ON DECEMBER 10, 2021; AND THAT THE FORMAT
    USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
22  STATES JUDICIAL CONFERENCE.

23

24  DATED:  JANUARY 3, 2022        /S/ GAYLE WAKEFIELD
                                   GAYLE WAKEFIELD, RPR, CRR
25                                 OFFICIAL COURT REPORTER



### Calendar of the United States District Court
### Southern District of California
### San Diego
### Friday, December 10, 2021
### Courtroom 4D

**Present the Honorable: Janis L. Sammartino**　　　**District Judge**

Deputy Clerk: A. Ramos　　　Court Reporter/ECR: G Wakefield　　　Interpreter:

## *** SEALED PROCEEDINGS ***
## 11:00 AM

**11a.**　　13CR3781-JLS　　USA　V.　**LEONARD GLENN FRANCIS**
　　　　　　13CR3782-JLS
　　　　　　13CR4287-JLS
　　　　　　　　　　　　　　　　　　**RETD**　**DEVIN BURSTEIN**
　　　　　　　　　　　　　　　　　　　　　　**KATIE JENKINS**

　　　　　　　　　　　　　　　　　　**AUSA**　**MARK PLETCHER**

　　　　　　　　　　　　　　　　　　**PSO**　**ALDO LOPEZ**

　　　　　　　　　　　　　　　　　　**PO**　**JOE QUEEN**

　　　　　　　　　　　　　　　　　　**DUSM**　**DENNIS COUGHLIN N/A**

　　**STATUS HEARING**

　　Notes:
Sentence w/PSR set for 4/18/2022 at 9:00 AM

STATUS HEARING CONTINUED TO 5/20/2022 AT 11:00 AM

MEDICAL FURLOUGH EXTENDED TO 5/23/2022

SENTENCE W/PSR CONTINUED TO **THURSDAY, 7/14/2022 AT 9:00 AM**

0:12

**SEALED**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER  13CR3781-JLS |
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No.  45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of  __DECEMBER 10, 2021 (*Nunc Pro Tunc*)__

the Court entered the following order:

| | |
|---|---|
| ✕ | Defendant be release from custody. |
| | Defendant placed on supervised / unsupervised probation / supervised release. |
| | Defendant continued on supervised / unsupervised probation / supervised release. |
| ✕ | Defendant released on  **O/R W/GPS**  Bond posted. |
| | Defendant appeared in Court.  FINGERPRINT & RELEASE. |
| | Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated. |
| | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
| | Bench Warrant Recalled. |
| | Defendant forfeited collateral. |
| | Case dismissed. |
| | Case dismissed, charges pending in case no. |
| | Defendant to be release to Pretrial Services for electronic monitoring. |
| ✕ | Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until May 23, 2022. The defendant will return to custody and continue detention on May 23, 2022. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

01/03/22

Electronically Sent to USMS

**ATTN: ANDREA SCOTT**

OR

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **To:** | Alex Ramos |
| **Sent:** | Monday, January 03, 2022 3:23 PM |
| **Subject:** | Read: 13CR3781-JLS Sealed Abstract (Medical Furlough) |

Your message

To: CAS Releases
Subject: 13CR3781-JLS Sealed Abstract (Medical Furlough)
Sent: Monday, January 3, 2022 3:20:15 PM (UTC-08:00) Pacific Time (US & Canada)

was read on Monday, January 3, 2022 4:22:02 PM (UTC-08:00) Pacific Time (US & Canada).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

# SEALED

SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER 13CR3782-JLS |
| vs | **ABSTRACT OF ORDER** |
| LEONARD GLENN FRANCIS | Booking No. 45415298 |

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of __DECEMBER 10, 2021 (*Nunc Pro Tunc*)__

the Court entered the following order:

X     Defendant be release from custody.

_____     Defendant placed on supervised / unsupervised probation / supervised release.

_____     Defendant continued on supervised / unsupervised probation / supervised release.

X     Defendant released on     O/R W/GPS     Bond posted.

_____     Defendant appeared in Court. FINGERPRINT & RELEASE.

_____     Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated.

_____     Defendant sentenced to TIME SERVED, supervised release for _____ years.

_____     Bench Warrant Recalled.

_____     Defendant forfeited collateral.

_____     Case dismissed.

_____     Case dismissed, charges pending in case no.

_____     Defendant to be release to Pretrial Services for electronic monitoring.

X     Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until May 23, 2022. The defendant will return to custody and continue detention on May 23, 2022.

Janis L. Sammartino
_____
UNITED STATES DISTRICT JUDGE

OR

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

01/03/22
_____
Electronically Sent to USMS

**ATTN: ANDREA SCOTT**

Crim-9 (Rev. 05/20)
Original

## Alex Ramos

| | |
|---|---|
| **From:** | CAS Releases <CAS.Releases@usdoj.gov> |
| **To:** | Alex Ramos |
| **Sent:** | Monday, January 03, 2022 3:30 PM |
| **Subject:** | Read: 13CR3782-JLS Sealed Abstract (Medical Furlough) |

Your message

To: CAS Releases
Subject: 13CR3782-JLS Sealed Abstract (Medical Furlough)
Sent: Monday, January 3, 2022 3:21:20 PM (UTC-08:00) Pacific Time (US & Canada)

was read on Monday, January 3, 2022 4:28:45 PM (UTC-08:00) Pacific Time (US & Canada).

SEALED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

vs

LEONARD GLENN FRANCIS

CASE NUMBER 13CR4287-JLS

**ABSTRACT OF ORDER**

Booking No. 45415298

TO THE UNITED STATES MARSHAL AND / OR WARDEN, METROPOLITAN CORRECTIONAL CENTER:

Be advised that under date of **DECEMBER 10, 2021 (*Nunc Pro Tunc*)**

the Court entered the following order:

| | |
|---|---|
| X | Defendant be release from custody. |
| | Defendant placed on supervised / unsupervised probation / supervised release. |
| | Defendant continued on supervised / unsupervised probation / supervised release. |
| X | Defendant released on _____ O/R W/GPS _____ Bond posted. |
| | Defendant appeared in Court. FINGERPRINT & RELEASE. |
| | Defendant remanded and ( _____ bond ) ( _____ bond on appeal ) exonerated. |
| | Defendant sentenced to TIME SERVED, supervised release for _____ years. |
| | Bench Warrant Recalled. |
| | Defendant forfeited collateral. |
| | Case dismissed. |
| | Case dismissed, charges pending in case no. |
| | Defendant to be release to Pretrial Services for electronic monitoring. |
| X | Other. The Court revises the previous abstract to allow defendant to remain on medical furlough and continued GPS monitoring until May 23, 2022. The defendant will return to custody and continue detention on May 23, 2022. |

Janis L. Sammartino

UNITED STATES DISTRICT JUDGE

01/03/22

Electronically Sent to USMS

ATTN: ANDREA SCOTT

OR

JOHN MORRILL, Clerk of Court

by   Alex Ramos ext. 5291

Crim-9 (Rev. 05/20)
Original